# Exhibit C

The New York Times | https://nyti.ms/2vvroKs

## DealBook / Business & Policy

# As Paperwork Goes Missing, Private Student Loan Debts May Be Wiped Away

By STACY COWLEY and JESSICA SILVER-GREENBERG    JULY 17, 2017

Tens of thousands of people who took out private loans to pay for college but have not been able to keep up payments may get their debts wiped away because critical paperwork is missing.

The troubled loans, which total at least $5 billion, are at the center of a protracted legal dispute between the student borrowers and a group of creditors who have aggressively pursued them in court after they fell behind on payments.

Judges have already dismissed dozens of lawsuits against former students, essentially wiping out their debt, because documents proving who owns the loans are missing. A review of court records by The New York Times shows that many other collection cases are deeply flawed, with incomplete ownership records and mass-produced documentation.

Some of the problems playing out now in the $108 billion private student loan market are reminiscent of those that arose from the subprime mortgage crisis a decade ago, when billions of dollars in subprime mortgage loans were ruled uncollectible by courts because of missing or fake documentation. And like those troubled mortgages, private student loans — which come with higher interest rates

and fewer consumer protections than federal loans — are often targeted at the most vulnerable borrowers, like those attending for-profit schools.

At the center of the storm is one of the nation's largest owners of private student loans, the National Collegiate Student Loan Trusts. It is struggling to prove in court that it has the legal paperwork showing ownership of its loans, which were originally made by banks and then sold to investors. National Collegiate's lawyers warned in a recent legal filing, "As news of the servicing issues and the trusts' inability to produce the documents needed to foreclose on loans spreads, the likelihood of more defaults rises."

National Collegiate is an umbrella name for 15 trusts that hold 800,000 private student loans, totaling $12 billion. More than $5 billion of that debt is in default, according to court filings. The trusts aggressively pursue borrowers who fall behind on their bills. Across the country, they have brought at least four new collection cases each day, on average — more than 800 so far this year — and tens of thousands of lawsuits in the past five years.

Last year, National Collegiate unleashed a fusillade of litigation against Samantha Watson, a 33-year-old mother of three who graduated from Lehman College in the Bronx in 2013 with a degree in psychology.

Ms. Watson, the first in her family to go to college, took out private loans to finance her studies. But she said she had trouble following the fine print. "I didn't really understand about things like interest rates," she said. "Everybody tells you to go to college, get an education, and everything will be O.K. So that's what I did."

Ms. Watson made some payments on her loans but fell behind when her daughter got sick and she had to quit her job as an executive assistant. She now works as a nurse's aide, with more flexible hours but a smaller paycheck that barely covers her family's expenses.

When National Collegiate sued her, the paperwork it submitted was a mess, according to her lawyer, Kevin Thomas of the New York Legal Assistance Group. At one point, National Collegiate presented documents saying that Ms. Watson had enrolled at a school she never attended, Mr. Thomas said.

"I tried to be honest," Ms. Watson said of her court appearance. "I said, 'Some of these loans I took out, and I'll be responsible for them, but some I didn't take.'"

In her defense, Ms. Watson's lawyer seized upon what he saw as the flaws in National Collegiate's paperwork. Judge Eddie McShan of New York City's Civil Court in the Bronx agreed and dismissed four lawsuits against Ms. Watson. The trusts "failed to establish the chain of title" on Ms. Watson's loans, he wrote in one ruling.

When the judge's rulings wiped out $31,000 in debt, "it was such a relief," Ms. Watson said. "You just feel this whole weight lifted. My mom started to cry."

Joel Leiderman, a lawyer at Forster and Garbus, the law firm that represented National Collegiate in its litigation against Ms. Watson, declined to comment on the lawsuits.

## Lawsuits Tossed Out

Judges throughout the country, including recently in cases in New Hampshire, Ohio and Texas, have tossed out lawsuits by National Collegiate, ruling that it did not prove it owned the debt on which it was trying to collect.

The trusts win many of the lawsuits they file automatically, because borrowers often do not show up to fight. Those court victories, which can be used to garnish paychecks and take federal benefits like Social Security from bank accounts, can haunt borrowers for decades.

The loans that National Collegiate holds were made to college students more than a decade ago by dozens of different banks, then bundled together by a financing company and sold to investors through a process known as securitization. These private loans were not guaranteed by the federal government, which is the nation's largest student loan lender.

But as the debt passed through many hands before landing in National Collegiate's trusts, critical paperwork documenting the loans' ownership disappeared, according to documents that have surfaced in a little-noticed legal battle involving the trusts in state and federal courts in Delaware and Pennsylvania.

National Collegiate's legal problems have hinged on its inability to prove it owns the student loans, not on any falsification of documents.

Robyn Smith, a lawyer with the National Consumer Law Center, a nonprofit advocacy group, has seen shoddy and inaccurate paperwork in dozens of cases involving private student loans from a variety of lenders and debt buyers, which she detailed in a 2014 report.

But National Collegiate's problems are especially acute, she said. Over and over, she said, the company drops lawsuits — often on the eve of a trial or deposition — when borrowers contest them. "I question whether they actually possess the documents necessary to show that they own loans," Ms. Smith said.

In an unusual situation, one of the financiers behind National Collegiate's trusts agrees with some of the criticism. He is Donald Uderitz, the founder of Vantage Capital Group, a private equity firm in Delray Beach, Fla., that is the beneficial owner of National Collegiate's trusts. (Mr. Uderitz's company keeps whatever money is left after the trusts' noteholders are paid off.)

He said he was appalled by National Collegiate's collection lawsuits and wanted them to stop, but an internal struggle between Vantage Capital and others involved in operating the trusts has prevented him from ordering a halt, he said

"We don't like what's going on," Mr. Uderitz said in a recent interview.

"We don't want National Collegiate to be the poster boy of bad practices in student loan collections, but we have no ability to affect it except through this litigation," he said, referring to a lawsuit that he initiated last year against the trusts' loan servicer in Delaware's Chancery Court, a popular battleground for corporate legal fights.

## Ballooning Balances

Like those who took on subprime mortgages, many people with private student loans end up shouldering debt that they never earn enough to repay. Borrowing to finance higher education is an economic decision that often pays off, but federal

student loans — a much larger market, totaling $1.3 trillion — are directly funded by the government and come with consumer protections like income-based repayment options.

Private loans lack that flexibility, and they often carry interest rates that can reach double digits. Because of those steep rates, the size of the loans can quickly balloon, leaving borrowers to pay hundreds and, in some cases, thousands of dollars each month.

Others are left with debt for degrees they never completed, because the for-profit colleges they enrolled in closed amid allegations of fraud. Federal student borrowers can apply for a discharge in those circumstances, but private borrowers cannot.

Other large student lenders, like Sallie Mae, also pursue delinquent borrowers in court, but National Collegiate stands apart for its size and aggressiveness, borrowers' lawyers say.

Lawsuits against borrowers who have fallen behind on their consumer loans are typically filed in state or local courts, where records are often hard to search. This means that there is no national tally of just how often National Collegiate's trusts have gone to court.

Very few cases ever make it to trial, according to court records and borrowers' lawyers. Once borrowers are sued, most either choose to settle or ignore the summons, which allows the trusts to obtain a default judgment.

"It's a numbers game," said Richard D. Gaudreau, a lawyer in New Hampshire who has defended against several National Collegiate lawsuits. "My experience is they try to bully you at first, and then if you're not susceptible to that, they back off, because they don't really want to litigate these cases."

Transworld Systems, a debt collector, brings most of the lawsuits for National Collegiate against delinquent borrowers. And in legal filings, it is usually a Transworld representative who swears to the accuracy of the records backing up the loan. Transworld did not respond to a request for comment.

Hundreds of cases have been dismissed when borrowers challenge them, according to lawyers, often because the trusts do not produce the paperwork needed to proceed.

### 'We Need Answers'

Jason Mason, 35, was sued over $11,243 in student loans he took out to finance his freshman year at California State University, Dominguez Hills. His lawyer, Joe Villaseñor of the Legal Aid Society of San Diego, got the case dismissed in 2013, after the trust's representative did not show up for a court-ordered deposition. It is unclear if the trusts had the paperwork they would have needed to prove their case, Mr. Villaseñor said.

"It was a scary time," Mr. Mason said of being taken to court. "I didn't know how they would come after me, or seize whatever I had, to get the money."

Nancy Thompson, a lawyer in Des Moines, represented students in at least 30 cases brought by National Collegiate in the past few years. All were dismissed before trial except three. Of those, Ms. Thompson won two and lost one, according to her records. In every case, the paperwork Transworld submitted to the court had critical omissions or flaws, she said.

National Collegiate's beneficial owner, Mr. Uderitz, hired a contractor in 2015 to audit the servicing company that bills National Collegiate's borrowers each month and is supposed to maintain custody of many loan documents critical for collection cases.

A random sample of nearly 400 National Collegiate loans found not a single one had assignment paperwork documenting the chain of ownership, according to a report they had prepared.

While Mr. Uderitz wants to collect money from students behind on their bills, he says he wants the lawsuits against borrowers to stop, at least until he can get more information about the documentation that underpins the loans.

"It's fraud to try to collect on loans that you don't own," Mr. Uderitz said. "We want no part of that. If it's a loan we're owed fairly, we want to collect. We need answers on this."

Keith New, a spokesman for the servicer, the Pennsylvania Higher Education Assistance Agency (known to borrowers as American Education Services), said, "We believe that the auditors were misinformed about the scope of P.H.E.A.A.'s contractual obligations. We are confident that the litigation will reveal that the agency has acted properly and in accordance with its agreements."

The legal wrangling — now playing out in three separate court cases in Pennsylvania and Delaware — has dragged on for more than a year, with no imminent resolution in sight. Borrowers are caught in the turmoil. Thousands of them are unable to get answers about critical aspects of their loans because none of the parties involved can agree on who has the authority to make decisions. Some 2,000 borrower requests for forbearance and other help have gone unanswered, according to a court filing late last year.

### *Correction: July 19, 2017*

An article on Tuesday about missing paperwork for private student loans referred imprecisely to how debt collectors may garnish federal benefits like Social Security from borrowers. The collectors can in some circumstances take benefits after they are deposited in a bank account; they cannot garnish the benefits directly.

*Susan C. Beachy contributed research.*

A version of this article appears in print on July 18, 2017, on Page A1 of the New York edition with the headline: Lost Paperwork May Erase Student Debt for Tens of Thousands.

© 2018 The New York Times Company