# Exhibit D

**The New York Times** | https://nyti.ms/2jlqMpZ

**DealBook /** Business & Policy

# Behind the Lucrative Assembly Line of Student Debt Lawsuits

By STACY COWLEY and JESSICA SILVER-GREENBERG    NOV. 13, 2017

A woman in a suburb of Columbus, Ohio, was sued twice, by two different creditors, over the same overdue student loan. Another person, in Illinois, was taken to court over a loan that had already been paid off. And hundreds of borrowers faced lawsuits over debts so old that they were no longer legally collectible.

The cases all involved the same debt collector: Transworld Systems.

Student loans have soared over the last decade, becoming the largest source of household debt outside of mortgages. The tide of rising defaults has also turned into a lucrative business, with companies collecting tens of millions of dollars through settlements, wage garnishments and other compelled payments.

Transworld Systems has been one of most prolific debt collectors, filing more than 38,000 lawsuits in the last three years on behalf of a single client, the National Collegiate Student Loan Trusts. But many of the cases were flawed, as the debt collector churned out mass-produced documentation based on scant verification, according to legal filings by a federal regulator and a New York Times analysis of court records from hundreds of cases.

In September, the regulator, the Consumer Financial Protection Bureau, accused National Collegiate and Transworld, in separate complaints, of using sloppy and illegal collections methods. Both parties agreed to settle and pay more than $21 million in penalties and refunds.

National Collegiate and Transworld "sued consumers for student loans they couldn't prove were owed and filed false and misleading affidavits in courts across the country," said Richard Cordray, the consumer bureau's director.

Most of the nearly $1.5 trillion that Americans owe in student debt is backed by the federal government. When borrowers fall behind on those loans, the government can garnish their wages or seize their tax refunds.

Private loans, like those owned by National Collegiate, amount to more than $100 billion. Those players have to go to court to get what they are owed.

Transworld's high-volume tactics in such cases are common across the industry, according to borrowers' lawyers and lawsuits. Court dockets are choked with faulty cases. Students have been sued for debts they no longer owed, by companies they never borrowed from, and by creditors that lacked the legal standing to sue in the first place, records show.

Alarmed by such problems, judges in Arizona, California, Florida, Louisiana, New Jersey, New York and other states have quashed hundreds of lawsuits.

"This is robosigning all over again," said Robyn Smith, a lawyer with the National Consumer Law Center, a nonprofit advocacy group, referring to the way that banks, at the height of the mortgage crisis, brought thousands of foreclosure lawsuits without reviewing the underlying paperwork.

## Assembly-Line Reviews

From the outside, the squat, industrial office park in Norcross, Ga., is unremarkable, just another in a stretch of low-hung buildings along a road dotted with pines.

Inside, Transworld's litigation machine cranks out the paperwork for thousands of lawsuits each year against borrowers who have fallen behind on their student loans.

The process for producing legal filings runs like an assembly line for making widgets. Transworld employees review 30 or 40 borrower files in a typical day, according to testimony from Bradley Luke, the company's senior litigation paralegal, during a deposition in June.

When an affidavit, a legally binding statement laying out evidence in a case, is needed, Transworld's software automatically fills in details like the amount owed, according to Mr. Luke's testimony. From there, a document production team finishes preparing the file, then hands it over to an "affiant" — typically a low-level employee with no legal training — for a review and signature.

The affiants are a critical link in the litigation chain, swearing in many cases that they had "personal knowledge of the business records," according to court records. But Transworld's employees did not have personal knowledge, the consumer bureau said in its complaint against the debt collector.

Other companies had created the records reviewed by Transworld employees. Those workers, the consumer bureau said, did not know how the data was maintained and whether it was correct. Even so, employees signed the forms "for fear of losing their jobs," according to the bureau's complaint.

The hasty review process obscured defects. More than 800 cases involved apparent time travel: In those instances, Transworld employees swore that borrowers' loans had been purchased by investors on dates that were months or even years before the loans were actually made.

Transworld, based in Fort Washington, Pa., said it disagreed with many of the consumer bureau's accusations. The company agreed to settle the case, it said in a statement, to avoid the cost and distraction of litigation.

The company's review process "accords with all industry best practices and relevant law," David Zwick, Transworld's chief financial officer, said in a statement

to The Times.

Transworld "processes thousands of affidavits, and while our error rate is exceptionally low, we believe that any mistake is unacceptable," Mr. Zwick said. "We will continue to regularly review everything we do in order to ensure the highest standards of quality control."

Lisa Kyser, in Pataskala, Ohio, said she got tangled up in one of Transworld's mistakes. She took out half a dozen student loans as she juggled her college studies with full-time jobs, but she thought she had all of them under control.

In June 2016, Ms. Kyser got a summons notifying her that she was being sued for falling behind on a $12,000 loan made in 2006. Two weeks later, she got a second summons also seeking payment — to a different creditor, for a different amount — on the same loan.

"I called the opposing counsel from both firms and said, 'You can't both be right,'" said Emily White, a lawyer in Columbus, Ohio, who represented Ms. Kyser.

The cases lingered for five months, while Ms. Kyser racked up legal fees. In the end, after her lawyer continually pestered them, the law firms that sued Ms. Kyser — both working for Transworld — withdrew the cases.

## Courts Digging Deeper

The stacks of legal documents Transworld prepared in that Georgia office park made their way to courts across the country.

Many of the cases sailed through, unchallenged. Borrowers often do not fight collection lawsuits, which allows the creditor to win by default.

Even when defendants did respond, some judges brushed off their objections. In Miami, a law firm working for Transworld brought a lawsuit last year against Antonio Fuentes, seeking payment on a $13,356 student loan. With interest and fees, Mr. Fuentes now owed $25,322.31, according to the complaint.

Mr. Fuentes, representing himself, admitted that he had taken the loan but disputed the amount he was said to owe. A Transworld employee swore in an affidavit that the tally was correct. The judge sided with Transworld and ordered Mr. Fuentes to pay the full amount.

"The courts are often not sympathetic to these cases," said N. James Turner, a lawyer in Orlando, Fla., who represents borrowers. "Many judges take the attitude: 'I paid my student loans. You ought to pay yours. Don't give me this nonsense about technicalities.'"

But some judges are starting to raise questions about collection cases.

Last year, a California appeals court cast doubt on the company's affidavits. Employees of Transword, then known as NCO Financial Systems, were not "personally familiar" with the records they swore were accurate, the judges wrote, and therefore could not vouch for them in court. The case was tossed out.

It's not just debt collectors facing judicial skepticism, but also the creditors themselves.

A New York judge questioned whether Navient, the nation's largest owner of private student loan debt, had a right to collect on some loans at all in the state.

At the center of that decision was Stefanie Gray, who fell behind on $36,000 in private student loans from Navient, with interest rates as high as 14 percent.

Ms. Gray, 29, said she pleaded with the company for relief, but it would not budge. "I could barely pay rent, and was on food stamps at the time," she said. Unable to keep up with the ballooning debt, she defaulted.

Navient filed four lawsuits against Ms. Gray in 2013. With help from Kevin Thomas, a lawyer with the New York Legal Assistance Group, a nonprofit organization that helps low-income residents, she fought back by challenging the creditor's standing to sue in New York courts. Navient's student loan trusts — the investment vehicles that owned her debt — had not registered to do business in the state, she claimed in her legal filings.

Judge James d'Auguste of the New York State Supreme Court's civil division in Manhattan agreed. He dismissed all four lawsuits, on the grounds that Navient's trusts did not have standing to pursue the cases.

A justice on the New York State Supreme Court ruled differently last year on a separate case that raised the same defense. He denied a dismissal motion and said that the standing of Navient's trusts to sue should be addressed at trial. The case is still pending.

Patricia Nash Christel, a spokeswoman for Navient, declined to comment on specific cases.

"We pursue litigation as a last resort for a tiny fraction of individuals — less than 1 percent of defaulted private education loan borrowers — and each case is individually reviewed and prepared," Ms. Christel said.

## A Brawl Brews

The consumer bureau's action against National Collegiate and Transworld was intended to sideline the aggressive litigators.

Under the settlement terms, National Collegiate would be forbidden from collecting on the judgments its trusts have already won, or bringing any new cases, until it had completed an audit of the paperwork underpinning every single one of its 800,000 loans — an expensive and time-consuming slog.

But the deal, struck in September, may be falling apart.

The settlement requires court approval, usually a rubber stamp when both sides have agreed to the terms. The case was submitted to the United States District Court in Delaware.

The trusts' beneficial owner, Donald Uderitz, the founder of Vantage Capital Group, a private equity firm in Delray Beach, Fla., approved the agreement with the consumer bureau. Within days of its announcement, though, seven other parties involved in or working for the trusts, including Transworld, filed motions asking the court to reject it.

(The separate settlement that Transworld reached with the consumer bureau did not need court approval. It has already taken effect, although it does not prevent Transworld from hiring law firms to file debt collection cases.)

Until the court sorts out the dispute on National Collegiate settlement — which could take months, if not years — most of the deal is blocked from taking effect. That means that Transworld can continue bringing new lawsuits for National Collegiate against borrowers behind on their student loans.

In Ohio, Ms. Kyser's home state, law firms acting on Transworld's behalf have already filed at least 30 new collection cases in the past month.

*Susan C. Beachy contributed research.*

© 2017 The New York Times Company