1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    MUTINTA MICHELO, et al,

4                     Plaintiffs,

5            v.                              18 CV 1781 (PGG)

6    NATIONAL COLLEGIATE STUDENT
     LOAN TRUST 2007-2, et al.,
7                                            Conference
                     Defendants.
8
     ------------------------------x
9                                            New York, N.Y.
                                             June 21, 2018
10                                           10:35 a.m.

11   Before:

12           HON. PAUL G. GARDEPHE

13                                           District Judge

14

15

16           APPEARANCES

17

     FRANK LLP
18       Attorneys for Plaintiffs
     BY:  GREGORY A. FRANK
19       ASHER HAWKINS

20   LOCKE LORD LLP
         Attorneys for National Collegiate Defendants
21   BY:  GREGORY T. CASAMENTO

22   SESSIONS FISHMAN NATHAN & ISRAEL LLC
         Attorneys for Defendant Transworld
23   BY:  AARON R. EASLEY

24   RIVKIN RADLER LLP
         Attorneys for Defendant Forster & Garbus LLP
25   BY:  CAROL A. LASTORINO

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1            (Case called)

2            THE COURT:  The plaintiffs in this case individually

3  and on behalf of others that are similarly situated have

4  brought claims against National Collegiate Student Loan Trust

5  2007-2, National Collegiate Student Loan Trust 2007-3 -- I will

6  refer to these entities as "the trust defendants" -- also

7  Transworld Systems, Inc., EGS Financial Care, and a law firm

8  Forster & Garbus, alleging violations of the Fair Debt

9  Collection Practices Act, New York General Business Law § 349,

10  and New York Judiciary Law § 487.  Cplt. Dkt. No. 8, ¶¶ 9, 29,

11  119-138.

12            The essence of plaintiffs' claims is that the

13  defendants have engaged in a fraudulent scheme to make false

14  representations to consumers and to courts in order to obtain

15  payment on debts that they cannot prove that they are owed.

16  Cplt. ¶ 1.

17            Plaintiffs allege that an entity called NCO Financial,

18  which was a predecessor to Transworld, together with

19  Transworld, that those entities act as servicing agents for the

20  trust defendants and coordinate with certain debt collection

21  law firms around the country, including Forster & Garbus, to

22  file baseless lawsuits against consumers over purported debts.

23  Cplt. ¶¶ 2-6 and 40-43.

24            Plaintiffs allege that defendants employ a variety of

25  illegal tactics in these actions, including the submission of

1   false affidavits, all in an effort to fraudulently obtain

2   default judgments against consumers with respect to these

3   allegedly unprovable debts.  Cplt. ¶¶ 11-13.

4            The defendants deny liability, and they have filed a

5   pre-motion letter with respect to a motion to dismiss that they

6   would like to bring.  Defendants contend that plaintiffs'

7   claims under the Fair Debt Collection Practices Act are time-

8   barred.  They further contend that plaintiffs' New York General

9   Business Law § 349 claims fail because they fail to state a

10  claim and are time-barred.  Finally, Forster & Garbus claims

11  that the claim that is brought under New York Judiciary Law

12  § 487 fails to state a claim.

13            I have a pre-motion conference requirement because I

14  like to know ahead of time what motions lawyers are thinking

15  about bringing so that I have an opportunity to give you my

16  impressions before you actually file the motion.  I want to

17  emphasize at the outset what I am about to say to you are

18  merely my impressions based on what I have read so far.

19            I have found it useful over the years to give my

20  initial impressions to lawyers about the merits of the proposed

21  motion so that they can take those thoughts into account in

22  deciding whether to actually file the motion and, if so, making

23  sure that the motion addresses the concerns that I have raised

24  in conferences such as this.

25            Let me begin with some background.  I understand that

the trust defendants are securitized trusts that were designed
to hold student loans.  Cplt. ¶¶ 24, 25, 39.  Large lenders or
originators made these loans to borrowers and then sold them to
National Collegiate Funding LLC, which is a subsidiary of First
Marblehead Corporation.  Cplt. ¶ 39.  First Marblehead created
the trust defendants, and National Collegiate Funding LLC later
sold the loans to the trust defendants.  Id.  Each trust
defendant then issued asset-backed securities.  Id.

       I further understand that NCO Financial and Transworld
act as servicing agents for the trust defendants by engaging in
debt collection activities on behalf of the trust defendants
once they determine that a debtor has defaulted.  Cplt. ¶¶
40-45.  I further understand Transworld to be a successor to
NCO Financial.  The complaint further alleges that NCO
Financial does business as EGS Financial.  Cplt. ¶¶ 26 and 27.

       The complaint alleges that Transworld, and NCO
Financial before it, coordinate debt collection activities with
law firms, such as defendant Forster & Garbus.  Cplt. ¶ 45.
According to the complaint, Forster & Garbus has filed
"hundreds, if not thousands, of state court lawsuits against
New Yorkers allegedly indebted to [the National Collegiate
Trust]."  Cplt. ¶¶ 52-58.

       According to plaintiffs, the law firm's court filings
are "mass-produced by nonlawyers" without reasonable
investigation to confirm the "validity of the allegations and

claims lodged" against consumers, including plaintiffs.

Cplt. ¶ 53.

The plaintiffs allege that Forster & Garbus did not process or review any documentary support for the claims it brought against plaintiffs even though the complaints filed by the law firm contain a certification that the attorney signing the complaint engaged in a meaningful review of the claims asserted in these complaints.  Cplt. ¶¶ 54, 57-59, 91.

According to plaintiffs, Forster & Garbus produced complaints that contained numerous false statements and filed applications for default judgments with misleading affidavits that the firm knew were not based upon personal knowledge. Cplt. ¶¶ 81-90, 94-102.

Pursuant to this alleged scheme, Forster & Garbus brought a lawsuit against plaintiff Michelo on or about July 14, 2015, seeking $22,047.88.  Cplt. ¶ 61, 75.  On or about May 29, 2014, Forster & Garbus brought a lawsuit against the two Seamen plaintiffs seeking $24,324.29.  Cplt. ¶ 78, 91.

According to plaintiffs, the complaints in these two actions contain multiple false statements.  For example, the complaints stated that the trust defendants were the "original creditors" even though the trust defendants did not originate the agreement underlying the alleged debt sued on.  Cplt. ¶¶ 64-66, 82-83.

The complaints in these actions also stated that the

trust defendants were "authorized to proceed with this action" even though, according to plaintiffs, trust defendant 2007-3 had not filed a certificate of designation with the New York State Department of State and accordingly was not permitted to maintain a lawsuit in New York.  Cplt. ¶¶ 68, 72, 85-90.

According to plaintiffs, the complaints filed by the law firm also contained false certifications attesting that the signing attorney engaged in a meaningful review of the claims alleged when in fact no such meaningful review had occurred. Cplt. ¶¶ 73, 74, 91, 92.

According to plaintiffs, in connection with the litigation brought against the Seamen plaintiffs, Forster & Garbus filed an affidavit that was not based on personal knowledge in order to procure a default judgment.  Cplt. ¶¶ 95-96.

The complaint goes on to allege that on July 17, 2017, The New York Times published an article regarding National Collegiate.  According to plaintiffs, The New York Times reported that an audit of Transworld had revealed, based on a random sample of about 400 National Collegiate loans, that there was no paperwork evidencing chain of ownership.  Cplt. ¶¶ 110-112.

The complaint goes on to allege that on September 18, 2017, the Consumer Financial Protection Board, or the CFPB, announced certain findings with respect to National Collegiate

1    and Transworld and in particular found that those entities had

2    filed lawsuits without the intention or ability to prove the

3    claims; second, that they had filed lawsuits over a debt that

4    was time-barred; and also that they had filed false and

5    misleading affidavits in support of lawsuits against consumers.

6    Cplt. ¶¶ 4, 113-114, 140.  The CFPB imposed a penalty of

7    $21.6 million.

8         The action before me was filed on February 28, 2018,

9    and contains three causes of action.  First, the complaint

10   alleges violation of the Fair Debt Collection Practices Act

11   against Transworld, NCO Financial, EGS Financial, and the law

12   firm Forster & Garbus.  Second, the complaint alleges

13   violations of General Business Law § 349 against all

14   defendants.  Finally, the complaint alleges violations of New

15   York Judiciary Law § 487 as against the law firm Forster &

16   Garbus.  Cplt. ¶¶ 119-138.

17        As I noted at the outset in their pre-motion letter,

18   defendants contend that plaintiffs' Fair Debt Collection

19   Practices Act claims are time-barred, that the § 349 claims

20   fail to state a claim and are time-barred, and that the

21   judiciary law claim fails to state a claim.  Def. Ltr. Dkt. No.

22   37.

23        I am going to give you now my impressions of the

24   proposed motion to dismiss based on what I have read to date.

25        Beginning with the issue of whether plaintiffs' Fair

1   Debt Collection Practices Act claims are time-barred, defend-

2   ants argue that these claims are time-barred under a one-year

3   statute of limitations that is set forth in Title 15, United

4   States Code § 1692k(d).  Def. Ltr. Dkt. No. 37 page 2.

5          Defendants point out that the complaint was filed on

6   February 28, 2018, and that plaintiffs' claims are predicated

7   on conduct that occurred in 2015 and 2016.  In response,

8   plaintiffs contend that the statute of limitations was tolled

9   because defendants' fraud was "inherently self-concealing."

10  Pltf. Ltr. Dkt. No. 38, page 3.

11         Defendants respond that the plaintiffs cannot demon-

12  strate the applicability of equitable tolling because "any

13  alleged FDCPA violation would have been present on the face of

14  the state court collection complaints which the most minimal

15  amount of diligence by plaintiffs would have revealed."  Def.

16  Ltr. Dkt. No. 37, pages 2-3.

17         Moreover, according to defendants, plaintiffs have not

18  been diligent because they have "been credit reported or had a

19  wage garnishment executed upon them since 2015" yet have "done

20  nothing to investigate grounds to challenge that collection

21  activity for more than one year."  Id. at page 3.

22         The FDCPA provides that "an action to enforce any

23  liability created for this subchapter may be brought in any

24  appropriate United States district court within one year from

25  the date on which the violation occurs."  15 United States Code

1   § 1692k(d).

2        The statute of limitations may, however, be "equitably

3   tolled" where plaintiff establishes:

4        (1) the defendant concealed from him the existence of

5   his cause of action;

6        (2) he remained in ignorance of that cause of action

7   until some length of time within the statutory period before

8   commencement of his action; and

9        (3) his continuing ignorance was not attributable to

10  lack of diligence on his part.

11   Sykes v. Mel Harris & Associates, 757 F.Supp.2d 413, 422

12  (S.D.N.Y. 2010).  "A defendant may be deemed to have concealed

13  the existence of the cause of action when the conduct forming

14  the basis of the action is inherently self-concealing."  Toohey

15  v. Portfolio Recovery Associates, 2016 WL 4473016, at *6,

16  (S.D.N.Y. August 22, 2016).

17        Plaintiffs allege that on May 29, 2014, Forster &

18  Garbus filed the lawsuit I mentioned earlier against the Seamen

19  plaintiffs seeking $24,324.29.  Cplt. ¶¶ 78-93.  Plaintiffs

20  further allege that on or about March 30, 2015, Forster &

21  Garbus filed an application for default judgment in that

22  action.  Cplt. ¶ 94.

23        In connection with this application, Forster & Garbus

24  submitted an affidavit from James Cummins, a Transworld

25  employee, in which Cummins represented that he had reviewed

1    Transworld business records and the underlying loan

2    documentation and that based on this information Cummins had

3    personal knowledge that the Seamen plaintiffs owed the

4    $24,324.29.  Cplt. ¶¶ 94-101.

5         The Seamen plaintiffs contend that these

6    representations were false and that Mr. Cummins in fact had no

7    personal knowledge of the business records or the underlying

8    documentation establishing that the Seamen plaintiffs owned the

9    debt in question.  Cplt. ¶¶ 96-99.

10        Because of the false and misleading statements

11   contained in these affidavits, the Seamen plaintiffs contend

12   that they remained unaware of defendants' fraud until the CFPB

13   published its findings on September 18, 2017, thus revealing

14   that Transworld had a practice of filing false and misleading

15   affidavits in support of lawsuits against consumers.  Cplt. ¶¶

16   114, 142-144.

17        My impression based on what I have read so far is that

18   these allegations are sufficient to plausibly demonstrate the

19   applicability of equitable tolling as to the Seamen plaintiffs.

20   See Toohey, 2016 WL 4473016, at *6.

21        As an initial matter, an affidavit that falsely

22   represents that the affiant personally reviewed underlying

23   documentation is "inherently self- concealing" because the

24   "alleged falsity is information of which only the defendant

25   could be aware."  Id.  See also State of New York v.

1    Hendrickson Brothers, 840 F.2d 1065, 1083 (2d Cir. 1988) ("The

2    passing off of a sham article as one that is genuine is an

3    inherently self-concealing fraud.")

4           Moreover, a plaintiff supplied with a false affidavit

5    may plausibly remain in ignorance of his or her claim unless

6    the falsity of the representations made in the affidavit is

7    revealed.  See Toohey, 2016 WL 4473016, at *6 (Plaintiff

8    "plausibly alleges that she remained in ignorance of the basis

9    of her cause of action until the CFPB issued it September 8,

10   2015, consent order revealing that routine representations made

11   by portfolio recovery associates employees in nearly identical

12   affidavits were false").

13          Finally, the Seamen plaintiffs' continuing ignorance

14   is "not attributable to a lack of diligence on their part"

15   because the affidavit "was inherently self-concealing" and the

16   Seamen plaintiffs "had no reason to question the truthfulness

17   of the affidavit and therefore no reason to doubt that

18   defendants lawfully carried their burden of proof to obtain the

19   lawful judgment."  Id. at *7.

20          Accordingly, it appears to me, based on what I have

21   read so far, that the Seamen plaintiffs have plausibly alleged

22   that they remained ignorant of their FDCPA claims until the

23   CFPB published its findings on September 18, 2017.  Because the

24   Seamen plaintiffs brought this suit within a year of the CFPB's

25   findings being announced, it appears to me that their claims

1   are timely.  For these reasons it appears to me that

2   defendants' motion to dismiss the Seamen plaintiffs' FDCPA

3   claims would likely fail.

4        As to plaintiff Michelo, there are no allegations that

5   Forster & Garbus ever filed any false and misleading affidavits

6   in the action against Michelo.  To the contrary, plaintiffs

7   allege that the Forster & Garbus firm filed a lawsuit against

8   Michelo on July 14, 2015, and then on December 9, 2016,

9   defendants filed a notice of voluntary discontinuance.  Cplt.

10  ¶¶ 61, 75-76.  No application for default judgment appears to

11  have been filed, nor does it appear that supporting affidavits

12  were filed.  See Id. ¶¶ 61-76.

13       Absent additional facts that plausibly allege an

14  alternative basis for equitable tolling of Michelo's claims,

15  the one-year statute of limitations would appear to apply.

16  Because all the relevant conduct upon which Michelo's claim is

17  based occurred in 2015 and 2016, absent these additional

18  factual allegations, it would appear to me that plaintiff

19  Michelo's claim is time-barred.  Accordingly, with respect to

20  Michelo, it appears to me that defendants' motion to dismiss

21  Michelo's FDCPA claim may be well-founded.

22       As to the § 349 claim, as I noted, defendants request

23  leave to move to dismiss that claim on the grounds that

24  plaintiffs have not stated a claim and that their claim under

25  § 349 is time-barred under the 3-year statute of limitations.

1   Def. Ltr. Dkt. No. 37 at pages 3-4.

2           To state a claim under New York General Business Law §

3   349, a plaintiff "must prove three elements: first, that the

4   challenged act or practice was consumer oriented; second, that

5   it was misleading in a material way; and third, that the

6   plaintiff suffered injury as a result of the deceptive act."

7   Crawford v. Franklin Credit Management, 758 F.3d 473, 490 (2d

8   Cir. 2014).

9           For an act to be "consumer-oriented" a plaintiff "must

10  show it had a broader impact on consumers at large."  "Private

11  contract disputes unique to the parties, for example, would not

12  fall within the ambit of the statute."  Id.

13          Defendants argue that the plaintiffs have not

14  sufficiently alleged consumer-oriented conduct because

15  plaintiffs' claims turn on "two distinct disputes relating to

16  the litigation surrounding two private contractual disputes."

17  Def. Ltr. Dkt. No. 37 page 3.

18          "Claims arising under § 349 need not allege a

19  repetition or pattern of deceptive behavior, however, so long

20  as the conduct alleged potentially affects similarly situated

21  consumers."  Winslow v. Forster & Garbus LLP, 2017 WL 6375744,

22  at *13 (E.D.N.Y. Dec. 13, 2017).

23          Moreover, while a plaintiff's private contract dispute

24  does not fall within § 349 (Oswego, 85 N.Y.2d at 25) where "the

25  crux of the claim is that these practices were a normal part of

1    defendant's business, which involved hundreds of thousands of

2    dollars in consumer debt," "the allegedly deceptive conduct had

3    a broad impact on consumers."  <u>Fritz v. Resurgent Capital</u>

4    <u>Services</u>, 955 F.Supp.2d 163, 173-74 (E.D.N.Y. 2013); also

5    <u>Winslow</u>, 2017 WL 6375744, at *13 ("There is no doubt that

6    defendants allegedly deceptive conduct involves a much larger

7    amount of consumer debt than <u>Winslow</u>'s debt alone and has a

8    broad impact on consumers at large").

9         Here, plaintiffs have alleged widespread deceptive

10   business practices that have had an impact allegedly on a broad

11   swath of consumers.  Cplt. Dkt. No. 8 ¶¶ 1-16.  Accordingly, it

12   appears to me that plaintiffs have plausibly alleged consumer-

13   oriented conduct.

14        As to whether plaintiffs have alleged sufficient facts

15   to establish the second element, that the challenged practice

16   was materially misleading, plaintiffs allege that the

17   complaints filed by Forster & Garbus in the actions against

18   Michelo and the Seamen plaintiffs falsely state that the trust

19   defendants were the "original creditors" even though the trust

20   defendants did not originate the agreement underlying the

21   alleged debt sued upon.  Cplt. at ¶¶ 64-66, 82-83.

22        A "statement as to the trusts original creditor status

23   is not only material within the least sophisticated consumer

24   standard at the FDCPA but also materially misleading under

25   § 349."  <u>Winslow</u> 2017 WL 6375744, at *13.  Indeed, this type of

1   statement "might lead a debtor to be confused as to the nature

2   of the debt sought to be collected and is therefore misleading

3   within the meaning of § 349." Id.

4           Moreover, defendants' contention that Michelo and the

5   Seamen plaintiffs did not rely on and were not misled by these

6   statements (see Def. Ltr. Dkt. No. 37 at pages 3-4) is

7   irrelevant because the New York Court of Appeals "has

8   repeatedly stated that reliance is not an element of a § 349

9   claim." Stutman v. Chemical Bank, 95 N.Y.2d 24-28 (2000).

10  Thus, it appears to me that plaintiffs' allegations are

11  sufficient to establish that the challenged practice was

12  materially misleading.

13          With respect to the third element of the § 349 claim,

14  that plaintiffs suffered an injury as a result of the deceptive

15  act, defendants argue that plaintiffs have not alleged

16  sufficient injury.  Def. Ltr. Dkt. No. 37 at page 4.  Claims

17  brought under § 349, however, "do not require a showing of

18  pecuniary harm, and the argument that plaintiff was subject to

19  unnecessary litigation is sufficient to support her claim of

20  damages."  See Winslow 2017 WL 6375744, at *13.

21          Moreover, plaintiff Michelo alleges that she suffered

22  injury because defendants "falsely reported to credit bureaus

23  that the underlying alleged debt was valid and owed," and

24  plaintiff Mary Seamen alleges that she suffered injury because

25  her wages were garnished as a result of the fraudulent default

1    judgment procured by Forster & Garbus.  Cplt. Dkt. No. 8 ¶¶

2    77-107.  These allegations appear to me to be sufficient to

3    satisfy the third element.

4         In sum, my impression based on what I have read so far

5    is that plaintiffs' allegations are sufficient to state a claim

6    under New York General Business Law § 349.

7         With respect to the argument that the § 349 claim is

8    time-barred, claims brought under the statute are subject to a

9    3-year statute of limitations.  Anthes v. New York University,

10   2018 WL 1737540, at *7 (S.D.N.Y. March 12, 2018).  "A § 349

11   claim accrues when plaintiff has been injured by a deceptive

12   act or practice violating § 349."  Id.

13        Equitable tolling is also available for claims arising

14   under General Business Law § 349.  Martin Hilte Family Trust v.

15   Knoedler Gallery LLC, 137 F.Supp.3d 430, 467 (S.D.N.Y. 2015)

16   ("For equitable tolling to apply, plaintiff must show that the

17   defendant wrongfully concealed its actions such that plaintiff

18   was unable, despite due diligence, to discover facts that would

19   allow him to bring his claim in a timely manner or that

20   defendants' actions induced plaintiff to refrain from

21   commencing a timely action.")

22        For the same reasons I have already discussed, it

23   appears to me that the Seamen plaintiffs have plausibly alleged

24   equitable tolling with respect to their New York General

25   Business Law § 349 claim.  See, e.g., Hunter v. Palisades

1  <u>Acquisition</u>, 2017 WL 5513636, at *8 n. 11 (S.D.Y.N. Nov. 16,

2  2017).

3         Moreover, even though, based on what I have read, it

4  appears to me that plaintiff Michelo has not alleged sufficient

5  facts to establish equitable tolling, her § 349 claims would be

6  timely under that statute's 3-year limitations period.

7  Plaintiff Michelo alleges that Forster & Garbus initiated a

8  lawsuit against her on July 14, 2015.  Cplt. ¶ 61.  Assuming

9  that her injury occurred on the day that Forster & Garbus filed

10  the allegedly frivolous lawsuit against her, plaintiff Michelo

11  would have been required to file suit by July 14, 2018.  In

12  this action the complaint was filed on February 28, 2018.

13  Accordingly, it appears to me that plaintiff Michelo's § 349

14  claims are timely.

15         In sum, based on what I have read to date, it appears

16  to me that a motion to dismiss the § 349 claims on statute of

17  limitations grounds would likely fail.

18         Finally, as to the New York Judiciary Law § 487 claim,

19  Forster & Garbus argues that plaintiffs have not stated a claim

20  under that statute.  Def. Ltr. Dkt. No. 37 at pages 4-5.

21  Section 487 of the New York Judiciary Law provides, "an

22  attorney or counsel who is guilty of any deceit or collusion or

23  consents to any deceit or collusion with intent to deceive the

24  court or any party is guilty of a misdemeanor and in addition

25  to the punishment prescribed therefor by the penal law, he

1    forfeits to the party treble damages to be recovered in a civil

2    action."  New York Judiciary Law § 487.

3          Section 487 is "strictly construed."  Kaye Scholer LLP

4    v. CNA Holdings, 2010 WL 1779917, at *2 (S.D.N.Y. April 28,

5    2018), with "liability attaching only if the deceit is extreme

6    or egregious."  Ray v. Watnick, 182 F.Supp.3d 23, 29 (S.D.N.Y.

7    2016).

8          This limitation to "intentional, egregious misconduct"

9    is intended to "afford attorneys wide latitude in the course of

10   litigation to engage in written and oral expression consistent

11   with responsible, vigorous advocacy."  O'Callaghan v. Sifre,

12   537 F.Supp.2d 594, 596 (S.D.N.Y. 2008).

13         Accordingly, in order to state a claim under judiciary

14   law § 487, "a plaintiff has to show that defendants (1) are

15   guilty of deceit or collusion or consent to any deceit or

16   collusion;" "(2) had an intent to deceive the court or any

17   party;" and (3) "that damages were caused by the deceit."

18   Iannazzo v. Day Pitney LLP, 2007 WL 2020052, at *11 (S.D.N.Y.

19   July 10, 2007).

20         This standard "excludes from liability statements to a

21   court that fall well within the bounds of the adversarial

22   proceeding."  O'Callaghan, 537 F.Supp.2d at 596.  As such, "an

23   action grounded essentially on claims that an attorney made

24   meritless or unfounded allegations in state court proceedings

25   would not be sufficient to make out a violation of § 487."  Id.

1    "A single act or decision, however, if sufficiently egregious

2    and accompanied by an intent to deceive is sufficient to

3    support liability."  Id.

4         Here plaintiffs allege that Forster & Garbus conspired

5    with their clients to deceive consumers and fraudulently

6    procure default judgments by filing false and misleading

7    complaints and affidavits.  Cplt. Dkt. No. 8 ¶¶ 135-138.

8    Plaintiffs' allegations are not merely that Forster & Garbus

9    filed claims that ultimately turned out to be unfounded or

10   meritless, but rather that they knowingly filed complaints

11   containing false representations and attorney certifications as

12   well as fraudulent affidavits.  See Id.

13        Accepting the factual allegations in the complaint as

14   true and drawing all inferences in the light most favorable to

15   plaintiffs, it appears to me that plaintiffs have likely stated

16   a claim against Forster & Garbus under § 487.  See Sykes v. Mel

17   Harris & Associates, 757 F.Supp.2d 413, 428-29 (S.D.N.Y. 2010)

18   ("Plaintiffs' allegations regarding the fraudulent affidavits

19   and other filings provide adequate support for this claim

20   against the defendants");

21        Also, Scott v. Greenberg, 2017 WL 1214441, at *15

22   (E.D.N.Y. Mar. 31, 2017) ("The court finds that the conduct as

23   alleged is intentional and egregious.  The gravamen of

24   plaintiff's judicial law § 487 claim is that defendant

25   orchestrated a scheme to obtain a default judgment by telling

1   plaintiff that she did not need to appear in the action

2   provided she continued to make payments and then continued the

3   court proceeding despite plaintiff's payments and obtained a

4   default judgment.  Accepting plaintiff's allegations as true,

5   they plausibly state that Greenberg intentionally deceived

6   plaintiff and the court.")

7            In sum, it appears to me that the proposed motion to

8   dismiss plaintiffs' § 487 claim would likely be denied.

9            I would ask counsel to consider what I have said about

10  the various claims.  If plaintiffs wish to amend the complaint

11  in response to what I have said this morning, they will do so

12  by June 28th.  Defense counsel will let me know by July 2nd

13  whether defendants wish to proceed with the motion to dismiss,

14  and if so, they will explain why the concerns I have raised

15  this morning about such a motion are not valid.  If defendants

16  wish to proceed with the motion to dismiss, they will propose a

17  briefing schedule that they have discussed with plaintiffs'

18  counsel.

19           With respect to entry of a case management plan, it is

20  my intention to enter a case management plan because I believe

21  that the claims here for the most part will survive a motion to

22  dismiss.  I do not intend to stay discovery in the interim.

23           The parties have sought a much longer period for

24  discovery than I ordinarily would grant, so we will need to

25  have a conversation about the length of the discovery that is

 1    sought.  I also want to hear from the parties about whether

 2    there is any opportunity to settle the case before it proceeds

 3    further.

 4            Let me hear from plaintiffs' counsel first about

 5    whether there has been any effort to settle the case up to now.

 6            MR. FRANK:  Good morning, your Honor.  The parties

 7    have not had any substantive settlement discussions at this

 8    time.

 9            THE COURT:  Are the plaintiffs interested in

10    conducting those discussions before the matter proceeds

11    further?

12            MR. FRANK:  If the defendants believe that we could

13    have productive conversations, then plaintiffs of course are

14    open to settling as expeditiously the matter as possible.

15            THE COURT:  What do you have to say about the

16    discovery period that is sought, which I think is about six

17    months for fact discovery?  Why is that period of time

18    necessary and appropriate here?

19            MR. FRANK:  Plaintiffs recognize that this is an

20    unusually long period of time.  This is a complex action.

21    Plaintiffs have several other similar actions with similar

22    allegations against not related but defendants in the same

23    business, so we have some sense as to its complexity.  However,

24    we do recognize that 180 days is very significant.  Plaintiffs

25    would be comfortable shortening the period initially to as much

1    as 120 days, and we could check back with the Court if the

2    Court would prefer that period.

3         THE COURT:  Let me hear from defense counsel first on

4    whether there is any prospect of settlement before we embark on

5    discovery and possible motion practice.

6         MR. CASAMENTO:  Good morning, your Honor.  Greg

7    Casamento from Locke Lord on behalf of the trusts.  We have not

8    received from the plaintiffs any sort of settlement demands, so

9    we don't have any idea of what they would be looking for.  So

10   it's hard to say.  Obviously, all parties are generally open to

11   settlement discussions.  We would want some sort of indication

12   from the plaintiffs as to what they are looking for.

13        THE COURT:  What I would ask the parties to do is to

14   speak with their clients and then consult with each other about

15   whether there might be any opportunity to have fruitful settle-

16   ment discussions before it is necessary to embark on lengthy

17   and undoubtedly expensive discovery as well as possible motion

18   practice.  More than that I will not say.  If at any point you

19   would like the help of the assigned magistrate judge for

20   purposes of conducting settlement discussions, let me know, and

21   I will do a referral to her.

22        What do you say about the discovery period?  What do

23   defendants say about the six months of discovery that was

24   initially requested?

25        MR. CASAMENTO:  Your Honor, that was based on a

1    conversation that we had with the plaintiffs about what sort of

2    discovery they would be looking for, what sort of depositions

3    they would want.  In a case of this size, it appeared to us

4    that there was going to be significant deposition practice in

5    addition to document production.  There are multiple defendants

6    who are going to have to produce these documents and there are

7    probably, maybe, nonparties who also have to produce documents

8    and appear for depositions.  We think the schedule is

9    appropriate.

10        Also, given the schedule the Court just set forth

11   about the plaintiffs wishing to amend and then the defendants

12   wishing to take the time to decide if they are going to file

13   their motions or not, we think the schedule suits the interests

14   of the parties.

15        THE COURT:  Let me do this.  I am going to enter a

16   case management plan today.  It will provide for an initial

17   period of 120 days of fact discovery and 60 days of expert

18   discovery.  I have heard you on the expected magnitude of the

19   discovery.  If that period of time for fact discovery proves

20   unreasonable, you will let me know, and undoubtedly I will

21   extend it.

22        I will look for a letter from plaintiffs' counsel

23   within a week's time telling me whether they wish to amend the

24   complaint.  I will look for a letter from defense counsel by

25   July 2nd telling me whether they wish to proceed with a motion

1    to dismiss.  I will enter a case management plan consistent

2    with what we have talked about.

3            Anything else anyone wants to say?

4            MR. CASAMENTO:  Your Honor, in the case management

5    plan, we set up the briefing for class certification to trigger

6    off of the end of discovery and then any subsequent dispositive

7    motion practice to occur after that.  We wanted to point that

8    out to the Court and make sure that you are aware of it.

9            THE COURT:  Anything anyone wants to say on the

10   plaintiffs' side about the schedule?  I gather you agreed to

11   it.

12           MR. FRANK:  No, your Honor, we don't have anything

13   additional to add.

14           THE COURT:  Anything else anyone wants to say?  All

15   right.  Thank you all.

16           (Adjourned)

17

18

19

20

21

22

23

24

25