UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

MUTINTA MICHELO, KATHERINE SEAMAN,　　　　：
MARY RE SEAMAN, and SANDRA TABAR,　　　　：
individually and on behalf of all others similarly　　：
situated,　　　　　　　　　　　　　　　　　　　：　　　18-cv-1781-PGG
　　　　　　　　　　　　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　　　　　　　：
　　　　　　　　　　　　　　Plaintiffs,　　　　：
　　　　v.　　　　　　　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　　　　　　　：
NATIONAL COLLEGIATE STUDENT LOAN　　　　：
TRUST 2007-2; NATIONAL COLLEGIATE　　　　　：
STUDENT LOAN TRUST 2007-3;　　　　　　　　：
TRANSWORLD SYSTEMS, INC., in its own right　：
and as successor to NCO FINANCIAL SYSTEMS,　：
INC.; EGS FINANCIAL CARE INC., formerly　　　：
known as NCO FINANCIAL SYSTEMS, INC.; and　：
FORSTER & GARBUS LLP,　　　　　　　　　　：
　　　　　　　　　　　　　　　　　　　　　　　：
　　　　　　　　　　　　　　Defendants.　　　：

-------------------------------------------------------------- X


**JOINT MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**


LOCKE LORD LLP
　　　*Attorneys for Defendants National Collegiate*
　　　*Student Loan Trust 2007-2 and National Collegiate*
　　　*Student Loan Trust 2007-3*

SESSIONS, FISHMAN NATHAN & ISRAEL LLC
　　　*Attorneys for Defendants EGS Financial Care, Inc.*
　　　*and Transworld Systems, Inc.*

RIVKIN RADLER LLP
　　　*Attorneys for Defendant Forster & Garbus LLP*

# Table of Contents

Page

Table of Authorities ........................................................................................... iii

Preliminary Statement ........................................................................................ 1

Background ......................................................................................................... 2

Argument ............................................................................................................ 6

    I.     All Of The Seamans' Claims Are Precluded By
          The *Rooker-Feldman* Doctrine. ............................................................ 6

          A.    The Seamans' § 349 Claims. ........................................................ 7

          B.    The Seamans' FDCPA Claims. ..................................................... 8

          C.    The Seamans' Judiciary Law § 487 Claims. ................................ 9

    II.    Statements Made During Litigation Cannot Support
          Plaintiffs' Claims. ................................................................................. 10

          A.    The Statements At Issue Are Not Materially Misleading. ........... 10

               1.    Plaintiffs Do Not Allege A Material
                    Misrepresentation As Required By The FDCPA. ............ 10

               2.    There Is No Material Misrepresentation To
                    Support A § 349 Claim. .................................................... 12

               3.    Plaintiffs Allege No Misrepresentation That
                    Supports A Judiciary Law § 487 Claim. ......................... 13

          B.    The Litigation Privilege Precludes Claims Based On
               Statements Made During Litigation. ............................................ 14

          C.    The *Noerr-Pennington* Doctrine Also Precludes Claims
               Challenging The Trusts' and F&G's Filing Of
               The State-Court Actions. ............................................................. 15

    III.   Michelo's And The Seamans' § 349 Claims Contain Further Defects. ...... 15

          A.    Michelo Fails To Allege An Actual Injury. .................................. 16

          B.    Katherine Seaman Fails To Allege An Actual Injury. .................. 19

C.   The Seamans' § 349 Claims Are Barred By *Res Judicata*
     And Collateral Estoppel.....................................................................20

     1.   The Seamans Impermissibly Seek To
          Re-litigate The Judgment. ...........................................................20

     2.   Plaintiffs Are Estopped From Re-Litigating
          Issues Already Determined In The Prior Action. .........................23

IV.  Plaintiffs' FDCPA Claims Are Time-Barred. ......................................24

     A.   Michelo's Claims. ...................................................................24

     B.   The Seamans' Claims. .............................................................25

     C.   Tabar's Claims. ......................................................................28

V.   Plaintiffs' Judiciary Law § 487 Claims Against F&G
     Should Be Dismissed. .......................................................................29

     A.   Plaintiffs Fail To Set Forth A Plausible Allegation That
          F&G Intended to Deceive The Courts Or Plaintiffs.................................30

     B.   F&G's Advocacy Is Not Actionable Deceit Under § 487. ......................31

     C.   Plaintiffs Have Not Alleged Facts Supporting A Plausible
          Inference That F&G Proximately Caused Them To
          Incur Any Recoverable Damages.............................................................32

     D.   Tabar and the Seamans' Claims are Impermissibly Asserted
          In This Plenary Action. ...........................................................................33

Conclusion ........................................................................................................33

**FEDERAL CASES**

*7 West 57th Street Realty Co., LLC v. Citigroup, Inc.*,
   No. 13 Civ. 981(PGG), 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ............................21, 22

*Arroyo v. PHH Mortg. Corp.*,
   No. 13-CV-2335 (JS)(AKT), 2014 WL 2048384 (E.D.N.Y. May 19, 2014) .........................17

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ...............................................................................................19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................................18, 32

*Benzemann v. Citibank, N.A.*,
   806 F.3d 98 (2d Cir. 2015) ....................................................................................................25

*Bernstein v. New York*,
   No. 06-CV-5681, 2007 WL 438169 (S.D.N.Y. Feb. 9, 2007) .............................................7, 8

*Bildstein v. Mastercard International Inc.*,
   329 F. Supp. 2d 410 (S.D.N.Y. 2004) ...................................................................................19

*Bletas v. Deluca*, No. 11 Civ.
   1777 (NRB), 2011 WL 13130879 (S.D.N.Y. Nov. 15, 2011) ................................................14

*Bryant v. Silverman*,
   284 F. Supp. 3d 458 (S.D.N.Y. 2018) ...................................................................................30

*Burton v. Krohn (In re Swift)*,
   No. 94-10285-CEC, 2016 WL 355515 (Bankr. E.D.N.Y. Jan. 27, 2016)................................31

*Cameron v. Church*,
   253 F. Supp. 2d 611 (S.D.N.Y. 2003).....................................................................................21

*Campbell v. The Bank of New York Trust Co., N.A.*,
   No. 11 Civ. 1588 (CS)(PED), 2012 WL 2952852 (S.D.N.Y. May 8, 2012)............................7

*Colon v. Coughlin*,
   58 F.3d 865 (2d Cir. 1995) ....................................................................................................23

*Conboy v. AT&T Corp.*,
   84 F. Supp. 2d 492 (S.D.N.Y. 2000)......................................................................................12

*Conklin v. Jeffrey A. Maidenbaum, Esq.*,
   No. 12-CV-3606 (ER), 2013 WL 4083279 (S.D.N.Y. Aug. 13, 2013) ...................... 26, 28, 29

*Creswell v. Sullivan & Cromwell*,
   771 F. Supp. 580 (S.D.N.Y. 1991).........................................................................................32

*Derisme v. Hunt Leibert Jacobson, P.C.*,
   880 F. Supp. 2d 311 (D. Conn. 2011) ....................................................................................11

# Table of Authorities

Page

*Donahue v. Quick Collect, Inc.*,
    592 F.3d 1027 (2d Cir. 2010) ............................................................12

*Epperson v. Entm't Express, Inc.*,
    242 F.3d 100 (2d Cir. 2001) ............................................................20

*Francis v. Nichols*,
    No. 16-CV-1848 (CS), 2017 WL 1064719 (S.D.N.Y. Mar. 21, 2017)................7, 8

*Frierson-Harris v. Hough*, No. 05 Civ. 3077 (DLC),
    2006 WL 298658 (S.D.N.Y. Feb. 7, 2006) .........................................14

*Gabriele v. Am. Home Mortg. Svcg., Inc.*,
    503 Fed. App'x 89 (2d Cir. 2012)...........................................11, 12, 13

*Ginx, Inc. v. Soho Alliance*,
    720 F. Supp. 2d 342 (S.D.N.Y. 2010)...............................................15

*Graham v. Select Portfolio Servicing*,
    156 F. Supp. 3d 491 (S.D.N.Y. 2016) .....................................7, 22, 23, 24

*Haggerty v. Ciarelli & Dempsey*,
    374 F. App'x 92 (2d Cir. 2010) .....................................................30

*Hameed v. Aldana*,
    296 F. App'x 154 (2d Cir. 2008) ...................................................21

*Hoblock v. Albany County Bd. of Elections*,
    422 F.3d 77 (2d Cir. 2005) ...........................................................6

*Iannazzo v. Day Pitney LLP*,
    No. 04 CIV. 7413 (DC), 2007 WL 2020052 (S.D.N.Y. July 10, 2007) ..................29

*In re Buckskin Realty Inc.*,
    No. 1-13-40083-NHL, 2016 WL 5360750 (Bankr. E.D.N.Y. Sept. 23, 2016) ........30

*In re Teltronics Servs., Inc.*,
    762 F.2d 185 (2d Cir. 1985) ....................................................20, 23

*Kaye Scholer LLP v. CNA Holdings, Inc.*,
    No. 08 Civ. 5547 (NRB), 2010 WL 1779917, (S.D.N.Y. Apr. 28, 2010) ..............29

*Kelly v. Albarino*,
    485 F.3d 664 (2d Cir. 2007) .........................................................14

*King v. Fox*,
    No. 97 Civ. 4134 RWS, 2004 WL 68397 (S.D.N.Y. Jan. 14, 2004) ..................29

*Klein v. Solomon & Solomon, P.C.*,
    No. 3:10CV1800 WWE, 2011 WL 5354250 (D. Conn. Oct. 28, 2011) ................11

*Kropelnicki v. Siegel*,
    290 F.3d 118 (2d Cir. 2002) ..........................................................6

iv

*Lane v. Fein, Such and Crane, LLP,*
  767 F. Supp. 2d 382 (E.D.N.Y. 2011) ................................................................. 12

*Lautman v. 2800 Coyle Street Owners Corp.,*
  No. 14-CV-1868(ARR)(VVP), 2014 WL 4843947 (E.D.N.Y. Sep. 26, 2014) ....................... 11

*Lazer Electric Corp. v. Cecchi*, No. 97 Civ. (DLC),
  1997 WL 311925 (S.D.N.Y. June 10, 1997) ......................................................... 33

*Lipin v. Hunt,*
  No. 14-cv-1081 (RJS), 2015 WL 1344406 (S.D.N.Y. Mar. 20, 2015) ................................ 15

*Maguire v. Citicorp. Retail Servs., Inc.,*
  147 F.3d 232 (2d Cir. 1998) .......................................................................... 10

*Marcus v. AT&T Corp.,*
  138 F.3d 46 (2d Cir. 1998) ..................................................................... 16, 18

*Mazzone v. Town of Southampton,*
  283 F. Supp. 3d 38 (E.D.N.Y. 2017) ................................................................. 30

*McAfee v. Law Firm of Forster & Garbus,*
  No. 06-CV-2925 NGG (LB), 2008 WL 3876079 (E.D.N.Y. Aug. 18, 2008) ........................... 12

*McKithen v. Brown,*
  481 F.3d 89 (2d Cir. 2007) ............................................................................ 8

*Monahan v. N.Y. City Dep't of Corrs.,*
  214 F.3d 275 (2d Cir. 2000) .......................................................................... 20

*Nath v. JP Morgan Chase Bank,*
  No. 15-CV-3937, 2016 WL 5791193 (S.D.N.Y. Sep. 30, 2016) ......................................... 9

*Nath v. Select Portfolio Svcg., Inc.,*
  No. 15-CV-8183 (KMK), 2017 WL 782914 (S.D.N.Y. Feb. 28, 2017) ..................... 6, 7, 8, 22

*Nicholson v. Forster & Garbus LLP,*
  No. 11–CV–0524 (SJF)(WDW), 2012 WL 273150 (E.D.N.Y. Jan. 30, 2012) ........................ 12

*O'Brien v. Alexander,*
  898 F. Supp. 162 (S.D.N.Y. 1995) ................................................................... 14

*O'Callaghan v. Sifre,*
  537 F. Supp. 2d 594 (S.D.N.Y. 2008) ........................................................... 13, 31

*Precision Imaging of New York, P.C. v. Allstate Ins. Co.,*
  263 F. Supp. 3d 471 (S.D.N.Y. 2017) ................................................................ 19

*Prime Mgmt. Co. v. Steinegger,*
  904 F.2d 811 (2d Cir. 1990) .......................................................................... 20

*Ray v. Watnick,*
  182 F. Supp. 3d 23, 29 (S.D.N.Y. 2016) ............................................................. 29

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*,
 112 F. Supp. 3d 160 (S.D.N.Y. 2015) ..................................................................31

*Saud v. Bank of N.Y.*,
 929 F.2d 916 (2d Cir. 1991) ..............................................................................23

*Scott v. Greenberg*,
 No. 15-CV-05527 (MKB), 2017 WL 1214441 (E.D.N.Y. Mar. 31, 2017) .......................24, 25

*Seldon v. Bernstein*,
 No. 09 Civ. 6163 (AKH), 2010 WL 3632482 (S.D.N.Y. Sept. 16, 2010) ...............................9

*Shaffer v. Gilberg*,
 125 A.D.3d 632 (2d Dep't 2015) ........................................................................30

*Shafran v. Harley-Davidson, Inc.*,
 No. 07 Civ. 01365(GBD), 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) .............................19

*Simmons v. Roundup Funding, LLC*,
 622 F.3d 93 (2d Cir. 2010) ...............................................................................11

*Strunk v. U.S. House of Representatives*,
 68 F. App'x 233 (2d Cir. 2003) ..........................................................................19

*Sussman v. I.C. Systems, Inc.*,
 928 F. Supp. 2d 784 (S.D.N.Y. 2013) ...................................................................11

*Swiatkowski v. Citibank*,
 745 F. Supp. 2d 150 (E.D.N.Y. 2010) ....................................................................8

*Sykes v. Mel Harris and Associates, LLC*,
 757 F. Supp. 2d 413 (S.D.N.Y. 2010) ...................................................................26

*Toohey v. Portfolio Recovery Associates, LLC*,
 No. 15-cv-8098 (GBD), 2016 WL 4473016 (S.D.N.Y. Aug. 22, 2016) ..............................18

*Trikas v. Universal Card Services Corp.*,
 351 F. Supp. 2d 37 (E.D.N.Y. 2005) .....................................................................17

*Vincent v. Money Store*,
 304 F.R.D. 446 (S.D.N.Y. 2015) .........................................................................28

*Vossbrinck v. Accredited Home Lenders, Inc.*,
 773 F.3d 423 (2d Cir. 2014) (per curiam) .................................................................6

*Wai Hoe Liew v. Cohen & Slamowitz*,
 265 F.Supp.3d 260 (E.D.N.Y. 2017) .................................................................26, 29

*Wilson v. HSBC Bank, USA*,
 No. 16-cv-8405 (NSR), 2018 WL 1449204 (S.D.N.Y. Mar. 22, 2018) ..............................22

*Winslow v. Forster & Garbus LLP*,
 CV 15-2996 (AYS), 2017 WL 6375744 (E.D.N.Y. Dec. 13, 2017) ..............................7, 17

Table of Authorities

**STATE CASES**

*Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*,
    268 A.D.2d 101 (2d Dep't 2000) ..................................................................15

*Alliance Network, LLC v. Sidley Austin LLP*,
    43 Misc. 3d 848 (Sup. Ct., N.Y. Cty., 2014) ........................... 13, 31, 33

*Corcoran v. Giampetruzzi*,
    29 Misc. 3d 1217(A) (Sup. Ct., Nassau Cty. Oct. 12, 2010) ..................33

*Costalas v. Amalfitano*,
    305 A.D.2d 202 (1st Dep't 2003) ............................................................33

*Gumarova v. Law Offices of Paul A. Boronow, P.C.*,
    129 A.D.3d 911 (2d Dep't 2015) ..............................................................32

*Henry Modell & Co. v. Minister, Elders & Deacons of
    Reformed Protestant Dutch Church of City of N.Y.*,
    68 N.Y.2d 456 (1986)................................................................................23

*Henry v. Brenner*,
    271 A.D.2d 647 (2d Dep't 2000) ............................................................33

*Lazich v. Vittoria & Parker*,
    189 A.D.2d 753 (2d Dep't 1993) ....................................................... 13, 31

*McGill v. General Motors Corp.*,
    231 A.D.2d 449 (1st Dept. 1996)..............................................................16

*Melnitzky v. Owen*,
    19 A.D.3d 201 (1st Dep't 2005) ..............................................................33

*Michalic v. Klat*,
    128 A.D.2d 505 (2d Dep't 1987)........................................................ 13, 31

*O'Brien v. City of Syracuse*,
    54 N.Y.2d 353 (1981) ........................................................................20, 21

*Oswego Laborers' Local 214 Pension Fund v.
    Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ................................................................................16

*People by Schneiderman v. Northern Leasing Systems, Inc.*,
    75 N.Y.S.3d 785 (2017) ............................................................................15

*Rosendale v. Citibank, NA*,
    262 A.D.2d 628 (2d Dept. 1999) ..............................................................21

*Seldon v. Lewis Brisbois Bisgaard & Smith LLP*,
    116 A.D.3d 490 (1st Dep't 2014) ...................................................... 13, 31

*Stanski v. Ezersky*,
   228 A.D.2d 311 (1st Dep't 1996) ........................................................33

*Sterling Doubleday Enterprises, L.P. v. Marro*,
   238 A.D.2d 502 (2d Dept. 1997) .........................................................24

*Strumwasser v. Zeiderman*,
   102 A.D.3d 630 (1st Dep't 2013) ........................................................32

*Stutman v. Chem. Bank*,
   95 N.Y.2d 24 (2000) ........................................................................7, 16

*Sun Graphics Corp. v. Levy, Davis & Maher, LLP*,
   94 A.D.3d 669 (1st Dep't 2012) ..........................................................33

*Yalkowsky v. Century Apartments Assoc.*,
   215 A.D.2d 214 (1st Dep't 1995) ........................................................33

*Zimmerman v. Kohn*,
   125 A.D.3d 413 (1st Dep't 2015) ........................................................32

**FEDERAL STATUTES**

15 U.S.C. § 1692, *et seq.* ..................................................................*passim*

**State Statutes**

New York CPLR § 3215 ...............................................................21, 24

New York General Business Law § 349 ......................................*passim*

New York Judiciary Law § 487 ...................................................*passim*

Defendants National Collegiate Student Loan Trust 2007-3, National Collegiate Student Loan Trust 2007-2, Transworld Systems, Inc., EGS Financial Care, Inc. and Foster & Garbus, LLP jointly submit this memorandum in support of their motion to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

The Amended Complaint attempts to spin a tale of Defendants deploying deceptive litigation practices to collect student loan debt through default judgments. Plaintiffs assert three causes of action that they claim flow from this alleged misconduct. Each one fails.

As an initial matter, under the *Rooker-Feldman* doctrine, this Court does not have subject matter jurisdiction over any of the claims made by Plaintiffs Katherine Seaman and Mary Re Seaman (the "Seamans"). Each of the Seamans' claims improperly asks this Court to review – and effectively set aside – a judgment issued against them by a state-court.

Beyond this jurisdictional issue, all of the Plaintiffs' causes of action against Defendants National Collegiate Student Loan Trust 2007-2 ("2007-2 Trust"), National Collegiate Student Loan Trust 2007-3 ("2007-3 Trust"), Foster & Garbus, LLP ("F&G"), Transworld Systems, Inc. ("TSI"), and EGS Financial Care, Inc. ("EGS") fail because Defendants' alleged litigation practices do not constitute the type of material deception necessary to support any of the causes of action alleged. New York's absolute litigation privilege and the *Noerr-Pennington* doctrine also preclude Plaintiffs' claims.

Moreover, certain of the causes of action fail to state viable claims or implicate additional preclusion doctrines. Plaintiffs claim that all Defendants violated New York General Business Law § 349 because complaints filed in state-court – which no Plaintiff appeared in those courts to contest – contained "false" statements. However, Plaintiffs Mutinta Michelo ("Michelo") and Katherine Seaman fail to allege any injury they suffered as a result of the state-court complaints

1

filed against them. And, the Seamans' § 349 claims are precluded in any event by *res judicata* and collateral estoppel.

Plaintiffs' Fair Debt Collection Practices Act ("FDCPA") claims are time-barred.

Plaintiffs' claims for violation of New York Judiciary Law § 487 – asserted only against F&G – do not allege, as required, that F&G intended to deceive anyone or that Plaintiffs suffered any damages as a result of F&G's advocacy.

All of Plaintiffs' causes of action fail for a multitude of reasons and should be dismissed.

## BACKGROUND

This case arises from attempts to collect student loans that Mutinta Michelo, Katherine Seaman, and Sandra Tabar obtained. Each Plaintiff defaulted on her loans. And, each was sued by the holder of her loans to collect on the amounts due and owing subsequent to their defaults.

Ms. Michelo's and Ms. Tabar's loans were assigned to the 2007-2 Trust. Ms. Seaman's loan was assigned to the 2007-3 Trust. The 2007-2 and 2007-3 Trusts are Delaware statutory trusts that hold student loans that have been securitized. (Dkt. No. 60 (hereinafter "Am. Cplt."), ¶¶ 26, 27).

According to the Amended Complaint, the 2007-2 and 2007-3 Trusts have no employees and all acts performed on their behalf "are actually done by servicing agents or attorneys hired by these servicing agents." (Am. Cplt. ¶ 42). Defendant TSI is alleged to have become the servicing agent for an undefined entity named "National Collegiate" on November 1, 2014. (*Id.* at ¶ 45). Defendant EGS is alleged to have been the servicing agent for "National Collegiate" as of 2013. (*Id.* at ¶ 44). Neither TSI or EGS is alleged to have been the specific servicing agent of the 2007-2 Trust or the 2007-3 Trust.

On January 14, 2014, F&G, a law firm alleged to have been directed to initiate the action by defendant TSI, filed a lawsuit styled *National Collegiate Student Loan Trust 2007-2 v.*

*Villasante*, No. 761-14/BX, in the Bronx County Civil Court. (Am. Cplt. ¶¶ 114-115). The suit named Sandra Tabar as a co-defendant and the 2007-2 Trust as the plaintiff. (*Id.* at ¶ 114). The suit alleged that Tabar was in default on a promissory note agreement and asserted causes of action for breach of contract and account stated, and sought $11,782.40. (*Id.* at ¶¶ 117, 129). Tabar claims that this complaint was "boilerplate" and falsely stated: 1) that the 2007-2 Trust was the original creditor when it was not because it did not originate the loan; and 2) that the 2007-2 Trust was authorized to proceed with the action when it was not because it did not file a certificate of designation as required by N.Y. Gen. Ass'ns Law § 18(4). (*Id.* at ¶¶ 116, 118-123). F&G is accused of improperly attesting, pursuant to Rule 130-1.1a, that the attorney who signed the complaint meaningfully reviewed it. (*Id.* at ¶¶ 127-128). An affidavit of service, indicating service on Tabar through delivery of the summons and complaint to Tabar's co-tenant, and service via mail, was submitted in connection with the lawsuit. (Am. Cplt. ¶ 131).

Tabar did not appear and defend this action and on April 3, 2014, F&G filed an application for a default judgment. (Am. Cplt. ¶ 133). That application included the affidavit of NCO employee Dudley Turner (the "Turner Affidavit"), which according to Tabar, was improperly notarized and contained false statements about Mr. Dudley's knowledge of what he was stating. (*Id.* at ¶¶ 135-140). The application for default judgment is also claimed to contain a defective Rule 130-1.1a certificate. (*Id.* at ¶¶ 141-143).

On March 27, 2014, the Bronx County Civil Court issued a default judgment against Tabar in the amount of $12,062.40. (Am. Cplt. ¶ 144). Tabar does not allege that the 2007-2 Trust ever sought to enforce the judgment in any way. Over four years later, on April 12, 2018, Tabar sought to vacate the judgment on the basis that she was not properly served with the summons and complaint and only recently learned of the judgment. (*Id.* at ¶¶ 145-146). The

Bronx County Civil Court vacated the judgment on June 18, 2018, and the 2007-2 Trust discontinued the action against Tabar and her co-defendant on August 13, 2018. (*Id.* at ¶¶ 149, 154). Tabar alleges she has incurred economic and noneconomic harm due to Defendants' alleged conduct. (*Id.* at ¶ 155).

On May 29, 2014, F&G filed a lawsuit styled *National Collegiate Student Loan Trust 2007-3 v. Seaman,* Index No. 15713-14/QU in the Queens County Civil Court. (Am. Cplt. ¶¶ 83). The suit named Katherine Seaman and Mary Re Seaman as defendants and the 2007-3 Trust as the plaintiff. (*Id.*). The suit alleged that the Seamans were in default of a promissory note; it asserted causes of action for breach of contract and account stated, and sought $24,324.29. (*Id.* at ¶¶ 86, 98). The Seamans now claim that the complaint was "boilerplate" and falsely stated: 1) that the 2007-3 Trust was the original creditor when it was not because it did not originate the loan; and 2) that the 2007-3 Trust was authorized to proceed with the action when it was not because it did not file a certificate of designation as required by New York law. (*Id.* at ¶¶ 85, 87-93). F&G is also accused of improperly attesting, pursuant to Rule 130-1.1a, that the attorney who signed the complaint meaningfully reviewed it. (*Id.* at ¶¶ 96-97).

The Seamans did not appear and defend this action and on March 30, 2015, F&G filed an application for a default judgment. (Am. Cplt. ¶ 99). That application included the affidavit of TSI employee James H. Cummins (the "Cummins Affidavit"), which according to the Seamans, was improperly notarized and contained false statements about Mr. Cummins's knowledge of what he was stating. (*Id.* at ¶¶ 101-106). The application for default judgment is also claimed to contain a defective Rule 130-1.1a certificate. (*Id.* at ¶¶ 107-109).

On March 31, 2015, the Queens County Civil Court issued a default judgment against the Seamans in the amount of $24,609.29 (the " Seaman Judgment"). (Am. Cplt. ¶ 110). On April

15, 2015, the Seaman Judgment was enforced via income execution on Mary Re Seaman and her wages were garnished. (*Id.* at ¶¶ 111-112). Katherine Seaman alleges she "fears she likewise will be subjected to garnishment … and thus has been harmed." (*Id.* at ¶ 113). The Seamans do not allege that they sought to vacate the Seaman Judgment or challenge the execution.

On July 14, 2015, F&G filed a lawsuit styled *National Collegiate Student Loan Trust 2007-2 v. Michelo,* Index No. 10689-15/BX, in the Bronx County Civil Court. (Am. Cplt. ¶ 63). The suit named Mutinta Michelo as a co-defendant and the 2007-2 Trust as the plaintiff. (*Id.*). The suit alleged that Michelo was in default on an educational loan and asserted causes of action for breach of contract and account stated, and sought $22,047.88. (*Id.* at ¶¶ 66, 78). Michelo claims that this complaint was "boilerplate" and falsely stated: 1) that the 2007-2 Trust was the original creditor when it was not because it did not originate the loan; and 2) that the 2007-2 Trust was authorized to proceed with the action when it was not because it did not file a certificate of designation as required by N.Y. Gen. Ass'ns Law § 18(4). (*Id.* at ¶¶ 65, 67-72). F&G is again accused of improperly attesting, pursuant to Rule 130-1.1a, that the attorney who signed the complaint meaningfully reviewed it. (*Id.* at ¶¶ 76-77). Michelo never alleges that she was served with this suit described. And, on December 9, 2016, F&G filed a notice of voluntary discontinuing the action. (Am. Cplt. ¶ 80).

These three lawsuits are claimed to be part of a larger scheme to confuse borrowers by using deceptive litigation practices to induce borrowers to default in answering or to refuse to defend themselves. (*See, e.g.*, Am. Cplt. ¶¶ 7-12, n.6). It is intimated that this is done to make it easier to collect on debts that Defendants cannot prove they own. (*Id.* at ¶ 1). The instant suit followed.

**ARGUMENT**

I.    **All Of The Seamans' Claims Are Precluded By The *Rooker-Feldman* Doctrine.**

The Seamans' claims depend on issues resolved by, and injuries purportedly resulting from, the Seaman Judgment. The Seaman Judgment was entered against the Seamans in their state-court action on March 31, 2015, before they commenced this case. The Seamans defaulted and lost in that state-court action. They do not allege any efforts to vacate the Seaman Judgment or challenge the resulting wage garnishment.

The only way the Seamans' claims can be addressed here is if this Court reviews and effectively rejects the Seaman Judgment. The *Rooker-Feldman* doctrine does not permit this. It deprives a district court of subject matter jurisdiction where a litigant seeks lower federal court review of state-court judgments. *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002). It applies where: (i) the federal plaintiff lost in state-court; (ii) the state-court judgment was rendered before the district court case commenced; (iii) the federal plaintiff complains of an injury caused by the state-court judgment; and (iv) the federal plaintiff invites the district court to review the state-court judgment. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). Each one of these elements is met here.

*Rooker-Feldman* applies even where a plaintiff does not expressly ask the district court to review or set aside a state-court judgment. *Id.* at 88; *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (per curiam) (barring claims which are "asking the federal court to determine whether the state judgment was wrongfully issued ... ."). Courts look only to the injury sought to be redressed to determine if it is an attack on a state-court judgment. *See Nath v. Select Portfolio Svcg., Inc. ("Nath II")*, No. 15-CV-8183 (KMK), 2017 WL 782914, at *9 (S.D.N.Y. Feb. 28, 2017) (plaintiff's federal fraud claims "unquestionably attack the soundness of" the state-court judgment despite his care not to directly challenge the judgment's

validity) (citing *Bernstein v. New York*, No. 06-CV-5681, 2007 WL 438169, at *6 (S.D.N.Y. Feb. 9, 2007)).

Courts routinely apply the *Rooker-Feldman* doctrine even where, like here, plaintiffs allege that state-court judgments are the result of fraudulent litigation activity. *See Francis v. Nichols*, No. 16-CV-1848 (CS), 2017 WL 1064719, at *5 (S.D.N.Y. Mar. 21, 2017); *Nath II*, 2017 WL 782914, at *7-8; *Graham v. Select Portfolio Servicing*, 156 F. Supp. 3d 491, 503-505 (S.D.N.Y. 2016); *Campbell v. The Bank of New York Trust Co., N.A.*, No. 11 Civ. 1588 (CS)(PED), 2012 WL 2952852, at *7 (S.D.N.Y. May 8, 2012) (*Rooker-Feldman* barred wrongful foreclosure claims regarding bank's use of false and invalid affidavits, defective assignments, and fabricated notarizations during a foreclosure where the claims essentially challenged the bank's standing and alleged fraud during state-court litigation).

### A. The Seamans' § 349 Claims.

Mary Re Seaman asserts that she suffered economic and noneconomic harm because her "wages have been garnished due to [an] income execution" … "in conjunction with the recent default judgment." (Am. Cplt. ¶¶ 111-112).[1] And Katherine Seaman alleges that she fears that she too will be subjected to a garnishment "and thus has been harmed." (*Id.* at ¶ 113). These alleged injuries are critical to the Seamans' § 349 claim because there must be an actual injury for there to be liability under § 349. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000).

But, the wage garnishment—and speculative future garnishment—is a result of, and mechanism to enforce, the Seaman Judgment. Since there is nothing alleged to suggest the

---

[1] The Court has noted, in connection with the original Complaint, that the wage garnishment is the injury the Seamans are alleging for § 349 purposes. (Dkt. 52, Trans. 15:24-16:1). The Seamans do not allege they were injured by "unnecessary litigation." They do not allege that they consulted with any lawyer or did anything to contest the state-court complaint and instead defaulted. Their situation is wholly distinguishable from the one considered in *Winslow v. Forster & Garbus LLP*, CV 15-2996 (AYS), 2017 WL 6375744, at *3 (E.D.N.Y. Dec. 13, 2017) (Shields, Mag. J.).

ministerial administration of the garnishment was improper, the Seamans have been injured by the garnishment and possibility of additional garnishments only if the underlying Seaman Judgment was not lawfully obtained. To this end, the Seamans demand review of the 2007-3 Trust's standing to bring the state-court action (*see* Am. Cplt. ¶ 184(a), (c)), the sufficiency of its pleading in the state-court action (*id.* at ¶ 184(d), (e)), and the sufficiency and admissibility of the evidence produced to the state-court to secure the Judgement. (*Id.* at ¶ 184(f), (g)). In short, the Seamans are asking this Court to review the propriety of, and basis for, the Seaman Judgment.

The Court does not have subject matter jurisdiction to engage in this type of review. *See Nichols*, 2017 WL 1064719, at *5-6 (barring claims based on allegedly fraudulent assignment of mortgage used to establish standing in a state-court foreclosure action because plaintiff suffered an injury only if defendant lacked standing, which would require the federal court to find that the state-court judgment was wrong). (Am. Cplt. ¶¶ 12, 39, 109). Any award of damages would signify a finding that the Seaman Judgment was procured improperly and be tantamount to a reversal of the Judgment. *Bernstein*, 2007 WL 438169, at *6. This squarely implicates the *Rooker-Feldman* doctrine and deprives this Court of subject matter jurisdiction. *See McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007); *Nath II*, 2017 WL 782914, at *9; *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010) (applying *Rooker-Feldman* to complaint alleging that enforcement of state-court judgment caused financial distress because "[c]onstrued this way, the state court judgment was the cause of plaintiff's injuries, and this Court would necessarily have to review that judgment to decide plaintiff's claims").

## B. The Seamans' FDCPA Claims.

Like the Seamans' § 349 claims, this Court does not have jurisdiction to hear the Seamans' FDCPA claims.

The Seamans' FDCPA claims are based on allegations that Defendants made false and deceptive statements in the state-court complaint and in the Cummins Affidavit. (Am. Cplt. ¶ 178). But the Seamans could not have been injured (*i.e.*, been the subject of the income execution) by any of these statements made in litigation but for the entry of the Seaman Judgment. The Seamans' FDCPA claims are therefore "a direct attack on the state court's determination that" the 2007-3 Trust had standing to enforce the loan documents and was entitled to a judgment. *Nichols*, 2017 WL 1064719, at *5 (barring FDCPA claim based on allegedly fraudulent assignment of mortgage used to establish standing in state-court foreclosure) (citing *Nath v. JP Morgan Chase Bank* (*"Nath I"*), No. 15-CV-3937, 2016 WL 5791193, at *7 (S.D.N.Y. Sep. 30, 2016) ("Plaintiff does not articulate how he was injured by any of the allegedly void or invalid assignments or agreements apart from any role that they may have played in the State Court's decision to issue the" judgment.)). Thus, because the Seamans' FDCPA claims effectively seek review of the Seaman Judgment, they are precluded by the *Rooker-Feldman* doctrine.

### C. The Seamans' Judiciary Law § 487 Claims.

Finally, the Seamans' Judiciary Law claims against F&G also seek to collaterally attack the Seaman Judgment. This Court cannot determine that F&G engaged in deceitful behavior without also implicitly determining that the Seaman Judgment was improperly awarded. Again, This is precisely the type of review of state-court decisions the *Rooker-Feldman* doctrine prohibits. *Seldon v. Bernstein*, No. 09 Civ. 6163 (AKH), 2010 WL 3632482, at *1 (S.D.N.Y. Sept. 16, 2010), *aff'd*, 503 F. App'x 32 (2d Cir. 2012) (dismissing Judiciary Law § 487 claims under *Rooker-Feldman*).

**II.     Statements Made During Litigation Cannot Support Plaintiffs' Claims.**

All Plaintiffs' claims against the Defendants should be dismissed because they depend on statements these defendants made during the course of the state-court actions. This cannot support claims under the FDCPA, § 349, or Judiciary Law § 487.

**A.     The Statements At Issue Are Not Materially Misleading.**

Each of the Plaintiffs' claims are based on allegations that Defendants made false and deceptive statements in the state-court complaints against them and, with the exception of Michelo, in the affidavits submitted with the Trusts' applications for default judgments. (Am. Cplt. ¶¶ 118-128, 136-142; 87-97, 102-109; 67-78). However, these allegedly deceptive statements are not the type of materially deceptive statements necessary to support a claim under the FDCPA, § 349, or Judiciary Law § 487.

Plaintiffs allege that statements contained in the respective state-court complaints and affidavits violate various subsections of 15 U.S.C. § 1692e and 15 U.S.C. § 1692f, which prohibit debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," or from using "unfair or unconscionable means to collect or attempt to collect any debt," respectively. 15 U.S.C. § 1692e, *et. seq.*; 15 U.S.C. § 1692f, *et. seq.* Plaintiffs then posit that these "misleading" court filings also support claims under Gen. Bus. Law § 349 and Judiciary Law § 487. Courts have rejected precisely what Plaintiffs are doing.

**1.     Plaintiffs Do Not Allege A Material Misrepresentation
As Required By The FDCPA.**

"In evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the 'least sophisticated consumer' would be deceived by the collection practice." *Maguire v. Citicorp. Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998).

Numerous districts within the Second Circuit – including this one – generally require that the alleged misrepresentation be "material," so that liability only attaches for those communications that would "mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond or to dispute collection." *Gabriele v. Am. Home Mortg. Svcg., Inc.*, 503 Fed. App'x 89, 95 (2d Cir. 2012); *see also e.g.*, *Sussman v. I.C. Systems, Inc.*, 928 F. Supp. 2d 784, 795 (S.D.N.Y. 2013). Statements made in court filings are not the type of "material" deceptive or misleading representations against which the FDCPA aims to protect. *Gabriele*, 503 Fed. App'x at 95; *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010); *Lautman v. 2800 Coyle Street Owners Corp.*, No. 14-CV-1868(ARR)(VVP), 2014 WL 4843947, at *12 (E.D.N.Y. Sep. 26, 2014); *Derisme v. Hunt Leibert Jacobson, P.C.*, 880 F. Supp. 2d 311, 329 (D. Conn. 2011).

Statements in court filings are not misleading because "the FDCPA's central purpose of protecting unsophisticated consumers from unscrupulous debt collectors is not implicated in state court proceedings, where litigants enjoy myriad procedural and substantive protections from fraudulent and deceptive practices." *Lautman*, 2014 WL 4843947, at *12 (internal citations and quotations omitted); *Derisme*, 880 F. Supp. 2d at 329 (recognizing that the FDCPA is "not implicated when a mortgagee is protected by the court system and its officers."). Furthermore, the allegedly deceptive communications with which Plaintiffs take issue are not affirmative factual representations about Plaintiffs' debt or their corresponding obligations, but rather only the assertion of legal conclusions. Whether the conclusions are accurate is a matter for the state-court to decide; they are not deceptive communications, influencing the debtors' decisions to pay their debts or impairing their ability or challenge them, that violate the FDCPA. *See e.g.*, *Klein v. Solomon & Solomon, P.C.*, No. 3:10CV1800 WWE, 2011 WL 5354250, at *2 (D. Conn. Oct. 28,

2011); *McAfee v. Law Firm of Forster & Garbus*, No. 06-CV-2925 NGG (LB), 2008 WL 3876079, at *2 (E.D.N.Y. Aug. 18, 2008). At the very most, the alleged misrepresentation is a "mere technical falsehood[] that misled no one." *Gabriele*, 503 Fed. App'x at 95 (*quoting Donahue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (2d Cir. 2010)).

### 2. There Is No Material Misrepresentation To Support A § 349 Claim.

The § 349 claims relying on alleged deceptive statements made during the course of the Plaintiffs' state-court litigations should be dismissed for the same reasons as the FDCPA claims. Plaintiffs' § 349 causes of action all depend on the same statements in the state-court proceedings misleading the Plaintiffs. (Am. Cplt. ¶¶ 118-128, 136-142; 87-97, 102-109; 67-78.).

"To state a claim under Section 349(a), plaintiffs must allege a material deceptive act or practice directed to consumers that caused actual harm." *Conboy v. AT&T Corp.*, 84 F. Supp. 2d 492, 505 (S.D.N.Y. 2000), *aff'd*, 241 F.3d 242 (2d Cir. 2001). "An act is deceptive within the meaning of the New York statute only if it is likely to mislead a reasonable consumer." *Id.* On its face, the "reasonable consumer" standard applied in § 349 is a higher standard to clear than the "least sophisticated consumer" standard applied under the FDCPA. As such, if a statement is not misleading to the FDCPA's least sophisticated consumer, it cannot be misleading to § 349's reasonable consumer.

The statements at issue were made during the course of litigation, where Plaintiffs had an opportunity to rebut them and the state courts were determining whether they were accurate. Such statements cannot be materially misleading under the ambit of § 349. *Lane v. Fein, Such and Crane, LLP*, 767 F. Supp. 2d 382, 391 (E.D.N.Y. 2011); *Nicholson v. Forster & Garbus LLP*, No. 11–CV–0524 (SJF)(WDW), 2012 WL 273150, at *3 (E.D.N.Y. Jan. 30, 2012). Accordingly, the claims against Defendants that are premised on statements made in the state-court complaints and affidavits must also fail.

12

### 3.    Plaintiffs Allege No Misrepresentation That Supports A Judiciary Law § 487 Claim.

Plaintiffs' Judiciary Law § 487 claims against F&G fail for similar reasons: they are premised upon F&G's drafting and filing of papers on behalf of its client in the context of adversarial proceedings against Plaintiffs. (*See* Am. Cplt. ¶ 188).

Like the FDCPA and § 349, Judiciary Law § 487 does not impose liability for allegedly deceptive statements made in the course of adversarial litigation. *See O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008); *Lazich v. Vittoria & Parker*, 189 A.D.2d 753, 754 (2d Dep't 1993). New York courts have repeatedly held that an attorney's conduct taken on behalf of a client in the context of adversarial proceedings does not meet the extreme and egregious threshold necessary to impose liability under Judiciary Law § 487. *See Lazich*, 189 A.D.2d at 754; *Alliance Network, LLC v. Sidley Austin LLP*, 43 Misc. 3d 848, 859 (Sup. Ct., N.Y. Cty., 2014); *Seldon v. Lewis Brisbois Bisgaard & Smith LLP*, 116 A.D.3d 490, 491 (1st Dep't 2014); *Michalic v. Klat*, 128 A.D.2d 505, 506 (2d Dep't 1987).

Courts recognize that in the context of an adversarial litigation, statements made in pleadings or other documents submitted to the court cannot form the basis of liability, both to encourage zealous advocacy and because the litigants are protected by the court in which the allegedly deceptive statements are made. Plaintiffs' collateral attacks on the state-court litigations, based upon what are undoubtedly not "material" misrepresentations, but rather "mere technical falsehoods," *Gabriele*, 503 Fed. App'x at 95, should not be able to form the basis of liability against Defendants under these statutes. Accordingly, each of these claims should be dismissed.

**B.** **The Litigation Privilege Precludes Claims Based On Statements Made During Litigation.**

That the alleged deceptive statements in the state-court complaints and affidavits in support of Defendants' motions for default judgment cannot support the claims at issue is further underscored by the litigation privilege recognized under New York law.

Statements made by parties and their attorneys in the context of litigation "are absolutely privileged if, by any view or under any circumstances, they are pertinent to the litigation." *O'Brien v. Alexander*, 898 F. Supp. 162, 171 (S.D.N.Y. 1995), *aff'd in part*, 101 F.3d 1479 (2d Cir. 1996). The privilege is extremely broad and "embraces anything that may possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability." *Id.* (citation omitted); *Kelly v. Albarino*, 485 F.3d 664, 666 (2d Cir. 2007) ("[T]his is the broadest of possible privileges and any matter which, by any possibility, under any circumstances, at any stage of the proceeding, may be or may become material or pertinent is protected by an absolute privilege …"). "Because the litigation privilege is absolute, it applies regardless of the speaker's motive, including bad faith or malice." *Bletas v. Deluca*, No. 11 Civ. 1777 (NRB), 2011 WL 13130879, at *8 (S.D.N.Y. Nov. 15, 2011); *Albarino*, 485 F.3d at 666.

Plaintiffs' claims against the Trusts and F&G are based on statements they made in the state-court complaints, the Cummins Affidavit, and the Dudley Affidavit. (*See* Am. Cplt. ¶¶ 63-144). These claims could have and should have been raised in each of the underlying state-court actions rather than being raised in a separate action. This is precisely what the litigation privilege is meant to prevent, and the Plaintiffs' claims against the Trusts and F&G should be dismissed with prejudice on this basis. *See, e.g., Bletas*, 2011 WL 13130879 at *8-9; *Frierson-Harris v. Hough*, No. 05 Civ. 3077 (DLC), 2006 WL 298658, at *7 (S.D.N.Y. Feb. 7, 2006); *Lipin v.*

*Hunt*, No. 14-cv-1081 (RJS), 2015 WL 1344406, at *9 (S.D.N.Y. Mar. 20, 2015) (litigation privilege barred attorney misconduct claims that should have been raised "before the courts in which the allegedly improper conduct occurred").

C.    **The *Noerr-Pennington* Doctrine Also Precludes Claims Challenging The Trusts' and F&G's Filing Of The State-Court Actions.**

The *Noerr-Pennington* doctrine also precludes claims against the Trusts and F&G based on their litigation conduct.

The *Noerr-Pennington* doctrine "protects the right under the First Amendment to the United States Constitution to petition the government for governmental action, including through litigation, and any incidental activity." *People by Schneiderman v. Northern Leasing Systems, Inc.*, 75 N.Y.S.3d 785, 802 (2017) (internal citations omitted). Under this doctrine, "a party's right to file a lawsuit without liability is unimpeachable unless the suit is a 'sham,' meaning 'objectively baseless.'" *Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d 342, 363 (S.D.N.Y. 2010). Although the doctrine was initially applied in the context of antitrust litigation, "courts have expanded it to protect First Amendment petitioning of the government from claims brought under Federal and State law …" *Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.*, 268 A.D.2d 101, 107-08 (2d Dep't 2000).

III.   **Michelo's And The Seamans' § 349 Claims Contain Further Defects.**

Plaintiffs Michelo and the Seamans assert claims under § 349 against all the Defendants. These claims contain further pleading deficiencies or are otherwise barred and should be dismissed.

Michelo's §349 claim fails because she does not allege a sufficient injury resulting from any allegedly deceptive litigation practice. Specifically, she does not allege that the purportedly "false" credit report actually injured her. Nor does she plausibly allege that the "false" report

was, in fact, false. And, finally, she never draws any plausible connection between any deceptive practice and the "false" credit report, which is a required element under § 349.

If the Court were to determine that it has jurisdiction over the Seamans' § 349 claims, those claims fail because they are barred by *res judicata* and collateral estoppel. The Seamans' claims repackage, albeit with a new legal theory, issues that are already subject to the Judgment.

### A.    Michelo Fails To Allege An Actual Injury.

"A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman*, 95 N.Y.2d at 29. The injury complained of must be an "'actual' injury." *Id.* at 29. And, critically, the alleged materially misleading practice must have caused that actual injury. *Marcus v. AT&T Corp.*, 138 F.3d 46, 63-64 (2d Cir. 1998) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-6 (1995); *McGill v. General Motors Corp.*, 231 A.D.2d 449 (1st Dept. 1996)). Michelo's allegations do not meet these requirements.

This case, according to the Amended Complaint, is about Defendants' deceptive practices in litigating to collect amounts due and owing on student loans. (*See* Am. Cplt. ¶ 184). Specifically, with respect to Michelo, Defendants are alleged to have made misleading allegations regarding the 2007-2 Trust's status as Michelo's original creditor (*Id.* at ¶¶ 67-68) and its authority to collect on her student loan. (*Id.* at ¶ 71). Defendants are also alleged to have falsely stated that an attorney meaningfully reviewed the 2007-2 Trust's claims. (*Id.* at ¶ 77). And, Defendants are alleged to have failed to delineate what portion of the amount being sought was principal, fees and interest. (*Id.* at ¶ 78).

Michelo separately alleges that Defendants, at or around the time the state-court action was filed, "reported to credit bureaus that the underlying alleged debt was valid and owed, and

that it was the subject of legal action." (Am. Cplt. ¶ 79). Michelo does not allege that the debt was not "valid and owed" at that time nor claims that this credit reporting was false or improper. But she later alleges that Defendants did not report their discontinuance of the state-court action to the credit bureaus and "despite having discontinued the lawsuit … Defendants falsely reported to credit bureaus that the underlying alleged debt was valid and owed." (*Id.* at ¶ 81). Michelo alleges that this "improper credit-reporting" negatively affected her credit and caused her economic and noneconomic harm. (*Id.* at ¶ 82).[2] Based on Michelo's own allegations, the allegedly false credit reporting is not sufficient to support a § 349 claim.

Michelo never alleges that the "false" credit reporting actually injured her. She does not allege that any creditors ever viewed the allegedly false report, turned her down for credit because of the reporting, or offered credit on terms less favorable than if the false reporting had not occurred. Michelo does not even allege that she has applied for credit following the allegedly false reporting. Nor does Michelo expressly identify any of the alleged "noneconomic" harms such as emotional injuries. Michelo's bare allegation about "false" credit reporting does not establish an actual injury and does not support a § 349 claim. *See Trikas v. Universal Card Services Corp.*, 351 F. Supp. 2d 37, 46 (E.D.N.Y. 2005); *Arroyo v. PHH Mortg. Corp.*, No. 13-CV-2335 (JS)(AKT), 2014 WL 2048384, at *11 (E.D.N.Y. May 19, 2014) (conclusory allegations of injuries are insufficient under § 349).

---

[2] The Court previously indicated in connection with the original Complaint that this credit reporting is the injury Michelo is alleging she suffered. (Dkt. No. 52, Trans. p. 15:21-23). Michelo does not allege that she was injured by "unnecessary litigation." She never alleges that she was served with a complaint or was even aware of any lawsuit until after the 2007-2 Trust voluntarily withdrew it, let alone that she took any action or incurred any expense to defend it. Michelo's situation is very different than the one in *Winslow*, where the plaintiff was personally served with the complaint, retained defense counsel, interposed an answer, participated in discovery and actively litigated the matter. *Winslow*, 2017 WL 6375744 at *3.

Moreover, Michelo does not even plausibly allege that the credit reporting was in fact false. Michelo is careful never to expressly allege that she does not owe the debt that is at the heart of the state-court action or that she did not default on that debt. Nor does Michelo allege that Defendants reported a trade line that did not exist or a judgment that was never obtained. There are no allegations which explain why the credit reporting was "false." The assertion of "falsely reported" credit information is simply a conclusory statement and is insufficient on its own to establish an injury to support a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is warranted on this basis alone. *Toohey v. Portfolio Recovery Associates, LLC*, No. 15-cv-8098 (GBD), 2016 WL 4473016, at *10 (S.D.N.Y. Aug. 22, 2016) (dismissing § 349 claim where plaintiff "has not alleged that she did not owe the debt for which her wages were garnished, and therefore has not alleged any 'actual' injury suffered as a result of Defendants' alleged deceptive acts.").

Third, although this case is about Defendants' allegedly deceptive litigation practices, *see* Am. Cplt. ¶ 184, Michelo never connects the "false" credit reporting to any deceptive litigation practice. Nothing asserted ties credit reporting to the state-court litigation or the Defendants' actions in that litigation as required by § 349. *Marcus*, 138 F.3d at 63-64. Nor do the allegations suggest that the alleged "false" credit report was impacted by any litigation practice. If anything, the credit reporting is intimated to have been independent of the litigation, coming "despite" what transpired in the litigation. (Am. Cplt. ¶ 81). Indeed, there is nothing about the litigation that changed the status of the debt (*i.e.*, whether the debt is valid and owed), so it is unclear why Michelo challenges the post-litigation reporting of the debt as valid and owed but does not allege that the initial reporting of the debt as valid and owed was false. This requires dismissal, especially given the speculative nature of the assertion that the credit report was false. *Twombly*,

550 U.S. at 555; *Precision Imaging of New York, P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 477 (S.D.N.Y. 2017) (dismissing § 349 claim where "the injury does not flow from the alleged consumer deception … because the supposed deception has nothing to do with the" alleged injury).[3]

Finally, the allegation that "Defendants" made the false reporting is impermissible group pleading that deprives Defendants of fair notice of the claims. *See Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003); *Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001).

**B.     Katherine Seaman Fails To Allege An Actual Injury.**

Even if this Court had subject matter jurisdiction over the Seamans' claims, Katherine Seaman's § 349 claim independently fails because she has not alleged an actual injury. Katherine claims she "fears" she will be subjected to a wage garnishment. (Am. Cplt. ¶ 113). But a wage garnishment has not been alleged to have occurred, and this speculative fear of a possible future injury is insufficient under § 349. *Shafran v. Harley-Davidson, Inc.*, No. 07 Civ. 01365(GBD), 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008) (dismissing § 349 claim where "Plaintiff has failed to show an actual resulting injury that might support a claim for damages" because "Plaintiff's alleged injuries are solely the result of a perceived and speculative risk of future injury that may never occur").

---

[3] Even if the Court is inclined to consider the "false" credit reporting as part and parcel of the alleged deceptive practices, and it should not, this does not rescue Michelo's cause of action. Under § 349, an injury must be separate and distinct from the alleged deception giving rise to the injury. *See Bildstein v. Mastercard International Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004) ("the claimed deception cannot itself be the only injury"). "False" credit reporting therefore cannot be both the deceptive practice that led to the injury and the injury itself.

Indeed, Katherine's wages may never be garnished if the Judgment is vacated, or if the Judgment is found to be proper, there could be no viable claim under § 349 based on Katherine's fear of a lawfully-obtained judgment being enforced against her.

**C.    The Seamans' § 349 Claims Are Barred By *Res Judicata* And Collateral Estoppel.**

Additionally, *res judicata* and collateral estoppel bar the Seamans from proceeding with their § 349 claims. The Seamans' claims depend on the Judgment being wrongly obtained and they look to re-litigate that Judgement.

### 1.    The Seamans Impermissibly Seek To Re-litigate The Judgment.

*Res Judicata* expressly prevents a plaintiff from re-litigating matters that were or could have been litigated in the state-court action. *See Monahan v. N.Y. City Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir. 2000); *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985); *see also Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 108–09 (2d Cir. 2001); *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981).

Specifically, *res judicata* precludes re-litigating issues where, as here, "the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Teltronics*, 762 F.2d at 190. It is meant to "prevent[] the litigation of any claim or ground of recovery that was available to a party in a prior action, whether or not the prior judgment actually determined that claim or ground." *Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 815-16 (2d Cir. 1990). This "reflect[s] the sensible goal that where possible all related claims be resolved in one proceeding …" *Epperson*, 242 F.3d at 109.

The four factors listed weigh in favor of precluding the Seamans' claims. The state-court action resulted in a final judgment sufficient for *res judicata* purposes. *See Rosendale v.*

*Citibank, NA*, 262 A.D.2d 628 (2d Dept. 1999) (a default judgment is conclusive for res judicata purposes). The New York State court that issued the Judgment is undoubtedly a court of competent jurisdiction. *See Hameed v. Aldana*, 296 F. App'x 154, 155 (2d Cir. 2008). The cases involve the same parties; the 2007-3 Trust was the plaintiff in the state-court action and the Seamans were the defendants. It does not matter that the Seamans name defendants who are not parties in the state-court action. *Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003).

Most importantly, the 2007-3 Trust's state-court action and the Seamans' federal causes of action involve the same claims. The Second Circuit employs a "transactional approach" to *res judicata* issues: "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or seeking a different remedy." *Hameed*, 296 F. App'x at 155 (quoting *O'Brien*, 54 N.Y.2d at 357). Under the transactional approach, the Seamans' claims arise from the same series of transactions at issue in the state-court action—namely, the Seamans' default on their loan obligations and the judicial efforts to enforce the note owners' rights regarding those obligations. *See 7 West 57th Street Realty Co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981(PGG), 2015 WL 1514539, at *23 (S.D.N.Y. Mar. 31, 2015) (preclusion depends on "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first") (internal citations and quotations omitted).

The Seamans seek to litigate here the same issues that were necessary for the 2007-3 Trust to have secured the Judgement. Though the Seamans did not appear in the state-court action, the 2007-3 Trust was required to, and did, set forth the requisite proof necessary to obtain the Judgment. *See* NY CPLR § 3215. What the trust had to prove to obtain the Judgment (*e.g.,*

standing, the existence of a contract, a contractual default, and damages) is precisely what the Seamans are attempting to put at issue here. They allege that the 2007-3 Trust was not authorized to maintain the action, that the 2007-3 Trust was not their original creditor, that the 2007-3 Trust's attorneys did not meaningfully review the claims, and that the 2007-3 Trust submitted an affidavit to the state-court that had evidentiary deficiencies. (Am. Cplt. ¶¶ 88-89, 91, 96, 101-109). The Seamans are not permitted to do this.

And, in fact, this Court has applied *res judicata* to bar what the Seamans are attempting here. In *7 West 57th Street Realty Co., LLC*, Your Honor found that *res judicata* precluded RICO claims based on alleged LIBOR manipulation where defendants' alleged misconduct concerned the same loan at issue in a state-court action directed at plaintiff's loan default; it constituted the same series of transactions and occurrences. 2015 WL 1514539 at *25. The Court was unswayed by plaintiff repackaging potential defenses to the state-court action as offensive claims coupled with a new legal theory because "alternate legal theories are not sufficient to avoid the res judicata effect of a prior judgment." *Id.* Other examples of this result abound in the Southern District, as well. *See, e.g., Wilson v. HSBC Bank, USA*, No. 16-cv-8405 (NSR), 2018 WL 1449204, at *11 (S.D.N.Y. Mar. 22, 2018); *Graham*, 156 F. Supp. 3d at 510; *Nath II*, 2017 WL 782914 at *10.

The Seamans cannot skirt *res judicata* by asserting that they could not have known the essential elements of their claims until the CFPB's publication because Defendants concealed the elements. (Am. Cplt. ¶¶ 191, 193). The Seamans claim they learned from the CFPB that Defendants file lawsuits without the intent or ability to prove the claims, if contested, and that they submit defective affidavits in those lawsuits. (*Id.* at ¶ 191). This is irrelevant to the issues that are critical to the Seamans' causes of action, which were or should have been raised in the

state-court action: namely, the existence of the debt, the 2007-3 Trust's interest in and rights to that debt, the 2007-3 Trust's standing and authority to maintain the state-court action, and the sufficiency of the evidence used to obtain the Judgment. All of these are obvious, threshold issues that defendants routinely challenge in debt collection litigation. But the Seamans did not challenge the 2007-3 Trust's allegations and offer no explanation for their failure to act.

The Trust unequivocally denies the Seamans' allegations of misconduct; however, to the extent any questions about the state-court litigation exist, the Seamans could have discovered those with minimal due diligence by defending themselves and testing the 2007-3's Trust's evidence through discovery, motion practice, or trial. *See Saud v. Bank of N.Y.*, 929 F.2d 916, 920 (2d Cir. 1991) ("Saud had a strong incentive to actively litigate his defense and further uncover evidence of fraud. Having failed to undertake that inquiry, Saud is chargeable with full knowledge of the fraud."); *Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church of City of N.Y.*, 68 N.Y.2d 456, 461 (1986). Even where a party learns new facts establishing a new claim that is completely separate and distinct from the claims in the prior action, courts will dismiss the subsequent action on *res judicata* grounds if plaintiff was not diligent in discovering the new facts sooner. *Teltronics*, 762 F.2d at 193.

### 2. Plaintiffs Are Estopped From Re-Litigating Issues Already Determined In The Prior Action.

The Seamans' attempt to raise issues decided in the state-court action is also precluded by collateral estoppel. Collateral estoppel bars claims where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Graham*, 156 F. Supp. 3d at 505-06 (quoting *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995)). Like *res*

*judicata*, collateral estoppel is applicable to default judgments. *Sterling Doubleday Enterprises, L.P. v. Marro*, 238 A.D.2d 502, 503 (2d Dept. 1997).

Here, the necessary predicate to each of the Seamans' claims is that the 2007-3 Trust either did not have standing in the state-court action or that its evidence was insufficient and/or inadmissible. But these issues were necessarily decided by the state-court when it determined that the 2007-3 Trust presented proof of its claim, and entered the Judgment. *See* NY CPLR § 3215. Accordingly, the issues underlying the Seamans' claims have already been resolved and the § 349 claims should be collaterally estopped. *See Graham*, 156 F. Supp. 3d at 506 (estopping claims predicated on the theory that defendant lacked standing to foreclose in state-court when the state-court already decided the standing issue).

## IV.  Plaintiffs' FDCPA Claims Are Time-Barred.

Michelo's FDCPA cause of action – which is asserted only against TSI, EGS and F&G – is barred by the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k(d). The Seamans' claims—to any extent not precluded by *Rooker-Feldman*—and Tabar's claims are also time-barred.

### A.  Michelo's Claims.

Michelo asserts that TSI, EGS, and F&G violated § 1692e and § 1692f of the FDCPA by filing a state-court collection lawsuit that inaccurately identifies the "original creditor" and included an incorrect statement that the 2007-2 Trust was authorized to proceed with the action. (Am. Cplt. ¶¶ 63-76). This claim is barred by the FDCPA's statute of limitations.

The FDCPA has a one-year statute of limitations, running from the date on which the alleged violation occurs. *See* 15 U.S.C. § 1692k; *Scott v. Greenberg*, No. 15-CV-05527 (MKB), 2017 WL 1214441, at *5 (E.D.N.Y. Mar. 31, 2017) ("A cause of action accrues under the FDCPA when 'injury occurs' and 'the injured party has the right to bring suit for all of the

damages ... caused by the defendant's acts.'") (quoting *Benzemann v. Citibank, N.A.*, 806 F.3d 98, 101 (2d Cir. 2015)). The alleged conduct upon which Michelo's claims are based occurred no later than 2016. (*See* Am. Cplt. ¶¶ 63, 76). The Complaint was filed on February 27, 2018, which means any FDCPA claim based on conduct prior to February 27, 2017 is time-barred.

At the June 21, 2018 pre-motion hearing on Defendants' planned motion to dismiss the original Complaint, Your Honor noted as much, stating:

> As to plaintiff Michelo, … plaintiffs allege that the Forster & Garbus firm filed a lawsuit against Michelo on July 14, 2015, and then on December 9, 2016, defendants filed a notice of voluntary discontinuance. Cplt. ¶¶ 61, 75-76. No application for default judgment appears to have been filed, nor does it appear that supporting affidavits were filed. See Id. ¶¶ 61-76.

> Absent additional facts that plausibly allege an alternative basis for equitable tolling of Michelo's claims, the one-year statute of limitations would appear to apply. Because all the relevant conduct upon which Michelo's claim is based occurred in 2015 and 2016, absent these additional factual allegations, it would appear to me that plaintiff Michelo's claim is time-barred. Accordingly, with respect to Michelo, it appears to me that defendants' motion to dismiss Michelo's FDCPA claim may be well-founded.

(Dkt. No. 52, Trans. p. 12:4-21). The Court was entirely correct in its analysis, and Michelo has not added any new allegations to the Amended Complaint that would change that analysis.

Michelo's FDCPA claim should be dismissed.

**B.    The Seamans' Claims.**

The Seamans' claims are also barred by the FDCPA's statute of limitations. *Scott*, 2017 WL 1214441, at *5.

The Seamans allege that: F&G filed suit against Katherine Seaman and Mary Re Seaman in Queens County Civil Court on May 29, 2014 naming the 2007-3 Trust as the plaintiff; that a default judgment was applied for on March 30, 2015; that a default judgment was entered on March 31, 2015; and that on April 15, 2015, F&G caused an income execution to be issued to plaintiff Re Seaman's employer. (*See* Am. Cplt. ¶¶ 83, 99, 110-111). Since the Complaint here

was filed on February 27, 2018, any FDCPA claim based on conduct that occurred prior to February 27, 2017 is time-barred.

Defendants are cognizant of the Court's expressed impression that the Seamans' FDCPA claims may be equitably tolled. Specifically, the Court focused on the Seamans' allegations in the original Complaint that the representations in the Cummins Affidavit were false because "Mr. Cummins in fact had no personal knowledge of the business records or the underlying documentation establishing that the Seamen plaintiffs owned the debt in question." Your Honor noted that the Cummins affidavit might be "inherently self-concealing" because the "Seamen plaintiffs 'had no reason to question the truthfulness of the affidavit and therefore no reason to doubt that defendants lawfully carried their burden of proof to obtain the lawful judgment.'" (Dkt. No. 52, Trans. pp. 10:5-9 and 11:15-19). This view does not consider the totality of the allegations and what role the Cummins Affidavit played.

FDCPA claims may only be equitably tolled if "a plaintiff establishes that: (1) the defendant concealed from him the existence of his cause of action; (2) he remained in ignorance of that cause of action until some length of time within the statutory period before commencement of his action; and (3) his continuing ignorance was not attributable to lack of diligence on his part." *Sykes v. Mel Harris and Associates, LLC*, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010). Courts within the Second Circuit routinely refuse to equitably toll the FDCPA's statute of limitations where plaintiffs have "failed to allege with sufficient particularity that their claimed ignorance of a cause of action under the FDCPA was not attributable to a lack of diligence." *See, e.g., Conklin v. Jeffrey A. Maidenbaum, Esq.*, No. 12-CV-3606 (ER), 2013 WL 4083279, at *7 (S.D.N.Y. Aug. 13, 2013); *Wai Hoe Liew v. Cohen & Slamowitz*, 265 F.Supp.3d 260, 284-85 (E.D.N.Y. 2017). The Seamans have not plausibly pled that they

remained ignorant of their FDCPA causes of action or that their ignorance was not attributable to a lack of diligence on their part.

The Seamans allege the following in support of their FDCPA claims: 1) they were named in a state-court complaint (Am. Cplt. ¶ 83); 2) that complaint contained "false" statements, which were obvious on their face (*id.* at ¶¶ 87-88); 3) those statements violated the FDCPA (*id.* at ¶ 178); 4) the Seamans took no actions to challenge those "false" statement and defaulted in the state-court action (*id.* at ¶ 110); 5) the "false" statements in the state complaint induced the Seamans to default (*id.* at ¶¶ 8-12, n.6); and 6) in the course of converting that default to a judgment, certain defendants submitted the "self-concealing" Cummins Affidavit, which contained additional "false" statements. (*Id.* at ¶¶ 100-106).

These allegations demonstrate that the Seamans were aware of their claims under the FDCPA as soon as they received the state-court complaint, well before the Cummins Affidavit was filed. For example, the FDCPA claim depends in part on the allegation that 2007-3 Trust falsely claims it was the original creditor, even though that trust did not lend any money to the Seamans; the Seamans would have presumably known this was not the case since they took out the loan at issue and know who they borrowed from. (*See* Am. Cplt. ¶¶ 8-10, 87-91).[4] As soon as the Seamans read that allegation, they were aware there was a creditor who was making statements the Seamans believed were false, *i.e.*, that they had an FDCPA claim. The Seamans allege no facts to demonstrate that they acted with diligence in the face of this. Assuming the Seamans were ignorant in the way they imply, they only remained so because they failed to exercise any diligence to hold anyone accountable for the "false" statements in the state-court action. They refused to take any action even though they were presented with an obvious forum

_____

[4] If the Seamans did not take out any loan, this logic holds as well – they would have known they did not take out any loan.

– the state-court litigation – to do so. Moreover, an income execution was served on the Seamans' employer on April 15, 2015. The Seamans took no action for nearly 3 years. This lack of diligence precludes equitably tolling the statute of limitations. *See, e.g., Conklin*, 2013 WL 4083279, at *7.

The purportedly "self-concealing" nature of the Cummins Affidavit does not justify equitably tolling the statute of limitations. Neither of the Seamans claim to have ever seen the Cummins Affidavit. The Cummins Affidavit was filed after the Seamans had defaulted and long after they became aware of their FDCPA claims (which they allege were apparent on the face of the state-court complaint). In order to determine that the Cummins Affidavit was "self-concealing," courts look to whether the "wrong itself was of such a nature as to be self-concealing." *Vincent v. Money Store*, 304 F.R.D. 446, 458 (S.D.N.Y. 2015) (internal citation and quotations omitted). In *Vincent*, the statute of limitations was not tolled because plaintiffs could not show that it would have been impossible for a reasonably prudent person to learn about her cause of action. *Id.* at 459. Here, the Seamans allege they were aware that there were potential FDCPA claims almost a year before the Cummins Affidavit was filed. (Am. Cplt. ¶¶ 83-91, 96-98). Additionally, the Seamans do not allege any facts showing due diligence to discover their cause of action; this is "a deficiency for which courts regularly dismiss equitable tolling claims." *Id.*, at 458.

**C.      Tabar's Claims.**

Finally, Tabar's FDCPA claims should also be dismissed on similar grounds, as the alleged conduct giving rise to the FDCPA claims occurred years prior to Tabar bringing her claims here. Specifically, the alleged wrongful conduct occurred on January 14, 2014 when the state-court action was commenced (Am. Cplt. ¶ 114) and on April 3, 2014 when the motion for default judgment was filed in that action (*id.* ¶ 133).  All of the alleged false statements occurred

years-prior to the filing of the Amended Complaint on September 14, 2018, rendering Tabar's claims time-barred. Moreover, Tabar has not alleged any facts which would warranting an equitable toll in this case. *See e.g., Conklin*, 2013 WL 4083279, at *7; *Wai Hoe Liew*, 265 F.Supp.3d at 284-85. Therefore, for the same reasons discussed above, Tabar's FDCPA claim is time-barred and must be dismissed.

## V. Plaintiffs' Judiciary Law § 487 Claims Against F&G Should Be Dismissed.

Plaintiffs' third cause of action is asserted solely against F&G and alleges attorney misconduct under New York's Judiciary Law § 487. It fails for several different reasons.

Section 487 provides that an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action." *See Kaye Scholer LLP v. CNA Holdings, Inc.*, No. 08 Civ. 5547 (NRB), 2010 WL 1779917, at *2 (S.D.N.Y. Apr. 28, 2010). Section § 487 is considered a penal statute and is strictly construed. *Id.* Thus, there is a "very high burden of proof" to establish a violation under Judiciary Law § 487. *King v. Fox*, No. 97 Civ. 4134 RWS, 2004 WL 68397, at *8 (S.D.N.Y. Jan. 14, 2004). Punishment under § 487 is limited to conduct that is extreme or egregious. *See Ray v. Watnick*, 182 F. Supp. 3d 23, 29 (S.D.N.Y. 2016), *aff'd*, 688 F. App'x 41 (2d Cir. 2017).

In order to make out a prima facie claim for a violation of Judiciary Law § 487, Plaintiffs must demonstrate that: (1) F&G is guilty of deceit or collusion, or consents to any deceit or collusion; (2) F&G had an intent to deceive the court or any party; and (3) that damages were caused by the deceit. *See Iannazzo v. Day Pitney LLP*, No. 04 CIV. 7413 (DC), 2007 WL 2020052, at *11 (S.D.N.Y. July 10, 2007). Since a claim under § 487 is premised upon alleged deceptive conduct by an attorney, it is subject to the specific pleading requirements of Rule 9(b)

of the Federal Rules of Civil Procedure. *See Bryant v. Silverman*, 284 F. Supp. 3d 458, 469 (S.D.N.Y. 2018) (holding that Rule 9(b) applies to plaintiff's section 487 claim). Here, Plaintiffs have not set forth the necessary elements of the claim, let alone with the requisite particularity.

### A. Plaintiffs Fail To Set Forth A Plausible Allegation That F&G Intended to Deceive The Courts Or Plaintiffs.

Plaintiffs' § 487 claims are based on generalized and conclusory allegations that F&G submitted pleadings and other court documents which purportedly contained "false statements." Specifically, Plaintiffs contend that F&G violated § 487 by filing complaints which contained purportedly false statements that the named plaintiff was the "original creditor" and was authorized to proceed with the action; filing a default judgment application without reasonable inquiry into the claims; and submitting a purportedly false affidavit in support of default. (*See* Am. Cplt. ¶ 188).

While Plaintiffs repeatedly assert that the pleadings and other court papers contained "false" statements, there are no allegations reflecting that F&G had knowledge that these statements were allegedly false, let alone facts supporting a strong inference that F&G submitted them with the specific intent to deceive. Instead, Plaintiffs simply recite the purported false statements in the underlying court documents and conclude that F&G engaged in "a chronic, persistent pattern of conduct with the intent to deceive" as a result. (*Id.*).

Significantly, § 487 claims are subject to dismissal where, as here, they fail to set forth any plausible claim that the attorney defendants acted with the requisite *intent* to deceive. *See*, *e.g.*, *Haggerty v. Ciarelli & Dempsey*, 374 F. App'x 92, 93-94 (2d Cir. 2010); *see also Bryant*, 284 F. Supp. 3d at 469; *Mazzone v. Town of Southampton*, 283 F. Supp. 3d 38, 60 (E.D.N.Y. 2017); *Shaffer v. Gilberg*, 125 A.D.3d 632, 636 (2d Dep't 2015); *In re Buckskin Realty Inc.*, No. 1-13-40083-NHL, 2016 WL 5360750, at *7 (Bankr. E.D.N.Y. Sept. 23, 2016), *reconsideration*

*denied*, No. 1-13-40083-NHL, 2017 WL 1130166 (Bankr. E.D.N.Y. Mar. 24, 2017); *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 112 F. Supp. 3d 160, 167 (S.D.N.Y. 2015).

Plaintiffs' § 487 claims should be dismissed on this ground alone.

**B.    F&G's Advocacy Is Not Actionable Deceit Under § 487.**

Plaintiffs' § 487 claims are premised upon F&G's drafting and filing of papers on behalf of its clients in the context of adversarial proceedings against Plaintiffs. (*See* Am. Cplt. ¶ 188). Such advocacy is not actionable deceit under the statute. *See O'Callaghan v. Sifre*, 537 F. Supp. 2d 594 (S.D.N.Y. 2008); *Lazich v. Vittoria & Parker*, 189 A.D.2d 753, 754 (2d Dep't 1993).

New York courts have repeatedly held that the conduct of an attorney, taken on behalf of a client, in the context of adversarial proceedings does not meet the extreme and egregious threshold to impose liability under Judiciary Law § 487. *See Lazich*, 189 A.D.2d at 754; *Alliance Network, LLC v. Sidley Austin LLP*, 43 Misc. 3d 848, 859 (Sup. Ct., N.Y. Cty., 2014); *Seldon v. Lewis Brisbois Bisgaard & Smith LLP*, 116 A.D.3d 490, 491 (1st Dep't 2014); *Michalic v. Klat*, 128 A.D.2d 505, 506 (2d Dep't 1987).

In fact, even if the allegations made by F&G against Plaintiffs in the underlying actions were unfounded and made for improper purposes, they do not provide a basis for liability under § 487. An action grounded on claims that an attorney made meritless or unfounded allegations in state-court proceedings is not sufficient to make out a § 487 claim. *See O'Callaghan*, 537 F. Supp. 2d at 596; *see also Burton v. Krohn (In re Swift)*, No. 94-10285-CEC, 2016 WL 355515, at *5 (Bankr. E.D.N.Y. Jan. 27, 2016). That is because statements to the court that fall "well within the bounds of the adversarial proceeding" are excluded from liability under section 487. *Lazich* 189 A.D.2d at 754 (2d Dep't 1993); *see also Alliance Network, LLC*, 43 Misc. 3d at 862.

Given that Plaintiffs' Judiciary Law § 487 claims against F&G are predicated entirely on the alleged misstatements made in pleadings and motion papers, their claim is deficient as a matter of law and should be dismissed.

### C. Plaintiffs Have Not Alleged Facts Supporting A Plausible Inference That F&G Proximately Caused Them To Incur Any Recoverable Damages.

Further, Plaintiffs have failed to allege that any purported misconduct by F&G was the proximate cause of their alleged damages. It is well settled that a § 487 claim requires the plaintiffs to demonstrate that the alleged misconduct was the proximate cause of their injury. *See Creswell v. Sullivan & Cromwell*, 771 F. Supp. 580, 587 (S.D.N.Y. 1991), *aff'd*, 962 F.2d 2 (2d Cir. 1992); *Zimmerman v. Kohn*, 125 A.D.3d 413, 414 (1st Dep't 2015); *Strumwasser v. Zeiderman*, 102 A.D.3d 630 (1st Dep't 2013).

Here, Plaintiffs fail to allege *any* damages that resulted from F&G's purported misconduct--let alone that the damages were proximately caused by F&G's purported deceit— apart from a conclusory allegation of "economic and noneconomic damages." (Am. Cplt. ¶ 189). There are no well-pleaded facts alleged setting forth how F&G's alleged deceit caused these injuries. *See Twombly*, 550 U.S. at 570; *Gumarova v. Law Offices of Paul A. Boronow, P.C.*, 129 A.D.3d 911, 911–12 (2d Dep't 2015).

In fact, Michelo, has not alleged any form of damages at all, much less damages arising from or relating to the purported deceit. While Michelo was named as a defendant in a suit brought on behalf of the 2007-2 Trust, Michelo has not alleged that the commencement of that action harmed her in any way. Indeed, she does not even allege that she was served with a copy of the complaint (or even became aware of its existence) before the action was voluntarily discontinued by F&G. Michelo's claim that "defendants" (not specifically F&G) "falsely" credit reported her does not give rise to liability under the Judiciary Law.

In order for an attorney to be held liable for deceit under § 487, the deceit must "occur during the course of a pending judiciary proceeding." *Costalas v. Amalfitano*, 305 A.D.2d 202, 204 (1st Dep't 2003) (internal quotation marks and citations omitted). Where the alleged deceit occurs either prior to or after the completion of a lawsuit, such will not warrant liability under § 487. *See Stanski v. Ezersky*, 228 A.D.2d 311, 313 (1st Dep't 1996), *appeal denied*, 89 N.Y.2d 805, 653 N.Y.S.2d 918 (1996); *Sun Graphics Corp. v. Levy, Davis & Maher, LLP*, 94 A.D.3d 669 (1st Dep't 2012); *Henry v. Brenner*, 271 A.D.2d 647, 647-48 (2d Dep't 2000). Thus, even if F&G was alleged to have engaged in the false credit reporting (which it is not), it would not give rise to liability under § 487 because it did not occur during the course of a pending litigation.

### D. Tabar and the Seamans' Claims are Impermissibly Asserted In This Plenary Action.

Finally, Tabar and the Seamans' Judiciary Law § 487 claims should be dismissed because they constitute an impermissible collateral attack in this plenary action. New York courts have held that rather than assert § 487 claims in a plenary action, a plaintiff's sole remedy stemming from an attorney's conduct in the handling of litigation lies within that lawsuit itself. *Yalkowsky v. Century Apartments Assoc.*, 215 A.D.2d 214, 215 (1st Dep't 1995). Section 487 claims have repeatedly been dismissed where, as here, they constitute a collateral attack upon an order in another proceeding. *See Lazer Electric Corp. v. Cecchi*, No. 97 Civ. (DLC), 1997 WL 311925, at *6 (S.D.N.Y. June 10, 1997), *aff'd*, 1998 WL 88113 (Table) (2d Cir. Feb. 26, 1998); *Melnitzky v. Owen*, 19 A.D.3d 201 (1st Dep't 2005); *Alliance Network, LLC,* 43 Misc. 3d at 802; *Corcoran v. Giampetruzzi*, 29 Misc. 3d 1217(A) (Sup. Ct., Nassau Cty. Oct. 12, 2010).

### CONCLUSION

For the reasons stated above, Plaintiffs' claims should be dismissed.

Dated: New York, New York
October 15, 2018

By: */s/ Gregory T. Casamento*
Gregory T. Casamento
R. James DeRose, III
LOCKE LORD LLP
Brookfield Place, 20th Floor
200 Vesey Street
New York, NY 10281
(212) 415-8600
gcasamento@lockelord.com
rderose@lockelord.com

J. Matthew Goodin
111 South Wacker Drive
Suite 4100
Chicago, IL 60606
(312) 443-0700
jmgoodin@lockelord.com

*Attorneys for Defendants National Collegiate Student Loan Trust 2007-2 and National Collegiate Student Loan Trust 2007-3*

By: */s/ Morgan Marcus*
Morgan Ian Marcus
SESSIONS, FISHMAN NATHAN & ISRAEL LLC
120 S. LaSalle Street, Suite 1960
Chicago, Illinois 60603
(312) 578-0990
mmarcus@sessions.legal

*Attorneys for Defendants EGS Financial Care, Inc. and Transworld Systems, Inc.*

By: */s/ Carol Lastorino*
Carol A. Lastorino
Amanda Rae Griner
RIVKIN RADLER LLP
926 Rexcorp Plaza
Uniondale, New York 11556
(516) 357-3101
carol.lastorino@rivkin.com
amanda.gruman@rivkin.com

*Attorneys for Defendant Forster & Garbus LLP*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

MUTINTA MICHELO, KATHERINE SEAMAN,      :
and MARY RE SEAMAN, individually and on      :
behalf of all others similarly situated,      :
                                              :
                                              :      18-cv-1781-PGG
                                              :
                   Plaintiffs,                :
        v.                                    :
                                              :
                                              :
                                              :
                                              :
NATIONAL COLLEGIATE STUDENT LOAN      :
TRUST 2007-2; NATIONAL COLLEGIATE      :
STUDENT LOAN TRUST 2007-3;      :
TRANSWORLD SYSTEMS, INC., in its own right      :
and as successor to NCO FINANCIAL SYSTEMS,      :
INC.; EGS FINANCIAL CARE INC., formerly      :
known as NCO FINANCIAL SYSTEMS, INC.; and      :
FORSTER & GARBUS LLP,      :
                                              :
                   Defendants.                :
------------------------------------------------------------- X

## CERTIFICATE OF SERVICE

     I hereby certify that on the 15th day of October, 2018, I caused a true and correct copy of Defendants' NOTICE OF MOTION TO DISMISS and JOINT MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS to be served by E-mail, per the parties agreement, upon the following:

                        FRANK LLP

                        Gregory Alan Frank
                        Marvin Lawrence Frank
                        Asher Hawkins
                        370 Lexington Avenue, Suite 1706
                        New York, New York 10017
                        gfrank@frankllp.com
                        mfrank@frankllp.com
                        ahawkins@frankllp.com

                                      */s/ R. James DeRose, III*
                                      R. James DeRose, III, Esq.