UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MUTINTA MICHELO, KATHERINE
SEAMAN, MARY RE SEAMAN, and
SANDRA TABAR, individually and on
behalf of all others similarly situated,

                    Plaintiffs,

    - against -

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2007-2, NATIONAL
COLLEGIATE STUDENT LOAN TRUST
2007-3, TRANSWORLD SYSTEMS, INC.,
in its own right and as successor to NCO
FINANCIAL SYSTEMS, INC.; EGS
FINANCIAL CARE INC., formerly known as
NCO FINANCIAL SYSTEMS, INC.; and
FORSTER & GARBUS LLP,

                    Defendants.

---

CHRISTINA BIFULCO, FRANCIS BUTRY,
and CORI FRAUENHOFER, individually
and on behalf of all others similarly situated,

                    Plaintiffs,

    -against-

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2004-2, NATIONAL
COLLEGIATE STUDENT LOAN TRUST
2006-4, TRANSWORLD SYSTEMS, INC.,
in its own right and as successor to NCO
FINANCIAL SYSTEMS, INC.; EGS
FINANCIAL CARE INC., formerly known as
NCO FINANCIAL SYSTEMS, INC.; and
FORSTER & GARBUS LLP,

                    Defendants.

**MEMORANDUM**
**OPINION & ORDER**

18 Civ. 1781 (PGG)
18 Civ. 7692 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In these putative class actions, Plaintiffs allege that Defendants have orchestrated a scheme to "fraudulently obtain default judgments . . . for unprovable debts" against them in state court, and that Plaintiffs have carried out this scheme by, inter alia, filing documents containing false or deceptive information in those state proceedings. Plaintiffs assert claims for violations of the Fair Debt Collection Practices Act (the "FDCPA"); New York General Business Law ("GBL") Section 349; and New York Judiciary Law Section 487. (Am. Cmplt. (Dkt. No. 60) ¶¶ 1, 12, 170-89; Bifulco Cmplt. (Dkt. No. 1) ¶¶ 1, 11, 167-86)[1] The Defendants in each case have moved to dismiss. (See Michelo Mot. (Dkt. No. 80); Bifulco Mot. (Dkt. No. 37))

In a September 30, 2019 Order (Michelo Dkt. No. 107; Bifulco Dkt. No. 59), this Court granted Defendants' motions in part, and denied Defendants' motions in part. The purpose of this Opinion is to explain the Court's reasoning.

## BACKGROUND[2]

### I.    FACTS

Plaintiffs Muninta Michelo, Katherine Seaman, Mary Re Seaman, and Sandra Tabar (collectively, the "Michelo Plaintiffs") are current or former New York City residents and holders of student loan debt. (Am. Cmplt. (Dkt. No. 60) ¶¶ 22-25) Plaintiffs Christina Bifulco, Francis Butry, and Cori Frauenhofer (collectively, the "Bifulco Plaintiffs") are residents of Erie County, New York, and likewise hold student loan debt. (Bifulco Cmplt. (Dkt. No. 1) ¶¶ 21-23)

---

[1] All references or citations to the "Amended Complaint" are to the Amended Complaint in Michelo et al. v. National Collegiate Student Loan Trust 2007-2, et al., 18 Civ. 1781 (PGG). All references or citations to the "Bifulco Complaint" are to the Complaint in Bifulco et al. v. National Collegiate Student Loan Trust 2004-2, et al., 18 Civ. 7692 (PGG).

[2] Unless otherwise noted, the following facts are drawn from the Amended Complaint and the Bifulco Complaint, and are presumed true for purposes of resolving Defendants' motion to dismiss. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

Defendants in the <u>Michelo</u> action are two student loan trusts, their servicing agents, and a law firm retained by the trusts; Defendants in the <u>Bifulco</u> action are two different, but related, loan trusts, and the same servicing agents and law firm named in the <u>Michelo</u> action.[3]

Plaintiffs were each sued by one of the trusts – acting through the trusts' law firm – in state-court debt collection proceedings initiated between 2013 and 2015. (Am. Cmplt. (Dkt. No. 60) ¶¶ 63, 83, 114; <u>Bifulco</u> Cmplt. (Dkt. No. 1) ¶¶ 62, 94, 123) Plaintiffs allege that these suits are part of Defendants' "fraudulent scheme to make false representations to consumers and in court filings to obtain payments on debts they cannot prove they are owed," and have filed this action on behalf of a putative class of the scheme's alleged victims. (Am. Cmplt. (Dkt. No. 60) ¶ 1; <u>Bifulco</u> Cmplt. (Dkt. No. 1) ¶ 1)

### A. Overview of Defendants' Alleged Scheme

National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, National Collegiate Student Loan Trust 2004-2, and National Collegiate Student Loan Trust 2006-4 (collectively, "National Collegiate" or "the "Trust Defendants") are Delaware statutory trusts doing business in New York. (Am. Cmplt. (Dkt. No. 60) ¶¶ 26, 27; <u>Bifulco</u> Cmplt. (Dkt. No. 1) ¶¶ 24, 25) The Trust Defendants hold a combined 15,080 loans made to New York customers, with the principal loan amounts totaling over $191 million. (Am. Cmplt. (Dkt. No. 60) ¶¶ 26-27; <u>Bifulco</u> Cmplt. (Dkt. No. 1) ¶¶ 24-25) Defendant NCO Financial Systems, Inc. ("NCO") – currently doing business as EGS Financial Care, Inc. ("EGS") – was the Trust Defendants' servicing agent until November 1, 2014. EGS's successor in that role is Defendant Transworld Systems, Inc. (Am. Cmplt. (Dkt. No. 60) ¶¶ 28-29, 44-45; <u>Bifulco</u> Cmplt.

---

[3] In this Opinion, "Plaintiffs" refers collectively to Plaintiffs in <u>Michelo</u> and <u>Bifulco</u>. Likewise, "Defendants" includes the Defendants in both actions.

(Dkt. No. 1) ¶¶ 43-44; 26-27) The servicing agents, in turn, maintain "a nationwide network of debt-collection law firms[,] . . . through which [they] coordinate[] and implement[] collections on National Collegiate's behalf." (Am. Cmplt. (Dkt. No. 60) ¶ 47; Bifulco Cmplt. (Dkt. No. 1) ¶ 46) Defendant Forster & Garbus LLP ("Forster") is one of those law firms. This New York-based firm was "retained by National Collegiate to collect on consumer debt that National Collegiate claims to own," and "files and maintains actions in New York State courts seeking debt collection" from National Collegiate's purported debtors. (Am. Cmplt. (Dkt. No. 60) ¶ 30; Bifulco Cmplt. (Dkt. No. 1) ¶ 28)

According to Plaintiffs, Forster – on behalf of the other Defendants – initiates such suits even though Defendants "have no idea whether, and how much money, [the Trust Defendants] are owed." (Am. Cmplt. (Dkt. No. 60) ¶ 1; Bifulco Cmplt. (Dkt. No. 1) ¶ 1) Defendants allegedly "use[] a variety of illegal tricks to deceive consumers and state courts into believing that a National Collegiate Trust has a valid legal claim against consumers, when in reality it does not." (Am. Cmplt. (Dkt. No. 60) ¶ 7; Bifulco Cmplt. (Dkt. No. 1) ¶ 7) These "illegal tricks" include consistent misrepresentations in the state court complaints Forster files. For example, these complaints "falsely state that [one of the] Trust [Defendants] is the 'original creditor' of the loan at issue," even though "[n]o National Collegiate Trust is the 'original creditor'" for any loan that is the subject of the Trust Defendants' lawsuit. (Am. Cmplt. (Dkt. No. 60) ¶¶ 8, 10; Bifulco Cmplt. (Dkt. No. 1) ¶ 87 n.14) The complaints also represent that National Collegiate is "authorized to proceed" with the state debt collection actions. Plaintiffs assert that this representation is false, because National Collegiate has not registered with the New York Department of State or paid the taxes required of a foreign entity that regularly files suit in New York state courts. (Am. Cmplt. (Dkt. No. 60) ¶ 11; Bifulco Cmplt. (Dkt. No. 1) ¶¶ 8,

10) Finally, the state complaints falsely certify that the attorneys who signed the complaints have meaningfully reviewed the claims asserted therein. Plaintiffs allege that the complaints were "mass-produced by non-lawyers . . . and then signed by attorneys who [have] done nothing to confirm the validity of the allegations," and that Forster "[does] not possess, and did not review, any actual documentary support for the actions it prosecuted against any Plaintiff on any Trust Defendant's behalf." (Am. Cmplt. (Dkt. No. 60) ¶¶17, 55-56; Bifulco Cmplt. (Dkt. No. 1) ¶¶ 16, 54-55)

Defendants' alleged "tricks" also include "the widespread practice of submitting false or deceptive affidavits [in New York] state courts in order to . . . obtain default judgments." Like the state court complaints, the default judgment filings "are similarly auto-generated and robosigned, and/or filed in state courts without meaningful attorney review." (Am. Cmplt. (Dkt. No. 60) ¶¶ 12, 62; Bifulco Cmplt. (Dkt. No. 1) ¶¶ 11, 61) Moreover, employees and agents of Defendant Transworld "have falsely attested to personal knowledge of (1) the account records and the customer's debt, and (2) the chain of assignments establishing entitlement to sue," when in fact these employees and agents – like the Forster attorneys – "robosign the affidavits." (Am. Cmplt. (Dkt. No. 60) ¶ 13; Bifulco Cmplt. (Dkt. No. 1) ¶ 12) Pursuant to these improper practices, Defendants have illegally obtained judgments against, and extracted money from, Plaintiffs and putative class members.

**B.**    **Defendants' Debt Collection Actions**

Defendants commenced state debt collection proceedings against each of the named Plaintiffs, employing tactics characteristic of the alleged fraudulent debt collection scheme.

1. **Plaintiff Michelo**

Plaintiff Mutinta Michelo, now a Texas resident, previously resided in the Bronx. (Am. Cmplt. (Dkt. No. 60) ¶ 22) On July 14, 2015, Forster sued Michelo in Bronx County Civil Court on behalf of Trust 2007-2, asserting breach of contract and account stated claims against Michelo for allegedly defaulting on an educational loan. The complaint seeks damages of $22,047.88. (Id. ¶¶ 63, 66, 78) The complaint falsely states that the Trust is the original creditor of the loan, and that the Trust is authorized to proceed with the action. The signing attorney falsely certifies he or she has engaged in a meaningful review of the claims asserted. (Id. ¶¶ 67-68, 70-71, 76-77) Michelo further alleges – on information and belief – that Defendants "reported to credit bureaus that the underlying alleged debt was valid and owed, and that it was the subject of legal action." (Id. ¶ 79) Forster filed a notice voluntarily discontinuing the suit on December 9, 2016, but Defendants did not report the discontinuance to credit bureaus, a failure that negatively affected Michelo's credit and caused her economic and non-economic harm. (Id. ¶¶ 80-82)

2. **Plaintiffs Katherine Seaman and Mary Re Seaman**

Plaintiffs Katherine Seaman and Mary Re Seaman are Queens residents. (Id. ¶¶ 23-24) On May 29, 2014, Forster sued the Seaman Plaintiffs in Queens County Civil Court, on behalf of Trust 2007-3. (Id. ¶ 83) The complaint asserts breach of contract and account stated claims, and alleges that the Seamans defaulted on a promissory note agreement. The complaint seeks $24,324.29 in damages. (Id. ¶¶ 86, 98) The complaint falsely states that the Trust is the original creditor of the loan, and that the Trust is authorized to proceed with the action. The signing attorney falsely certifies that he or she has meaningfully reviewed the claims asserted. (Id. ¶¶ 87-88, 90-91, 96-97)

On March 30, 2015, Forster moved for a default judgment against the Seaman Plaintiffs. Accompanying the default application was an affidavit from Transworld employee James H. Cummins (the "Cummins Affidavit"), which falsely certifies that Cummins had "personal knowledge of the business records . . . sent to [Transworld] that detail the education loan records" in question. Cummins also falsely certifies that he has "personal knowledge of the record management practices and procedures of [the Trust] and the practices and procedures [the Trust] requires of its loan services and other agents." The Cummins Affidavit also contains a defective notarization. (Id. ¶¶ 99-101, 103-06) The default judgment application also falsely certifies that Forster attorney Joel Leiderman has meaningfully reviewed the Trusts' claims. (Id. ¶¶ 107-08) The state court granted the application for a default judgment on March 31, 2015, and awarded National Collegiate $24,609.29 in damages. (Id. ¶¶ 110-11) As a result of this judgment, on April 15, 2015, Plaintiff Mary Re Seaman's wages were garnished. Plaintiff Katherine Seaman's wages have not been garnished, but she "fears she likewise will be subjected to garnishment [as a result of the Trust's] unlawfully procured judgment." (Id. ¶¶ 111-13)

### 3. Plaintiff Sandra Tabar

Plaintiff Sandra Tabar is a Kings County resident. (Id. ¶ 25) On January 14, 2014, Forster sued Tabar in Bronx County Civil Court on behalf of Trust 2007-2, asserting claims for breach of contract and account stated, and alleging that Tabar was in default on a promissory note agreement. The complaint seeks $11,782.40 in damages. (Id. ¶¶ 114, 117, 129) As with the complaints filed against Michelo and the Seamans, the complaint against Tabar falsely states that the Trust is the original creditor of the loan, and that the Trust is authorized to proceed with the action. The signing attorney falsely certifies that he or she has engaged in a meaningful review of the claims asserted. (Id. ¶¶ 118-19, 121-22, 127-28) Moreover, a

February 27, 2014 affidavit of service filed in connection with the suit – which is signed by Kerron Melville, an agent of Progress Process Service, Inc. – falsely states that Melville served Plaintiff Tabar by leaving copies of the summons and state complaint with a co-tenant and depositing copies of these documents in the mail. (Id. ¶¶ 131-32)

On April 3, 2014, Forster sought a default judgment against Tabar. (Id. ¶ 133) Accompanying the application is an affidavit from NCO employee Dudley Turner (the "Turner Affidavit"). The Turner Affidavit falsely states that Turner has "personal knowledge of the business records . . . sent to NCO that detail the education loan records" in question; falsely states that Turner has "personal knowledge of the record management practices and procedures of [Trust 2007-2] and the practices and procedures [Trust 2007-2] requires of its loan servicers and other agents"; and contains a defective notarization. (Id. ¶¶ 134-35; 137-40) The default judgment application also falsely certifies that Forster attorney Joel Leiderman has conducted a meaningful review of the Trust's claims. (Id. ¶¶ 141-42)

The state court granted the application for default on March 27, 2014, and awarded National Collegiate $12,062.40 in damages. (Id. ¶ 144) On April 12, 2018, Plaintiff submitted an order to show cause to vacate the default judgment, contending that she had not been properly served and had only recently learned of the judgment. (Id. ¶¶ 145-46) On June 18, 2018, the judgment was vacated, and the case was restored to the court's calendar. (Id. ¶ 149) On August 13, 2018, Forster attorney Valerie Watts informed Tabar that the judgment was obtained in error, and a stipulation discontinuing the action was subsequently filed. (Id. ¶¶ 153-54) Tabar suffered harm in the form of costs connected to the suit, and mental and emotional anguish. (Id. ¶ 155)

### 4. **Plaintiff Christina Bifulco**

Christina Bifulco is an Erie County resident. (Bifulco Cmplt. (Dkt. No. 1) ¶ 21) Forster sued Bifulco in Buffalo City Court on behalf of Trust 2004-02, asserting claims for breach of contract and account stated, and alleging that she was in default on a promissory note agreement. The complaint seeks $12,541.44 in damages. (Id. ¶¶ 62, 65, 74) The complaint does not identify the entity that originated the loan, and falsely states that the Trust is authorized to proceed with the action. The signing attorney falsely certifies that he or she has conducted a meaningful review of the claims asserted. (Id. ¶¶ 66-67, 72-73)

On March 24, 2014, Forster filed an application for default judgment against Bifulco. (Id. ¶ 75) Accompanying the application is an affidavit from NCO employee Colleen Y. Morgan (the "Morgan Affidavit"), which falsely states that she has personal knowledge of the business records relating to the loan in question and the record management practices and procedures of the trust and its agents, and contains a defective notarization. (Id. ¶¶ 76, 77, 79-82) The default judgment application also falsely certifies that Forster attorney Joel Leiderman has conducted a meaningful review of the trusts' claims. (Id. ¶¶ 83-84) In an affirmation filed in support of the application for a default judgment, Liederman falsely describes the trust as the original creditor. (Id. ¶ 87)

The application for a default judgment was granted on March 25, 2014, and the court awarded the Trust $12,864.94 in damages. (Id. ¶ 89) On September 15, 2015, the Erie County Clerk recorded a lien in connection with the default. (Id. ¶ 90) Bifulco's wages have been garnished as a result of the default judgment. Plaintiffs allege – on information and belief – that Defendants have falsely reported to credit bureaus that the underlying debt is valid and owed. (Id. ¶¶ 91-93)

**5.     Plaintiff Francis Butry**

Like Bifulco, Plaintiff Francis Butry is an Erie County resident. (Id. ¶ 22)
Forster sued Plaintiff Butry on November 15, 2013, on behalf of Trust 2004-2, in Tonawanda
City Court, asserting claims for breach of contract and account stated, and alleging that Butry
was in default on a promissory note agreement. The complaint seeks $8,419.32 in damages. (Id.
¶¶ 94, 97, 106) The complaint does not identify the entity that originated the loan, and falsely
states that the Trust is authorized to proceed with the action. The signing attorney falsely
certifies that he or she has engaged in a meaningful review of the claims asserted. (Id. ¶¶ 98-99,
104-05)

On September 18, 2014, Forster filed an application for a default judgment
against Butry. (Id. ¶ 107) Accompanying the application is an affidavit from NCO employee
Jonathan Boyd, which (Plaintiffs allege on information and belief falsely) states that he has
personal knowledge of the business records relating to the loan in question, and the record
management practices and procedures of the trust and its agents, and which allegedly contains a
defective notarization. (Id. ¶¶ 107-09, 111-14) The default judgment application also falsely
certifies that Forster attorney Joel Leiderman has meaningfully reviewed the trusts' claims. (Id.
¶¶ 115-16) In an affirmation submitted in support of the application for a default judgment,
Liederman also falsely describes the trust as the original creditor. (Id. ¶ 118)

The application for a default judgment was granted on September 18, 2014, and
the court awarded the trust $12,864.94 in damages. (Id. ¶ 89) On October 21, 2014, the Erie
County Clerk recorded a lien in connection with the default. (Id. ¶ 121) Plaintiffs allege – on
information and belief – that Defendants falsely reported to credit bureaus that the underlying
debt is valid and owed. (Id. ¶ 122)

### 6.  **Plaintiff Cori Frauenhofer**

Cori Frauenhofer is also an Erie County resident. (Id. ¶ 23) On June 19, 2013, Forster sued Frauenhofer in Buffalo City Court, on behalf of Trust 2006-04, asserting claims for breach of contract and account stated, and alleging that she was in default on a promissory note agreement. The complaint seeks $7,242.12 in damages. (Id. ¶¶ 123, 126, 135) The complaint does not identify the entity that originated the loan, and falsely states that the Trust is authorized to proceed with the action. The signing attorney falsely certifies that he or she has engaged in a meaningful review of the claims asserted. (Id. ¶¶ 127-28, 133-34)

On December 6, 2013, Forster filed an application for a default judgment against Frauenhofer. (Id. ¶ 136) Accompanying the application is an affidavit from NCO employee Chandra Alphabet. Plaintiffs allege, on information and belief, that the affidavit falsely states that Alphabet has personal knowledge of the records relating to the loan in question, and the record management practices and procedures of the trust and its agents. Plaintiffs further allege, on information and belief, that the affidavit contains a defective notarization. (Id. ¶¶ 137-38, 140-43) The default judgment application also falsely certifies that Forster attorney Joel Leiderman has conducted a meaningful review of the trusts' claims. (Id. ¶¶ 144-45) In an affirmation submitted in support of the application for a default judgment, Liederman falsely describes the trust as the original creditor. (Id. ¶ 147)

The application for a default judgment was granted on December 10, 2013. The court awarded the Trust $7,565.62 in damages. (Id. ¶ 149) On February 11, 2014, the Erie County Clerk recorded a lien in connection with the default. (Id. ¶ 150) Plaintiffs allege, on information and belief, that Frauenhofer's wages have been garnished. (Id. ¶¶ 151-52)

### C.    CFPB Enforcement Action

On September 18, 2017, the Consumer Financial Protection Bureau ("CFPB") issued a consent order concerning National Collegiate and Transworld and published its findings "following a years-long investigation." (Am. Cmplt. (Dkt. No. 60) ¶ 161; Bifulco Cmplt. (Dkt. No. 1) ¶ 158) The CFPB concludes that, inter alia, "Defendants filed at least 1,214 collections lawsuits against consumers even though the documentation needed to prove they owned the loans was missing," and that "Defendants knew, or their processes should have uncovered, that these . . . documents were missing or flawed, yet Defendants continued to file collections lawsuits." Transworld agents filed affidavits "sw[earing] that they had personal knowledge of the education loan records evidencing the debt . . . [;] personal knowledge of the business records . . . showing that consumers owed debts to the Defendants[; and] personal knowledge of the record management practices and procedures of . . . [National Collegiate]" when they lacked such knowledge. (Am. Cmplt. (Dkt. No. 60) ¶¶ 163, 165; Bifulco Cmplt. (Dkt. No. 1) ¶¶ 160, 162) Plaintiffs in this action maintain that they "did not know, and could not have known, essential elements of their claims until the publication of the CFPB's findings. . . ." (Am. Cmplt. (Dkt. No. 60) ¶ 191; Bifulco Cmplt. (Dkt. No. 1) ¶ 188)

### D.    Procedural History

The Complaint in Michelo – brought by Plaintiffs Michelo, Katherine Seaman, and Mary Re Seaman – was filed on February 28, 2018. (See Michelo Cmplt. (Dkt. No. 8)) The Complaint asserts violations of: (1) the Fair Debt Collection Practices Act ("FDCPA") (against Defendants Transworld, NCO, EGS, and Forster); (2) New York General Business Law § 349 (against all Defendants); and (3) New York Judiciary Law § 487 (against Forster). (Id. ¶¶ 119-38) The Michelo Defendants informed this Court of their intention to move to dismiss, and this

Court entered a briefing schedule providing that these defendants' moving papers were due on August 24, 2018, and opposition and reply briefs were due on September 25, 2018 and October 25, 2018, respectively. (See Order (Dkt. No. 55)) On September 14, 2018, however, in the midst of the briefing, the Michelo Plaintiffs filed the Amended Complaint. The Amended Complaint adds Plaintiff Tabar as a named plaintiff, and includes certain allegations not present in the initial pleading. The causes of action are, however, the same as in the initial complaint. (Am. Cmplt. (Dkt. No. 60)) The parties proposed, and the Court entered, a new briefing schedule on a motion to dismiss the Amended Complaint. (Michelo Order (Dkt. No. 64))

On August 23, 2018, the Complaint in Bifulco was filed. This Court accepted the new action as related to Michelo. (See Bifulco Cmplt. (Dkt. No. 1); Aug. 28, 2018 unnumbered docket entry) The allegations in Bifulco are nearly identical to those in Michelo, and the causes of action are the same. (Bifulco Cmplt. ¶¶ 167-86) On November 29, 2018, this Court ordered that Michelo and Bifulco be consolidated. The Court also extended the briefing schedule in Michelo, and entered a briefing schedule for the Bifulco Defendants' motion to dismiss. (Michelo Order (Dkt. No. 78); Bifulco Order (Dkt. No. 32)) Both motions to dismiss are now fully briefed. (See Michelo Dkt. Nos. 80-83; Bifulco Dkt. Nos. 37-39)

Defendants seek dismissal on numerous grounds, and there is substantial overlap in the arguments made in Defendants' motions.[4] Defendants contend, inter alia, that some or all of Plaintiffs' claims are precluded by (1) the Rooker-Feldman doctrine, (2) res judicata, (3) collateral estoppel, (4) the litigation privilege, and (5) the Noerr-Pennington doctrine. Defendants further contend that (1) Plaintiffs' FDCPA and GBL Section 349 claims are time-

---

[4] Indeed, the Bifulco Defendants' motion to dismiss simply references and incorporates various arguments set forth in the Michelo Defendants' brief.

barred; (2) Plaintiffs have not alleged misrepresentations that are materially misleading or deceitful; (3) Plaintiffs have not alleged actual injuries under GBL Section 349; and (4) Plaintiffs' allegations under Judiciary Law Section 487 are improperly brought, not actionable under that law, and, in any event, insufficiently pled. (See generally Michelo Def. Br. (Dkt. No. 81); Bifulco Def. Br. (Dkt. No. 38))

## DISCUSSION

### I.   MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Allegations that "are no more than conclusions[] are not entitled to the assumption of truth," however. Iqbal, 556 U.S. at 679. A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" id. at 678, offers "'a formulaic recitation of the elements of a cause of action,'" id., and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). While legal conclusions "can provide the complaint's framework, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

## II.    ANALYSIS

### A.    The *Rooker-Feldman* Doctrine Does Not Bar Plaintiffs' Claims

Defendants contend that the Seaman plaintiffs' claims are precluded by the Rooker-Feldman doctrine, because their claims "depend on issues resolved by, and injuries purportedly resulting from, the Seaman [Default] Judgment. . . . The only way the Seamans' claims can be addressed here is if this Court reviews and effectively rejects the Seaman Judgment." (Michelo Def. Br. (Dkt. No. 81) at 15) Defendants likewise contend that the Rooker-Feldman doctrine bars Plaintiffs Bifulco, Butry, and Frauenhofer's claims. (Bifulco Def. Br. (Dkt. No. 38) at 6 ("The [Bifulco] Plaintiffs are impermissibly seeking to challenge the judgments entered against them in state court proceedings. Under the Rooker-Feldman doctrine, this Court does not have jurisdiction to entertain these collateral attacks."))

Pursuant to the Rooker-Feldman doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). The Second Circuit has identified "four requirements for the application of Rooker-Feldman." Id. at 85. "First, the federal-court

15

plaintiff must have lost in state court. Second, the plaintiff must 'complain[] of injuries caused by [a] state-court judgment[.]' Third, the plaintiff must 'invit[e] district court review and rejection of [that] judgment[].' Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced[.]'" Id. (final bracket added) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). However, the doctrine will not apply where plaintiffs' claims "'speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments.'" Sung Cho v. City of New York, 910 F.3d 639, 645-46 (2d Cir. 2018) (quoting Sykes v. Mel S. Harris and Assocs., LLC, 780 F.3d 70, 94-95 (2d Cir. 2015); see also Gabriele v. Am. Home Mortg. Servicing, Inc., 503 F. App'x 89, 92 (2d Cir. 2012) (concluding that district court erred in finding that the Rooker-Feldman doctrine barred plaintiff's claims, because plaintiff "does not complain of injuries caused by the state court judgments[;] . . . [t]he alleged litigation misconduct was not the product of the state court's . . . decision[s], but rather, was 'simply ratified, acquiesced in, or left unpunished by [the state court judgment]'" (quoting Hoblock, 422 F.3d at 88)); Lautman v. 2800 Coyle St. Owners Corp., No. 14-CV-1868 (ARR) (VVP), 2014 WL 4843947, at *6 (E.D.N.Y. Sept. 26, 2014) ("[P]laintiff does not complain of injuries caused by the state court [default] judgment or ask this court to reject that judgment. . . . Instead, he asserts independent injuries arising under the FDCPA, alleging that the defendants engaged in fraudulent, misleading, and abusive conduct toward him during the course of litigating the Housing Court action. He does not ask this court to vacate the Housing Court entry of default, but instead seeks separate remedies available to him under the FDCPA.")).

In Sykes, for example, plaintiffs asserted FDCPA, RICO, GBL § 349, and Judiciary Law § 487 claims against defendants who allegedly constructed a "default judgment

mill." The scheme operated "by obtaining charged-off consumer debt, . . . initiating a debt-collection action by serving a summons and complaint on the purported debtor[,] and . . . submitting fraudulent documents," including "an 'affidavit of merit' attesting to [the affiant's] personal knowledge regarding the defendant's debt and an affidavit of service as proof of service." These fraudulent documents were submitted to "the New York City Civil Court in order to obtain a default judgment." Sykes, 780 F.3d at 75-76. The Second Circuit agreed that "'plaintiffs assert claims independent of the state-court judgments and do not seek to overturn them.'" Id. at 94 (quoting Sykes v. Mel S. Harris and Assocs., LLC, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010)). The Second Circuit reasoned that "claims sounding under the FDCPA, RICO, and state law speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments." Id. at 94-95. Relying on Sykes, another court in this district refused to dismiss on Rooker-Feldman grounds a putative class action alleging that defendants, a debt-buying company and its law firm, "brought and maintained consumer debt lawsuits without having sufficient evidence to prove the claimed debts, and filed false, deceptive, and misleading affidavits in support of their claims to obtain default judgments," in violation of the FDCPA, RICO, and GBL § 349. Toohey v. Portfolio Recovery Assocs., LLC, No. 15-CV-8098 (GBD), 2016 WL 4473016, at *1 (S.D.N.Y. Aug. 22, 2016).[5] The district court explained: "Because Toohey does not seek to undo the state court judgment through this federal action, but merely seeks damages based on Defendants' alleged independent wrongful conduct, the Rooker-Feldman doctrine does not apply . . . ." Id. at *4.

---

[5] The Toohey court dismissed the RICO and GBL claims on other grounds. See Toohey, 2016 WL 4473016, at *10.

Defendants do not acknowledge the Second Circuit's decision in Sykes, much less make an effort to distinguish Sykes. The Court concludes that the Rooker-Feldman doctrine presents no obstacle to the claims of the Seaman Plaintiffs and the Bifulco Plaintiffs.[6]

**B.   Plaintiffs' GBL Section 349 Claims Are Not Barred by _Res Judicata_ or Collateral Estoppel**

Defendants assert that the Seaman Plaintiffs' GBL Section 349 claims "depend on the [default] Judgment being wrongly obtained and they look to re-litigate that Judg[]ment." (Michelo Br. (Dkt. No. 81) at 29)  Defendants contend that the Seaman Plaintiffs' claims are barred by res judicata and collateral estoppel, and that all of the Bifulco Plaintiffs' claims are

---

[6] Instead of addressing Sykes, Defendants cite several district court decisions applying Rooker-Feldman to dismiss claims.  In most of these cases, plaintiffs sought – in the state courts that entered judgment against them – to vacate those judgments on the same grounds asserted in their subsequent federal suits. See, e.g., Francis v. Nichols, No. 16-CV-1848 (CS), 2017 WL 1064719, at *2 (S.D.N.Y. Mar. 21, 2017) ("Plaintiff moved to vacate the judgment of foreclosure and sale based on 'fraud upon the court.' . . . The state court denied the motion to vacate. . . ." (internal citations omitted)); Nath v. Select Portfolio Servicing, Inc., No. 15-CV-8183 (KMK), 2017 WL 782914, at *2 (S.D.N.Y. Feb. 28, 2017), aff'd, 732 F. App'x 85 (2d Cir. 2018) ("[A]fter the State Court Foreclosure Judgment was signed, but before it was entered, Plaintiff . . . filed an order to show cause . . . seeking, among other things, leave to renew Plaintiff's motion for summary judgment and vacatur of" the state court's decision. . . . [T]he State Court denied Nath's Order to Show Cause."); Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 502-03 (S.D.N.Y. 2016) ("The plaintiff appears to have originally defaulted in responding to the foreclosure action. . . . U.S. Bank then moved for an Order of Reference, which Graham opposed . . . seeking to vacate his default and to dismiss the foreclosure complaint for lack of standing. . . . [T]he state court . . . denied Graham's motion. . . . U.S. Bank moved for a judgment of foreclosure and sale.  Graham opposed the motion, arguing that U.S. Bank lacked standing.  The state court granted U.S. Bank's motion. . . ." (internal citations omitted)); Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 157 (E.D.N.Y. 2010), aff'd, 446 F. App'x 360 (2d Cir. 2011) ("Swiatkowski moved by Order to Show Cause in state court to vacate the judgment of foreclosure.  That motion was denied. . . . Swiatkowski filed a petition to remove the Foreclosure Action to federal court because 'the state court cannot, is unwilling, or that an extra-judicial climate exists that is prejudicial to petitioner's . . . rights because [of] racial, ethnic, or religious or other bias.'" (citation omitted)).

barred by res judicata.[7]  (Bifulco Def. Br. (Dkt. No. 38) at 11)  Defendants' arguments are not

persuasive.

### 1.  Res Judicata

The doctrine of res judicata – or "claim preclusion" – applies under New York

law where "a plaintiff seeks 'to litigate those matters for which a valid final judgment ha[s]

already been entered in a prior action[,] when the claims interposed could have and should have

been litigated in that former action.'" Goddard v. Citibank, NA, No. 04CV5317 (NGG) (LB),

2006 WL 842925, at *7 (E.D.N.Y. Mar. 27, 2006) (quoting Smith v. Weinberger, 994 F. Supp.

418, 421 (E.D.N.Y. 1998).  An earlier judgment will have preclusive effect if that earlier

judgment "'was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in

a case involving the same parties or their privies, and (4) involving the same cause of action.'"

In re Adelphia Recovery Tr., 634 F.3d 678, 694 (2d Cir. 2011) (quoting EDP Med. Computer

Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007)).  In evaluating whether litigation

"involv[es] the same cause of action," courts consider "whether the same transaction or

connected series of transactions is at issue, whether the same evidence is needed to support both

claims, and whether the facts essential to the second were present in the first."  NLRB v. United

Technologies Corp., 706 F.2d 1254, 1260 (2d Cir. 1983)); see also Medcalf v. Thompson Hine

LLP, 84 F. Supp. 3d 313, 325 (S.D.N.Y. 2015) ("The question of whether two actions arise from

the same transaction or claim is addressed by determining[, inter alia,] if the underlying facts are

related in time, space, origin, or motivation. . . ." (internal quotation marks and citation omitted))

Here, the issue of whether res judicata bars Plaintiffs' claims turns on whether the

default judgments issued against the Seaman Plaintiffs and the Bifulco Plaintiffs "involve the

---

[7]  Defendants do not argue that the Bifulco Plaintiffs' claims are barred by collateral estoppel.

same cause of action" as Plaintiffs' GBL Section 349 claims.[8] According to Defendants, "the Seamans' claims arise from the same series of transactions at issue in the state-court action — namely, the Seamans' default on their loan obligations and the judicial efforts to enforce the note owners' rights regarding those obligations." (Michelo Def. Br. (Dkt. No. 81) at 30) Defendants proffer the same reasoning as to the Bifulco Plaintiffs. (Bifulco Def. Br. (Dkt. No. 38) at 11)

---

[8] Plaintiffs also argue that "res judicata cannot apply where the prior action concluded in a default judgment" (Michelo Opp. Br. (Dkt. No. 82) at 50), but they have not provided persuasive authority in support of this argument. Two of the three cases cited by Plaintiffs – Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449 (1985), and Zimmerman v. Tower Ins. Co., 13 A.D.3d 137 (1st Dept. 2004) involve collateral estoppel rather than res judicata. As discussed below, collateral estoppel under New York law applies "to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate." Curry v. City of Syracuse, 316 F.3d 324, 331 (2d Cir. 2003) (quotation marks and citations omitted). Application of res judicata does not require that an issue be "already decided." See N. River Ins. Co. v. Allstate Ins. Co., 866 F. Supp. 123, 127 (S.D.N.Y. 1994) (considering federal preclusion doctrines) ("The crucial distinction between these two preclusion doctrines is that res judicata prohibits litigation of matters between parties that they may never have argued or were not decided.") Both Kaufman and Zimmerman conclude that collateral estoppel does not apply in the context of default because the issues raised were "not actually litigated" in the prior proceedings. Kaufman, 65 N.Y.2d at 456; Zimmerman,13 A.D.3d at 140. This logic has little bearing on the application of res judicata, since "actual litigation" is not a requirement for application of this doctrine.

Matter of Rosa v. June Elec. Corp., 140 A.D.3d 1353, 1357 (3d Dept. 2016), also cited by Plaintiffs, relies on Kaufman in concluding that "the fact that the federal action was determined upon default confirms that the issue of coverage was never 'actually litigated' in that court, thereby precluding application of collateral estoppel or res judicata." To the extent the Rosa court finds that "actual litigation" is a requirement for application of res judicata, it is mistaken. Indeed, the Second Circuit has determined that a default judgment precludes claims that could have been brought in the action resulting in default. See Baker v. Latham Sparrowbush Assocs., 72 F.3d 246, 255-56 (2d Cir. 1995) ("Inasmuch as the state court default judgment is valid, it is res judicata as to all claims and counterclaims that could have been brought in the earlier action." (citing Action Pictures, Inc. v. Films Around the World Inc., 202 A.D.2d 188, 188 (1st Dept. 1994) ("Michigan's judgment has res judicata effect with regard to the instant parties and their claims. . . . That the Michigan judgment was entered on default does not affect its preclusive effect."); Silverman v. Leucadia, Inc., 156 A.D.2d 442, 443 (2d Dept. 1989) ("A default judgment is . . . conclusive for res judicata purposes.")); see also Clark v. Cavalry Portfolio Servs., LLC, No. 17 CV 99 (VB), 2017 WL 6757224, at *3 (S.D.N.Y. Dec. 29, 2017) ("[U]nder New York law a default judgment . . . has res judicata effect equal to that of a judgment on the merits.").

Defendants' argument is not persuasive. The court in <u>Toohey</u> – addressing

essentially the same <u>res judicata</u> argument – explains that

> [r]es judicata does not bar Toohey's claims because the causes of action alleged do not arise out of the same factual grouping as the underlying debt-collection lawsuit. The facts relevant to the instant causes of action (e.g., whether Defendants filed a false, misleading or deceptive affidavit and were engaged in an ongoing scheme to defraud putative debtors) arose independent of the facts relevant to the underlying debt-collection lawsuit (i.e., whether Toohey borrowed money from HSBC and failed to pay it back, and whether HSBC assigned that debt to [Portfolio Recovery Associates]).

<u>Toohey</u>, 2016 WL 4473016, at *5; <u>see also</u> <u>Clark v. Cavalry Portfolio Servs., LLC</u>, No. 17 CV

99 (VB), 2017 WL 6757224, at *4 (S.D.N.Y. Dec. 29, 2017) ("Plaintiff's fifth cause of action

asserts 'the filing and serving of the Complaint' and 'the application for a default Judgment

amounted to a deceptive act and practice.' . . . This claim arises from facts unrelated to

defendants' right to collect on the underlying debt. Thus, pursuant to the transactional approach

applied under New York law . . . , this claim is not barred by <u>res judicata</u>.").

  As in <u>Toohey</u>, the state court debt collection proceedings Defendants brought

against the Seamans and against the <u>Bifulco</u> Plaintiffs presumably concerned these Plaintiffs'

loans, and subsequent payments they made or failed to make on those loans, while the claims in

the instant proceedings concern Defendants' alleged fraudulent scheme, and their filing of

alleged false and deceptive documents in court. The evidence necessary to support Plaintiffs'

GBL Section 349 claims is almost entirely different from the evidence that would be required to

challenge Defendants' debt collection action, and the facts "essential" to Plaintiff's GBL Section

349 claims – whether Defendants' statements were "deceptive or misleading in a material way,"

or whether Plaintiffs have been injured, for example – were not at all "present in the first"

proceeding. Accordingly, Plaintiffs' GBL Section 349 claims do not involve the same causes of

action, or arise from the same transactions, as the default judgments, and therefore Defendants'

motion to dismiss the Seamans' GBL Section 349 claims and the Bifulco Plaintiffs' GBL Section 349 claims on the basis of res judicata is denied.[9]

## 2.    **Collateral Estoppel**

"Under New York law, collateral estoppel," or "issue preclusion," "'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same.'" LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002) (quoting Ryan v. New York Tel. Co., 62 N.Y.2d 494, 500 (1984)). The doctrine applies "'if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action.'" Id. (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999)). "The burden of proof with respect to whether an issue is identical to one that was raised and necessarily decided in the prior action rests squarely on the party moving for preclusion." Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000) Moreover, under New York law – unlike under federal law – "the issue that was raised previously must be 'decisive of the present action.'" LaFleur v. Whitman, 300 F.3d 256, 271 (2d Cir. 2002) (quoting Schwarz v. Public Adm'r of Bronx, 24 N.Y.2d 65, 71 (1969)).

---

[9] Even if the requirements for application of res judicata were met, the Court likely would deny Defendants' motion, because "New York law . . . provides that a plaintiff may attempt a collateral attack on a judgment based . . . on . . . a demonstration that the prior judgment was procured by fraud." Weinberger, 994 F. Supp. at 421. Because Plaintiffs allege that the Defendants obtained the default judgment against them through their fraudulent scheme, their allegations fall within this exception to res judicata. See Hinds v. Option One Mortg. Corp., No. 11-CV-06149 (NGG) (RER), 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) ("Inasmuch as Plaintiff alleges that Defendants procured the state court judgment by fraud, the Court should find that res judicata does not bar Plaintiff's . . . claims"), report and recommendation adopted, No. 11-CIV-6149 (NGG) (RER), 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013).

"[C]ollateral estoppel is generally not available where the judgment in the prior action was obtained on default," In re Abady, 22 A.D.3d 71, 84 (1st Dept. 2005) (citation omitted), although the doctrine "may be properly applied to default judgments where the party against whom preclusion is sought appears in the prior action, yet willfully and deliberately refused to participate in those litigation proceedings, or abandons them, despite a full and fair opportunity to do so." Id. at 85; see also Baez v. Rodriguez, No. 08 CIV 7948 (GBD) (MHD), 2010 WL 11597564, at *11 (S.D.N.Y. Sept. 30, 2010) ("[I]t bears emphasis that New York courts generally do not give collateral-estoppel effect to default orders, since such orders do not ordinarily determine an issue in the sense required for collateral-estoppel effect."), report and recommendation adopted, No. 08 CV 7948 (GBD) (MHD), 2011 WL 182106 (S.D.N.Y. Jan. 18, 2011).[10]

Here, because "the judgment in the prior action was obtained on default," and because there is no indication that the Seaman plaintiffs "appear[ed] in the prior action, yet willfully and deliberately refused to participate in those proceedings, or abandon[ed] them," the

---

[10] Defendants do not acknowledge these cases, but assert that, "[l]ike res judicata, collateral estoppel is applicable to default judgments," citing Sterling Doubleday Enterprises, L.P. v. Marro, 238 A.D.2d 502, 503 (2d Dept. 1997). (See Michelo Def. Br. (Dkt. No. 75-1) at 32-33) In that case, the Second Department concluded that various affirmative defenses in a proposed amended answer were "barred by the doctrines of res judicata and collateral estoppel." The court stated that "a default judgment bars the litigation of issues that were, or could have been, determined in the prior action." Id. The latter language sounds in res judicata, not collateral estoppel, and the cases that Sterling Doubleday cites for the proposition that a default judgment has preclusive effect do not support the general proposition that default judgments have collateral estoppel effect. See Cohen v. Bloom, 234 A.D.2d 499, 499-50 (2d Dept. 1996) (addressing the preclusive effect of default judgments for res judicata purposes); Tantillo v. Giglio, 156 A.D.2d 664, 665 (2d Dept. 1989) (same); Silverman v. Leucadia, Inc., 156 A.D.2d 442, 444 (2d Dept. 1989) (same); Curiale v. Ardra Ins. Co., 202 A.D.2d 252, 253 (1st Dept. 1994) (determining that "[u]nder the circumstances, the default judgment . . . may be given collateral estoppel effect" where default was entered against a corporate defendant "for its admitted failure to post adequate security with the court as specifically required by New York Insurance Law § 1213(c)."

default judgment does not collaterally estop the Seaman plaintiffs' GBL Section 349 claims. Defendants' motion to dismiss these plaintiffs' claims on the grounds of collateral estoppel is therefore denied.

### C. The Litigation Privilege Does Not Preclude Claims Based on Statements Made During Defendants' Suits Against Plaintiffs

Defendants argue that Plaintiffs' claims "are based on statements [Defendants] made in state-court complaints, the Cummins Affidavit, the Dudley Affidavit, [and in other court-filed affidavits]," and that use of these materials in the instant actions is barred by New York's "litigation privilege." (See Michelo Def. Br. (Dkt. No. 81) at 23; Bifulco Def. Br. (Dkt. No. 38) at 4)

"Under New York law, 'statements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue to be resolved in the proceeding.'" Lipin v. Hunt, No. 14 Civ. 1081 (RJS), 2015 WL 1344406, at *8 (S.D.N.Y. Mar. 20, 2015) (quoting Officemax, Inc. v. Cinotti, 966 F. Supp.2d 74, 79 (E.D.N.Y. 2013)). The privilege "is the broadest possible of privileges and any matter which . . . may be or may become material or pertinent is protected . . . even though such matter may be ineffectual as a defense." Kelly v. Albarino, 485 F.3d 664, 666 (2d Cir. 2007).

This privilege applies, however, in the context of defamation, slander, and libel actions. As the New York Court of Appeals has explained,

> [c]ommencing with th[e] Court's 1897 decision in Youmans v. Smith, 153 N[.]Y[.] 214 (1897), we have held that absolute immunity from liability for defamation exists for . . . statements made by attorneys in connection with a proceeding before a court "when such words or writings are material and pertinent to the questions involved." There we stated that to allow such statements to be a basis for a defamation action "would be an impediment to justice, because it

would hamper the search for truth and prevent making inquiries with that freedom and boldness which the welfare of society requires."

Front, Inc. v. Khalil, 24 N.Y.3d 713, 718 (2015) (emphasis added) (citations omitted); see also Grayson v. Ressler & Ressler, No. 15 CIV. 8740 (ER), 2018 WL 3611951, at *7 (S.D.N.Y. July 27, 2018) ("'The law of New York for well over one hundred years has provided 'absolute immunity from liability for defamation' for written statements made by attorneys in connection with a court proceeding, when those statements are 'pertinent to the questions involved.'" (quoting Yukos Capital S.A.R.L. v. Feldman, No. 15 Civ. 4964 (LAK), 2016 WL 4940200, at *4 (S.D.N.Y. Sept. 14, 2016) (internal quotation marks and citation omitted)); Lacher v. Engel, 33 A.D.3d 10, 13 (1st Dept. 2006) ("[The litigation privilege] rests on the policy that counsel should be able to speak with the free and open mind which the administration of justice demands without the constant fear of libel suits." (internal quotation marks and citations omitted)).

All of the cases Defendants cite in support of their invocation of the litigation privilege are defamation actions, see, e.g., O'Brien v. Alexander, 898 F. Supp. 162 (S.D.N.Y. 1995); aff'd in part, 101 F.3d 1479 (2d Cir. 1996); Kelly v. Albarino, 485 F.3d 664 (2d Cir. 2007); Bletas v. Deluca, No. 11 CIV. 1777 (NRB), 2011 WL 13130879, at *8 (S.D.N.Y. Nov. 15, 2011); Lipin v. Hunt, No. 14-CV-1081 (RJS), 2015 WL 1344406 (S.D.N.Y. Mar. 20, 2015), and Defendants have pointed to no cases in which courts have applied this privilege to preclude claims brought under the FDCPA, the GBL, or the Judiciary Law. Moreover, the district court in Sykes rejected defendants' invocation of the litigation privilege in that case, which involved the same claims at issue here. In doing so, the Sykes court stated simply that "[b]ecause plaintiffs have not claimed defamation, the privilege is wholly inapplicable here." Sykes v. Mel Harris & Assocs., LLC, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010) This Court likewise concludes that the litigation privilege is not applicable to Plaintiff's claims.

**D.**     <u>The *Noerr-Pennington* Doctrine Does Not Preclude Plaintiffs' Claims</u>

Defendants also contend that the <u>Noerr-Pennington</u> doctrine precludes claims based on their alleged litigation conduct.[11] (<u>See</u> Def. <u>Michelo</u> Br. (Dkt. No. 81) at 24) "The <u>Noerr-Pennington</u> doctrine generally immunizes from liability a party's commencement of a prior court proceeding." <u>T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.</u>, 312 F.3d 90, 93 (2d Cir. 2002). "'The essence of the <u>Noerr-Pennington</u> [d]octrine is that parties who petition the government for governmental action favorable to them cannot be prosecuted under antitrust laws even though their petitions are motivated by anticompetitive intent.'" <u>Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union</u>, No. 00 CIV. 3613 (LAP), 2004 WL 1943099, at *20 (S.D.N.Y. Aug. 27, 2004) (quoting <u>Video Int'l Production, Inc. v. Warner-Amex Cable Commc'ns., Inc.</u>, 857 F.2d 1075, 1082 (5th Cir. 1988)). "[C]ourts have expanded [the doctrine] to protect First Amendment petitioning of the government from claims brought under Federal and State law, including claims pursuant to 42 [U.S.C.] § 1983 and common-law tortious interference with contractual relations." <u>Alfred Weissman Real Estate, Inc. v. Big V Supermarkets, Inc.</u>, 268 A.D.2d 101, 107 (2d Dept. 2000); <u>see also</u> <u>Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union</u>, No. 00 CIV. 3613 (LAP), 2004 WL 1943099, at *20 (S.D.N.Y. Aug. 27, 2004) (observing that "some courts . . . have extended the doctrine to state tort actions <u>analogous to anti-trust claims</u>," but declining to apply the doctrine to defamation claims) (emphasis in original)).

Defendants have cited no case suggesting that the <u>Noerr-Pennington</u> doctrine has any application here, and "[s]everal courts have concluded that the <u>Noerr-Pennington</u> doctrine

---

[11] The motion to dismiss in <u>Bifulco</u> does not raise the <u>Noerr-Pennington</u> doctrine as a basis for dismissal.

does not bar suits under the FDCPA based on litigation misconduct by debt collectors." Shetiwy v. Midland Credit Mgmt., 980 F. Supp. 2d 461, 475 n.81 (S.D.N.Y. 2013) (citing Basile v. Blatt, Hasenmiller, Leibsker & Moore LLC, 632 F. Supp.2d 842, 845 (N.D. Ill. 2009); Gerber v. Citigroup, Inc., Civ. S07-0785, 2009 WL 248094, at *4 (E.D. Cal. Jan. 29, 2009); Sial v. Unifund, No. 08 Civ. 0905, 2008 WL 4079281, at *2-5 (S.D. Cal. Aug. 28, 2008)).

Even assuming arguendo that Noerr-Pennington could preclude Plaintiffs' FDCPA, GBL, and Judiciary Law claims, however, the underlying state court actions cited by Plaintiff would appear to fall within the "sham exception" to the doctrine. "In the antitrust context, the 'sham exception' applies 'where the litigation is (1) "objectively baseless" and (2) intended to cause harm to the defendant "through the use [of] governmental process – as opposed to the outcome of that process."'" Shetiwy v. Midland Credit Mgmt., 980 F. Supp. 2d 461, 475-76 (S.D.N.Y. 2013) (emphasis omitted) (quoting T.F.T.F. Capital Corp., 312 F.3d at 93 (quoting Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49, 60-61 (1993)). "More generally, the sham exception "excludes any abuse of process that bars access to the courts," including "unethical conduct in the setting of the adjudicatory process or the pursuit of a pattern of baseless, repetitive claims." Id. (internal quotation marks and citations omitted); see also Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen, 313 F. Supp. 2d 339, 343 (S.D.N.Y. 2004) ("Fraudulent acts are not protected by the Noerr-Pennington doctrine when they occur in the adjudicatory process or where false information is filed with an administrative agency with deceptive intent.").

The sham exception applies here, given Plaintiffs' allegations concerning Defendants' participation in a "fraudulent scheme to make false representations . . . in court filings in order to obtain payment on debts they cannot prove they are owed," and Defendants'

alleged "widespread practice of submitting false or deceptive affidavits to state courts in order to fraudulently obtain default judgments." (Am. Cmplt. (Dkt. No. 60) ¶¶ 1, 12) Two other courts in this District have similarly concluded that such allegations fall within the sham exception. See Shetiwy, 980 F. Supp. 2d at 475-76 ("Debt Buyer Defendants' alleged practice of using fraudulent, deceptive, and misleading affidavits and affirmations to obtain default judgments against Plaintiffs . . . would place Debt Buyer Defendants' suits under the sham exception." (internal quotation marks omitted)); Sykes, 757 F. Supp. 2d at 429 ("Given the allegations of litigation-related misconduct here, [the court] den[ies] this prong of [the defendants'] motion to dismiss."). Accordingly, the Court rejects Defendants' contention that Plaintiffs' claims are precluded by the Noerr-Pennington doctrine.

### E. Whether Plaintiffs' FDCPA Claims Are Time-Barred

Defendants contend that all of Plaintiffs' FDCPA claims are time-barred. (Michelo Def. Br. (Dkt. No. 81) at 33-38; Bifulco Def. Br. (Dkt. No. 38) at 10) The Court concludes that Plaintiff Michelo's FDCPA claim is time-barred, and that the Seamans' FDCPA claims are partially time-barred. None of the other Plaintiffs' claims are time-barred, however.

The statute of limitations for FDCPA claims is one year. See 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs." (emphasis added)) However, the FDCPA's statute of limitations is subject to equitable tolling where a plaintiff establishes that "(1) the defendant concealed from him the existence of his cause of action; (2) he remained in ignorance of that cause of action until some length of time within the statutory period before commencement of his action; and (3) his continuing ignorance was not attributable to a lack of diligence on his part." Sykes, 757 F. Supp.2d at 422 (citing

State of N.Y. v. Hendrickson Bros., 840 F.2d 1065, 1083 (2d Cir. 1988)). "A defendant may be deemed to have concealed the existence of the cause of action when the conduct forming the basis of the action is 'inherently self-concealing.'" Toohey v. Portfolio Recovery Assocs., LLC, No. 15-CV-8098 (GBD), 2016 WL 4473016, at *6 (S.D.N.Y. Aug. 22, 2016) (quoting Hendrickson Bros., 840 F.2d at 1083).

### 1.    Plaintiff Michelo's FDCPA Claim is Time-Barred

Plaintiff Michelo alleges that Forster filed a state court debt collection action against her on July 14, 2015, and that the complaint in that action falsely stated that (1) Trust 2007-2 was the original creditor of the loan; (2) that this trust was authorized to proceed with the action; and (3) that the attorney who had signed the complaint had engaged in a meaningful review of the claims asserted. (Am. Cmplt. (Dkt. No. 60) ¶¶ 63, 67-68, 70-71, 76-77) Michelo also alleges, on information and belief, that Defendants "reported to credit bureaus that the underlying alleged debt was valid and owed, and that is was the subject of legal action," but did not report that they voluntarily discontinued the action on December 9, 2016 . (Id. ¶ 79-82) Defendants never moved for default against Michelo, and Michelo does not allege that Defendants ever submitted any false affidavits in her case.

Defendants contend that any alleged violation occurred no later than 2016, and that Michelo's claim is, accordingly, time-barred. (Michelo Def. Br. (Dkt. No. 81) at 33-34) Plaintiffs – whose response appears in a footnote – dispute "that these claims are definitively time-barred," because "[t]he negative credit-reporting of the (discontinued) state-court action against [Michelo] has persisted within the limitations period, thus perpetuating the fraudulent statements made against her in state court, and rendering h[er] claims timely under the continuing violation doctrine." (Michelo Opp. Br. (Dkt. No. 82) at 57 n.50)

Michelo's argument is not persuasive. As an initial matter, the Amended Complaint does not allege that any negative credit reporting "persisted within the limitations period." Instead, the Amended Complaint alleges that the Defendants reported the alleged debt to the credit bureaus "at or about the time that th[e] [state] lawsuit against Plaintiff Michelo was commenced," and that when the lawsuit was discontinued, Defendants did not report the discontinuance. The Amended Complaint further pleads that, at some unspecified time, Defendants "falsely reported to credit bureaus that the underlying alleged debt was valid and owed." (Am. Cmplt. (Dkt. No. 60) ¶¶ 79, 81)

Neither the Amended Complaint nor Plaintiffs' opposition brief explains how Defendants' report that the debt was valid, or failure to report the discontinuance of the lawsuit, constitutes a violation of the FDCPA. "A plaintiff may not 'revive the statute of limitations period by complaining about a later act in furtherance of the time-barred act[,] . . . [where] there was no separate violation of the FDCPA.'" Scott v. Greenberg, No. 15-CV-05527 (MKB), 2017 WL 1214441, at *5 (E.D.N.Y. Mar. 31, 2017) (quoting Schuh v. Druckman & Sinel, L.L.P., 602 F. Supp. 2d 454, 466 (S.D.N.Y. 2009)). Michelo appears to assume that a "continuing violation" theory exists under the FDCPA. "Although a few district courts within the Second Circuit [have] discussed the possibility of a continuing violation theory under the FDCPA, none have found the doctrine applicable." Egbarin v. Lewis, Lewis & Ferraro LLC, No. CIV.A. 3:00-CV-1043, 2006 WL 236846, at *10 (D. Conn. Jan. 31, 2006)) Michelo has not offered any argument as to why this Court should embrace that theory, much less any basis for concluding that the theory would

apply on these facts.[12]  Accordingly, Plaintiff Michelo's FCDPA claim will be dismissed as untimely.

## 2.    Whether the Seaman Plaintiffs' FDCPA Claims are Time-Barred

The Seaman Plaintiffs allege that Defendant Forster filed a state court debt collection action against them on May 29, 2014, and that the state complaint falsely stated that (1) Trust 2007-3 was the original creditor of the loan; (2) this trust was authorized to proceed with the action; and (3) the attorney who had signed the complaint had engaged in a meaningful review of the claims asserted.  (Am. Cmplt. (Dkt. No. 60) ¶¶ 83, 87-88, 90-91, 96-97)  Ten months later, on March 30, 2015, Forster moved for a default judgment.  The Seaman Plaintiffs allege that the default application (1) falsely certifies that a Forster attorney meaningfully reviewed the trusts' claims, and (2) includes an affidavit from Transworld employee James J.

---

[12]  Plaintiffs cite to cases from other jurisdictions that have entertained continuing violation arguments in FDCPA cases under certain circumstances.  In a Northern District of California case, for example, the court stated:

> Under the appropriate circumstances therefore, the continuing violation doctrine may apply to debt collection claims.  The key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts.  If there is a pattern, then the suit is timely if the action is filed within one year of the most recent date on which the defendant is alleged to have violated the FDCPA[,] and the entire course of conduct is at issue.

Joseph v. J.J. Mac Intyre Companies, L.L.C., 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003) (emphasis added) (internal quotation marks and citation omitted).  In Joseph, "a pattern of . . . over 200 calls to Plaintiff's residence during a nineteen-month period" constituted such a "continuing pattern and course of conduct." Id. at 1161-62.  (See also Tucker v. Mann Bracken, LLC, No. 1:08-CV-1677, 2009 WL 151669 (M.D. Pa. Jan. 21, 2009) (same)).

"Even if [this] standard . . . were imported into this circuit, [however,] the facts [here] . . . do not support the application of the continuing violation doctrine. . . . Unlike the pervasive pattern of phone calls over a long period of time [cited in Joseph,] . . . the alleged actions of [Defendants]" – negative credit reporting – are "dissimilar, discrete acts" from the misrepresentations in the state court complaint that form the basis of Michelo's FDCPA claim. See Egbarin, 2006 WL 236846, at *10.

Cummins that falsely certifies that he had personal knowledge of the relevant loan records as well as the record management practices of the trust and its agents. (Id. ¶¶ 99-101, 103-04, 107-08) These representations form the factual basis of the Seamen Plaintiffs' FDCPA claims.

It is undisputed that the instant lawsuit was initiated much longer than one year after May 29, 2014, and March 30, 2015 – "the date[s] on which the [alleged] violation(s) occurred."[13] The Complaint in Michelo was filed on February 28, 2018. (See Michelo Cmplt. (Dkt. No. 1)) Accordingly, the Seaman Plaintiffs' FDCPA claims will only be timely if they are equitably tolled.

The Michelo Amended Complaint alleges that "[t]hroughout the time period relevant to this action, Defendants affirmatively concealed from Plaintiffs . . . the fraudulent scheme. . . . Among other things, the false and misleading statements contained in the affidavits that were signed by Transworld and/or NCO employees, and that Forster . . . filed on behalf of Trust Defendants in support of their applications for default judgments . . . concealed the existence of Defendants' fraudulent scheme." (Am. Cmplt. (Dkt. No. 60) ¶¶ 193-94) As a result, "neither Plaintiffs nor the other members of the Class could have discovered, even upon reasonable exercise of diligence, that Defendants had secured default judgments against them through the fraudulent scheme described herein." (Id. ¶ 193)

In their opposition brief, the Seaman Plaintiffs contend that equitable tolling should apply because (1) Defendants' false affidavit scheme was inherently self-concealing, in that "only Defendants knew that NCO/Transworld's professional affiants did not actually

---

[13] The Amended Complaint also alleges that a garnishment order was issued on Mary Re Seaman's employer in connection with the default judgment on April 15, 2015. (See Am. Cmplt. (Dkt. No. 60) ¶ 111) Assuming arguendo that this conduct constitutes a violation of the FDCPA, it took place well over a year before Michelo was commenced.

possess personal knowledge of the actual records proving indebtedness or of the Trust's record-keeping practices"; (2) the misrepresentations in Defendants' affidavits "amount[] to affirmative conduct concealing Defendants' lack of admissible evidence against consumers"; (3) the Seamans "neither knew of Defendants' misconduct, nor could have learned of it through the exercise of reasonable diligence"; and (4) the Seamans filed suit within the limitations period, upon learning of Defendants' misconduct. (Michelo Pltfs. Opp. Br. (Dkt. No. 82) at 54-55)

Defendants maintain that "[t]he Seamans have not plausibly pled that they remained ignorant of their FCDPA causes of action or that their ignorance was not attributable to a lack of diligence on their part." (Michelo Def. Br. (Dkt. No. 81) at 35-36) According to Defendants, the Seaman Plaintiffs "were aware of their claims under the FDCPA as soon as they received the state-court complaint." Defendants note that one of the alleged misrepresentations upon which the Seaman Plaintiffs' FDCPA claim is based – that the Trust was the "original creditor" – is a misrepresentation that "the Seamans would have presumably [recognized] . . . since they took out the loan at issue and know who they borrowed from. . . . The Seamans allege no facts to demonstrate that they acted with diligence in the face of this." (Id. at 36) Defendants further argue that "[t]he purportedly 'self-concealing' nature of the Cummins Affidavit does not justify equitable tolling," because "[n]either of the Seamans claim to have ever seen the Cummins Affidavit," and that in any event the Seamans "do not allege any facts showing due diligence to discover their cause of action." (Id. at 37)

The Court concludes that the requirements of equitable tolling are not satisfied as to the "original creditor" misrepresentation.[14] While it is not clear that the "original creditor"

---

[14] In their opposition brief, the Seaman Plaintiffs offer no response to Defendants' arguments concerning this misrepresentation.

misrepresentation would or should be apparent to a reasonable borrower, the Seaman Plaintiffs have not alleged that Defendants' misrepresentation "concealed" the Seaman Plaintiffs' cause of action, nor have the Seaman Plaintiffs demonstrated that they acted diligently with respect to this claim. Accordingly, the Seaman Plaintiffs may not rely on the "original creditor" misrepresentation in pursuing their FDCPA claim.

The Court finds, however, that the Seaman Plaintiffs have pled facts demonstrating that equitable tolling applies to their FDCPA claims to the extent those claims rely on misrepresentations in Defendants' default filings. The Court agrees that the allegedly false affidavit accompanying those filings – in which Transworld employee James H. Cummins testified that he was "competent and authorized to testify relating to this action through personal knowledge of the business records, including the electronic data, sent to [Transworld] that detail the education loan records" (Am. Cmplt. (Dkt. No. 60) ¶ 100) – is "inherently self-concealing." As the Toohey court found on identical facts, "the allegedly false affidavit – purporting that the affiant personally reviewed underlying documentation establishing the existence and amount of Toohey's debt – is inherently self-concealing," because "[i]ts alleged falsity is information of which only the Defendants could be aware." Toohey, 2016 WL 4473016, at *6; see also Coble v. Cohen & Slamowitz, LLP, 824 F. Supp. 2d 568, 571-73 (S.D.N.Y. 2011) (holding that defendant law firm concealed cause of action from Plaintiffs by filing affirmations in court that "affirmatively re[-]asserted the validity of . . . affidavits [from process servers] they knew to be false," and reasoning that [b]ecause plaintiffs had no reason to doubt the authenticity of the . . . affidavits . . . defendants' conduct prevented plaintiffs from discovering their claims under the FDCPA in a timely manner.").

For the same reasons, the Seaman Plaintiffs plausibly allege that they remained in ignorance of their potential FDCPA claim. Toohey, 2016 WL 4473016, at *6 (plaintiff "plausibly alleges that she remained in ignorance of the basis of her cause of action until the CFPB issued its September 8, 2015 Consent Order revealing that routine representations made by PRA employees in nearly identical affidavits were false."). And given the self-concealing nature of the false affidavits, the Court concludes that the Seaman Plaintiffs plausibly allege that their lack of knowledge was "not attributable to a lack of diligence" on their part. See Coble v. Cohen & Slamowitz, 824 F. Supp. 2d at 572 ("Thus, no amount of diligence, even with knowledge of the default judgments and supporting affidavits of service, would reveal the FDCPA violations alleged in the complaint.")[15] Accordingly, the Seaman Plaintiffs' FDCPA claims are not time-barred to the extent they rely on misrepresentations in Defendants' application for default filings.

### 3. Plaintiffs Tabar, Bifulco, Butry, and Frauenhofer Sufficiently Allege That Their FDCPA Claims are Equitably Tolled

As to the remaining Plaintiffs, Defendants offer little explanation as to why equitable tolling does not apply. (See Michelo Br. (Dkt. No. 81) at 37-38 ("Tabar has not alleged any facts which would warrant[] an equitable toll in this case."; Bifulco Def. Br. (Dkt. No. 38) at 10 ("Plaintiffs' FDCPA claims are untimely for the same reasons that the Michelo plaintiffs' claims are."))

---

[15] Defendants assert that "[n]either of the Seamans claim to have ever seen the Cummins Affidavit." Plaintiffs allege, however, that Defendants represented in affidavits of service that the "self-concealing" false affidavits were served on Plaintiffs. In any event, Defendants have cited no case law demonstrating that it would be appropriate for this Court to dismiss Plaintiffs' FDCPA claims at this time on this ground.

Plaintiff Tabar — like all the other <u>Michelo</u> Plaintiffs — was sued in a state court debt collection proceeding. The complaint in that proceeding contained the same misrepresentations as those in the state proceedings against the other plaintiffs. (Am. Cmplt. (Dkt. No. 60) ¶¶ 118-19, 121-22, 127-28) Forster obtained a default judgment against Tabar, and the default judgment application was premised on the same false affidavit and false attorney certification as in the Seamans' case. For the same reasons discussed in connection with the Seaman Plaintiffs, Taber's FDCPA claim is tolled based on the "self-concealing" nature of the misrepresentations in the default judgment application. Moreover, unlike Michelo, Tabar may rely on the "original creditor" misrepresentation in state court complaint against her: Defendants do not argue, and cannot reasonably argue, that Tabar was on notice of her FDCPA claim based on this alleged misrepresentation, because Plaintiff alleges that she was never properly served. Indeed, the default judgment against Taber was vacated on that basis. (<u>Id.</u> ¶¶ 145-46)

All of the <u>Bifulco</u> plaintiffs were sued in state court debt collection actions in which the complaints falsely state that National Collegiate is authorized to proceed with the action, and in which a signing attorney falsely certifies that he or she has engaged in a meaningful review of the claims asserted. (<u>Bifulco</u> Cmplt. (Dkt. No. 1) ¶¶ 62, 67, 72-73, 94, 99, 104-05, 123, 128, 133-34) These complaints differ slightly from those described in <u>Michelo</u>, in that they do not falsely represent that National Collegiate is the original creditor. (<u>Id.</u> ¶¶ 66, 98, 127) Forster pursued and obtained default judgments against all the <u>Bifulco</u> plaintiffs, submitting affidavits containing the same false representations as submitted in the Seaman and Tabar actions, and the same false attorney certifications. (<u>Id.</u> ¶¶ 75-77, 79-84, 107-09, 111-16,

136-38, 140-45) These plaintiffs' claims are likewise tolled, based on the self-concealing nature of those alleged misrepresentations.[16]

## F.    Plaintiffs' General Business Law Section 349 Claims Are Timely

In addition to arguing that Plaintiffs' FDCPA claims are time-barred, Defendants in Bifulco argue that the Bifulco Plaintiffs' GBL Section 349 claims are time-barred. They further maintain that "while [this was] not expressly argued in the Michelo defendants' motion to dismiss, the same reasoning applies to the Seaman and Tabar plaintiffs' claims." (Bifulco Br. (Dkt. No. 38) at 10)

"Actions brought pursuant to Section 349 must be commenced within three years of the date of accrual, which occurs when plaintiff is injured by the deceptive act or practice that violated the statute." Statler v. Dell, Inc., 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012) (citing Gaidon v. Guardian Life Ins. Co. of America, 96 N.Y.2d 201, 210 (2001); M&T Morg. Corp. v. Miller, No. 02 CV 5410 (NG) (MDG), 2009 WL 3806691, at *2 (E.D.N.Y. Nov. 13, 2009)). "Such injury occurs . . . 'when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief.'" Id. (quoting Gaidon, 96 N.Y.2d at 210).

As an initial matter, the Michelo Defendants do not argue – "expressly" or otherwise – that the Seamans' or Tabar's GBL Section 349 are time-barred. The Court will not entertain those arguments now, based on briefs that were filed in a separate action.

---

[16] Unlike the Michelo Plaintiffs, the Bifulco Plaintiffs all allege that the Forster attorney submitted affirmations in support of default falsely describing National Collegiate as the original creditor. (Bifulco Cmplt. (Dkt. No. 1) ¶¶ 87, 118, 149) The Court does not address whether or how this alleged misrepresentation affects the Bifulco Plaintiffs' right to equitable tolling, because Defendants have not raised this issue.

As for the Bifulco Plaintiffs, the Court concludes that to the extent the Bifulco Complaint was filed more than three years after these plaintiffs' GBL Section 349 claims accrued,[17] the claims are equitably tolled for the same reasons that their FDCPA claims are tolled. Accordingly, Defendants' motion to dismiss the Bifulco Plaintiffs' GBL Section 349 claims on the grounds that they are time-barred will be denied.

### G. The Alleged Deceptive Statements Constitute Material Misrepresentations Under the FDCPA and GBL § 349

Turning to the merits of Plaintiffs' claims, Defendants contend that the allegedly deceptive statements the Plaintiffs highlight in their pleadings "are not the type of materially deceptive statements necessary to support a claim" under the FDCPA and GBL § 349. (Michelo Def. Br. (Dkt. No. 81) at 19)

As to the FDCPA claims, Defendants assert that "[s]tatements made in court filings are not the type of 'material' deceptive or misleading representations against which the FDCPA aims to protect." (Michelo Def. Br. (Dkt. No. 81) at 20) Moreover, "the allegedly

---

[17] It is not obvious to this Court that the Bifulco Plaintiffs' GBL Section 349 claims accrued more than three years before the Bifulco Complaint was filed. As noted above, a Section 349 claim accrues when a plaintiff is injured. Defendants contend that the Bifulco Plaintiffs were injured "no later than the dates the state-court [default] judgments were entered," but the issuance of the defaults themselves are not cognizable injuries for Section 349 purposes. See Toohey v. Portfolio Recovery Assocs., LLC, No. 15-CV-8098 (GBD), 2016 WL 4473016, at *10 n.17 (S.D.N.Y. Aug. 22, 2016) ("Toohey's allegation that the default judgment was improperly obtained sufficiently alleges an 'injury-in-fact' so as to establish standing, but is insufficient to satisfy GBL § 349's 'actual injury' element."). Plaintiff Bifulco's injury for Section 349 purposes is that her wages were garnished, following an income execution issued sometime after September 15, 2015. The Bifulco action was filed fewer than three years later, on August 23, 2018. The same is true for Plaintiff Tabar: the injuries she alleges – costs in connection with her attempt to vacate the default judgment entered against her, and associated mental and emotional anguish – were not incurred until 2018. (Am. Cmplt. (Dkt. No. 60) ¶¶ 145-46, 155) And as for the Seaman Plaintiffs – default was not entered against them until March 31, 2015 (id. ¶¶ 110-11), fewer than three years before the initial complaint in the Michelo action was filed.

deceptive communications . . . are not affirmative factual representations about Plaintiffs' debt or their corresponding obligations, but rather only the assertion of legal conclusions." (Id.) As to the GBL Section 349 claims, Defendants contend that because "on its face, the . . . standard applied" to such a claim "is a higher standard to clear than the . . . standard applied under the FDCPA, . . . if a statement is not misleading" under the FDCPA, "it cannot be misleading" under the GBL. Moreover, because "[t]he statements at issue were made during the course of litigation," they "cannot be materially misleading under the ambit of § 349." (Id. at 21))

1. **FDCPA Legal Standard**

The FDPCA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e sets out a nonexclusive list of conduct that violates the provision, including, inter alia, "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt. . . ." See id. § 1692(e)(5), (10). Because "the FDCPA is 'primarily a consumer protection statute,'" Avila v. Riexinger & Assocs., LLC, 817 F.3d 72, 75 (2d Cir. 2016) (quoting Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 95 (2d Cir. 2008)), courts "must construe its terms 'in liberal fashion [to achieve] the underlying Congressional purpose.'" Id. (quoting Vincent v. The Money Store, 736 F.3d 88, 98 (2d Cir. 2013)). The stated statutory purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

"Whether a communication is 'false, deceptive, or misleading' under § 1692(e) 'is determined from the perspective of the objective least sophisticated consumer.'" Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 85 (2d Cir. 2018) (quoting Easterling v. Collecto, Inc., 692 F.3d 229, 233 (2d Cir. 2012)). "The purpose of the least-sophisticated-consumer standard . . . is to ensure that the statute protects the gullible as well as the shrewd." Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008) (citing Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)). The Second Circuit has also suggested – without explicitly holding – that communications which are not material do not violate the FDCPA. See Cohen v. Rosicki, Rosicki & Assocs., P.C., 897 F.3d 75, 85 (2d Cir. 2018) ("'[M]ateriality is an ordinary element of any federal claim based on a false or misleading statement.'" (quoting Hahn v. Triumph P'ships LLC, 557 F.3d 755, 757 (7th Cir. 2009))) "In other words, 'a false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated [consumer].'" Id. (quoting Jensen v. Pressler & Pressler, 791 F.3d 413, 421 (3d Cir. 2015)).

### 2. GBL Section 349 Legal Standard

Section 349 of New York's General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in th[e] state." N.Y. Gen. Bus. Law § 349(a) (McKinney). To state a claim for a Section 349 violation, "a plaintiff must allege (1) that the defendant's acts were consumer oriented, (2) that the acts or practices are 'deceptive or misleading in a material way,' and (3) that the plaintiff has been injured as a result." Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995)). The New York Court of Appeals has "adopt[ed]

. . . an objective definition of deceptive acts and practices," limiting them "to those likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego, 85 N.Y. at 26. "This is a more stringent standard than the 'least sophisticated consumer' standard applicable to FDCPA claims." Fritz v. Resurgent Capital Servs., LP, 955 F. Supp. 2d 163, 174 (E.D.N.Y. 2013). "[W]hether a particular act or practice is deceptive is usually a question of fact." Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) (citing Sims v. First Consumers Nat. Bank, 303 A.D.2d 288, 289 (1st Dept. 2003)).

### 3. Analysis

Plaintiffs point to three allegedly material misrepresentations Defendants made: (1) that the Defendants were the "original creditors" of the relevant loans; (2) that the Trust Defendants were "authorized to proceed" with litigation in state court; and (3) that Defendants possessed and reviewed proof of indebtedness. (Michelo Opp. Br. (Dkt. No. 82) at 9, 26)

In their motion to dismiss, Defendants rely primarily on the argument that statements made in court filings cannot constitute material misrepresentations for purposes of the FDCPA or GBL Section 349. To the extent Defendants assert this as a categorical matter, the argument is incorrect. Defendants have cited no cases supporting such a proposition in the GBL Section 349 context.[18] And while it is true that in the FDCPA context, "courts in this Circuit

---

[18] In Lane v. Fein, Such & Crane, LLP, 767 F. Supp. 2d 382, 389-91 (E.D.N.Y. 2011), cited by Defendants, the district court found that it was not materially false, misleading, or deceptive under the FDCPA or Section 349 for a state court plaintiff in a foreclosure action to falsely state that it was "a banking corporation duly licensed, organized and existing pursuant to the laws of the United States." The court noted that the statement "does not assert in any way [the debt collector's] right to recover with regard to the . . . [m]ortgage" and "plaintiffs do not otherwise allege any facts challenging [the debt collector's] power to do so." Id. at 389. The district court did not make any generalizations about the materiality of misrepresentations made in the course of litigation. Nicholson v. Forster & Garbus LLP, No. 11-CV-0524 (SJF) (WDW), 2012 WL 273150 (E.D.N.Y. Jan. 30, 2012), also cited by Defendants, does not address false statements

have been reluctant to impose liability . . . for statements made by creditors' attorneys during the course of debt collection litigation," Lautman v. 2800 Coyle St. Owners Corp., No. 14-CV-1868 (ARR) (VVP), 2014 WL 4843947, at *12 (E.D.N.Y. Sept. 26, 2014), nevertheless, "'statements made and actions taken in furtherance of a legal action are not, in and of themselves, exempt from liability under the FDCPA,'" Valle v. Bendett & McHugh, P.C., No. 3:14-CV-1796 (SRU), 2015 WL 5797023, at *12 (D. Conn. Sept. 30, 2015) (quoting Gabriele v. Am. Home Mortgage Servicing, Inc., 503 Fed. Appx. 89, 95 (2d Cir. 2012)).

As to the alleged misrepresentations here, Defendants argue that they "are not affirmative factual representations[,] . . . . but rather only the assertion of legal conclusions," which do not "influenc[e] the debtors' decisions to pay their debts or impair[] their ability [to] challenge them. . . ." (Michelo Def. Br. (Dkt. No. 81) at 20) The Court disagrees with this characterization. A representation that a party has, for example, reviewed proof of indebtedness is very much an "affirmative factual representation," rather than a legal conclusion. Moreover, assertions that a party is an "original creditor" or "authorized to proceed" are factual representations. The question, then, is whether the allegedly false factual representations Plaintiffs raise are material.

In Winslow v. Forster, LLP, No. CV 15-2996 (AYS), 2017 WL 6375744 (E.D.N.Y. Dec. 13, 2017), the court addressed the materiality, under the FDCPA and GBL Section 349, of nearly identical misrepresentations, and concluded that they were indeed material. The parties dispute the significance of this case, and accordingly the Court will address Winslow in some detail.

---

made in the course of litigation. See id. at *2 ("[I]n this case, the allegedly false statements were not directed to a court, nor did they occur during the course of a pending judicial proceeding.").

In Winslow, the plaintiff – against whom Forster, on behalf of National Collegiate Loan Trust 2005-3, had filed suit in state court – asserted FDCPA and GBL Section 349 claims, alleging "that Defendants engaged in unlawful conduct by falsely stating in the State Court Action: (1) that the Trust was the 'original creditor' of Winslow's student loan; and (2) that the Trust was 'authorized to proceed' with the State Court Action"; and acted unlawfully in failing to meaningfully review the complaint in that action. See Winslow, 2017 WL 6375744, at *3, 9. The Winslow court concluded on summary judgment that the "false statement as to the Trust's status as the 'original creditor' is material as a matter of law" for FDCPA purposes, because "a false statement as to the owner of a debt 'could easily mislead the least sophisticated consumer as to the nature and legal status' thereof and could 'impede the consumer's ability to respond.'" Id. at *10 (quoting Fritz v. Resurgent Capital Servs., LP, 955 F. Supp. 2d 163, 171 (E.D.N.Y. 2013)). The court further concluded that "the statement as to the Trust's original creditor status is . . . also materially misleading under Section 349. . . . [A]s a matter of law, . . . this statement, viewed objectively, might lead a debtor to be confused as to the nature of the debt sought to be collected. . . ." Id. at *13. As to the misrepresentation that Defendants were "authorized to proceed," the court held that "if the Trust was required to register under Section 18 [of the New York State General Association Law], and falsely stated that it was authorized to sue Plaintiff in a New York State court, that statement was a material misstatement because it may prevent a debtor from asserting a valid defense."[19] Id. at *3, 12. Finally, with respect to the "meaningful

---

[19] The law prohibits "[a]ny association doing business within this state" from "maintain[ing] any action or special proceeding in this state unless and until such association has filed the certificate of designation prescribed by this section and it has paid to the state all fees, penalties and franchise taxes for the years or parts thereof during which it did business in this state without having filed the certificate of designation prescribed by this section." N.Y. Gen. Ass'ns Law § 18(4) (McKinney).

review" allegation, the court determined that the facts defendants relied on in support of their summary judgment motion were disputed. Id. at *12.

Defendants maintain that Winslow has been abrogated by Cohen v. Rosicki, Rosicki & Associates, P.C., 897 F.3d 75 (2d Cir. 2018). (Michelo Def. Reply Br. (Dkt. No. 83) at 7-8) ("Since Magistrate Judge Shields issued the Winslow decision, however, the Second Circuit has decided [Cohen], which disavows the logic followed in Winslow." (footnote omitted)) "Under the Second Circuit's analysis in Cohen," Defendants argue, "none of the putative 'representations' Plaintiffs allege are material to support Plaintiffs' claims." (Id. at 8)

Defendants read the Cohen decision too broadly. In that case, Plaintiff Cohen filed a putative class action alleging that defendants – a mortgage-loan servicer and the servicer's law firm – violated the FDCPA in connection with their initiation of foreclosure proceedings on plaintiff's home. Cohen, 897 F.3d 75 at 78. Cohen's claim was rested primarily on Defendant's false identification, in the foreclosure complaint and accompanying documents, of the servicer as the creditor for Cohen's mortgage. Id. at 84. The Second Circuit determined that the misrepresentation was not material, explaining that

> there is no indication that the identification of Green Tree as the creditor misrepresented the nature or legal status of the debt or undermined Cohen's ability to respond to the debt collection. . . . As the account servicer, Green Tree had the right to collect mortgage payments and to pursue foreclosure under New York law. Moreover, it is undisputed that the entity to whom Cohen's payments on his debt were owed in the first instance was Green Tree and that Green Tree was also the primary point of contact for any questions Cohen may have had about his mortgage.

Id. at 86. The court further noted that although the statement that Green Tree was the "creditor" was false under the FDCPA, "Green Tree met the state law definition of 'creditor.' The identification of Green Tree as the creditor in the foreclosure filings was therefore accurate within the context of New York foreclosure law." Id. The court also deemed it "significant that

the challenged statements . . . were made in filings in a foreclosure action in state court," because "[t]he 'state foreclosure process is highly regulated and court controlled,' and the 'state court's authority to discipline will usually be sufficient to protect putative-debtors . . . from illegitimate abuse or harassing litigation conduct.'" Id. (quoting Gabriele, 503 F. App'x at 96 n.1)).

Cohen casts some doubt on the Winslow court's conclusion that "false statements as to [a defendant's] status as the 'original creditor' is material as a matter of law." However, the Second Circuit did not rule that such misrepresentations are necessarily immaterial. Indeed, Cohen makes explicit the narrowness of its holding, emphasizing that the court's ruling is "based on the specific facts and circumstances of this case, i.e. a mortgage servicer that qualifies as a creditor under state law and that acts on behalf of a mortgage owner," and that the court is "not suggest[ing] that misrepresentations concerning the identity of the creditor are categorically immaterial." Cohen, 897 F.3d at 87. Indeed, the Second Circuit acknowledged that such misrepresentations "can be a 'serious matter,' id. (quoting Bourff v. Rubin Lublin, LLC, 674 F.3d 1238, 1241 (11th Cir. 2012), which "can cause a debtor 'confusion and delay.'" Id. (quoting Wallace v. Wash. Mut. Bank, F.A., 683 F.3d 323, 327 (6th Cir. 2012)).

The Court concludes that Cohen is distinguishable from Winslow, and from the instant case. As an initial matter, Cohen involves state foreclosure proceedings, which the Second Circuit has emphasized are "highly regulated and court controlled." See Cohen, 897 F.3d 75 at 86; Gabriele, 503 Fed. App'x. at 96 n.1. There is no similar "panoply of protections and safeguards" in the underlying state proceedings for collection of student loan debt.

Moreover, the misrepresentations at issue in Winslow and Cohen are somewhat different. In Winslow, the alleged misrepresentation is that the defendant is the "original creditor," while the misrepresentations in Cohen are that the defendant is "the creditor to whom

45

the debt is owed" and "the creditor entitled to enforce rights." See Winslow, 2017 WL 6375744, at *3-4; Cohen, 897 F.3d at 78-79, 88. Cohen notes that the statements at issue in that case were not false under state law, and this fact influenced the court's assessment that the statements were only "technically legally inaccurate" under the FDCPA. See Cohen, 897 F.3d at 86 ("Moreover, as we have noted, Green Tree met the state law definition of 'creditor.' The identification of Green Tree as the creditor . . . was therefore accurate within the context of New York foreclosure law. Under these circumstances, we think that the identification of Green Tree as the 'creditor' should be viewed as false only insofar as it results from the different definitions of 'creditor' in the FDCPA and New York law.") In Winslow, by contrast, the court rejected the argument that the trust qualified as an "original creditor" under New York law, see Winslow, 2017 WL 6375744, at *10, and Defendants here do not contend that they qualify as the "original creditor" under New York law.

And while the identity of a creditor generally may be a "serious matter" because, for example, "a consumer . . . might reasonably believe that paying the entity bringing suit would extinguish the debt," when such payment "would . . . l[eave] the debtor vulnerable to a suit by the true owner," Fritz v. Resurgent Capital Servs., LP, 955 F. Supp. 2d 163, 171 (E.D.N.Y. 2013), a misrepresentation that an entity is the original creditor has additional potentially misleading consequences. As the Ninth Circuit has explained, "the identity of a consumer's original creditor is a critical piece of information," which "could easily cause the least sophisticated debtor to suffer a disadvantage in charting a course of action to respond to the collection effort." Tourgeman v. Collins Fin. Servs., Inc., 755 F.3d 1109, 1121 (9th Cir. 2014), as amended on denial of reh'g and reh'g en banc (Oct. 31, 2014). A debtor might, for example, "engage in a fruitless effort to investigate the facts of the . . . debt" by "quite

reasonably contact[ing] [the entity misrepresented as the original debtor] to obtain background information [,] . . . or to obtain any records that the [entity] holds pertaining to his debt," when that entity does not possess the relevant records, leading to confusion and delay. Id. In the context of a lawsuit – rather than merely a collection notice – "the consumer who engages legal counsel might be unable to accurately apprise the lawyer of the relevant circumstances, potentially leading to lost opportunities to settle the debt." Id. at 1123. As the Ninth Circuit noted, "the[] stakes are undoubtedly higher when the consumer faces the possibility of a default judgment . . . ." Id. Accordingly, "the identity of a consumer's original creditor is a critical piece of information, and therefore its false identification . . . would be likely to mislead some consumers in a material way." Id. at 1121. A misrepresentation that an entity is the "original creditor" thus raises concerns not before the Second Circuit in Cohen.

Defendants similarly contend that Cohen forecloses the argument that the misrepresentation that the trusts are "authorized to proceed with the action" is material. According to Defendants, "Cohen implicitly rejects" this argument, because "[i]n Cohen by identifying the servicer as the creditor, the plaintiff exerted the same kind of influence Magistrate Judge Shields found material, potentially inducing the borrower to forgo a standing defense in the litigation of the servicer's claims." (Michelo Def. Reply Br. (Dkt. No. 83) at 11) This argument is not persuasive.

Cohen cites – as one reason the defendants' false statements are immaterial – the fact that those defendants "had the right to collect mortgage payments and to pursue foreclosure under New York law." Cohen, 897 F.3d at 86. This language suggests that the Second Circuit did not believe that the debtors would have "a standing defense in the litigation of the servicer's claims." By contrast, in Winslow and here the defendants represented that they had the right to

sue the plaintiffs in New York courts, when they <u>did</u> <u>not</u> have the right to pursue such litigation, given their failure to file the required "certificates of designation." The misrepresentation that Defendants were "authorized to proceed with the action" surely "has the potential to affect the decision-making process of the least sophisticated [consumer]," because a consumer likely would respond differently to an unauthorized complaint than he or she would to a complaint lawfully filed.

In sum, this Court concludes that <u>Cohen</u> does not entirely abrogate <u>Winslow</u>. The <u>Winslow</u> court's reasoning as to the "original creditor" and "authorized to proceed" misrepresentations is persuasive on the facts of the instant case, if not its conclusion that such misrepresentations are <u>per</u> <u>se</u> material. In the context of this case, the "original creditor" and "authorized to proceed" misrepresentations are material and may provide the basis for an FDCPA claim and a GBL Section 349 claim.

Finally, the Court concludes that the Transworld/NCO representations as to personal knowledge and review of proof of indebtedness – made in affidavits filed in support of applications for a default judgment – are material.[20] As the court in <u>Toohey</u> explained, affidavits of merit falsely purporting to be "based upon [the] personal knowledge . . . and review of . . . the business records transferred to" the Defendant debt-buyer "could be interpreted as a representation that Defendants actually possessed and reviewed evidence sufficient to establish [the plaintiff's] debt. . . . In fact, such an interpretation appears to be the intended interpretation . . . ." <u>Toohey</u>, 2016 WL 4473016, at *3, 9. The <u>Toohey</u> court further found that "[t]he submission of the affidavit of merit is plausibly misleading and unconscionable conduct . . . if . .

---

[20] Beyond the sweeping assertion that statements made during litigation are <u>per</u> <u>se</u> not material, Defendants offer no argument that these alleged misrepresentations are not material.

. Defendants did not possess, and the affiant had not reviewed, evidence sufficient to establish [the plaintiff's] debt . . . ." Id. at *9. For the same reasons, the Transworld/NCO affidavits are materially misleading for purposes of both the FDCPA and Section 349.[21]

## H. Whether Certain Plaintiffs Have Pled Injuries Under GBL Section 349

Defendants argue that Plaintiffs Michelo and Katherine Seaman do not allege injuries sufficient to state a claim under GBL Section 349. (Michelo Br. (Dkt. No. 81) at 25-29) Defendants likewise maintain that the Bifulco Plaintiffs have not sufficiently pled injuries under GBL Section 349. (Bifulco Def. Br. (Dkt. No. 38) at 11)

As noted above, Plaintiffs' GBL Section 349 claims require Plaintiffs to plead not only that Defendants' complained-of conduct is consumer-oriented and materially deceptive or

---

[21] Neither Defendants' moving briefs nor Plaintiffs' opposition briefs squarely address the materiality of two other, related categories of alleged misrepresentations: attorney certifications in both the state court complaints and the default judgment applications that a Forster attorney meaningfully reviewed National Collegiate's claims. Defendants do, however, raise the complaint certifications in their reply brief. Defendants argue that the certifications do not require – as Plaintiffs allege – a "meaningful review" of the state court submissions, but merely require attorneys to attest that the contentions are not "frivolous." (Michelo Def. Reply Br. (Dkt. No. 83) at 12 (quoting 22 NYCCRR § 130-1.1a)) But – as Defendants note – the regulation states that conduct is "frivolous" when, inter alia, a party "asserts material factual statements that are false." (Id. at 13 n.3) As discussed above, Plaintiffs allege that the state court complaints and default applications contain materially false statements. Accordingly, Plaintiffs fairly allege that the certifications are false.

The Court concludes that these allegedly false certifications are also material. See Diaz v. Portfolio Recovery Assocs., LLC, No. 10 CV 3920 ERK, 2012 WL 661456, at *12 (E.D.N.Y. Feb. 28, 2012), report and recommendation adopted, No. 10 CV 3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) ("[T]o the least sophisticated consumers . . . an attorney's signature implies that an attorney directly controlled or supervised the process . . ., and that the signing attorney has personally considered, and formed a specific opinion about, the individual debtor's case."; id. at *14 ("Having been served with a complaint relating to his debt in the State Action, plaintiff may have reasonably assumed that an attorney had conducted a meaningful review of the complaint and was representing that the claims in the complaint were actionable . . . . Accordingly, consistent with the Court's recommendations regarding plaintiff's FDCPA claims, the Court respectfully recommends that plaintiff's NYGBL claim not be dismissed for failure to state a claim.").

misleading in order to state a claim, but also that Plaintiffs "ha[ve] been injured as a result." Goldemberg, 8 F. Supp. 3d at 478 (internal quotation marks and citation omitted). "[A] plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm." Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000). Moreover, "[t]he plaintiff . . . must show that the defendant's material deceptive [or misleading] act caused the injury." Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000).

The "actual injury" requirement is "something more that the 'injury-in-fact' required to establish constitutional standing." Toohey v. Portfolio Recovery Assocs., LLC, 2016 WL 4473016, at *10 n.17. Courts have "recognize[d] several types of harm which might be cognizable as a legal injury, such as physical, emotional, pecuniary or reputational harm, or the impairment of a recognized legal right." In re Sling Media Slingbox Advert. Litig., 202 F. Supp. 3d 352, 360 (S.D.N.Y. 2016); see also Guzman v. Mel S. Harris & Assocs., LLC, No. 16 Civ. 3499 (GBD), 2018 WL 1665252, at *12 (S.D.N.Y. Mar. 22, 2018) ("Emotional harm . . . satisf[ies] the injury requirement for a claim under . . . GBL § 349." (internal quotation marks and citation omitted)); Fritz v. Resurgent Capital Servs., LP, 955 F. Supp. 2d 163, 174 (E.D.N.Y. 2013) (finding "time spent and costs incurred . . . to defend against . . . collections lawsuits" sufficient to satisfy Section 349's injury requirement)).

1.   **Plaintiff Michelo Sufficiently Pleads Injury**

Plaintiff Michelo alleges that Defendants "reported to credit bureaus that [her] . . . alleged debt was valid and owed, and that it was the subject of legal action"; that Defendants did not report the discontinuance of their legal action to credit bureaus, but instead "falsely reported to credit bureaus that the underlying alleged debt was valid and owed"; and that "[t]his improper credit reporting has negatively affected Ms. Michelo's credit, thereby causing her economic and

noneconomic harm." (Am. Cmplt. (Dkt. No. 60) ¶¶ 79, 81-82) Defendants challenge the sufficiency of Michelo's claimed injury on the grounds that it is conclusory and not causally connected to the alleged deceptive practice.[22] These arguments are not persuasive.

Michelo's allegation that the credit reporting "negatively affected [her] credit" and so caused her economic and noneconomic harm is not the type of "bare" or "conclusory" allegation insufficient to state a claim. The Court concludes that this allegation is sufficiently specific for purposes of the injury requirement. See Seller v. Citimortgage, Inc., 118 A.D.3d 511, 511-12 (1st Dept. 2014).

Michelo's claimed injury is also sufficiently causally connected to the alleged deceptive practices. Although Defendants argue that "[n]othing asserted ties credit reporting to the state-court litigation or the Defendants' actions," and contend that Plaintiffs' allegations do not "suggest that the alleged 'false' credit report was impacted by any litigation practice," Michelo Def. Br. (Dkt. No. 81) at 27, the Court reads the Amended Complaint to state that Defendants reported the debt to the credit bureaus "at or about the time that th[e] [state court] lawsuit against Plaintiff Michelo was commenced." (Am. Cmplt. (Dkt. No. 60) ¶ 79) Michelo further alleges that "despite having discontinued the lawsuit . . . these Defendants falsely reported . . . . that the underlying debt was valid and owed." (Id. ¶ 81) The Court understands this reporting to be "false," because Defendants knew they could not prove the debt was "valid and owed," and in their reporting Defendants failed to state that the debt was no longer the subject of legal action. The allegedly false reporting thus "was impacted" by Defendants'

_____

[22] Defendants also argue that the Amended Complaint's "allegation that 'Defendants' made the false reporting is impermissible group pleading that deprives Defendants of fair notice of the claims." (Michelo Def. Br. (Dkt. No. 81) at 28) However, the Amended Complaint explicitly alleges that "Defendants Trust 2007-2, Forster, and Transworld and/or NCO" engaged in the credit reporting at issue. (Am. Cmplt. (Dkt. No. 60) ¶¶ 39, 81)

litigation practice.  Accordingly, the Court concludes that Michelo has sufficiently pled the injury element of a Section 349 claim.[23]

### 2. Plaintiff Katherine Seaman's Fear of Future Garnishment Does Not Constitute an "Actual Injury"

The Amended Complaint alleges that, after default was entered against the Seaman Plaintiffs, an income execution was issued to Plaintiff Mary Re Seaman's employer, and Mary Re Seaman's wages were garnished.  As a result, "Plaintiff K[atherine] Seaman fears she likewise will be subjected to garnishment on Trust 2007-3's unlawfully procured judgment, and thus has been harmed." (Am. Cmplt. (Dkt. No. 60) ¶¶ 111-13)  Citing Shafran v. Harley-Davidson, Inc., No. 07 Civ. 1365 (GBD), 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008), Defendants argue that "this speculative fear of a possible future injury is insufficient under § 349" to establish injury.  (Michelo Def. Br. (Dkt. No. 81) at 28)

---

[23] Defendants also argue that "Michelo does not even plausibly allege that the credit reporting was in fact false." (Michelo Def. Br. (Dkt. No. 81) at 27)  They point to Toohey, where the court concluded that plaintiff "failed to allege harm suffered as a result of Defendants' acts," because, although her wages were garnished, "Toohey does not allege that she did not owe the debt for which her wages were garnished." Toohey, 2016 WL 4473016, at *10.  To the extent that the Toohey court concludes that a plaintiff cannot be actually injured under Section 349 by defendants' conduct in connection with debt collection because the plaintiff does not dispute the debt, this Court disagrees.  Toohey relies entirely on language in Sykes v. Mel S. Harris & Assocs. LLC stating that the following argument "has force": "if a debt [is] actually owed, and a default judgment was achieved by proper service, a plaintiff cannot actually be an injured party under RICO to the extent that defendants extracted money" pursuant to the default judgment. Sykes, 780 F.3d at 91 (emphasis added).  Setting aside the fact that Sykes does not hold that a plaintiff cannot be so injured under the circumstances, Toohey offers no explanation for reaching the same conclusion as to a claim brought under Section 349.  Much like the FDCPA – which "'is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists,'" Bautz v. ARS Nat'l Servs., Inc., 226 F. Supp. 3d 131, 143 (E.D.N.Y. 2016) (quoting Keele v. Wexler, 149 F.3d 589, 593-94 (7th Cir. 1998)), the purpose of Section 349 is "to secure an honest market place where trust, and not deception, prevails." Int'l Design Concepts, LLC v. Saks Inc., 486 F. Supp. 2d 229, 238 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).  Michelo may thus suffer harm in connection with Defendants' alleged deceptive practices regardless of whether or not she owed the loan debt in question.

As an initial matter, the Court acknowledges that "[e]motional harm . . . satisf[ies] the injury requirement for a claim under . . . GBL § 349." Guzman, 2018 WL 1665252, at *12 (internal quotation marks and citation omitted). "Courts have repeatedly held that fear and other emotional strain stemming from consumer fraud is sufficient to establish injury under § 349." (Michelo Opp. Br. (Dkt. No. 82) at 45)  See, e.g., Wood v. Capital One Servs., LLC, 718 F. Supp. 2d 286, 292 (N.D.N.Y. 2010) ("Plaintiff claims that, by virtue of the misleading Letter, he suffered humiliation, anger, anxiety, emotion[al] distress, fear, frustration, and embarrassment. . . . By alleging specific non-pecuniary harms resulting from the purportedly misleading practice of transmitting the Letter, Plaintiff has gone beyond making the conclusory allegation that Movants caused actual damages and injury." (internal quotation marks and citations omitted)); Rozier v. Fin. Recovery Sys., Inc., No. 10-CV-3273 DLI JO, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) ("Plaintiff alleges that he has 'suffered and continue[s] to suffer actual damages . . . including damages associated with . . . humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment. . . . These alleged damages . . . are sufficient to state a cause of action."). The emotional harm in these cases, however, flows directly from the defendants' violative conduct, and not the risk of a speculative future event. Plaintiffs have identified no case – and the Court has found no case – in which the fear of an uncertain future occurrence is itself sufficient to satisfy the actual injury requirement.

Defendants cite Shafran for the proposition that fear of a speculative harm does not constitute actual injury under Section 349. In Shafran, the court denied that "the time and expense of credit monitoring to combat an increased risk of future identity theft" constitutes an actual injury under Section 349, reasoning that there is no "actual injury" where "alleged injuries are solely the result of a perceived and speculative risk of future injury that may never occur."

Shafran, 2008 WL 763177, at *3. Although Shafran does not address a future injury, its logic applies with equal force here. Accordingly, the Court concludes that Plaintiff Katherine Seaman has not sufficiently alleged that she suffered an actual injury, and her GBL Section 349 claim will be dismissed.

### 3. Plaintiffs Bifulco and Frauenhofer Sufficiently Allege Actual Injuries

Plaintiff Bifulco alleges that her "wages have been garnished due to [an] income execution" in connection with the default judgment entered against her. Bifulco also asserts that, "on information and belief[,] Defendants have falsely reported to credit bureaus that the underlying debt was valid and owed." (Bifulco Cmplt. (Dkt. No. 1) ¶¶ 91-93) Frauenhofer alleges, on information and belief, that her wages have been garnished. (Id. ¶ 151-52) Wage garnishment is a pecuniary harm that satisfies the actual injury requirement. See Mayfield v. Asta Funding, Inc., 95 F. Supp. 3d 685, 700-02 (S.D.N.Y. 2015); cf. id. at 702 n.6 ("[P]ecuniary harm in the form of garnished wages . . . is sufficient to plead" injury under RICO).

Accordingly, the Court denies Defendants' motion to dismiss Bifulco's and Frauenhofer's claims on this basis.

### 4. Plaintiff Butry Has Not Pled an Actual Injury

In asserting injury, Plaintiff Butry alleges only that, on information and belief, "Defendants falsely reported to credit bureaus that the underlying debt was valid and owed." (Bifulco Cmplt. (Dkt. No. 1) ¶ 122) But Butry does not allege that any harm flowed from this alleged false reporting. She does not allege, for example, that Defendants' alleged false report actually affected her credit or otherwise caused her damage. As a result, Butry has not established an "actual harm" under Section 349. See Seller, 118 A.D.3d at 511-12 ("While the adverse consequences of a negative credit report could constitute the requisite injury [under

Section 349] . . . plaintiffs do not allege that a negative credit report was issued." Defendants'

motion to dismiss Butry's Section 349 claim will be granted.

## I. Plaintiffs Sufficiently Plead Violations of Judiciary Law § 487

Defendants attack Plaintiffs' Judiciary Law § 487 claims – which are asserted

solely against Forster – on several grounds. As an initial matter, they argue that the Seaman

Plaintiffs and Plaintiff Tabar's Section 487 claims "constitute an impermissible collateral attack

in this plenary action."[24] (Michelo Def. Br. (Dkt. No. 81) at 42) Consistent with the arguments

that misrepresentations in the course of litigation are not actionable under the FDCPA or GBL

Section 349, Defendants argue that Forster's "advocacy is not actionable deceit under [Judiciary

Law § 487]." (Id. at 40) Defendants further argue that Plaintiffs' allegations are too

"generalized and conclusory," and fail to plausibly allege that Forster acted with intent to

deceive. (Id. at 39) Finally, Defendants contend that Plaintiffs fail to allege that Forster's

conduct caused them injury. (Id. at 41)

### 1. Judiciary Law § 487 Standard

Judiciary Law § 487 makes liable in a civil action any "attorney or counselor"

who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to

deceive the court or any party." N.Y. Judiciary Law § 487(1) (McKinney). "[N]umerous New

York State courts interpreting th[is] statute, as well as federal courts construing the state court

decisions, have concluded that liability attaches" under this law "only if the deceit is 'extreme' or

'egregious.'" Ray v. Watnick, 182 F. Supp. 3d 23, 29 (S.D.N.Y. 2016), as amended (May 3,

---

[24] It is not clear whether the Defendants level the same argument against the Bifulco Plaintiffs. The Bifulco Defendants brief states that the Bifulco Plaintiffs' Section 487 claims "fail[] for the same reasons the Michelo plaintiffs' claims fail," and proceeds to describe two bases for the failure, neither of which is that the claims constitute an impermissible collateral attack. (See Bifulco Def. Br. (Dkt. No. 38) at 12)

2016), aff'd, 688 F. App'x 41 (2d Cir. 2017) (collecting cases).[25] Moreover, "[a] plaintiff also

has to establish that damages were caused by the deceit" in order to succeed on a Section 487

claim. Iannazzo v. Day Pitney LLP, No. 04 CIV 7413 DC, 2007 WL 2020052, at *11 (S.D.N.Y.

July 10, 2007).[26]

2. **Analysis**

a. **The Section 487 Claims Alleged by the Seaman Plaintiffs and Plaintiff Tabar are Properly Brought in this Action**

Numerous Appellate Division opinions have held that a party's remedy for a

Section 487 violation premised on an attorney's misconduct in a litigation "lies exclusively in

that lawsuit itself, i.e., by moving . . . to vacate the civil judgment due to its fraudulent

procurement, not [by filing] a second plenary action collaterally attacking the judgment in the

original action." Yalkowsky v. Century Apts. Assocs., 215 A.D.2d 214, 215 (1st Dept. 1995);

see also Chibcha Rest., Inc. v. David A. Kaminsky & Assocs., P.C., 102 A.D.3d 544, 545 (1st

Dept. 2013) ("Plaintiffs' [Section 487 claim] stems[s] from defendants' alleged misconduct in

connection with a fee dispute in Civil Court. Accordingly, 'plaintiff's remedy lies exclusively in

_____

[25] However, "there appears to be no ruling from the New York Court of Appeals on whether deceitful statements must be 'extreme' or 'egregious' in order to be actionable under § 487." Watnick, 182 F. Supp. 3d at 31.

[26] Defendants contend that "[s]ince a claim under § 487 is premised upon alleged deceptive conduct by an attorney, it is subject to the specific pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." (Michelo Def. Br. (Dkt. No. 81) at 38-39) Whether Rule 9(b) applies to Section 487 claims is an open question. Compare Bryant v. Silverman, 284 F. Supp. 3d 458, 469 (S.D.N.Y. 2018) ("Although [the court's] research has not disclosed any federal authority addressing whether a claim under [Section 487] must be pleaded with particularity . . . [the court] conclude[s] that Rule 9(b) also applies to plaintiff's Section 487 claim.") with M'Baye v. New Jersey Sports Prod., Inc., No. 06 CIV.3439 DC, 2007 WL 431881, at *13 (S.D.N.Y. Feb. 7, 2007) ("[Defendant] cites no law to show that allegations under § 487 must be pled with particularity, and an allegation that a defendant has deceived a court is not the same as an allegation of fraud under Rule 9(b)."). This Court need not resolve the issue, because even assuming arguendo that Rule 9(b) applies, Plaintiff's Section 487 claims survive.

56

that lawsuit itself . . .'" (quoting <u>Yalkowsky</u>, 215 A.D.2d at 215)); <u>Urias v. Daniel P. Buttafuoco</u> <u>& Assocs., PLLC</u>, 173 A.D.3d 1244 (2d Dept. 2019)  Based on these authorities, Defendants contend that the Section 487 claims brought by the Seaman Plaintiffs and Plaintiff Tabar should be dismissed as an impermissible collateral attack on the judgments in the underlying state actions.  (<u>Michelo</u> Def. Br. (Dkt. No. 81) at 42)

"Under an exception to th[is] rule," however, "a separate lawsuit may be brought where the alleged perjury or fraud in the underlying action 'was merely a means to the accomplishment of a larger fraudulent scheme,'" <u>Specialized Indus. Servs. Corp. v. Carter</u>, 68 A.D.3d 750, 752 (2d Dept. 2009) (quoting <u>Newin Corp. v. Hartford Acc. & Indem. Co.</u>, 37 N.Y.2d 211, 217 (1975)), which was "'greater in scope than the issues determined in the prior proceeding.'" <u>Id.</u> (quoting <u>Retina Assoc. of Long Is. v. Rosberger</u>, 299 A.D.2d 533, 533 (2d Dept. 2002).  Here, Plaintiffs' allegations that Defendants operated a widespread scheme to fraudulently obtain default judgments in debt collection proceedings fits squarely within this exception.  <u>See</u>, <u>e.g.</u>, <u>New York City Transit Auth. v. Morris J. Eisen, P.C.</u>, 276 A.D.2d 78, 88 (1st Dept. 2000) ("This case fits into the exception as the perjury here was part of a larger fraudulent scheme.  The larger scheme . . . was the systematic use of the Eisen firm as a vehicle to unjustly pursue personal injury actions . . . in order to recoup large damage awards and settlements. . . .")  Because Plaintiffs' Section 487 claims fall within this "larger fraudulent scheme" exception, the claims are properly before the Court in this action.

### b.  The Alleged Misrepresentations Are Actionable Under Section 487

Defendants maintain that Section 487 "does not impose liability for allegedly deceptive statements made in the course of adversarial litigation."  According to Defendants, "New York courts have repeatedly held that an attorney's conduct taken on behalf of a client in

57

the context of adversarial proceedings does not meet the extreme and egregious threshold necessary to impose liability" under this law. (Michelo Def. Br. (Dkt. No. 81) at 22)

As an initial matter, the notion that Section 487 "does not impose liability for allegedly deceptive statements made in the course of adversarial litigation" contradicts the plain language of the law. Section 487 reaches "deceit or collusion" made "with intent to deceive the court or any party." N.Y. Judiciary Law § 487(1) (emphasis added). Accordingly, the statute plainly addresses "statements made in the course of adversarial litigation." See Scott v. Greenberg, No. 15-CV-05527 (MKB), 2017 WL 1214441, at *15 (E.D.N.Y. Mar. 31, 2017) ("Greenberg's conduct was well outside the bounds of 'vigorous advocacy' and, as alleged, qualifies as 'egregious misconduct.'"); see also Amalfitano v. Rosenberg, 533 F.3d 117, 123 (2d Cir.) ("Section 487 . . . permits a civil action to be maintained by any party who is injured by an attorney's intentional deceit or collusion in New York on a court or on any party to [the] litigation . . . ."), certified question accepted, 11 N.Y.3d 728 (2008), and certified question answered, 12 N.Y.3d 8 (2009); Schertenleib v. Traum, 589 F.2d 1156, 1166 (2d Cir. 1978) ("[S]ection 487 is . . . intended to regulate, through criminal and civil sanctions, the conduct of litigation before the New York courts.").

The cases cited by Defendants are not to the contrary. In O'Callaghan v. Sifre, 537 F. Supp. 2d 594 (S.D.N.Y. 2008), for example, plaintiff contended that defendant – counsel for a woman with whom the plaintiff was litigating custody and other domestic disputes – "made false, unfounded[,] or meritless allegations that amounted to fraud upon the [c]ourt." O'Callaghan, 537 F. Supp. 2d at 595. Plaintiff alleged that defendant was "using his law license . . . in order to harass plaintiff"; that defendant "has a history of attacking judges, the court and opposing counsel . . . ."; and that defendant, "as a lawyer," was "killing the child with malicious

suits against the mother." (Report and Recommendation at 4-5, O'Callaghan v. Sifre, 537 F. Supp. 2d 594 (S.D.N.Y. 2008) (No. 05 Civ. 7437) (Dkt. No. 36) (internal quotation marks, citations, and emphasis omitted)) The district court, in adopting a Report and Recommendation, concluded that "an action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings [is] not sufficient to make out a violation of § 487." O'Callaghan, 537 F. Supp. 2d at 596. "[M]eritless or unfounded allegations" of the type at issue in O'Callaghan – which primarily consisted of characterizations of a party's conduct and motivations – are significantly different than the alleged intentionally false and fraudulent submissions to a court at issue here.

In Lazich v. Vittoria & Parker, 189 A.D.2d 753 (2d Dept. 1993) – also cited by Defendants – the Second Department said nothing suggesting that statements made in the course of adversarial litigation cannot support a Section 487 claim. Instead, the court merely held that "all the statements and conduct complained of" — which are not described in the opinion — "were well within the bounds of the adversarial proceeding and were not outrageous or egregious in any way. Therefore, they do not . . . constitute a violation of Judiciary Law § 487. . . ." Id. at 754.

All. Network, LLC v. Sidley Austin LLP, 43 Misc. 3d 848 (N.Y. Cty. Sup. Ct. 2014) is even further afield. In that case, which arose from a dispute over funding of a Las Vegas real estate development, plaintiffs complained that defense counsel for a holding company made certain misrepresentations in a TRO application. Id. at 853-54. The Alliance Network court first explained that the Section 487 claims were not properly before the court, id. at 858, and then went on to hold that – even if the claims were properly before the court – plaintiffs had not alleged conduct sufficiently egregious to state a claim under the statute. Id. at 859. To be

suits against the mother." (Report and Recommendation at 4-5, O'Callaghan v. Sifre, 537 F. Supp. 2d 594 (S.D.N.Y. 2008) (No. 05 Civ. 7437) (Dkt. No. 36) (internal quotation marks, citations, and emphasis omitted)) The district court, in adopting a Report and Recommendation, concluded that "an action grounded essentially on claims that an attorney made meritless or unfounded allegations in state court proceedings [is] not sufficient to make out a violation of § 487." O'Callaghan, 537 F. Supp. 2d at 596. "[M]eritless or unfounded allegations" of the type at issue in O'Callaghan – which primarily consisted of characterizations of a party's conduct and motivations – are significantly different than the alleged intentionally false and fraudulent submissions to a court at issue here.

In Lazich v. Vittoria & Parker, 189 A.D.2d 753 (2d Dept. 1993) – also cited by Defendants – the Second Department said nothing suggesting that statements made in the course of adversarial litigation cannot support a Section 487 claim. Instead, the court merely held that "all the statements and conduct complained of" — which are not described in the opinion — "were well within the bounds of the adversarial proceeding and were not outrageous or egregious in any way. Therefore, they do not . . . constitute a violation of Judiciary Law § 487. . . ." Id. at 754.

All. Network, LLC v. Sidley Austin LLP, 43 Misc. 3d 848 (N.Y. Cty. Sup. Ct. 2014) is even further afield. In that case, which arose from a dispute over funding of a Las Vegas real estate development, plaintiffs complained that defense counsel for a holding company made certain misrepresentations in a TRO application. Id. at 853-54. The Alliance Network court first explained that the Section 487 claims were not properly before the court, id. at 858, and then went on to hold that – even if the claims were properly before the court – plaintiffs had not alleged conduct sufficiently egregious to state a claim under the statute. Id. at 859. To be

sure, the court emphasized that "[e]ach of the statements were made within the confines of an adversarial proceeding." Id. But the court explicitly stated that "the fact that such statements were made in the course of litigation does not, in and of itself, preclude a section 487 action." Id. Because the plaintiffs in Alliance Network merely "highlight[ed] the attorney defendants' positions on contested issues in the underlying litigations and cast those positions as deceits," plaintiffs' allegations were "different in type and kind from those giving rise to a viable section 487 claim." Id. at 848. The court explicitly acknowledged, however, that allegations "that the attorney defendants falsified documents or made statements regarding matters particularly within their knowledge that were untrue" could support a Section 487 action. Id. at 860.[27]

Moreover, courts have found that misrepresentations akin to those alleged here are sufficient to state a claim for a Section 487 violation. In Diaz v. Portfolio Recovery Assocs., LLC, No. 10 CV 3920 (ERK), 2012 WL 661456 (E.D.N.Y. Feb. 28, 2012), report and recommendation adopted, No. 10 CV 3920 (MKB) (CLP), 2012 WL 1882976 (E.D.N.Y. May 24, 2012), for example, plaintiff contended that a law firm and a debt collection firm systematically and intentionally brought time-barred lawsuits to recover debts. Plaintiff premised his Section 487 claim on the allegation that the defendant law firm "did not conduct a meaningful review of the complaint and its factual allegations . . . prior to [the filing of the complaint against Plaintiff]." Id. at *3. In a report and recommendation, the magistrate judge recommended that the defendant law firm's motion to dismiss the Section 487 claim be denied, because "plaintiff's claim is based on an alleged broad pattern of deceptive filings that plaintiff

---

[27] The remaining cases Defendants cite involve little analysis of Section 487 and are not persuasive here. See, e.g., Seldon v. Lewis Brisbois Bisgaard & Smith LLP, 116 A.D.3d 490, 491 (1st Dept. 2014) (affirming dismissal where defendant lawyers' statements, "mainly consist of simple advocacy.").

claims were robosigned without meaningful review and which were time-barred on their face."
Id. at *15 (internal quotation marks omitted). The district court, in adopting the report and
recommendation, concluded that the magistrate judge "rightfully found that Plaintiff's
allegations of a 'broad pattern of deceptive filings' were sufficient to support a claim under
Section 487." Diaz v. Portfolio Recovery Assocs., LLC, 2012 WL 1882976, at *5; see also
Sykes v. Mel Harris & Assocs., LLC, 757 F. Supp. 2d 413, 428-29 (S.D.N.Y. 2010) ("Plaintiffs'
allegations regarding the fraudulent affidavits [of service] and other filings provide adequate
support for th[e Section 487] claim against the . . . defendants.")

This Court concludes that the alleged misrepresentations at issue here are
actionable under Section 487.

###     c.     Plaintiffs Plausibly Allege that Forster & Garbus Acted with Intent to Deceive

Asserting that "[Section] 487 claims are subject to dismissal where . . . they fail to
set forth any plausible claim that the attorney defendants acted with the requisite intent to
deceive" (Michelo Def. Br. (Dkt. No. 81) at 39 (emphasis in original)) — Defendants insist that
"there are no allegations reflecting that [Forster] had knowledge that th[e] statements [in the state
complaints and default judgment applications] were allegedly false, let alone allegations
supporting a strong inference that [the law firm] submitted them with the specific intent to
deceive." (Id.)

Defendants' argument is not persuasive. Plaintiffs allege that – pursuant to New
York law – Forster attorneys "are obligated . . . to conduct a reasonable investigation into the
legal and factual basis of any civil action that they initiate and maintain on a client's behalf."
(Am. Cmplt. (Dkt. No. 60) ¶ 59; Bifulco Cmplt. (Dkt. No. 1) ¶ 58)) However, "Forster attorneys
ignore[d] this obligation, robosigning National Collegiate complaints, and maintaining [] actions

for National Collegiate's benefit, without conducting such reasonable investigation." "The default-judgment filings that Forster submits on National Collegiate's behalf are similarly auto-generated and robosigned, and/or filed in state courts without meaningful attorney review." (Am. Cmplt. (Dkt. No. 60) ¶¶ 60, 62; Bifulco Cmplt. (Dkt. No. 1) ¶¶ 59, 61) Plaintiffs further allege that the certifying attorneys filed Transworld and NCO affidavits falsely attesting to the affiants' personal knowledge of the loan records at issue, and that they did so "kn[owing] when they filed [them] that [they] w[ere] not based on the requisite personal knowledge of proof of indebtedness." (Am. Cmplt. (Dkt. No. 60) ¶¶ 109, 143; Bifulco Cmplt. (Dkt. No. 1) ¶¶ 85, 117, 146) Plaintiffs contend that, through the commission of such acts, Forster "engag[ed] in a chronic, persistent pattern of conduct with intent to deceive consumer-defendants and multiple New York courts." (Am. Cmplt. ¶ 188) The alleged pattern of robosigning complaints and filing default papers without review plausibly supports the claim that Forster acted with intent to deceive. See Diaz, 2012 WL 1882976, at *5 ("Plaintiff's allegations of a 'broad pattern of deceptive filings' were sufficient to support a claim under Section 487."); Sykes, 757 F. Supp. 2d at 428 (same).

### d.      Whether Plaintiffs Sufficiently Plead Damage

In order to successfully maintain a Section 487 claim, "plaintiff must . . . plead and prove actual damages caused by the deceit . . . alleged." Bryant v. Silverman, 284 F. Supp. 3d 458, 472 (S.D.N.Y. 2018) (quotation marks and citation omitted). The deceit must be the proximate cause of the damage incurred. See id. at 477 (dismissing Section 487 claim where plaintiff alleged damage in the form of the costs of litigating a lengthy prior action, but "the lengthy nature of the [prior action] was due in large part to the [o]rder of [the court] . . . which stayed [the action] . . . and, thus, was not proximately caused by any of [the defendant's] alleged

acts of malpractice"); Strumwasser v. Zeiderman, 102 A.D.3d 630, 631 (1st Dept. 2013) (dismissing Section 487 claim where "plaintiff does not allege that [the claimed damage] was the proximate result of defendants' alleged deceit.").

Here, Defendants argue that "Plaintiffs fail to allege any damages that resulted from [Forster's] purported misconduct . . . apart from a conclusory allegation of 'economic and noneconomic damages.' . . . There are no well-pleaded facts alleged setting forth how [Forster's] alleged deceit caused these injuries."[28] (Michelo Br. (Dkt. No. 81) at 41) Defendants make no further argument as to the deficiencies in the Seaman Plaintiffs' or Plaintiff Tabar's pleading, and – as to these Plaintiffs – the Court concludes that the damages element of Section 487 is sufficiently pled.[29]

---

[28] Although the Bifulco Defendants' brief states that "Plaintiffs' [Section 487] claim . . . fails for the same reasons the Michelo plaintiffs' claims fail," the brief proceeds to recite only two bases for dismissal, neither of which involves damages. (See Bifulco Def. Br. (Dkt. No. 38) at 12) Accordingly, the Court does not understand Defendants to argue that the Bifulco Plaintiffs insufficiently plead damages.

[29] As to Plaintiffs Mary Re Seaman and Tabar, the Amended Complaint asserts that Seaman's "wages have been garnished due to [an] income execution" issued in connection with the default judgment that Forster obtained against the Seaman Plaintiffs, allegedly on the basis of Forster's (and other Defendants') misrepresentations. (See Am. Cmplt. (Dkt. No. 60) ¶¶ 99, 107, 110-13) These allegations are a far cry from "a conclusory allegation of 'economic and noneconomic damages,'" and more than satisfy Section 487's damages requirement. Likewise, Plaintiff Tabar alleges damage in the form of – among other things – the costs of litigating the state debt collection proceeding. It is well established that a plaintiff's legal expenses can constitute damages for purposes of Section 487. See, e.g., Amalfitano v. Rosenberg, 428 F. Supp. 2d 196, 211 (S.D.N.Y. 2006) ("[T]here is no issue that the Amalfitanos were damaged by Rosenberg's deceit. . . . [P]laintiffs were forced to pay the costs of defending themselves in an action which was founded upon [a] deceitful premise . . . ."), aff'd, 572 F.3d 91 (2d Cir. 2009). Taber incurred these expenses as a result of the default judgment allegedly obtained by virtue of Forster's misrepresentations, and the misrepresentations of other Defendants, in the default application. (See Am. Cmplt. (Dkt. No. 60) ¶¶ 133-35, 137-44, 155) Katherine Seaman's allegations present a closer question. The only injury alleged as to her is that she "fears she . . . will be subjected to garnishment." (Am. Cmplt. (Dkt. No. 60) ¶¶ 113) As discussed above, this allegation is not sufficient to establish injury under GBL Section 349. Assuming arguendo that emotional harm can constitute an injury for purposes of Section 487, it is not clear that fear of a potential injury – one that has not occurred over the past three years – is sufficient to establish an actual injury.

The Court concludes that Plaintiff Michelo has not pled damage under Section 487, however. Section 487 "only provides a cause of action against an attorney who engages in deceit . . . that is directed at a court or occurs 'during the course of a pending judicial proceeding.'" Scott v. Greenberg, No. 15-CV-05527 (MKB), 2017 WL 1214441, at *14 (E.D.N.Y. Mar. 31, 2017) (quoting Polanco v. NCO Portfolio Mgmt. Inc., 23 F. Supp. 3d 363, 375 (S.D.N.Y. 2014). "This limitation covers any statements related to an ongoing proceeding," including "any oral or written statement related to a proceeding and communicated to a court or party with the intent to deceive." Id. (internal quotation marks and citation omitted). The only injury Michelo asserts here is the negative effect Defendants' allegedly false credit reporting had on her credit. (Am. Cmplt. (Dkt. No. 60) ¶¶ 79, 81-82) While this alleged injury is closely intertwined with Defendants' conduct in the state court proceedings against Michelo, it is not sufficient to sustain her Section 487 claim, because the Amended Complaint does not allege that Forster's misrepresentations to the court and to Michelo in the state court proceedings caused the false credit reporting, or that Forster communicated the false credit reporting to the state court or to Michelo. See Scott v. Greenberg, No. 15-CV-05527 (MKB), 2017 WL 1214441, at *15 & n.19 (E.D.N.Y. Mar. 31, 2017) (holding that an attorney's misrepresentations to a debtor and misrepresentations in a state court debt collection proceeding were actionable under Section 487, but that "the allegation that [the attorney] sent [an] income execution after obtaining judgment cannot be the basis for a [Section 487] claim because it did not occur during a pending judicial proceeding"). Because the false credit reporting and resulting harm to Michelo's credit are not "damages caused by the deceit . . . alleged," Michelo's Section 487 claim will be dismissed.[30]

---

[30] Defendants have not argued that Katherine Seaman's Section 487 claim should be dismissed on this basis, however.

The Court concludes that Plaintiff Michelo has not pled damage under Section 487, however. Section 487 "only provides a cause of action against an attorney who engages in deceit . . . that is directed at a court or occurs 'during the course of a pending judicial proceeding.'" Scott v. Greenberg, No. 15-CV-05527 (MKB), 2017 WL 1214441, at *14 (E.D.N.Y. Mar. 31, 2017) (quoting Polanco v. NCO Portfolio Mgmt. Inc., 23 F. Supp. 3d 363, 375 (S.D.N.Y. 2014). "This limitation covers any statements related to an ongoing proceeding," including "any oral or written statement related to a proceeding and communicated to a court or party with the intent to deceive." Id. (internal quotation marks and citation omitted). The only injury Michelo asserts here is the negative effect Defendants' allegedly false credit reporting had on her credit. (Am. Cmplt. (Dkt. No. 60) ¶¶ 79, 81-82) While this alleged injury is closely intertwined with Defendants' conduct in the state court proceedings against Michelo, it is not sufficient to sustain her Section 487 claim, because the Amended Complaint does not allege that Forster's misrepresentations to the court and to Michelo in the state court proceedings caused the false credit reporting, or that Forster communicated the false credit reporting to the state court or to Michelo. See Scott v. Greenberg, No. 15-CV-05527 (MKB), 2017 WL 1214441, at *15 & n.19 (E.D.N.Y. Mar. 31, 2017) (holding that an attorney's misrepresentations to a debtor and misrepresentations in a state court debt collection proceeding were actionable under Section 487, but that "the allegation that [the attorney] sent [an] income execution after obtaining judgment cannot be the basis for a [Section 487] claim because it did not occur during a pending judicial proceeding"). Because the false credit reporting and resulting harm to Michelo's credit are not "damages caused by the deceit . . . alleged," Michelo's Section 487 claim will be dismissed.

---

Defendants have not argued that Katherine Seaman's Section 487 claim should be dismissed on this basis, however.

## CONCLUSION

It was for the reasons stated above that this Court issued its September 30, 2019 Order granting in part and denying in part Defendants' motion to dismiss. Defendants' motion to dismiss was granted as to (1) Plaintiff Michelo's FDCPA claim and Michelo's Section 487 claim; (2) the Seaman Plaintiff's FDCPA claim, to the extent it relies on the misrepresentation that National Collegiate is the "original creditor" for the Seamans' loan; (3) Katherine Seaman's GBL Section 349 claim; and (4) Francis Butry's GBL Section 349 claim. Defendants' motions to dismiss were otherwise denied.

Dated:     New York, New York
           October <u>1 1</u>, 2019

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge