VIA ECF                                                                                    June 15, 2020

Hon. Barbara Moses, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl St., Room 740
New York, NY 10007

Re:   *Michelo et al. v. Nat'l Collegiate Student Loan Trust 2007-2 et al.*, 18-CV-1781 (PGG)
      *Bifulco et al. v. Nat'l Collegiate Student Loan Trust 2004-2 et al.*, 18-CV-7692 (PGG)

Dear Judge Moses:

      The Parties submit this joint letter pursuant to this Court's Order of May 15, 2020.

**PROPOSED SCHEDULE**

      The Parties jointly propose the following schedule: **November 1, 2020** – Deadline for fact and class discovery; **December 2, 2020** – Deadline for class certification motion; **March 1, 2021** – Deadline for opposition to class certification motion; and **April 18, 2021** – Deadline for reply in further support of class certification motion.

**PLAINTIFFS' POSITIONS**

**I.   TSI's Discovery Deficiencies**

    *A. Missing Affiant Checklists And Emails Concerning Affiants' Job-Duty Documents*

      Plaintiffs' first request for production (served Jan. 7, 2019) specifically requested TSI produce "training manuals, checklists" and other documents "governing the actions of [TSI] employees who performed tasks in connection with the Subject Debt Collection Lawsuits [i.e., those targeting Plaintiffs]."[1] Over the course of 2019, TSI made several productions, but did not produce any such documents.

      During the TSI Rule 30(b)(6) deposition (on Feb. 11, 2020), corporate designee Bradley Luke testified TSI did provide a manual to the members of its "Affiant Team," who signed affidavits filed in the Trusts' state-court actions against consumers. After deposition, Plaintiffs requested TSI immediately produce the manual documents and "all emails, memoranda, notes (electronic or handwritten), and other writings concerning" them.[2] On March 20, TSI produced a purported version of the manual and some other such documents governing the Affiant Team's job duties. This production <u>only</u> included the checklists as to <u>two of the six</u> state-court actions at issue here. No emails or other writings concerning the manual or the checklist were produced, making it impossible for Plaintiffs to know the origin or use of the purported checklists. Plaintiffs outlined these deficiencies to this Court in their Local Rule 37.2 Letter of May 1. In reply, TSI wrote this Court on May 6 that TSI has "been unable to locate the [checklists] other than the ones produced."[3] This admission clearly implicates Rule 37(e)'s penalties for lost evidence.

      As to the missing emails, the evidence here shows these did at one time exist. An affidavit authored by James Cummins, a former member of TSI's Affiant Team, on January 6, 2020 (the "Cummins Affidavit") confirms TSI employees and managers had emailed each other about the manual. After producing the Cummins Affidavit, Plaintiffs asked TSI during a May 18 meet-and-

---

[1] *See* Pls.' 1st Consol. Reqs. for Prod'n to TSI Defs., at Req. No. 17 ("Pls.' TSI RFP"). The text of this request, and of TSI's responses thereto (served Feb. 19, 2019, supplemented on Apr. 17, 2020), is attached as Pls.' Ex. A.
[2] *See* Pls.' Ltr to TSI of Mar. 2, 2020, at 2 (attached hereto as Pls.' Ex. B).
[3] *See* Dkt. Nos. 146, 148 in Case No. 18-cv-1781; Dkt. Nos. 89, 91 in Case No. 18-cv-7692 (emphasis added).

confer call for an update on (1) the missing checklists and (2) the missing emails and other writings. TSI said it was still searching for them. On June 4, the Parties held a meet-and-confer call pursuant to this Court's Order of May 15. Plaintiffs asked TSI to produce the missing checklists immediately, or certify it cannot produce them. Plaintiffs put TSI on notice that TSI's apparent loss of these checklists likely requires a Rule 37(e) motion to this Court for adverse inference. As to the emails and other writings, TSI said it would be difficult to search for these. Plaintiffs requested TSI start by producing the emails referenced in the Cummins Affidavit.

Plaintiffs respectfully request this Court order TSI do the following by June 19, 2020: (1) produce the missing checklists, or certify it cannot produce these and explain in detail why it cannot, such that Plaintiffs may prepare a Rule 37(e) motion for adverse inference; and (2) produce the emails concerning the manual and checklists that are referenced in the Cummins Affidavit, as well as any other documents referencing the manual or checklists.[4]

### B. <u>Documents Concerning TSI's Relationship With Forster</u>

Following TSI's Rule 30(b)(6) deposition, Plaintiffs requested that TSI produce several types of documents concerning its relationship with Defendant Forster & Garbus ("Forster")[5]:

- Documents concerning how TSI selects Law Firms such as Forster for inclusion in its nationwide "Attorney Network" of local counsel to which Trust accounts are referred.
  *татTSI asserts this request is irrelevant, and is withholding responsive documents under attorney/client privilege.*[6]
- Documents concerning Forster's "market share"—a Law Firm's fixed percentage of TSI account referrals for litigation, within the jurisdiction where it litigates.
  *TSI asserts this request is overly broad and irrelevant.*
- Documents concerning TSI's annual audits of Forster's work for the benefit of Trusts.
  *TSI is withholding responsive documents under attorney/client privilege.*
- Documents reflecting instances in which TSI called back a Trust account that had been referred to a Law Firm, because TSI lacked proof of indebtedness.
  *TSI asserts this request is covered by attorney/client privilege as it requests communications between attorney and client.* Documents reflecting Law Firm requests to TSI for additional documents in connection with state-court consumer-defendants' demands for discovery against the Trusts.
  *TSI asserts this request is covered by attorney/client privilege as it requests communications between attorney and client.*
- Documents reflecting instances in which members of the Affiant Team testified in state court as the Trusts' witness. Such documents (1) include, without limitation, transcripts of state-court testimony, and (2) must reflect details including, without limitation, the costs of such appearances, and whether the outcome was dismissal.
  *TSI asserts this request is overly broad and irrelevant.*

Courts in analogous cases have rejected the argument that such documents are privileged. Documents reflecting the business relationship between TSI and Forster are not privileged; nor are those simply reflecting what has transpired in the state-court collection suits.[7] And such

---

[4] Plaintiffs believe that the emails referenced in the Cummins Affidavit contain terms, sender/recipient names, and other information enabling a fulsome search of all emails and other writings concerning the manual and the checklists.

[5] *See* Pls.' Ltr to TSI of Mar. 2, 2020, at 6 (attached hereto as Pls.' Ex. C).

[6] The parties have refined the language of the request responses set forth above, during meet-and-confers related to the drafting of this letter. They are thus set forth in full in the letter, rather than through an attached exhibit.

[7] *Hallmark v. Cohen & Slamowitz*, 300 F.R.D. 110, 114–15 (W.D.N.Y. 2014); *Plascencia v. Collins Asset Grp., LLC*, No. C17-1505, 2019 U.S. Dist. LEXIS 41146, at *5–14 (W.D. Wa. Mar. 13, 2019).

documents are necessary to resolve core issues in this litigation, per the Court's Rule 12 decision: (1) Forster's profit motive for participating in Defendants' scheme, and (2) why Defendants dismiss or lose in state court when consumers fight back and Defendants must prove indebtedness.[8] Plaintiffs respectfully request this Court order TSI produce these documents by June 26, 2020.

### C. *Metadata Concerning Loan Documentation*

At the outset of discovery, Plaintiffs requested metadata reflecting (1) the date and time TSI acquired documents TSI produced in this litigation as purported documents evidencing the loans over which Defendants targeted Plaintiffs, and (2) the amount of time (if any) a Subject Affiant (i.e., those who signed state-court affidavits against Plaintiffs) spent reviewing each such document.[9] TSI refused to produce such metadata, asserting these are "not proportional to the needs of the case." Yet, whether TSI possessed and reviewed documentation evidencing indebtedness on individual loans is a core issue here, per the Court's Rule 12 decision. 419 F. Supp. 3d at 705–06. Only these metadata can resolve this issue. During the meet-and-confers held in preparing this letter, TSI stated it would search for these metadata and aim to produce them by July 17, 2020. Plaintiffs will notify this Court of any future issues as to this production.

### D. CFPB Documents

This Court rejected the privilege assertions TSI has made in withholding the documents concerning the CFPB's investigation of TSI. (Ord. of May 15, 2020, at 6–7). During the June 4 meet-and-confer, TSI related that, rather than follow the Court's Order, it intends to take a second bite at the privilege apple with new arguments. TSI said it was researching these new arguments, and would provide them to Plaintiffs within several days for the purposes of another meet-and-confer. On June 10, TSI told Plaintiffs it is still working on this summary. Plaintiffs respectfully request this Court order TSI to produce the CFPB documents by June 19, 2020.

## II. Trusts' Discovery Deficiencies

On August 20 and September 3, 2019, Plaintiffs requested the Trusts produce two types of lists of loans referenced in their original production: (1) the "Schedules" listing individual loans purportedly assigned from banks to the Trusts' pass-through entity, with one of these Schedules (for Trust 2004-2) described as being stored on a "CD"; and (2) "Rosters" listing which individual loans were to be serviced by which servicer.[10] In response, the Trusts produced on Sept. 4 only one document—the purported Roster for Trust 2006-4.

Over the following months, the Trusts supplemented their production extensively prior to their Rule 30(b)(6) deposition, but never produced any Schedules or additional Rosters. At deposition (on Feb. 13, 2020), corporate designee Mr. Luke testified that he had "four to seven" CDs containing schedules, but was not sure if any was the 2004-2 Schedule. He also said he believed Rosters existed for all Trusts. After deposition, Plaintiffs again requested all Schedules (including in CD format), and all Rosters. The Trusts responded "we have now confirmed that none of those discs [referenced by Mr. Luke] relate to the Trust Defendants," and that Rosters would be forthcoming.[11] The Trusts then produced an Excel spreadsheet purportedly comprising the 2004-2 Schedule—but no CD—and only one additional Roster. During the June 4 meet-and-confer, the Trusts could provide no indication when or if the 2004-2 Schedule CD would be

---

[8] 419 F. Supp. 3d 668, 682–83, 714 & n.29 (S.D.N.Y. 2019).
[9] Pls.' TSI RFP, at Req. Nos. 4, 6, 8. The text of this request, and of TSI's responses thereto (served Feb. 19, 2019, supplemented on Apr. 17, 2020), is attached hereto as Pls.' Ex. D.
[10] *See* Pls.' Emails to Trust Defs. of Aug. 20 & Sept. 3, 2019 (attached hereto as Pls.' Ex. E).
[11] *See* Pls.' Ltr to Trust Defs. of Feb. 27, 2020, at 4–6 (attached hereto as Pls.' Ex. F); Trust Defs.' Reply Ltr. to Pls. of Mar. 12, 2020, at 2 & n.1 (attached hereto as Pls.' Ex. G).

produced, even though their production expressly stated the document was on a "CD." As to the missing Rosters, the Trusts said issues concerning the covid-19 lockdown are still somehow impeding access to these, and could not provide an estimate when they might be produced.[12] During meet-and-confers on June 11 and 15, the Trusts said they are seeking the CD and the Rosters from entities that were counter-parties in the Trusts' securitizations, and requested additional time to complete this process. Plaintiffs asked the Trusts to produce the CD and missing Rosters by July 17, 2020.

If the July 17 deadline is not met, Plaintiffs will notify this Court and request that Your Honor order the Trusts immediately to certify that they cannot produce the 2004-2 Schedule CD and/or the missing Rosters. Any such certification must detail the reasons for nonproduction, such that Plaintiffs may prepare a Rule 37(e) motion.

**TSI'S POSITIONS**

Initially, the parties continue to meet and confer on several issues because TSI asserts some of the disputes described in this letter have only been recently raised.

> A. *Checklists and Emails Concerning Affiants' Job-Duty Documents*

TSI previously advised this Court that TSI has produced all batch cover sheets and checklists in its possession or control related to Plaintiffs' loans. TSI has diligently searched its records particular to each Plaintiffs' loans and has located the checklists and batch cover sheets for three of the seven Plaintiffs. TSI continues to review its records to attempt to locate the remaining checklists and batch cover sheets for the remaining Plaintiffs and has already agreed to supplement as additional checklists are located. There is no dispute regarding the production.

Plaintiffs' argument that Rule 37(e) is applicable here is entirely misplaced. Rule 37(e) contemplates the failure to preserve electronically stored information. Plaintiffs are effectively accusing TSI of destroying documents after the case was filed. That could not be further from the truth. TSI has produced the documents that it has been able to locate and continues to search for the other checklists and batch cover sheets.[13] To the extent that TSI is unable to locate the documents by the close of discovery, it will so notify Plaintiffs of such.

As to the emails, during the meet and confer, TSI advised Plaintiffs counsel that their request for emails generally was overbroad and requested search terms to limit the inquiry, and the parties discussed and agreed to limit such request at least initially, to emails involving TSI employee James Cummins. TSI is in the process of assembling the emails and reviewing them for privilege. Subject to TSI's review, TSI will timely produce a privilege log as to documents considered privileged, and will otherwise produce the emails. There is likewise no dispute here.

> B. *Documents Concerning TSI's Relationship With Forster*

The parties continue to meet and confer on this dispute. For context, in its March 11, 2020 letter to Plaintiffs, TSI advised that it would evaluate the requested documents to determine whether they are privileged, and if TSI determined that the documents were not privileged, then TSI would produce such documents. On March 27, 2020, TSI produced all of its agreements with Forster (Bates TSI 02115-02175), and on April 17, 2020, TSI provided Plaintiffs a privilege log. TSI heard nothing further regarding these documents or the privilege log until June 11, 2020.[14]

---

[12] The Trusts have now been invoking this excuse for more than a month. *See* Trust Defs.' L.R. 37.2 Reply Ltr. of May 6, 2020, at 2 (Dkt. No. 149 in Case No. 18-cv-1781; Dkt. No. 92 in Case No. 18-cv-7692).

[13] The affidavits at issue were executed on December 6, 2013, March 24, 2014, April 3, 2014, September 18, 2014, and March 30, 2015, respectively, well prior to the litigation being commenced.

[14] Plaintiffs' position is that the TSI-FG documents were discussed during the May 18 and June 4 meet-and-confers.

The document categories referenced in Plaintiffs' letter: (a) have been produced previously, (b) are irrelevant to the allegations in Plaintiffs' complaint as to the allegations against TSI (allegedly false affidavits) and as such are harassing, (c) are subject to the attorney-client privilege between TSI and the law firm, (d) are beyond the scope of the relationship with Forster, or (e) were previously designated as privileged and never challenged. As such, Plaintiffs requests as to such documents should denied.

### C. Metadata Concerning Loan Documentation

The parties are also continuing to meet and confer on this dispute. TSI has produced to Plaintiffs the loan documents (including their metadata) for each Plaintiffs' loan. Plaintiffs have requested that TSI search for additional information related to the time when TSI first came into possession of certain loan documents, and TSI has agreed to investigate. As to Plaintiffs position regarding metadata for the amount of time an affiant spent reviewing each such document, Plaintiffs misunderstand the deposition testimony. There would be no "metadata" relating to the affiant's review of TSI's account system. The TSI affiant accesses TSI's systems to review documents in connection with execution of affidavits. However, TSI is searching to locate documents confirming access of TSI's systems related to execution of the affidavits related to Plaintiffs' loans, and will timely supplement with such documents.

### D. CFPB Documents

TSI interprets the Court's May 15, 2020 order as advising that TSI could not rely upon the CFPB's confidentiality to preclude production of documents under 12 C.F.R. § 1080. As this Court noted, "[t]he Court has been unable to locate any statute, rule, or case that requires or permits the recipient of a CID to withhold otherwise discoverable documents from production in private civil litigation because they were previously submitted to the CFPB pursuant to a CID."

TSI asserts that it has a good faith basis to withhold such documents. In its letter to the Court, TSI was not afforded the opportunity to fully articulate such bases. As such, TSI intends to file a motion for a protective order shortly with rules that provide for such a right, and requests that the Court consider waiving the requirement for a pre-motion letter.

### **TRUSTS' POSITIONS**

***Plaintiffs' counsel's communications with prospective class members.*** As set forth in the Trusts' pre-motion letter, several of the Trusts' discovery demands request communications with prospective class members.[15] Plaintiffs confirmed during the meet-and-confer that there are 349 documents categorized on their amended privilege log as "Counsel's correspondence with potential Class members" that they are still withholding on the basis of "Attorney Work Product" and "Communications between Attorney and Prospective Client". However, the Trusts maintain that these communications with potential class members who are not named plaintiffs are not privileged and should be produced. As just one example, the Trusts are entitled to letters to prospective clients "encourag[ing] their involvement in a class action and a proposed form of retainer agreement." *Auscape Int'l v. Nat'l Geographic Soc'y*, No. 92-cv-6441-LAK, 2002 WL

---

[15] *See* The Trusts' First Sets of Document Requests to Seaman and Seaman No. 31; Bifulco and Butry No. 32; Frauenhofer No. 29; Michelo and Tabar No. 28; Second Set of Document Requests to Michelo, Seaman, Bifulco and Frauenhofer No. 1; and the 2004-2 Trust's First Set of Interrogatories to plaintiffs Michelo, Seaman, Tabar, and Frauenhofer No. 7. Because these document demands all concern "[d]ocuments relating in any way to communications by you or your counsel with any potential putative class member about this lawsuit or any of the allegations set forth in the Complaint," the Trusts have attached only one copy of the requests to this letter in view of Your Honor's directive in the Order to avoid providing the Court with any duplicative requests. *See* Trusts Ex. A (Responses and Objections to the Trusts' Second Set of Document Requests to Michelo, Seaman, Bifulco and Frauenhofer No. 1).

31250727, at *1 (S.D.N.Y. Oct. 8, 2002) ("letters to prospective clients to encourage their involvement in a class action and a proposed form of retainer agreement, regardless of whether the sending of them was in furtherance of the interests of existing clients, are not communications between attorney and client and are not confidential. They are, in significant measure, direct mail advertising."). Plaintiffs disagree. Accordingly, the Trusts respectfully request that the Court direct plaintiffs to produce those communications with potential class members who are not named plaintiffs. Alternatively, the Trusts request that the Court order plaintiffs to at least supplement their privilege log with further detail as to each of the 349 documents so that the Court can meaningfully assess privilege with regard to these documents. *See Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-04394-AJN-BCM, 2018 WL 10038859, at *1 (S.D.N.Y. Sept. 28, 2018) (quoting L. Civ. R. 26.2(a)(2)(A)) (Moses, M.J.); *United States v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 391 (S.D.N.Y. 2016).

***Response to the 2004-2 and 2006-4 Trusts' First Sets of Interrogatories.*** To date, plaintiffs have failed to respond at all to the 2004-2 Trust's First Set of Interrogatories to plaintiffs Michelo, Seaman, Tabar, and Frauenhofer and the 2006-4 Trust's First Set of Interrogatories to plaintiff Bifulco. During the parties' meet-and-confer, the Trusts restated their position that plaintiffs are obliged to serve written responses to these discovery requests pursuant to Fed. R. Civ. P. 33(b)(3) and (b)(4). Plaintiffs agreed to consider the Trusts' request. On June 11, plaintiffs confirmed that they will respond in writing to the Trusts' second sets of interrogatories by June 17. Accordingly, the Trusts respectfully reserve the right to raise any issues with plaintiffs' responses after they are received.

***Documents Supporting Factual Allegations and Damages.*** In response to the Trusts' pre-motion letter, the Court directed that plaintiffs produce documents and information concerning their damages and factual allegations. (Dkt. 167, Order at 2-3.) Thereafter, by letter dated May 22, 2020, the Trusts requested that plaintiff Sandra Tabar remedy her discovery deficiencies by producing those documents that support her damages claims, including, specifically, her pay records, earning statements, and those expenses identified in her affidavit (RFP No. 20; Interrogatory No. 20).[16] The Trusts also requested production of those documents supporting her allegations in this action, as well as other outstanding discovery items. On June 10, plaintiff Tabar responded to most of the Trusts' requests contained in its May 22 letter and requested to meet-and-confer as to one remaining request relating to plaintiff. Therefore, to the extent the parties remain in dispute ahead of the upcoming June 18, 2020 telephonic discovery conference, the Trusts respectfully request the right to again raise this remaining issue with the Court at that time.

                                                   Respectfully submitted,

                                                   */s/  All Counsel of Record*
                                                    [listed on following page]

---

[16] *See* Trusts Ex. B (Responses and Objections to the 2007-2 Trust's First Set of Requests For the Production of Documents to plaintiffs Michelo and Tabar) and Trusts Ex. C (Responses and Objections to the 2007-2 Trust's First Set of Interrogatories to plaintiffs Michelo and Tabar).

| | |
|---|---|
| FRANK LLP | LOCKE LORD LLP |
| /s/ Gregory A. Frank<br>Gregory A. Frank (GF0531)<br>Marvin L. Frank (MF1436)<br>Asher Hawkins (AH2333)<br><br>370 Lexington Avenue, Suite 1706<br>New York, NY 10017<br>Telephone: (212) 682-1853<br>Facsimile: (212) 682-1892<br>gfrank@frankllp.com<br>mfrank@frankllp.com<br>ahawkins@frankllp.com<br><br>*Attorneys for*<br>*PLAINTIFFS AND THE CLASSES* | /s/ Gregory T. Casamento<br>Gregory T. Casamento<br><br>Brookfield Place<br>200 Vesey Street, 20th Floor<br>New York, New York 10281<br>Tel. (212) 415-8600<br>Fax. (212) 303-2754<br>gcasamento@lockelord.com<br><br>J. Matthew Goodin<br>111 South Wacker Drive, Suite 4100<br>Chicago, IL 60606<br>(312) 443-0700<br>jmgoodin@lockelord.com<br><br>*Attorneys for Defendants*<br>*NATIONAL COLLEGIATE STUDENT LOAN TRUSTS*<br>*2004-2, 2006-4, 2007-2 AND*<br>*2007-3* |
| RIVKIN RADLER LLP | SESSIONS, FISHMAN, NATHAN & ISRAEL |
| /s/ Carol A. Lastorino<br>Carol A. Lastorino<br><br>926 RXR Plaza<br>Uniondale, New York 11556-0926<br>Tel. (516) 357-3101<br>Fax. (516) 357-3333<br>Carol.Lastorino@rivkin.com<br><br>*Attorneys for Defendant*<br>*FORSTER & GARBUS, LLP* | /s/ James K. Schultz<br>James K. Schultz<br><br>1545 Hotel Circle South, Suite 150<br>San Diego, CA 92108-3426<br>Tel: (619) 296-2018<br>Fax: (877) 334-0661<br>jschultz@sessions.legal<br><br>Morgan Ian Marcus<br>141 W. Jackson Boulevard, Suite 3550<br>Chicago, Illinois 60604<br>Tel: (312) 578-0985<br>Fax: (877) 334-0661<br>mmarcus@sessions.legal<br><br>*Attorneys for Defendants*<br>*TRANSWORLD SYSTEMS, INC. AND*<br>*EGS FINANCIAL CARE INC.* |