# Plaintiffs' Exhibit F

**FRANK** LLP

Gregory T. Casamento
February 27, 2020
Page 4

During the Deposition, Mr. Luke testified that in the spring of 2016, following a civil investigative demand from the Consumer Financial Protection Bureau ("CFPB"), someone at First Marblehead sent him "four to seven compact discs" containing loan-listing schedules connected with pool-assignments to certain of the National Collegiate Student Loan Trusts. (Dep. Tr. 132:5–140:8). Incredibly, Mr. Luke <u>has no idea</u> who at First Marblehead sent him these "four to seven" discs. (*Id.* at 139:12–24). Equally incredible, Mr. Luke <u>did not know</u> if these "four to seven" compact discs included the original copies that <u>are</u> actually referenced in the First Production. (*Id.* at 131:25–132:4; & 159:7–9).

Further, Mr. Luke could provide no explanation why the pool supplements for Trust 2006-4, and the unidentified "Purchaser Trust" that he stated could be either Trust 2007-3 or 2007-4,[9] were missing the pages that identify the location of the original schedules for these pool-assignments. (*Id.* at 173:24–174:4; & 184:20–22).

You must produce or make available for inspection all original copies of compact discs (or other formats) containing pool-assignment schedules that First Marblehead provided to the Trusts. In addition, you must produce all emails, memoranda, and other writings connected to the receipt of these CDs in the spring of 2016, as described by Mr. Luke in his testimony. (Dep. Tr. 132:5–140:8)

Plaintiffs must be allowed to inspect the original documents given that (1) at least half of the First Production's pool-assignments documents appear spoliated, (2) your corporate designee has no explanation for this, and (3) he professes ignorance of the location of original copies of schedules, insofar as these actually are referenced in the First Production. (Dep. Tr. 173:24–174:4; & 184:20–22). Should these critical documents suddenly appear in the latter weeks of the discovery period, Plaintiffs must be allowed to scrutinize the originals for themselves.

Plaintiffs must finally learn the true nature of the substance, timing, and means of the Trusts' acquisition of Assignment Documentation.

**The Spreadsheets Purportedly Reflecting Schedules and Related Documents**

Mr. Luke also testified that in 2012, First Marblehead transferred to him a number of Excel spreadsheets in connection with servicing duties to be performed for benefit of the Trust Defendants, and that these spreadsheets reflected schedules connected to pool-assignments of loans. (the "2012 Excel Spreadsheets"). *See* (Dep. Tr. 177:8–179:17). The 2012 Excel Spreadsheets have not been produced by Defendants.

---

[9] Again, this unidentified Trust could either be nonparty National Collegiate Student Loan Trust 2007-4, or Trust Defendant 2007-3. (Dep. Tr. 180:23–181:10).

**FRANK** LLP

Gregory T. Casamento
February 27, 2020
Page 5

Plaintiffs accordingly instruct you to produce the 2012 Excel Spreadsheets that were sent by First Marblehead, with their metadata intact.  Further, Plaintiffs instruct you to produce all emails, memoranda, and other writings that reference the 2012 Excel Spreadsheets, including their transfer from First Marblehead to the Trusts, along with an explanation of where these files were found and why that location was not previously searched.  These are plainly relevant to proof of assignment.  (Req. Nos. 3 & 5).[10]

### The Origin of the "TPW_Roster_NCSLT 2006-4"

Plaintiffs allege that all of the Trusts here—including Trust 2006-4—engaged in state-court debt-collection litigation activities against them without possessing and reviewing proper chain of title prior to engaging in these activities.  (Consol. Compl. ¶¶ 5, 255, 259, 261).[11]  In order to resolve the issue of what Assignment Documentation was acquired and when it was acquired, the RFP expressly excluded any "Documents Acquired" by a Trust "on or after February 28, 2018"—*i.e.*, the date of this federal litigation's commencement—and specifically demanded the metadata for each item of Assignment Documentation.  (RFP at Part II, ¶ 1, & Req. Nos. 3& 5).

Plaintiffs have a right to know when or if documents were in the Trusts' possession.  In response to Plaintiffs' Aug. 20 Deficiency Letter, instructing production of schedules listing individual loans in connection with assignments, you produced a document that was described as what "we understand to be the Schedule of Loans for the 2006-4 Trust." (Trust Defs.' Email to Pls., Sept. 4, 2019 (producing Bates Nos. NCSLT_000805–002052)).  This document was marked as Exhibit 4 during the Deposition.  Each of its many pages bears the header text "TPW_Roster_NCSLT 2006-4."

Strangely, Mr. Luke could not provide any details about the provenance of this document, to which he does not have access and which he had not seen prior to this litigation.  He "believe[s]" that "TPW" stands for "Thacher, Proffitt, Wood"—"one of the counsel that worked on securitizations"—but knows nothing of that firm's records creation and custodying.  (Dep. Tr. 196:16–201:16).

You failed to produce the metadata identifying how, when, and from what source this document came into the Trust Defendants' possession, and must produce the metadata immediately.  Similarly, you must produce any emails, memoranda, and other writings concerning such acquisition.  (Req. No. 5).

---

[10]  When you cure this deficiency, we expect to see documents containing the name "Jason Corn," as Mr. Luke testified that he was the First Marblehead employee who furnished these documents.  (Dep. Tr. 177:19–21).

[11]  Specifically, Trust 2006-4 targeted Plaintiff Frauenhofer.

**FRANK** LLP

Gregory T. Casamento
February 27, 2020
Page 6

### The "Servicer Consent Letter" "Schedules" of Loans

Just a few days before the Deposition, you produced several documents bearing the title "Servicer Consent Letter" that purported to assign the servicing rights to groups of loans listed in various "Schedule[s]." (Bates Nos. NCSLT_002865–73, NCSLT_002874–76, NCSLT_002877–80, NCSLT_002881–92 (produced Feb. 3, 2020)).[12]

Mr. Luke testified that each "Servicer Consent Letter" had as an attachment the schedule that listed the actual loans to be serviced. (Dep. Tr. 201:25–202:11). These documents—as well as all their metadata, and all emails, memoranda, and other writings connected to them—are plainly relevant to the RFP and should have been produced long ago. (Req. Nos. 3 & 5).

### Missing Purchase Agreement

The First Production contains reference to an "Amended and Restated Note Purchase Agreement dated as of July 26, 2002." (Bates No. NCSLT_000102). This purchase agreement was not produced.

Mr. Luke testified that he believed he looked at this purchase agreement, and decided it was not relevant to this litigation, but could not say for certain. (Dep. Tr. 111:22–117:5). Produce this document, including all related metadata. (Req. Nos. 3 & 5).

\* \* \* \*

We are amenable to a meet-and-confer concerning any or all of the items of above. Given the present time constraints, we ask that if you do wish to meet and confer, you contact us to arrange one as soon as possible.

---

[12] Plaintiffs had previously notified you months before that your production was missing "Servicer Consent Letter[s]." *See* Aug. 20 Deficiency Letter.