UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:____7/17/20____
```

| | |
|---|---|
| MUTINTA MICHELO, *individually and on behalf of all others similarly situated*, et al.,<br><br>Plaintiffs,<br><br>-against-<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2, et al.,<br><br>Defendants. | 18-CV-1781 (PGG) (BCM) |
| CHRISTINA BIFULCO, *individually and on behalf of all others similarly situated*, et al.,<br><br>Plaintiffs,<br><br>-against-<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, et al.,<br><br>Defendants. | 18-CV-7692 (PGG) (BCM)<br><br>**MEMORANDUM AND ORDER** |

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court is a motion by defendant Transworld Systems Inc. (TSI) and one of its employees (the Employee) (collectively the Movants) to quash a deposition subpoena served on the Employee by plaintiffs on the ground that the Employee suffers from epilepsy and, according to a note from his doctor, should avoid "duress or significant stress," which could "trigger breakthrough seizures." TSI Mtn. (Dkt. No. 172) at 2; Employee Decl. (Dkt. No. 172-2) Ex. A.[1] In the alternative, the Movants seek a protective order requiring plaintiffs to conduct the deposition upon written questions. TSI Mtn. at 10. For the reasons that follow, the motion is DENIED except to the extent that the deposition shall be taken remotely and will be limited to four hours of testimony, during which the Employee shall be permitted reasonable breaks

---

[1] The motion was filed in Case No. 18-CV-1781. Consequently, all record citations in this Memorandum and Order, unless otherwise indicated, are to Case No. 18-CV-1781. After the motion was fully briefed, the Court deemed it filed in both actions. (Dkt. No. 189.)

(which shall not count against the four-hour limit) as needed to address any stress caused by the deposition.

## Background

The seven plaintiffs in these related actions allege that TSI, acting on behalf of the Trust Defendants, filed tens of thousands of "baseless" state court lawsuits to collect student loan debt, supported by "false or deceptive affidavits," in order to "fraudulently obtain default judgments against consumers for unprovable debts." *See* Consolidated Compl. (Dkt. No. 124) ¶¶ 2-3, 12. According to plaintiffs, the TSI employees who signed the affidavits "falsely attested" to personal knowledge of various facts, such as the "account records," the "consumer's debt," and the "chain of assignments establishing entitlement to sue," when in fact they lacked such knowledge. *Id.* ¶ 13. The signatories thus became part of "a pattern and practice of abusing the judicial system" in order to "obtain payment on debts that [the Trust Defendants] cannot prove they are owed." *Id.* ¶¶ 1, 15.

The motion now before the Court arises out of plaintiffs' efforts to take the deposition of the TSI employee who signed the supporting affidavit in connection with the successful application for a default judgment against one of the plaintiffs herein (the Plaintiff). In that 2014 affidavit, the Employee attested that he had reviewed admissible evidence demonstrating that the Plaintiff owed $11,782.40 on a student loan. TSI Reply Mem. (Dkt. No. 184) at 2; *id.* Ex. A. The Plaintiff later obtained an order vacating the default judgment, after which "[d]efendants discontinued the action with prejudice, rather than provide documentary proof and testimony from [the Employee] corroborating the claims." Pl. Opp. Mem. (Dkt. No. 177) at 2.

Plaintiffs describe the Employee as a "professional witness for TSI, testifying against consumers in state courts around the nation." Pl. Opp. Mem. at 2. The Employee concedes that

he worked as a Legal Case Manager for TSI and that his job responsibilities included "the review, verification, approval and execution of affidavits and verifications to be utilized by law firms in support of amounts due and owing by borrowers." Employee Decl. ¶ 3. The job also required him "to potentially appear at court hearings, and for depositions, where [he] would be subjected to oral examination." *Id*. ¶ 4. However, the Employee reports, "[t]he significant stress of being subjected to these situations would trigger symptoms such as anxiety, confusion, rapid heart rate or loss of awareness or consciousness." *Id*. ¶ 5. As a result of these symptoms, the Employee sought treatment from a neurologist, Michael Lacey, M.D., who diagnosed him with "stress induced epilepsy" and recommended that he "avoid stressful situations to prevent any seizures." *Id*. ¶ 6. In June 2018, the Employee "transferred to a position that did not require any oral examination, including depositions or court appearances." *Id*. ¶ 7. He now works for TSI as a Vendor Network Representative. *Id*. ¶ 8.

The Employee does not disclose when his symptoms began or when he first consulted Dr. Lacey, but he does attach a handwritten note from Dr. Lacey, dated October 23, 2018, which states that the Employee "is a patient of mine with Epilepsy who I've treated for many years. If subjected to duress or significant stress, it can trigger breakthrough seizures so he needs to avoid those situations." Employee Decl. Ex. A. Dr. Lacey did not explain what he meant by "significant stress," did not mention depositions or court appearances, and did not discuss the Employee's prognosis or whether he might be better able to handle "significant stress" in the future, with treatment or otherwise. The Employee himself, writing on May 22, 2020, states that it is his "belief" that if he is "forced to appear for a deposition in this case," the examination "will trigger an epileptic seizure or otherwise result in adverse health consequences." Employee Decl. ¶ 9. It is not clear from the record whether, when, or how many times the Employee previously

testified at deposition. It is equally unclear whether, when, or how many times he experienced a seizure triggered by a deposition or similar experience.

On June 27, 2019, and again on February 11, 2020, plaintiffs served TSI with a deposition notice for the Employee. Pl. Opp. Mem. at 3. On February 17, 2020, TSI's counsel asserted that the Employee would have to be subpoenaed because "he is not a senior-level TSI employee." *Id*. On February 18, 2020, counsel told plaintiffs that the Employee had a medical condition that left him unable to testify in court and that also precluded his deposition. *Id*. at 4. In a May 1, 2020 discovery letter-motion (Dkt. No. 146), plaintiffs complained that TSI was "trying to block" the Employee's deposition without adequate justification. On May 15, 2020, after a discovery conference at which the parties were unable to resolve the issue, the Court directed TSI either to accept service of a deposition subpoena for the Employee or to "provide plaintiffs' counsel with his current or last known home and work addresses." Order dated May 15, 2020 (Dkt. No. 167) ¶ 2(a). The Court further instructed:

> The parties shall meet and confer in good faith to determine the extent of [the Employee's] disability and explore methods of securing his testimony that would accommodate his medical issues. Should the parties fail to reach agreement, TSI shall file any motion to quash or modify [the Employee's] subpoena no later than **one week after service of that subpoena**, supported by properly authenticated medical records evidencing the medical condition(s) upon which [the Employee] relies for any claim that his health prohibits him from sitting for a (remote) deposition.

*Id*.

TSI's counsel accepted service of the deposition subpoena (Dkt. No. 172-1) on the Employee's behalf. This motion followed.[2]

---

[2] Pursuant to Fed. R. Civ. P. 45(d)(3)(A), a motion to quash a deposition subpoena is made in "the court for the district where compliance is required." That court may then transfer the motion for decision to "the issuing court." Fed. R. Civ. P. 45(f). Similarly, Rule 26(c) contemplates that a protective order motion relating to a deposition will be made "in the court where the deposition

## Analysis

Under Rule 45(d)(1), a district court may quash or modify a subpoena that subjects a witness to "undue burden." Similarly, under Rule 26(b)(2)(C), the court may limit "discovery otherwise allowed by these rules" if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," and under Rule 26(c) the court may, for good cause shown, issue an order "to protect a party or person from . . . undue burden." These rules "give district courts broad discretion to manage the manner in which discovery proceeds." *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 69 (2d Cir. 2003). Ultimately, "the grant or denial of a protective order" or a motion to quash "lies within the sound discretion of the district court." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 4613390, at *7 (S.D.N.Y. Aug. 31, 2016) (quoting *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 20 (2d Cir. 1992)). However, "[a] prohibition against the taking of an oral deposition is a very unusual procedure and a party who seeks a protective order prohibiting such a deposition bears a heavy burden of demonstrating good cause for such an order." *In re McCorhill Pub., Inc.*, 91 B.R. 223, 225 (Bankr. S.D.N.Y. 1988); *see also Qube Films Ltd. v. Padell*, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) ("entirely prohibiting the taking of an oral deposition is very unusual"); *Ashkenazi as Tr. of Halpert Alexander Tr. v. Lincoln Nat'l Life Ins. Co.*, 2010 WL 11623469, at *2 (E.D.N.Y. Aug. 27, 2010) (quoting *American High-Income Trust v. AlliedSignal*, 2006 WL 3545432, at * 2 (S.D.N.Y. Dec. 8, 2006)) ("it is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition")

---

will be taken." Here, at the Court's invitation, the parties consented to the disposition of the pending motion in this district (Dkt. No. 189), notwithstanding that the Employee resides in Georgia and that plaintiffs' subpoena directs him to appear for deposition in Atlanta, which is within the Northern District of Georgia.

(internal quotation marks omitted); 8A Wright & Miller, *Federal Practice and Procedure,* § 2037 (3d ed.) ("most requests of this kind are denied").

In this case, there is no question that the discovery sought is relevant to the claims and defenses asserted in this action and proportional to the needs of the case, and thus presumptively permissible pursuant to Rule 26(b)(1). While the Employee was not the only TSI Legal Case Manager during the relevant time period, nor the only employee who could testify about TSI's general practices concerning the affidavits filed in state court collection lawsuits, he personally signed the affidavit used to obtain a default judgment (later vacated) against the Plaintiff, making him a percipient witness as to the circumstances under which that document was prepared and filed and, potentially, the circumstances under which the case against the Plaintiff was discontinued after the default was vacated. Whether and to what extent the Employee recalls these events remains to be seen. However, given his personal involvement in the events upon which this action is based, including the preparation and execution of the default affidavit used against the Plaintiff, his deposition cannot be deemed unreasonably cumulative or duplicative of the testimony of other TSI employees whose depositions plaintiffs have taken or will take.

That leaves the question whether the potential risk to the Employee's health at deposition constitutes an "undue burden" for purposes of Rule 26(b)(2)(C), 26(c), or 45(d)(1). Where, as here, a protective order is requested on this basis, the moving party must show "that a 'clearly defined, specific and serious injury' will occur in the absence of such an order." *Qube Films*, 2015 WL 109628, at *2 (quoting *McDonnell v. First Unum Life Ins. Co.*, 2012 WL 13933, at *1 (S.D.N.Y. Jan. 4, 2012)). Furthermore, "'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning,' are not sufficient to satisfy the burden." *Id.* (quoting *McDonnell*, 2012 WL 13933, at *1). "Thus, for example, protective orders are generally not

granted where the contentions of a treating physician are conclusory or speculative in nature. . . . If harm to a witness from a deposition is of potential concern, but does not rise to the level of a clearly defined and serious injury, courts can fashion accommodations to limit the potential harm to the deponent." *Id*.

The Movants have not met their burden. To begin with the obvious: notwithstanding this Court's express directive, they did not submit *any* medical records (much less properly authenticated records) evidencing that the Employee currently suffers from stress-induced epilepsy, or that his current medical condition "prohibits him from sitting for a (remote) deposition." Instead, the Movants rely upon a conclusory two-sentence note, scrawled on a prescription pad more than a year and a half ago, stating vaguely that the Employee should avoid "duress" or "significant stress." *Cf. Qube Films*, 2015 WL 109628, at *3 (S.D.N.Y. Jan. 5, 2015) (denying protective order motion as to defendant Padell but modifying deposition procedures after two of his physicians submitted updated written reports stating that he "suffers from Parkinson's disease and dementia and has experienced cognitive decline associated with those conditions," but "neither report indicates whether Padell will suffer harm *from the taking of his deposition*, much less what that harm would be") (emphasis added); *McCorhill*, 91 B.R. at 224-25 (prohibiting deposition of creditor's chairman of the board after his attending physician submitted an affidavit and testified in court "without contradiction" that an "oral deposition of [the chairman] would constitute a direct threat to his life and could cause heart failure").[3]

---

[3] The proposed witness in *McCorhill* was 80 years old; suffered from "severe degenerative arthritis," "cortical atrophy of the brain," and renal disease; was "no longer able to process information due to his progressively worsened senile dementia and Alzheimer's-type disease"; and had a heart condition that "left him in a state of border-line compensation." 91 B.R. at 224-25. On this record, the court refused to subject "an infirm and senile 80-year-old man," already "in constant pain," to "a life-threatening deposition" at which he would likely be "incapable of

Moreover, the Employee himself describes his relevant medical history in extraordinarily vague terms, attesting that when he was a Legal Case Manager he was required to "potentially" appear at court hearings and depositions, where he "would be" subjected to oral examination, and where the associated stress "would" trigger symptoms ranging from the relatively benign ("anxiety") to the more alarming ("loss of awareness or consciousness"). The Employee does not disclose how many depositions (if any) he was required to give as a Legal Case Manager; how many times (if at all) he suffered a seizure during or because of a deposition or similar experience; whether (and if so, when) he was prescribed medication or other treatment to reduce the risk or incidence of stress-related seizures; or whether that medication or treatment has reduced his risk of stress-induced seizures.[4]

In this case – unlike *McCorhill*, *Qube Films*, and *Sperano* – the proposed witness is cognitively unimpaired and capable of full-time work. Moreover, while the Court accepts that he has been diagnosed with stress-induced epilepsy, the "contentions of [his] treating physician are

furnishing any information" relevant to the case. *Id*. at 225. Similarly, in *Sperano v. Invacare Corp.*, 2006 WL 8456080 (W.D.N.Y. Apr. 13, 2006), *aff'd*, 2006 WL 3524483 (W.D.N.Y. Dec. 6, 2006), the proposed witness was elderly, had retired from her position at the defendant corporation, suffered from "an intracranial arteriovenous malformation in the right hemisphere of her brain" that required "multiple surgical procedures," leaving her with "memory defects predominately affecting her short-term memory" and putting her at risk for "significant panic disorder, anxiety as well as possibility of seizures." *Id.* at *1. The witness's doctor opined specifically that "subjecting [her] to *the stresses of a deposition* may have substantial risks resulting in irreversible physical and emotional harm from seizures." *Id*. (emphasis added). The *Sperano* court exercised its discretion to convert the witness's oral deposition into a written deposition and – in light of the narrow factual question as to which she was a percipient witness – limited each side to ten questions. *Id*. at *2-3. *McCorhill and Sperano*, which the Movants cite in their opening brief, *see* TSI Mtn. at 4-6, are easily distinguished from the case at bar not only because of the strength and specificity of the evidence but also because of the severity of the medical conditions afflicting the witnesses.

[4] Dr. Lacey's reference to "break-through" seizures suggests that – at least in October 2018, six months after he left his Legal Case Manager position – the Employee was being treated with medication that provided some measure of relief from the symptoms that he experienced before his transfer.

conclusory or speculative in nature," *Qube Films*, 2015 WL 109628, at *2, as is his own testimony about the potential risk to his health from a deposition, which consists primarily of "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Id.* Thus, although the Employee has raised a "potential concern," *id.*, the evidence is not sufficient to justify an order prohibiting plaintiffs from taking the employee's oral deposition. Instead, as in *Qube Films*, the Court will order "certain accommodations to be implemented in the taking of his deposition." 2015 WL 109628, at *4.

First, the deposition shall be conducted remotely, such that the Employee need not face his interlocutors in person (nor face pandemic-associated health risks). Second, the deposition shall be limited to four hours of testimony, unless counsel agree otherwise. Third, the Employee shall be permitted reasonable breaks as needed (but not while a question is pending) to address any stress caused by the deposition. During breaks, which shall not count against the four-hour limit, the Employee may not discuss the substance of his testimony with anyone.

### The Sealing Motions

The parties' motion papers were filed under temporary electronic seal pending this Court's determination of the Movants' applications to maintain those papers under seal so as to protect the Employee's "private medical information." (Dkt. No. 171; *see also* Dkt. No. 183.) Having carefully considered the sealing requests under the standards set forth in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), the Court concludes that the best way to protect the medical privacy of the Employee while preserving public access to the parties' motion papers – which are "judicial documents" to which a "presumption of access attaches," *Lugosch*, 435 F.3d at 119 – is to grant the sealing applications to the extent of requiring the parties to redact the name (and other personally identifying information) of the Employee and the Plaintiff

from the publicly-filed copies of those papers. *See*, *e.g.*, *United States v. Litvak*, 2015 WL 328876, at *4 (D. Conn. Jan. 23, 2015) (directing parties to redact names of defendants' children from sentencing memoranda and transcript where medical condition of son was relevant to court's sentencing decision); *B.J.S. v. State Educ. Dep't/Univ. of State of N.Y.*, 2010 WL 502796, at *4 (W.D.N.Y. Feb. 9, 2010) (redacting names of adult plaintiff and disabled child, suing under Individuals with Disabilities Education Act, to protect identity of child).

## Conclusion

For the reasons set forth above, the motion of TSI and the Employee to quash the Employee's deposition subpoena or for a protective order is DENIED except to the extent set forth above. Their letter-applications to seal the motion papers are GRANTED to the extent that the unredacted papers shall remain under seal. The parties are directed to promptly file redacted versions of the same papers on the public docket after removing the names and other personally-identifying information of the Employee and the Plaintiff. This Memorandum and Order disposes of the motions at Dkt. Nos. 171, 172, and 183 in Case No. 18-CV-1781 and Dkt. No. 123 in Case No. 18-CV-7692.

Dated: New York, New York
      July 17, 2020                          **SO ORDERED**.

**BARBARA MOSES**
**United States Magistrate Judge**