Hon. Barbara Moses, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl St., Room 740
New York, NY 10007

Re:   *Michelo et al. v. Nat'l Collegiate Student Loan Trust 2007-2 et al.*, 18-CV-1781 (PGG)
      *Bifulco et al. v. Nat'l Collegiate Student Loan Trust 2004-2 et al.*, 18-CV-7692 (PGG)

Dear Judge Moses:

      The Parties submit this joint letter pursuant to this Court's Order of June 24, 2020.

## PLAINTIFFS' POSITIONS

**I.      TSI's Discovery Deficiencies**

      *A.   Missing Affiant Checklists And Emails Concerning Affiants' Job-Duty Documents*

      Plaintiffs have told this Court of TSI's failure to produce two types of documents pertaining to the job duties of members of its "Affiant Team," who signed affidavits filed in the Trusts' state-court actions against consumers: (1) "checklists" purportedly completed by Affiants before signing individual affidavits, and (2) emails or other writings concerning the checklists or the manual that delineated the Affiants' job duties.  (Jt. Ltr. of June 15, at Pages 1–2, & Pls.' Exs. A–B).[1]

      1. Missing Checklists.  TSI to date has produced checklists as to only two of the six underlying state-court actions.  In our last letter, Plaintiffs requested TSI be ordered to immediately produce the missing checklists, or certify it cannot produce these and explain in detail why it cannot.  (Jt. Ltr. of June 15, at Page 2).[2]  During the status conference of June 18, TSI told this Court "we are still looking for the remainder. We just, we can't predict whether or not they'll be found or not. Those are documents that are paper form and right now the office where they're located at is working on a skeleton staff so there's some limitations on the ability to search. . . .  [W]e're working on a skeleton staff in that office in Georgia and so it's difficult for the employees that we would normally use to do this search to actually do the search right now." (Tr. of June 18 Conf., at 16:14–17:7).  During a meet-and-confer related to preparation of this letter, Plaintiffs requested TSI state whether the "limitations" described to the Court on June 18 continue to exist.  TSI replied, without further detail: "As you have seen from the checklists you've received, they are in paper form.  TSI continues to search for the remaining checklists."

      Plaintiffs assert that TSI's failure to confirm it will conduct a thorough search for the missing checklists, within a reasonable timeframe, is untenable.  Plaintiffs respectfully request this Court order TSI do the following by August 28, 2020: produce the missing checklists, or certify it cannot produce these and explain in detail why it cannot.  Plaintiffs believe one month is more than sufficient time for TSI to allocate resources to completing such a search.

---

[1]  The term "Jt. Ltr. of June 15" as used herein refers to the Parties' joint letter of June 15, 2020 to this Court as to ongoing discovery disputes (Dkt. Nos. 182–182-10 in Case No. 18-cv-1781; Dkt. Nos. 122–122-10 in Case No. 18-cv-7692).  In the interest of concision and not burdening this Court's docket with duplicative filings, Plaintiffs incorporate by reference here their cited portions of the Jt. Ltr. of June 15, and the exhibits thereto.  Plaintiffs' exhibits to the Jt. Ltr. of June 15 (Pls.' Exs. A–G) were filed at Dkt Nos. 182-1–182-7 in Case No. 18-cv-1781, and Dkt. Nos. 122-1–122-7 in Case No. 18-cv-7692.

[2]  TSI had written this Court on May 6 that TSI has "been unable to locate the [checklists] other than the ones produced."  (Dkt. No. 148 in Case No. 18-cv-1781; Dkt. No. 89 in Case No. 18-cv-7692).

    *2. Missing Emails.*  In our last letter, Plaintiffs related TSI's agreement to begin producing emails or other writings concerning the checklists or the manual delineating the Affiants' job duties.  (Jt. Ltr. of June 15, at Page 2).  Specifically, TSI agreed to begin by producing emails concerning the manual and checklists that are referenced in an affidavit authored by James Cummins, a former member of TSI's Affiant Team, on January 6, 2020 (the "Cummins Affidavit").  (*Id.*).  Such emails would inevitably contain terms, sender/recipient names, and other information enabling TSI to conduct a fulsome search for all responsive documents.  (*Id.* at n.4).

    On July 17, 2020, TSI produced a set of emails as to which Mr. Cummins was sender or recipient.  However, these did not include responsive emails between other TSI employees.  Further, there were multiple redactions in this production for which TSI did not account.  During meet-and-confers held in preparing this letter, TSI stated it intends to (1) provide by July 31, 2020 a privilege log as to the redactions in the July 17 production, and (2) produce by August 11, 2020 the remaining responsive emails, with any withholdings properly logged.  Plaintiffs will notify this Court of any future issues as to this production.

    *B.  Metadata Concerning Loan Documentation*

    In our last letter, Plaintiffs related TSI's agreement to produce by July 17, 2020 metadata reflecting (1) the date and time TSI acquired documents TSI produced in this litigation as purported documents evidencing the loans over which Defendants targeted Plaintiffs, and (2) the amount of time (if any) a Subject Affiant (i.e., those who signed state-court affidavits against Plaintiffs) spent reviewing each such document.  (Jt. Ltr. of June 15, at Page 3 & Ex. D).  TSI did not meet this deadline.  During meet-and-confers held in preparing this letter, TSI stated it would produce responsive documents prior to today's date, but has not.  Plaintiffs respectfully request this Court order TSI produce responsive documents by July 31, 2020.

    *D.  CFPB Documents*

    Rather than complying with this Court's order to produce the documents concerning the CFPB's investigation of TSI, TSI on June 30 requested leave to file an untimely motion seeking relief from that order.[3]  Plaintiffs respectfully request that this Court deny TSI such leave, and order TSI immediately produce the CFPB documents.[4]

## II.  Trusts' Discovery Deficiencies

    Plaintiffs have told this Court of the Trusts' failure to produce two types of lists of loans referenced in their original production: (1) the missing "Schedule CD" listing individual loans purportedly assigned from banks to the Trusts' pass-through entity, for subsequent assignment to Trust 2004-2; and (2) the missing "Rosters" listing which individual loans purportedly owned by Trusts 2004-2 and 2007-2 were to be serviced by which servicer.  (Jt. Ltr. of June 15, at Pages 3–4 & Exs. E–G).  Plaintiffs requested the Trusts cure this deficiency by July 17, 2020, or certify they cannot do so and explain why.  On July 17, the Trusts provided the following statement:

    "• Request for CDs – Due to the COVID-19 restrictions that remain in place, the counterparties to the Trusts that we asked to search for the requested CDs continue to be restricted from accessing the offices that may house the requested CDs.  We are working to obtain an access date and expect to hear from those counterparties by early next week.  • Request for rosters relating to the PHEAA Servicer Consent Letters – We have confirmed with the counterparties to the Trusts their understanding that an equivalent document produced as

---

[3]  *See* Dkt. No. 190 in Case No. 18-cv-1781; Dkt. No. 127 in Case No. 18-cv-7692.

[4]  In the alternative, should this Court grant TSI such leave, Plaintiffs have requested the opportunity to oppose TSI's motion.  *See* Dkt. No. 191 in Case No. 18-cv-1781; Dkt. No. 128 in Case No. 18-cv-7692.

NCSLT_003476-4723and NCSLT_004790-5724 does not appear to have been generated in connection with the 2007-2 and 2004-2 Trusts. Nonetheless, the underlying data for the "Student Loans" referenced in each of the PHEAA Servicer Consent Letters is maintained in an electronic database, and an equivalent list could be provided. Please let us know if you would like for us to do so."

Plaintiffs responded by asking for certain information:

"1. Missing Schedule CDs: • Identify the "counterparties," their addresses, and your points of contact with them, including full contact info for such individuals. • Identify by address the "offices" where the CDs are located and to which the "counterparties" have not regained access. • Cite the state or local law or regulation that prohibits them from entering such "offices". •
2. Missing Rosters: • Identify the "electronic database" containing "the underlying data" reflecting which alleged loans allegedly owned by Trusts 2004-2 and 2007-2 it is believed were placed with PHEAA for servicing. • Identify the custodian of this database, including full contact info. • Identify the date this database was created, and what software and hardware is used to maintain it. • Identify the address of the building where the database is located. • Describe the process by which an "equivalent list" would "be provided". "

The Trusts did not provide the information requested, instead stating:

"Regarding your questions concerning the information related to the CDs, loan rosters, and related information. We continue speaking with Trust counter-parties, sometimes directly sometimes through other counter-parties, at Cognition Financial (f/k/a The First Marblehead Corporation), U.S. Bank National Association, and GSS Data Services, Inc., as we continue to seek information responsive to your requests. As you know, some of these counter-parties are working entirely remote and have no access to their offices. Thus, any searching the counter-parties are able to perform is done remotely and nothing in hard copy, such as CDs, can be searched for until they are able to return. Currently we have no time-table for that return. We will continue to work with the counter-parties to obtain any discoverable information and will revert with any additional information or documents that becomes available before the upcoming conference. Please let me know if you have any questions."

Plaintiffs respectfully request this Court order the Trusts to (1) produce any missing "Schedule CDs" by August 28, 2020, or certify it cannot do so; and (2) provide to Plaintiffs by August 5, 2020 the information requested concerning the missing Rosters.

## III.    Class Discovery & Sampling Size

Plaintiffs have served on Defendants requests concerning class discovery.[5] All Defendants served responses and objections without producing.[6] On May 11, 2020, all Parties held a meet-and-confer about these requests; Defendants argued they were overly broad as written. The Parties have since then conducted a series of meet-and-confers about initiating class discovery via a

---

[5] *See* Pls.' Class Disc'y Reqs. to Defs., of Mar. 24, 2020 (attached hereto as Pls.' Ex. A)
[6] *See* Trust Dfts. Resps. & Objs. (Apr. 23, 2020) (attached hereto as Pls.' Ex. B); TSI's Resps. & Objs. (Apr. 23, 2020) (Pls.' Ex. C); EGS's Resps. & Objs. (Apr. 23, 2020) (Pls.' Ex. D); Forster's Resps. & Objs. (Apr. 23, 2020) (attached hereto as Pls.' Ex. E).

sampling of Defendants' documents concerning state-court actions against unnamed members of the putative classes. Defendants' final position is that a 3.5% sample size is sufficient. Plaintiffs disagree, as the case law on point dictates a minimum 10% sampling.[7] Plaintiffs respectfully request this Court order that 10% be used for the sampling process through which the Parties commence class discovery here.

## DEFENDANTS' POSITIONS

## TSI'S POSITION

### A. Emails Concerning Affiants' Job-Duty Documents

The parties are continuing to meet and confer on this dispute. Since the June 18, 2020 conference, TSI reviewed its records to locate emails involving TSI employee James Cummings concerning affiants job-duties, and, on July 17, 2020, produced 75 pages, and intends to produce a privilege log by July 31st. On July 23, 2020, the parties had a further meet and confer and discussed expanding the scope of TSI's inquiry for further emails involving TSI employees regarding affiant job duty documents. TSI has agreed to broaden the scope of its inquiry. Subject to TSI's review, TSI will timely produce a privilege log as to documents considered privileged, and will otherwise produce the emails. There is no dispute here.

### B. Metadata Concerning Loan Documentation

The parties are also continuing to meet and confer on this dispute. TSI has advised Plaintiffs that they have produced all metadata related to documents showing the validity of Plaintiffs' loans. TSI has located documents confirming access of TSI's systems related to execution of the affidavits related to Plaintiffs' loans, and, once provided to their counsel, intends to provide those to Plaintiffs this week. These "screenshots" showing the amount of time a specific account was viewed is not, however, metadata despite plaintiffs' characterization of the status of the metadata agreement between the parties. Regardless, there is no dispute here.

## THE TRUSTS' POSITIONS

### A. Plaintiffs' Discovery Deficiencies

*Plaintiffs Michelo, Seaman, Re Seaman, Tabar and Frauenhofer's Interrogatory Responses* - On February 20, 2020, the Trusts served plaintiffs with supplemental discovery requests, including a set of interrogatories directed to plaintiff Bifulco and another set of interrogatories directed to plaintiffs Michelo, Seaman, Re Seaman, Tabar and Frauenhofer.[8] By email dated June 18, 2020, plaintiffs' counsel served plaintiff Bifulco's interrogatory responses, but stated that the other set of interrogatory responses were delayed because of issues in obtaining

---

[7] *See Hallmark v. Midland Funding LLC*, 304 F.R.D. 165, 169–70 (W.D.N.Y. 2015) (listing cases) (debt buyer in FDCPA case ordered to produce 10% sample of documents concerning its legal collection actions against unnamed class members). Plaintiffs' 10% proposal is highly reasonable; sample sizes of 20% or 30% are common in class action cases similar to this one. *E.g., Brum v. MarketSource, Inc.*, No. 17-cv-241, 2018 U.S. Dist. LEXIS, at *15 (E.D. Cal. Aug. 14, 2018) (30%); *Romo v. GMRI, Inc.*, No. 12-cv-715, 2013 U.S. Dist. LEXIS 192481, at *17 (C.D. Cal. Jan. 25, 2013) (20%); Seaborn v. Am. Family Mut. Ins. Co., No. , 2013 U.S. Dist. LEXIS 99166, at *14 (D. Colo July 16, 2013) (20%).

[8] *See* Trusts' Exs. A-B.

verifications from plaintiffs Michelo, Seaman, Re Seaman, Tabar and Frauenhofer. On July 9, 2020, the Trusts requested that plaintiffs' counsel provide them with these outstanding interrogatory responses by no later than July 16, 2020. In that letter, the Trusts also identified certain discovery deficiencies in the Bifulco responses. During the parties' July 21, 2020 telephonic meet and confer, the Trusts again requested the outstanding interrogatory responses and agreed to accept unverified responses with the corresponding verifications to follow in a timely manner. On July 27, 2020, plaintiffs served the unverified responses, but they contained the same deficiencies that were contained in plaintiff Bifulco's initial responses that plaintiff's counsel has now remedied in large part in the Bifulco responses.[9] Accordingly, plaintiffs must immediately correct those same deficiencies in these responses. If plaintiffs fail to do so before the conference, the Trust will raise these issues with the Court at the conference.

***Plaintiff Bifulco's Deficient Interrogatory Reponses -*** On June 18, 2020, plaintiff Bifulco served responses to the 2006-4 Interrogatories. Following the Trusts July 9, 2020 deficiency letter and the parties' July 9, 2020 meet and confer, plaintiffs' counsel served supplemental responses on July 27, 2020 that were intended to remedy several deficiencies in her responses.[10] However, her response to Interrogatory No. 7 remains deficient. This request asks that she identify and describe communications with potential putative class members. In her initial response, plaintiff had stated unequivocally that she had no communications with potential putative class members, which is contrary to Plaintiffs' Amended Privilege Log that states there are 349 "correspondence with potential Class members." Accordingly, the Trusts had requested that plaintiff supplement the response to confirm that plaintiff is indeed withholding at least the 349 documents referenced in plaintiffs' privilege log as well as identify any other communications,[11] but plaintiff's supplemental response to this Interrogatory fails to do so. In addition, she incorrectly states that the Trusts represented during the meet and confer that "the purpose of this interrogatory is to ascertain the identities of potential putative class members with whom Plaintiffs' counsel have communicated … which is privileged." The Trusts did not make any such statements and, moreover, communications with potential putative class members who plaintiffs' counsel does not yet represent are not *per se* privileged. *See, e.g.*, *Schiller v. City of N.Y.*, 245 F.R.D. 112, 117-118 (S.D.N.Y. 2007); *Auscape Intl. v. Natl. Geographic Soc.*, No. 92-cv-6441-LAK, 2002 WL 31250727, at *1 (S.D.N.Y. Oct. 8, 2002); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 191 F.R.D. 419, 423 (D.N.J. 2000). In any event, the current response still states that plaintiff has not had any such communications, while the privilege log states otherwise. Therefore, plaintiff is required to remedy her response to resolve this contradiction so that there is a clear record.[12]

---

[9] *See* Trusts' Ex. C.

[10] *See* Trusts' Ex. D.

[11] The definitions and instructions in the Trusts' Interrogatories make clear that plaintiff must answer these interrogatories with information available to her, her agents or any other persons acting or purporting to act on her behalf and her representatives, which necessarily include counsel.

[12] It should be noted that Plaintiff Bifulco's initial responses to Interrogatories Nos. 1-5 were also deficient. On July 9, 2020, the Trusts requested that, in accordance with Federal Rule 33(d), plaintiff supplement these responses to identify records with sufficient detail. The supplemental responses now include bates-number citations for certain public records, but plaintiff indicates that she may rely upon additional documents. To the extent she does so, plaintiff has an obligation to identify those documents with specificity and, therefore, the Trusts reserve their rights to raise this issue with the Court at a later date, if necessary. Also, in response to Interrogatory No. 6, which requested that Bifulco describe the monetary damages that will be sought on behalf of the putative class and the manner or mechanism she will employ to determine them, plaintiff referenced a damages chart that was previously produced on behalf of only the named plaintiffs – not the putative class. Counsel agreed to provide the Trusts with another chart reflecting the categories of damages sought on behalf of the putative class. On July 27, 2020, plaintiffs served an

### B. Plaintiffs' Discovery Demands Directed to the Trust Defendants

With regard to plaintiffs' request for the information concerning the requested CD referenced in the Bank One Pool Supplement to the 2004-2 Trust, the Trusts have already informed plaintiffs that the Trusts have produced the contents of the CD in the form of an excel spreadsheet. Nonetheless, plaintiffs insist on the production of a physical CD. On July 17, 2020, counsel for the Trusts informed plaintiffs' counsel that the CD may be located in one of the Trusts' contractual counterparties' offices but that, due to COVID-19, those parties are unable to access such offices to perform a search for the physical CD. During the parties' July 21, 2020 meet and confer, the Trusts informed plaintiffs' counsel that, due to the persistence of COVID-19 and uncertainty surrounding the crisis, the Trusts are unable to provide an exact date by which those counterparties might gain access to perform a physical search of their offices, but that the Trusts would continue to check on their status regularly.

On July 17, 2020, the Trusts' provided an update regarding plaintiffs' request for documents and information concerning certain purported loan rosters relating to the PHEAA Servicer Consent Letters for the 2004-2 and 2007-2 Trusts. The Trusts advised plaintiffs' counsel that documents previously produced on behalf of the 2006-4 and 2007-3 Trusts do not appear to have been generated in connection with the 2004-2 and 2007-2 Trusts. However, the Trusts offered to provide the data in a different format – i.e., the data maintained in an electronic database. During the parties subsequent meet and confer, the Trusts asked plaintiffs to provide any follow-up questions they may have and that the Trusts would endeavor to provide responses to the same. On July 24, 2020, plaintiffs' counsel responded by email with a list of questions, and the Trusts are currently communicating with its counterparties, Cognition Financial (f/k/a The First Marblehead Corporation), U.S. Bank National Association, and GSS Data Services, Inc., to seek information responsive to plaintiffs' requests.

### C. Sampling of Class Discovery Documents

On March 24, 2020, in response to class discovery-related document requests and interrogatories served by the Trusts, plaintiffs served their own set of document requests on defendants related to class discovery. These requests, as written, were overbroad and unduly burdensome, as they requested loan documentation from every potential member of the putative class. Accordingly, the Trusts served written responses and objections to the requests, and after conferring, plaintiffs agreed to consider the Trusts' proposal to provide documents for a sample set of borrowers that may be putative class members. The Trusts proposed a sample of approximately 3.5% of the potential class members, to which plaintiffs countered with a proposal of 10%. Due to the limitations involved with working remotely due to COVID-19, obtaining a sample comprised of loan documentation for 10% of the members of the potential class is unduly burdensome at this time. *See, e.g., Williams v. Rushmore Loan Services, LLC, et al.*, 3:17-cv-00538-RNC (D. Conn. 2020), at Dkt. 158. Accordingly, the Trusts believe that a sample size of 3.5% is appropriate at the current time.

Respectfully submitted,

*/s/ All Counsel of Record*
[listed on following page]

---

updated chart now entitled "Plaintiffs' Class Damages." The Trusts are reviewing this chart, as it was received close to midnight last night, and reserve their rights as to this issue.

FRANK LLP

 /s/ Gregory A. Frank
Gregory A. Frank (GF0531)
Marvin L. Frank (MF1436)
Asher Hawkins (AH2333)

370 Lexington Avenue, Suite 1706
New York, NY 10017
Telephone: (212) 682-1853
Facsimile: (212) 682-1892
gfrank@frankllp.com
mfrank@frankllp.com
ahawkins@frankllp.com

*Attorneys for*
*PLAINTIFFS AND THE CLASSES*


RIVKIN RADLER LLP

 /s/ Carol A. Lastorino
Carol A. Lastorino

926 RXR Plaza
Uniondale, New York 11556-0926
Tel.  (516) 357-3101
Fax. (516) 357-3333
Carol.Lastorino@rivkin.com

*Attorneys for Defendant*
*FORSTER & GARBUS, LLP*

LOCKE LORD LLP

 /s/ Gregory T. Casamento
Gregory T. Casamento

Brookfield Place
200 Vesey Street, 20th Floor
New York, New York 10281
Tel.  (212) 415-8600
Fax. (212) 303-2754
gcasamento@lockelord.com

J. Matthew Goodin
111 South Wacker Drive, Suite 4100
Chicago, IL 60606
(312) 443-0700
jmgoodin@lockelord.com

*Attorneys for Defendants*
*NATIONAL COLLEGIATE STUDENT LOAN TRUSTS*
*2004-2, 2006-4, 2007-2 AND*
*2007-3*


SESSIONS, FISHMAN, NATHAN
& ISRAEL

 /s/ James K. Schultz
James K. Schultz

1545 Hotel Circle South, Suite 150
San Diego, CA 92108-3426
Tel: (619) 296-2018
Fax: (877) 334-0661
jschultz@sessions.legal

Morgan Ian Marcus
141 W. Jackson Boulevard, Suite 3550
Chicago, Illinois 60604
Tel:  (312) 578-0985
Fax: (877) 334-0661
mmarcus@sessions.legal

*Attorneys for Defendants*
*TRANSWORLD SYSTEMS, INC. AND*
*EGS FINANCIAL CARE INC.*