Exhibit B

```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
```

In re:                           :
                                     Docket #18cv1781
 MICHELO, et al.,                :  1:18-cv-01781-PGG-BCM

                     Plaintiffs,  :

  - against -                    :

 NATIONAL COLLEGIATE STUDENT LOAN   :
 TRUST 2007-2, et al.,               New York, New York
                     Defendants  :  June 18, 2020

------------------------------------:  <u>TELEPHONE CONFERENCE</u>


                     PROCEEDINGS BEFORE
              THE HONORABLE BARBARA C. MOSES,
        UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:          FRANK LLP
                         BY:  GREGORY FRANK, ESQ.
                              ASHER HAWKINS, ESQ.
                         270 Lexington Avenue, Suite 1706
                         New York, New York  10017


For Defendant -          LOCKE LORD LLP
National Collegiate      BY:  GREGORY CASAMENTO, ESQ.
Student Loan Trust:           LISA RUGGIERO, ESQ.
                              CHRIS FONTENELLI, ESQ.
                         200 Vesey Street, 20th Floor
                         New York, New York  10281

Transcription Service: Carole Ludwig, *Transcription Services*
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

APPEARANCES (Continued)

For Defendant - EGS          SESSIONS, FISHMAN, NATHAN & ISRAEL
Financial Care Inc.:         BY:  JAMES SCHULTZ, ESQ.
                                  MORGAN MARCUS, ESQ.
                             55 West Monroe Street, Suite 1120
                             Chicago, Illinois  60603

For Defendant - Forster RIVKIN RADLER LLP
& Garbus LLP:                BY:  CAROL LASTORINO, ESQ.
                             926 Rexcorp Plaza
                             Uniondale, New York  11556

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---------|--------|-------|-----------|----------|-------|

None

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|

None

1

```
 1                                                      4
 2            THE CLERK:  Good morning, this is 18cv1781,
 3   Michelo, et al. versus National Collegiate Student Loan
 4   Trust 2007-2, et al., and case number 18cv7692, Bifulco, et
 5   al. versus National Collegiate Student Loan Trust 2004-2, et
 6   al.  Counsel, please state your appearances for the record
 7   and please spell your names beginning with the plaintiffs.
 8            MR. ASHER HAWKINS:  Good morning, this is Asher
 9   Hawkins from Frank LLP for the plaintiffs, first name A-S-H-
10   E-R, last name H-A-W-K-I-N-S. Also with me is Gregory Frank
11   for plaintiffs, first name G-R-E-G-O-R-Y, last name F-R-A-N-
12   K.
13            THE COURT:  Good morning, Mr. Hawkins and Mr.
14   Frank.
15            MR. FRANK:  Good morning.
16            THE COURT:  Let's go to defendants now, the
17   trusts.
18            MR. GREGORY CASAMENTO:  Good morning, Your
19   Honor, it's Greg Casamento, G-R-E-G C-A-S-A-M-E-N-T-O,
20   Chris Fontenelli, C-H-R-I-S F-O-N-T-E-N-E-L-L-I, and
21   Lisa Ruggiero, L-I-S-A R-U-G-G-I-E-R-O, all from Locke
22   Lord, all on behalf of the trusts.  Thank you, Your
23   Honor.
24            THE COURT:  Thank you, good morning.  Let's
25   hear next from defendants TSI and EGS.
```

MR. JIM SCHULTZ:  Good morning, Your Honor,
this is Jim Schultz, J-I-M, last name S-C-H-U-L-T-Z,
and with me is Morgan Marcus, M-O-R-G-A-N, last name
M-A-R-C-U-S.

THE COURT:  Good Morning, and that leaves,
last but not least, Forster and Garbus, who's on for
them?

MS. CAROL LASTORINO:  Good morning, Your
Honor, Carol Lastorino, C-A-R-O-L L-A-S-T-O-R-I-N-O,
from Rifkin Radler for Forster and Garbus.

THE COURT:  Good morning, Ms. Lastorino.  I
think that's everybody.  I have your joint letter
dated June 15th which I thank you for, it's very
helpful, and I want to begin with what you seem to all
have agreed on which is what the discovery schedule
should be in the two cases going forward.  The parties
have jointly proposed a schedule which takes fact and
class discovery out until November 1st, has the class
certification motion due on December the 2nd,
opposition to that motion due on March 1st of 2021, and
reply briefs due on April 18th of 2021.  Ordinarily I'm
so delighted when all four parties in a multiparty
case can agree on a schedule that I simply so order it
without further questions, but in this case,

unfortunately, I do have a question which is why the

three months, December 2nd to March 1st, why the three

months between the filing of the class cert motion and

the oppositional brief, I should ask one of the

defendant lawyers to address that for me.

MR. CASAMENTO:  Jim, it's Greg, do you want to

handle that or would you like me to?

MR. SCHULTZ:  I think maybe you, Greg, on that

one.

MR. CASAMENTO:  Okay.

THE COURT:  Mr. Casamento, you're up.

MR. CASAMENTO:  Yes, Your Honor, I think part

of it, Your Honor is, would have to do with expert

discovery and expert depositions to the extent that

there are expert reports that support the class

certification motion.  That's the primary driver that

I can think of on the deadlines.  Jim, do you have

anything to add to that?

MR. SCHULTZ:  And this is Jim Schultz, Your

Honor, the only other issue I would point out, Your

Honor, is that at the end of the year, I do know with

holidays, and I already know that I'm already

scheduled to be out, assuming the world's back to

normal by then, for a couple of weeks in December, so

I do know the holidays are also, at least for that

first month, cause a problem for some of us.

        THE COURT:  Sure, but that's not the extent of

the, that's not the main reason here. Mr. Casamento,

explain to me a little more about the expert discovery

piece of it, maybe I'm missing something because I'm

looking at a proposed schedule that has all class

discovery concluded by November 1st, does that not

include expert discovery related to class

certification?

        MR. CASAMENTO:  I'm not sure it would include

an expert affidavit or declaration in support of the

motion for class certification, Your Honor, I didn't

read it like that.

        THE COURT:  Well let's play this out and let

me understand what you are thinking is going to

happen.  Plaintiffs make their motion on December the

2nd and let's say they supported, in part, with an

affidavit or a declaration from an expert as to one of

the Rule 23 issues, are you contemplating seeking a

deposition of that expert or merely trying to go find

your own expert and file a counter affidavit?

        MR. CASAMENTO:  Both, Your Honor.

        THE COURT:  Mr. Hawkins, do you contemplate

that there will be some period of time for class
related expert discovery between the filing of the
moving papers and the filing of the opposition?

       MR. HAWKINS:  It's a possibility, Your Honor,
plaintiffs are still exploring expert options at this
moment.

       THE COURT:  I think you're telling me you
don't know whether you're going to have expert
affidavit or not at class cert, right?

       MR. HAWKINS:  We don't know for sure, but we
definitely recognize that that's a possibility here.

       THE COURT:  Okay.

       MR. HAWKINS:  And, Judge, if I might add, to
the extent that we have experts, it would only be as
to damages.

       THE COURT:  And why would you need that expert
at class certification?

       MR. HAWKINS:  One of the issues that has come
up relates to creditworthiness reputation damage. And
that is an issue that may be best addressed by an
expert.

       THE COURT:  Is that an issue for purposes of
class certification or is that a merits issue?

       MR. HAWKINS:  I believe it very well may go to

certification.

        THE COURT:  Explain that to me.

        MR. HAWKINS:  Talking about how damage to creditworthiness impacts a consumer.

        THE COURT:  And how does that fit into the class certification analysis?

        MR. HAWKINS:  We just, at this point we're not 100 percent sure if it will or will not, but it will definitely be a merits issue.

        MR. FRANK:  Your Honor, this is Greg Frank for plaintiffs, as well, I understand you prefer to talk to one party --

        THE COURT:  No, no, no, Mr. Frank, I think we discussed this before, particularly when we have so many parties involved and we're on the phone which makes it logistically more complicated, I really need to keep it to one lawyer at a time per party.  Let me go to Mr. Casamento for a moment.  You heard what Mr. Hawkins said about a potential damages expert at the class certification stage regarding credit reputation, is that something that you contemplate as being an issue to be litigated at the class certification stage?

        MR. CASAMENTO:  I suppose it could be, Your

Honor, it could be whether or not there are common issues of fact common to the class members. I thought that's where Mr. Hawkins was going with that when he raised it.

THE COURT: I see. So there's potentially an argument here as to whether damages would have to be ascertained individually for each member of the putative class.

MR. CASAMENTO: That's where I thought that line of thinking was going.

THE COURT: Mr. Hawkins, is that where you were going?

MR. HAWKINS: Yes, we just believe it's too early to say right now.

THE COURT: All right.

MR. HAWKINS: We don't believe that there's an issue about this, but it's too early at this point.

THE COURT: Right, because what plaintiffs normally argue at the class certifications stage is it doesn't matter whether damages can be computed on a class wide basis or not. We don't have to solve that problem today but the plaintiffs often (indiscernible). But in any event, certainly not something that I'm going to resolve today or probably

ever because your class certification motion will go
to the District Judge.

Schedule wise though, keeping in mind that it
is much easier to adjourn or extend a deadline than it
is to shorten the job. What I think I will do is I
will make the opposition deadline February 1st, not
March 1st, with the understanding that if the class
certification motion is accompanied by one or more
expert declarations or affidavits, and if the parties
believe or one of the parties convinces me that expert
discovery is required between the moving papers and
the opposition papers, an application can certainly be
made at that time to extend the opposition deadline.
But for present purposes and for vacation planning
purposes and (indiscernible) I think my order, I know
my order will say opposition papers are due on
February 1st, which is a Monday, and then I'll
(indiscernible) in there, so reply papers will be, I'm
looking at my calendar now, March 15th. Okay, February
1st and March 15th, Ms. Bennett, you got that, because
she's going to be the one writing out the order.

MS. BENNETT: Yes, I have it.

THE COURT: Okay, excellent. Let's move on now
to the discovery disputes which is most of what the

joint letter is about.  I do have one additional

preliminary matter though that I want to raise with

counsel at present. We have received the motion for a

protective order with regard to the deposition of the

individual that we used to call Mr. X but he now has a

name, and that's not on for argument today.  However,

I did glance at those papers both in support of any

opposition to the protective order motion and the

papers reminded me that I had directed the parties to

file that motion here in the Southern District of New

York, and they have done so in error.  In taking a

look at Rule 45(D)(3), the rule says that protective

order motions with regard to Rule 45 subpoenas are to

be filed in the (indiscernible) is required, which

apparently is Northern District (indiscernible).

       Counsel, this is Judge Moses, I have

(indiscernible) for the last few minutes, can you hear

me?

       ATTORNEYS COLLECTIVELY:  Yes, Your Honor.

       THE COURT:  Ms. Bennett?

       MS. BENNETT:  You were breaking up a bit but

we can hear you now, but I think largely what you had

said in the past 30 seconds was missing.

       THE COURT:  All right, I will say it again and

I apologize for my primitive home technology which
sometimes fails me.  What I was raising sua sponte was
whether the protective order motion with respect to
the deposition of affiant X should have been filed not
here in the Southern District of New York,
notwithstanding the fact that that's where I told you
to file it, Rule 45(D)(3) contemplates that such a
motion will be filed in the district where compliance
is required, which in this case would be in Georgia.

        Now as I read that requirement in Rule 45, it
is not jurisdictional, so to speak, it is a venue
question, not a jurisdiction question, and there is
even a mechanism in the rule for such a motion to be
transferred to the district where the case is pending,
among other things on consent of the parties, that is
also part of Rule 45(D)(3).  So I'd like to ask the
parties today whether there is consent to have that
motion determined here in the Southern District of New
York.  My current feeling, and I do apologize for
having perhaps sent you in the wrong direction, but my
current view is if there is not consent to have that
motion litigated and decided here, I'm going to need
to, I'm going to need to redirect you down to Georgia
which unfortunately will cause some delay and could

potentially result in Georgia sending it back up to here. But the rule says what it says, so there we are. Mr. Hawkins, do you have a view?

MR. HAWKINS: We would consent to having Your Honor consider this motion and also note that Rule 45(S) provides for a transfer from the courts, from the court where the motion is filed back to the court where the subpoena was issued. So if it did go down to the Northern District of Georgie would ask that Court under Rule 45(S) to transfer it back to you and I think that would be an efficient use of time.

THE COURT: Right, that's what I was alluding to a moment ago. In my experience in Southern District of New York cases where Rule 45 motions to quash or for a protective order are filed elsewhere, they tend to come back up here. The Courts do tend to avail themselves of precisely that mechanism and send them back to the Court where the action is pending. But, you know, you never know how it's going to come out in a particular case. Mr. Casamento, what's your view?

MR. CASAMENTO: We consent, Your Honor.

THE COURT: Mr. Schultz?

MR. SCHULTZ: Your Honor, we believe that that is the most efficient use and we would consent as

well.

THE COURT:  And Ms. Lastorino?

MS. LASTORINO:  We agree, we consent.

THE COURT:  All right, so unanimous consent of the parties is noted on the record and I will proceed accordingly, thank you very much for that, counsel.

Let's talk about discovery.  Some of the issues outlined in the joint letter may have been resolved or at least there may be updates as to some of them since the joint letter was filed on June the 15th.  Let me begin with the first item in the letter which is plaintiff's contention that TSI has failed to produce certain checklists and emails.  Mr. Hawkins, any movement on that issue?

MR. HAWKINS:  No, Your Honor.

THE COURT:  TSI, Mr. Marcus, you're still looking, is that where you are on this?

MR. SCHULTZ:  Your Honor, this is Jim Schultz for TSI and we have recently in the last day or two gotten a tranche of emails that we are currently reviewing to insure that there is no privilege or anything. But we expect that the emails we'll be able to produce shortly.

THE COURT:  By when?

MR. SCHULTZ: I would think within seven days, Your Honor.

THE COURT: Okay, within seven days of today, certainly we don't want to have Rule 37(E) motions flying around between now and seven days for now if you are going to produce in seven days. You said emails I think?

MR. SCHULTZ: Yes.

THE COURT: What about what plaintiff refers to as the, quote, "missing checklists"?

MR. SCHULTZ: The checklists we have found only three of the seven so far, Your Honor, we are still looking for the remainder. We just, we can't predict whether or not they'll be found or not. Those are documents that are paper form and right now the office where they're located at is working on a skeleton staff so there's some limitations on the ability to search. But when our clients are available in the office to look, they are looking and we're hopeful that we'll find them. At this point we've only got three of the seven.

THE COURT: Mr. Schultz, you faded out.

MR. SCHULTZ: I'm sorry, I was just saying, Your Honor, we are continuing to look, but at this

point we've only been able to find three of the seven. And I don't know where I faded out but basically, Your Honor, we're working on a skeleton staff in that office in Georgia and so it's difficult for the employees that we would normally use to do this search to actually do the search right now.

THE COURT: All right, I don't know that there is anything for me to do here other than note that the defendant continues to look for these documents, has undertaken to produce the emails within seven says of today, and does not concede that, I take it, I don't want to put words in your mouth but I take it that you are not conceding that any of the requested checklists or emails have, in fact, been permanently lost or misplaced.

MR. SCHULTZ: No, Your Honor, we are not conceding that at all.

THE COURT: Okay, anything further on this one, Mr. Hawkins?

MR. HAWKINS: Yes, Your Honor, I'll just emphasize that we requested these checklists and related writings more than a year ago. As we say in our letter, we think that we're at the point where we should have the ability to request and adverse

inference in regards to their nonproduction.

THE COURT:  Well you can make any motion that you want, but I wouldn't recommend it at this point, particularly if you are moving under Rule 37(E) for an adverse inference, which is what you just suggested to me and what you explicitly say in your letter. For an adverse inference instruction you would need to satisfy the requirements, if it's ESI, if it's electronically stored information, you would need to satisfy the requirements of Rule 37(E)(2), those are stringent requirements, and among other things you would have to establish that the defendant intentionally destroyed the evidence in question in order to deny you its use in this litigation. And that's a high bar, that's a difficult standard to meet.

So, again, you don't have to pre-clear motions with me, at least not at this point you don't, but I would think you might want to wait a bit on that one.

MR. HAWKINS:  Understood, Your Honor.

THE COURT:  Okay, the next item outlined in the joint letter is documents concerning the relationship between TSI and Forster & Garbus. So Mr. Hawkins, anything new there?

1

2    MR. HAWKINS:  Not since the filing of the

3  joint letter, no.

4    THE COURT:  All right, are these, do I

5  understand correctly that there's a privilege

6  objection here, that's why the documents haven't been

7  --

8    MR. SCHULTZ:  Yes, Your Honor. Again, this is

9  Jim Schultz, Your Honor, and yes, at the highest level

10 the objection here is it's attorney-client privilege

11 because most, if not all of these categories in some

12 way are asking for communications between TSI and the

13 law firm.

14    THE COURT:  Does that mean that they're all

15 going to be logged?

16    MR. SCHULTZ:  There was a privilege log

17 already produced, Your Honor.

18    THE COURT:  And are they all logged?

19    MR. SCHULTZ:  I believe so, Your Honor.

20    THE COURT:  All right, so what is the argument

21 that these documents are not privileged, Mr. Hawkins?

22    MR. HAWKINS:  Yes, in analogous cases in which

23 a debt collection coordinator and a debt collection

24 law firm or accused of fraud in connection with debt

25 collection, the Court has ruled that documents

reflecting the business relationship between those two
entities and communications about what is going on in
those allegedly fraudulent litigations are not
privileged. And we have cites to cases like that at
the bottom of page two in a footnote.

          THE COURT:  Mr. Schultz.

          MR. SCHULTZ:  Your Honor, we would argue that
those cases are very different from the case we have
here. Those cases deal with law firms that are
operating as a debt collector and the communications
with those debt collectors. Here we're talking about
specific litigation issues arising in the context of legal
services being provided by Forster & Garbus, this is not a
situation where Forster & Garbus is just a law firm that
happens to be working as a debt collector.  Here it's a
law firm that's operating as a law firm. All of the claims
in this case arise out of conduct done by TSI or Forster &
Garbus in litigation and it necessarily involves
Forster & Garbus' role as a lawyer, not as a debt
collector.  So we don't think the cases that are cited
here are applicable.

          THE COURT:  Do I have enough information to
determine this question or do I need to see either the
relevant portions of the log or potentially exemplar

communications which have been withheld on a privilege

ground, Mr. Hawkins, what's your view?

          MR. HAWKINS:  Well just as an initial point, I

disagree with Mr. Schultz's depiction of what was

going on by TSI and FG and the underlying events here.

They were acting as debt collectors, they were both

debt collectors under the definition of the FDCPA

during the underlying state court activity.

          As far as you viewing some samples of these

documents, I guess that might be the only way to go,

it's impossible for us to know what's in them, but

based on their description of these documents they are

not privileged under the precedent.

          THE COURT:  Well, typically we only get to the

in camera review stage in the privilege dispute if

that dispute can't be resolved at a higher level of

abstraction.  By way of example, I recently in a

completely unrelated case reviewed a number of

examples or samples of documents that were withheld on

privilege grounds because the question really was

whether the nature of the communication, itself, showed

that the client was seeking and the law firm was providing

legal advice.  Here it seems to me that the plaintiffs are

making a categorical argument, so to speak, that might not

1
2  require that level of review, your thoughts?  I mean I
3  think you're taking the position that in this type of
4  lawsuit if the law firm was acting as a debt collector,
5  end of story, no privilege, is that your position?
6          MR. HAWKINS:  Based on what they're
7  describing, yes, there's no privilege here.
8          THE COURT:  All right, response?
9          MR. SCHULTZ:  Well, Your Honor, I think it's
10  important to first keep in mind that many documents
11  regarding the relationship between TSI and Forster &
12  Garbus have already been produced. The documents that
13  are being sought after now are directly related to
14  decisions made in specific cases, specific litigation.
15  And so we don't believe that an in camera review would
16  be appropriate or necessary at this point in time. I
17  think that with the descriptions that the plaintiff
18  makes of the categories of documents the Court should
19  be able to decide whether or not those types of
20  documents are privileged or not, and whether or not
21  TSI and Forster & Garbus enjoy an attorney-client
22  privilege.
23          THE COURT:  All right, thank you very much.
24  With regard to this issue, whether documents
25  concerning TSI's relationship with Forster & Garbus

are privileged, more specifically regarding whether
the communications between them are protected from
discovery by the attorney-client privilege, I will take, I
will take the dispute under submission, but I would ask
that the relevant portions of the log be submitted to me.
How quickly can that happen?

        MR. SCHULTZ:  Your Honor, this is Jim Schultz
and I can imagine we can get you the log today.

        THE COURT:  That's fine, I was going to give
you to the end of tomorrow.

        MR. SCHULTZ:  That would be better, of course,
Your Honor, I would be glad to take advantage of
tomorrow.

        THE COURT:  Sure.

        MR. SCHULTZ:  Thank you.

        THE COURT:  And that I think can be submitted
electronically on ECF, the log itself is not
privileged so, but I don't want to see the whole thing
if it extends to all kinds of documents which aren't
particularly relevant to this dispute. If you can pare
it down to the relevant sections that would be nice,
if you can't send me a cover letter and explain what
I'm looking for in the log, okay?

        MR. SCHULTZ:  Understood, yes, Your Honor.

THE COURT:  All right, let's see what our next topic is, metadata.  Again, I'm not sure that this is really ripe. Defendants tell me in their joint letter that they're still looking for the metadata concerning loan documentation, correct, who wants to take this?

MR. SCHULTZ:  Your Honor, this is Jim Schultz and Mr. Hawkins and I have continued to talk about this.  I think we have an understanding of what they are looking for and we are in the process of getting the, what I would call, you know, the viewing history of the documents. We expect to have that stuff very shortly.  The other information that was sought is the dates that certain documents were received by TSI, we believe that information was already provided. Mr. Hawkins has pointed out that he thinks there's some discrepancies in those dates, as I understand it, and we're trying to reconcile that.  But that process is ongoing and we expect to get a final answer shortly on that as well.

THE COURT:  All right, so no order is going to be issuing from me with regard to that today.  The next item on our list is a CFPB document. I am told by the plaintiff that TSI, quote, "intends to take a second bite at the privilege apple with new

arguments." TSI, I imagine, would put its position
somewhat differently, Mr. Schultz?

MR. SCHULTZ: That's a very fair summary, Your
Honor, yes. We believe, Your Honor, that during our
last conference the privilege issue or the
confidentiality issue as it relates to the CFPB was
not fully examined. And I think your order resolving
that pinches that when the Court indicates that you've
been unable to find any other rules or statutes. We
believe there are other rules or statutes and believe
that it's appropriate that we fully brief this issue
and give you the full picture of the basis for what we
think is the applicable privilege. We don't think this
is a bank examination privilege, we think this is a
regulatory privilege under the CFPB rules and their
operating policies, as well as the CID, itself, and we
would like an opportunity, Your Honor, to present that
argument to you more fulsome in the form of some sort
of a brief.

THE COURT: Well let's begin with the basics,
did you make that objection and log it in your
privilege log?

MR. SCHULTZ: No, there was no privilege log
for the CFPB documents, Your Honor.

1

2          THE COURT:  Why not, you're telling me that

3  they've been withheld on privilege grounds?

4          MR. SCHULTZ:  We withheld them on a

5  confidentiality grounds, Your Honor, which we think is

6  the CFPB's confidentiality required in their issuances

7  of the CID and under their policies and procedure

8  manual that apply here.

9          THE COURT:  That's cutting it awfully fine, it

10  seems to me.  Are you using the words confidentiality

11  and privilege interchangeably here?

12          MR. SCHULTZ:  I am trying not to, Your Honor,

13  I believe they're two different things and we are

14  dealing here with a confidentiality issue.

15          THE COURT:  Not a privilege?

16          MR. SCHULTZ:  Correct.

17          THE COURT:  Because you did actually use the

18  word privilege a couple of times about thirty seconds

19  ago.

20          MR. SCHULTZ:  Then I apologize, Your Honor, I

21  didn't mean to try to make this any more confusing

22  than it already is.

23          THE COURT:  Well, let me put the question to

24  you this way, the argument, regardless of whether you

25  attach the label privilege to it or not, the argument

seems to be not that these documents are irrelevant
but that there is some other reason why I can't
produce them, namely something in the Consumer
Financial Protection Bureau rules and regulations,
correct?

        MR. SCHULTZ:  That's half of it, Your Honor,
we believe that there's two issues with the way that
the current request is framed.  One, it does
necessarily implicate the CFPB's confidentiality
interest and their investigatory strategies. And we
believe that the CFPB's CID instructions and their
policies and procedure manual outline that.

        The other issue we have, Your Honor, is we
just think the request, as written, isn't appropriate.
You know, this has been an issue that we raised and
has been discussed even with Judge Gardephe, and the
idea that we thought was the appropriate mechanism
isn't just to say, no, you can't have these documents,
it's to have the plaintiffs instead make written
requests for production for the specific categories of
documents. The idea that they can just say give us all
the documents that you gave to the CFPB we think is
inappropriate.  If instead they said we want these
following categories of documents, then, assuming that

1  no other privilege applies and they happen to be

2  documents that were produced to the CFPB, we would

3  still be required to produce them at that point in

4  time. So we think that procedurally the way they're

5  asking for this is also wrong.

6

7         THE COURT:  Well don't you have a procedural

8  problem as well, I am looking at my prior ruling on this

9  issue which was an Order of the Court, and it says

10  documents submitted by defendant, it's docket number 1627

11  page 6, I wrote, quote, "documents submitted by defendant

12  TSI to the Consumer Financial Protection Bureau (CFPB or

13  Bureau), pursuant to a civil investigative demand (CID),

14  may not for that reason alone be withheld from discovery.

15  So that was about a month ago and you did not either file

16  objections to the District Court, to the District Judge, I

17  should say, there was a 14 day window for that, nor seek

18  reconsideration within the period of time prescribed by

19  the local civil rules. So aren't we done here?

20         MR. SCHULTZ:  Your Honor, I think the footnote

21  to your order indicates that we're not done here,

22  where the Court talks about being unable to identify

23  any other statute, rule or case that would afford some

24  confidentiality designation. And so --

25         THE COURT:  I think you read an awful lot into

1  
2 footnote 2, where in footnote 2 does it say and

3 therefore I hereby extend the 14 day period of under

4 time for reconsideration or for objections while TSI

5 goes and sees whether there is some other statute,

6 rule or case?

7       MR. SCHULTZ:  Your Honor, obviously it doesn't

8 say that, but that was the interpretation that we thought

9 the order was saying.

10       THE COURT:  Yeah, I don't think that is a

11 plausible interpretation.  So as far as I'm concerned, so

12 this issue has been decided and I am not intending to

13 revisit it.

14       Let me turn now to the issues regarding the

15 trust's discovery response.  And maybe I'll pause here and

16 ask how many of these issues which are outlined in section

17 II of the joint letter have been resolved or not resolved,

18 but has the ball moved at all with regard to the trust

19 issues?

20       MR. CASAMENTO:  Your Honor, Greg Casamento on

21 behalf of the trust.  We are moving the ball forward

22 and while these issues are identified in the letter,

23 we don't think they're ripe yet for Your Honor to have

24 to take any action on.  We're looking for the CDs and

25 the rosters, so the plaintiff has given us until July

17th, in which case if for whatever reason we're not
able to either produce them or resolve the issue
amongst ourselves, the plaintiffs will come back to
the Court on it.

THE COURT:  All right, so that July 17th date
is agreed upon by the plaintiffs, as well, Mr.
Hawkins?

MR. HAWKINS:  Yes, but we feel that that was
being very generous on our part and I discussed this
with Mr. Casamento. Those requests are a year old, as
well, and we just don't understand why it is taking so
long. But he has sworn up and down that he can produce
these, so I gave him the benefit of the doubt, so to
speak.

MR. CASAMENTO:  I'm not sure I completely
agree with that characterization, Your Honor, and
again, it's Mr. Casamento, but we are working on it
and we have agreed to the July 17th date in which we
will either produce or explain why we can't produce,
they may not exist.

THE COURT:  Okay, and I understand that
neither side likes, sometimes neither side likes the
way the other side is, quote, "characterizing," an
issue, but as far as I am concerned all I really

needed to hear was nothing is going to happen on this

until the 17th of July.  So, fine, no order will be

issuing concerning these issues today and, you know,

do your best not to bring it back to me, okay?

MR. CASAMENTO:  Yes, Your Honor.

THE COURT:  So who wants to talk to me about

the communications with prospective class members?

MR. HAWKINS:  Your Honor, this is Asher

Hawkins, I can --

THE COURT:  Well is this going to be a motion,

is this going to be a motion, Mr. Casamento, by the

trust?

MR. CASAMENTO:  Your Honor, what we would

request, and this may alleviate the need for a future

motion, is on the plaintiff's current privilege log,

and we describe it in the letter and I apologize for

not attaching it, Your Honor, but we can send it to

the Court, basically they have identified these as

counsel's correspondence with potential class members.

They identify 349 documents, a date and refer to

attorney work product communications between attorney

and prospective clients.  There's one footnote with

respect to the named class members. What we were hoping

for was that the plaintiffs would, for these 300 and, say,

339 documents that don't involve the named plaintiffs,
identify in a privilege log who those communications
were from, who they were to, what the subject matter was,
in order for us to be able to make any challenge to any we
don't believe are privileged. We just can't tell given the
way that they're identified currently on the log whether
or not we should challenge them or let them go.

        THE COURT:  So you want the names of the
putative class members and something more specific
regarding the subject of the communication, something more
specific than you got?

        MR. CASAMENTO:  Yes, for example, Your Honor, if
a named plaintiff received a communication,
solicitation -- sorry, not a named plaintiff, a
putative class member received a communication from the
Frank law firm with respect to this lawsuit and there
was communication back and forth, and that particular
individual --

        THE COURT:  Hold on, let's pause just for one
moment, I heard a beep which indicates that someone has
either left the conference or joined the conference.  Ms.
Bennett, can you tell if we lost somebody or gained
somebody?

        MS. BENNETT:  Yes, no, I can't tell, I wasn't

looking at the conference monitor when it happened,
unfortunately.

THE COURT:  Let's make sure we have the folks
that we've been speaking to, Mr. Hawkins, you're still
with us, Mr. Casamento, you're still with us?

MR. HAWKINS:  Yes, Your Honor.

MR. CASAMENTO:  Yes, Your Honor.

THE COURT:  Mr. Schultz?

MR. SCHULTZ:  Yes, Your Honor.

THE COURT:  Ms. Lastorino?

MS. LASTORINO:  Yes.

THE COURT:  All right, I think we have a
quorum --

MR. CASAMENTO:  Did, I'm sorry, Your Honor,
did Jim Schultz say he was still on?

MR. SCHULTZ:  I did, I think I did at least,
yes, I'm still here though.

MR. CASAMENTO:  Oh, okay, good.  And I'll be
brief, Your Honor. If we could get more information
with respect to where the communications went to and
from, what the general subject matter was, we can make
a determination about which ones we would challenge
and which ones we wouldn't. But the current
description gives us no basis in which to do that.

```
 1
 2              THE COURT:  Mr. Hawkins?
 3              MR. HAWKINS:  Yes, Your Honor, the law does
 4   not allow for defendants to see the names of the potential
 5   class members with whom we spoke. We have submitted a
 6   citation before to the Court, it's 2014 US District Lexis
 7   195527, the Dawn v. Unum Life Insurance case. It
 8   specifically says in this exact context, defendants do not
 9   get to see those names.  We can certify that there was no
10   third party involved in those communications with the
11   potential class members so there's no basis for waiver,
12   there's just no reason why they should get to see those
13   names as much as they'd like to.
14              The other point that I'll make is that per Your
15   Honor's order of May 15th, we produced to the defendants
16   a number of documents that were culled from dockets
17   that list names of individuals who were sued by
18   defendants in state court.  So the idea that they need
19   something more than our identification of the public records
20   just has no support in the law.
21              THE COURT:  Well, (indiscernible) me up for a
22   moment, in my last order on May the 15th what I directed you
23   to do was to create an individualized privilege log, not a
24   categorical privilege log, with respect to communications
25   with current named plaintiffs.
```

                    MR. HAWKINS:  Correct.

                    THE COURT:  Now I haven't seen that amended log, I
don't think, have I seen that amended log?

                    MR. HAWKINS:  I don't believe that it is
submitted.

                    THE COURT:  Okay.  So that's why I've been asking
Mr. Casamento, you know, what do you have now and what more
do you need, particularly in terms of the subject matter.
Can you maybe walk me through that a little bit?

                    MR. CASAMENTO:  Yes, Your Honor.  The current
log the way it was supplemented to us has in
spreadsheet form four titles, four title blocks,
category is one, number of documents, date range and
the privilege asserted on the log.

                    THE COURT:  Right.

                    MR. CASAMENTO:  So as we describe in our
letter, Your Honor, under category with respect to
these 339 documents, the log only says counsel's
correspondence with potential class members.  The
entirety of the date range is 12/21/2017 to present,
and then the assertion that these are attorney work
product, communications between attorney and
prospective client. It's our position that without
more, and I don't know that the names are necessarily

required at this time, but certainly who the

communication was from and who it was to, if it was a

solicitation from the Frank law firm to these individuals,

could be a discussion where the individual says well I

don't want to be a party to this lawsuit or I'm not

interested in participating, or something else, or, you

know, something that discloses relevant facts or evidence

that would lead us to likely want to get additional

discovery. We just can't tell given the superficial

nature of the privilege log what those communications

consist of. And we don't think that that information that

we're requesting in a supplement would be protected by the

attorney-client privilege.  What it would allow us to do

is determine whether or not we want to challenge the

assertion of privilege.

        THE COURT:  So you're walking away a little

bit from where you started which was that you're

entitled to names of the putative class members, I

think that's probably a good strategic decision on

your part. But you're telling me that you still want

additional information as to the individual

communications including who precisely it was from,

lawyer A, lawyer B, lawyer C and so forth, correct?

        MR. CASAMENTO:  Correct, Your Honor.

          THE COURT:  And then I mean we're all
grownups, we've all seen lots and lots of privilege
logs I imagine in our time, even if I were to require
an anonymized document by document privilege log with
respect to the non-named plaintiffs so that you would
have a listing of all 339 of them but instead of the
actual name of the person communicated with it would
say, you know, individual one, individual two,
individual three, that sort of thing. What do you
envision it would say in the subject matter column
other than, you know, confidential communication
concerning this lawsuit?

          MR. CASAMENTO:  Well, Your Honor, maybe it was
a, other than a discussion about the lawsuit, I'm not
sure.  Having not seen the communications I can't
imagine there would be too much outside of that.  What
might also be an option, Your Honor, we're certainly
not looking to make work for the plaintiffs, would be
of the 348, maybe the plaintiffs do a random sampling
of 25 of those communications in a log and then based on
that we can identify whether or not there are different
buckets of communications, some of which would certainly
be privileged and some of which wouldn't.  That might also
present a way to drill down on this a little bit more to

assure us that the plaintiffs aren't withholding anything
that we're otherwise entitled to.

MR. HAWKINS: Your Honor, this is Asher
Hawkins, if I may speak when you feel the moment is
right.

THE COURT: I feel the moment is right.

MR. HAWKINS: Okay. First of all, Mr. Casamento
did not mention when he was describing the category in
question that we delineated per Your Honor's order which
communications were with individuals who are now named
plaintiffs. So we fully complied with that segment of your
order. The other issue is --

THE COURT: Hold on, hold on, and as to those,
how many of those were there, the ones with named
plaintiffs?

MR. HAWKINS: I'm going to count them, ten.

THE COURT: Okay, so 10 named plaintiffs and 339
which are still covered by your categorical log because
they were with putative class members, correct?

MR. HAWKINS: Correct.

THE COURT: All right, and as to the 10 with
the named plaintiffs, you have now produced all of the
traditional privilege log information, correct, the
precise date of the communication, the form of the

communication, whether it's an email or a business card or

whatever, the to, the from, the cc's and the subject

matter?

        MR. HAWKINS:  Your Honor, we have produced the

dates, and we can update the privilege log to include

the additional information if that's what's necessary.

        THE COURT:  Well, I think, I'm now looking to

see what I said about this on May the 15th, I think I

said comply with Local Civil Rule 26.2, I hope I said

that, did I say that?

        MR. CASAMENTO:  You did, Your Honor.

        THE COURT:  All right, so whatever the

categories are in Rule 26.2 are the categories that

should be there with respect to the named plaintiffs.

But that's not really what we're arguing about today,

what we're arguing about today is whether any

additional detail is required with respect to the

other 339.

        MR. HAWKINS:  The other point, this is Asher

Hawkins, the other point, and I apologize if I

interrupted, if I may go ahead?

        THE COURT:  Go ahead.

        MR. HAWKINS:  The other point that I was going

to raise is that, as you were saying to Mr. Schultz,

the defendants had time to challenge that aspect of
Your Honor's order and they did not.

THE COURT: Well there is that, but when did
they get the updated log?

MR. HAWKINS: The updated log was provided
June 1st.

THE COURT: All right, so it has been a ways
since then. Counsel, I am hearing a beeping on the
line which, as I previously indicated, suggests that
counsel are either arriving or departing. I strongly
suspect that what we are hearing is counsel who are
arriving for my scheduled 11:30 conference in a
different case. I will caution arriving counsel who
may be here for a different case, please keep the line
muted at your end until we call your case. Thank you
very much.

I am going to leave the privilege log issue
undisturbed at present. Nothing that I have heard
suggests to me that there is a need for either
additional disclosure of the communications with the
non-named class members or additional logging of those
communications. We are I think getting fairly close to
the end of our list of discovery disputes. The
plaintiffs were going to respond to the trust's second

set of interrogatories by yesterday, did that happen,
Mr. Hawkins?

MR. HAWKINS: This is Asher Hawkins, Your
Honor, we just had a slight issue with the
verification process for one of those logs which was
directed to multiple plaintiffs. However, we have
produced the log that I believe 2006-4 directed to Ms.
Bifulco, and the responses, because they're about
class discovery issues, are going to be essentially
the same. And I might at some point update Your Honor
about what has been discussed between the parties
regarding class discovery, as well.

THE COURT: All right. And then the final
issue which was reported to me in the joint letter has
to do with the discovery responses of Ms. Tabar, T-A-
B-A-R, and specifically her damages related documents.
What's the status there?

MR. CASAMENTO: Your Honor, it's Greg
Casamento for the trust. We think we're going to be
able to obtain the information we're looking for from
various third parties that we've subpoenaed so I'm not
sure that we need to do anything on this issue right
now.

THE COURT: Okay, then we won't. Is there

anything else I haven't touched on, counsel, that you
want to bring up to me today?  Hearing nothing, I
think what we should do, Ms. Bennett, if you would
take out your calendar, I think I should set this case
down for a further status conference probably sometime
in July at which time you may have new issues, you may
have old issues, you may write me a joint letter
telling me that you don't have any issues, but I would
rather do it in the form of a joint letter and a
discovery conference. I think that's more efficient
than leaving it to the parties to send me letter
applications whenever something arises.

      Life is not normal this summer so I don't know
if anybody on this phone actually has any vacation
plans or knows what their vacation plans are going to
be, but I am looking at the third week of July for our
next status conference. Do any counsel have known
conflicts that week?  Ms. Bennett, when am I on
criminal duty?

      MS. BENNETT:  I was about to say you're on
that week of the 20th, I don't know if you were
referring to that as the third week or not?

      THE COURT:  Yes, so we don't want to do the
week of the 20th, and the week of the 13th may actually

be too early given the schedule that you are going to

be on. Let's go to the first week of August, anybody

have a known conflict that week, that's the week

beginning Monday, August 2nd?

        MR. HAWKINS: No, Your Honor.

        THE COURT: All right, Ms. Bennett, do we have

any availability on that Monday or Tuesday, the 2nd or

the 3rd?

        MS. BENNETT: Yes, we're available both

mornings of the 3rd and the 4th.

        THE COURT: The 3rd or the 4th.

        MS. BENNETT: The 2nd is a Sunday.

        THE COURT: That would explain why I'm looking

at the 2021 calendar, thank you. All right, sorry for

that confusion, counsel, all right, let's set you down

for Tuesday, the 4th of August, 2020, not 2021, at

10:00 in the morning, and I will ask for a joint

status letter one week prior as we did this time, so

your joint status letter will be due on the 28th. And

in that you will update me on the progress of the

matters which we discussed but didn't resolve today,

any new issues that you have, and you will attach the

relevant portions of any discovery requests or

objections which are still in dispute. If it is a

```
 1                                                    44
 2   privilege log issue it would be also helpful, counsel,
 3   if you would attach the relevant portions of the
 4   privilege log.
 5           Anything further from plaintiff?
 6           MR. HAWKINS:  Your Honor, I was going to tell
 7   you about class discovery but I think that you're busy
 8   so we should leave that for a later date.
 9           THE COURT:  Thank you, Mr. Hawkins.  Mr.
10   Casamento, anything further from the trusts?
11           MR. CASAMENTO:  Nothing further, Your Honor,
12   thank you.
13           THE COURT:  Mr. Schultz, anything further?
14           MR. SCHULTZ:  No, Your Honor, thank you.
15           THE COURT:  And Ms. Lastorino?
16           MS. LASTORINO:  No, Your Honor, thank you.
17           THE COURT:  All right, so we will be adjourned
18   in 18cv1781 and in 18cv7692.  Ms. Bennett, will you
19   take us off the record, I am going to disconnect from
20   this conference and then I am going to reconnect in a
21   couple of minutes when I retrieve my file for the next
22   case.  Thank you very much.
23           (Whereupon the matter is adjourned to Tuesday,
24   August 4, 2020, at 10:00 a.m.)
25
```

```
 1                                                      45
 2                    C E R T I F I C A T E
 3
 4         I, Carole Ludwig, certify that the foregoing
 5    transcript of proceedings in the United States District
 6    Court, Southern District of New York, Michelo, et al. versus
 7    National Collegiate Student Loan Trust 2007-2, et al.,
 8    Docket #18cv1781, was prepared using PC-based transcription
 9    software and is a true and accurate record of the
10    proceedings.
11
12
13    Signature_____Carole Ludwig_____
14                        Carole Ludwig
15    Date:   June 23, 2020
16
17
18
19
20
21
22
23
24
25
```