K8QVMICO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MUTINTA MICHELO, *et al*,

               Plaintiffs,

       v.                  18 CV 1781 (PGG)(BCM)

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2007-2, *et al*,

               Defendants.

------------------------------x
CHRISTINA BIFULCO, *et al*,

               Plaintiffs,

       v.                  18 CV 7692 (PGG)(BCM)

NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2004-2, *et al*,

               Defendants.       REMOTE TELECONFERENCE
                                    (Argument)

------------------------------x

                               New York, N.Y.
                               August 26, 2020
                               12:50 p.m.

Before:

                  HON. BARBARA C. MOSES,

                               Magistrate Judge

                      APPEARANCES

FRANK LLP
     Attorneys for Plaintiffs
BY:  GREGORY A. FRANK
     ASHER HAWKINS

K8QVMICO

```
 1                         APPEARANCES (continued)

 2   LOCKE LORD LLP
          Attorneys for Defendants National Collegiate
 3           Student Loan Trust 2007-2, 2007-3, 2004-2, 2006-4
     BY:  R. JAMES J. DE ROSE III
 4        LISA RUGGIERO

 5   SESSIONS FISHMAN NATHAN & ISRAEL
          Attorneys for Defendants Transworld Systems, Inc.
 6           and EGS Financial Care Inc.
     BY:   JAMES K. SCHULTZ
 7         MORGAN I. MARCUS

 8   RIVKIN RADLER LLP
          Attorneys for Defendant Forster & Garbus LLP
 9   BY:  AMANDA GURMAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

K8QVMICO

| 1 | (Remote teleconference) |
| 2 | (Case called) |
| 3 | MR. HAWKINS:  Good afternoon.  This is Asher Hawkins |
| 4 | from Frank LLP, for the plaintiffs. |
| 5 | Also on the line is Gregory Frank. |
| 6 | THE COURT:  Good afternoon, Mr. Hawkins and Mr. Frank. |
| 7 | Let us now go to defendant TSI, about which we will |
| 8 | probably be -- we will probably be talking for most of today's |
| 9 | proceeding. |
| 10 | MR. SCHULTZ:  Good afternoon, your Honor.  This is Jim |
| 11 | Schultz.  Also with me is Morgan Marcus. |
| 12 | THE COURT:  Good afternoon, Mr. Schultz. |
| 13 | And where is your colleague?  Not on video.  On audio? |
| 14 | MR. SCHULTZ:  My understanding is that he was calling |
| 15 | in. |
| 16 | MR. MARCUS:  I believe my video is working.  I'm here |
| 17 | as well. |
| 18 | THE COURT:  Now I see you, Mr. Marcus.  M-A-R-C-U-S; |
| 19 | correct? |
| 20 | MR. MARCUS:  That's correct, yes. |
| 21 | Good afternoon, your Honor. |
| 22 | THE COURT:  Welcome, Mr. Schultz and Mr. Marcus. |
| 23 | For the trust defendants please. |
| 24 | MR. DE ROSE:  It's R. James De Rose III, your Honor, |
| 25 | from Locke Lord.  And I have my partner Lisa Ruggiero with me |

K8QVMICO

1   she will be doing the speaking, if it becomes necessary for us

2   to speak.

3           THE COURT:  I cannot see your partner at the moment;

4   that may be a quirk, the way I am looking at the video.  Let me

5   put it on speaker view.

6           Ms. Ruggiero.

7           MS. RUGGIERO:  I can see you, your Honor.

8           Can you see me now that I am speaking?

9           THE COURT:  Yes, now I can see you, now that you are

10  speaking.

11          All right.  Thank you very much.

12          And wait a minute, that's not everybody.

13          For Forster & Garbus.

14          MS. GURMAN:  Amanda Gurman from Rivkin Radler.

15          THE COURT:  All right.  Thank you all very much for

16  putting on business attire for purposes of today's

17  videoconference.  I always appreciate that professionalism.

18          Thank you also for accommodating the Court's schedule

19  and allowing us to move you from your original time slot this

20  morning until now.

21          The reason we are all together today is, once again,

22  to discuss whether –– to discuss document request No. 19, which

23  is plaintiffs' document request No. 19, which is what some

24  cases refer to as a cloned document request.

25          Plaintiffs have said to TSI:  Turn over everything to

K8QVMICO

us that you previously turned over to the CFPB, because we
think that the CFPB's investigation, which resulted in a
consent order, covers most of the same issues that we are
litigating with you in this case, so let's just save some time
and see everything that you gave the agency.

The TSI has been mightily resisting that.  This is, by
my count, the third chapter in that resistance, the third
packaging of the argument.

Initially, on May the 1st, in a letter brief, TSI
argued that there was a confidentiality privilege -- that's the
term used, a confidentiality privilege -- that permitted TSI to
refuse to respond to a cloned request like that.  And I
rejected that argument.

Second, on June the 30th, in its proposed protective
order motion, TSI made what I read as three separate arguments,
although two of them are related.  The three arguments that I
took away from the June 30th submission were:

First, that TSI is somehow prohibited by the
regulations that commence at 12 CFR, Section 1070, from turning
over to plaintiffs in this case what they previously turned
over to the CFPB.

Second, that even if they are not expressly prohibited
though by regulation, this Court should issue a protective
order in order to protect the investigatory processes of the
agency, this is the so-called reverse engineering argument.

K8QVMICO

```
 1              And thirdly, that the requests are overbroad because
 2    the agency was looking into a wider and somewhat different time
 3    frame than the current litigation covers and, consequently,
 4    that TSI shouldn't have to turn over the entirety of its agency
 5    response, because that would simply give the plaintiffs first
 6    time around to go fishing for new claims and new clients.
 7              That's how I understood the arguments made on June
 8    30th.
 9              I rejected the first two.
10              I have carefully gone through the regulatory argument.
11    The regulations, which begin at 12 CFR 1070, do not prohibit
12    and cannot reasonably, in my view, be construed as prohibiting
13    the recipient of a CID, a civil investigatory demand, from
14    revealing to other people -- in this case, plaintiffs in
15    private litigation -- what it was that they turned over to the
16    agency.
17              When an agency wants to keep its investigatory
18    processes secret to that extent, the agency is generally not at
19    all shy about making that clear.  I don't know if counsel on
20    this call are familiar, for example, with what a grand jury
21    subpoena looks like.  But if you get a grand jury subpoena or
22    if your client gets a grand jury subpoena, it generally comes
23    with a nondisclosure order attached to it which says -- and I
24    am paraphrasing here -- Don't tell anybody that you got this
25    subpoena, and don't tell anybody what we asked for.  An agency
```

K8QVMICO

1    knows how to say that when they want to.  And I did not see

2    anything in the cited regulations which could reasonably be

3    construed as placing a confidentiality obligation on the

4    recipient of a CID.

5          As for the second related argument, the reverse

6    engineering argument, that argument I found somewhat strange

7    coming out of TSI's mouth, because it is really not an argument

8    that TSI has -- I'm going to use the term "generally" here,

9    standing to make.

10          The argument is that TSI should not be required to

11    respond to this cloned discovery request, because turning over

12    the documents could allow the plaintiffs to figure out what the

13    underlying requests were, the actual CID; and that, in turn,

14    could allow the plaintiffs to reverse engineer the agency's

15    overall investigatory strategy, goals, and direction; and that,

16    in turn, would be bad public policy because it would weaken the

17    agency's ability to investigate and pursue charges against

18    entities like TSI.  Really an argument that the agency should

19    be making, but there has never been any request to intervene or

20    any other indication before me that the agency had any interest

21    in the question.

22          Consequently, at our August 4th conference, and then

23    later in writing on August the 6th, I said I will, if

24    necessary, take a protective order motion made on overbreadth

25    grounds; but as a predicate to any overbreadth argument, TSI

K8QVMICO

1   should share with plaintiffs what the requests were in the CID

2   or CIDs, what the document requests were.  And if some of them

3   are clearly related to the issues in this litigation, then that

4   would be a good basis on which to narrow document request No.

5   19, to make sure that it is not overbroad.  I thought that was

6   a fairly sensible solution at the time, particularly since

7   that's what the Eastern District of California had done in the

8   *Muñoz* case, which we discussed at the time and which is also a

9   CFPB case.

10          And Mr. Schultz, I thought, thought it was a pretty

11   good idea on August the 4th, as well.

12          However, on August the 14th, Mr. Schultz wrote to me

13   and asked me, I think, to reconsider my earlier decision,

14   arguing that the CFPB has, in fact, spoken; and that it has

15   spoken through the position that it took in a FOIA case pending

16   in the district of the District of Columbia.  I have now read

17   Judge Mehta's opinion in that case, and I find that it has very

18   little bearing on the matters which are before us today.

19          Firstly, the Judge Mehta opinion dealt entirely with

20   investigatory transcripts, transcripts of depositions or quasi

21   depositions, that the agency took.  And while plaintiffs here

22   did make a run at persuading me in August that the

23   investigatory transcripts were actually part of request No. 19,

24   they are really not.  If you take a look at request No. 19,

25   they don't ask for investigatory transcripts; they ask for

K8QVMICO

documents that were turned over to the agency in response to the agency's document requests.  So that is one way in which the District of Columbia opinion is dissimilar.

The second and perhaps more importantly, of course, is that that was a FOIA case.  The question was not whether a plaintiff who is in live litigation with TSI is entitled to see what TSI turned over to the agency in a closely related agency investigation.  The question in the FOIA case is whether the public at large -- without needing to meet any standards of relevance or standing, for that matter -- is entitled to see what TSI turned over to the agency.  And that is an entirely different question governed by a different statutory scheme with different public policy considerations behind it.

When I received the August 14th letter motion, I asked a number of questions, including -- and I'm paraphrasing now -- what does the agency think about this?  What does the CFPB think about this?

And the response that I received -- forgive me for going out of frame here -- on August the 20th is, Well, Judge, we didn't tell the agency about it until you told us to.  So the agency didn't know since May that we were making all of these public policy arguments essentially on its behalf.

And here it is August the 26th, and I have not heard from the agency.

So where do I go from here?  Why should I make any

K8QVMICO

1    modifications or reconsider in any way the path that we were

2    on, Mr. Schultz?

3         MR. SCHULTZ:  Your Honor, I believe the reason why you

4    should reconsider that approach or what I would suggest at

5    least slow down that approach, is because of what we know from

6    the CFPB as far as the materials they submitted in the FOIA

7    action.  Absolutely we agree that FOIA is a different standard;

8    but the same concerns that TSI has been discussing with your

9    Honor regarding the investigatory privilege, the potential for

10   this reverse engineering, these are all concerns that the CFPB

11   clearly articulated in that FOIA action, and specifically

12   outlined by Ms. Morris in the declaration submitted in that

13   case and which we provided to your Honor.

14        THE COURT:  But Mr. Schultz, they are not making those

15   arguments to me.  And you didn't give them any real opportunity

16   to make those arguments to me, because you didn't tell them in

17   May, in June, in July, until August the 17th, that you're

18   having this dispute in this civil action.  So it kind of --

19   doesn't it -- it would behoove you to now stand before me and

20   say, Judge, you should issue a protective order protecting TSI

21   from having to turn this stuff over, to protect the interests

22   of the agency which has been investigating us.

23        MR. SCHULTZ:  Your Honor, we are not asking for a

24   protective order at this moment.  What we are asking for is

25   just some additional time, because we've had conversations now

K8QVMICO

with the CFPB.  We've seen their email responses that have been

provided to your Honor.  I've also had a conversation with a

couple of the lawyers at the CFPB.  And they have expressed to

me a general interest in this matter.  But at this point, they

are saying they don't have sufficient information or sufficient

time to actually decide whether or not this is going to affect

them.

THE COURT:  And why is that, counsel?  Why don't they

have sufficient information?

MR. SCHULTZ:  Your Honor, obviously because we didn't

tell them.

THE COURT:  Thank you.

MR. SCHULTZ:  It is what it is on that front, your

Honor.  I can't sugarcoat that.

But the reality is, is that the CFPB, in both the FOIA

case and in my conversations with them, have expressed some

concerns.  They haven't formulated an opinion.

All we are asking for, your Honor, is some additional

time so that the CFPB could do -- or make a decision.  And

that's why we are not really asking for reconsideration.

You correctly summarized it.  When we last met, I

thought your proposal, based on *Muñoz*, was a fair idea.  It was

only after we learned of the FOIA litigation and saw that the

pleadings filed by the CFPB in that action did we feel it was

necessary to slow down a little bit before we produced that

K8QVMICO

1   CID.  And so it was what we saw there in the subsequent

2   discussions we've had with the CFPB that have given us at least

3   some concern in producing it as your Honor ordered us to do.

4   And that's why we are asking just for kind of clarification on

5   it.

6          THE COURT:  Well, to be clear, before we get to

7   clarification, I did not actually order you to turn over the

8   CID.  What I directed you to do, if you wish to pursue an

9   overbreadth argument as a means of allowing the parties to

10  narrow the request, if appropriate, based on the categories

11  that the agency -- you now tell me that TSI has turned over *in*

12  *toto* tens of thousands of documents in response to the agency's

13  CIDs.  I don't know how many document requests the agency sent

14  you over what period of time; perhaps it was more than one.

15  And I don't know whether you have, in fact, kept records of

16  which documents were produced in response, the paragraphs or

17  sections of the agency request.

18          It may be that your best option, in order to protect

19  the interests of the agency and not turn over the actual agency

20  CIDs, is simply to respond to document request No. 19 and

21  produce all of the documents that you've produced to the

22  agency, which I'm guessing here (inaudible) without undue

23  burden.  Am I guessing correctly?

24          MR. SCHULTZ:  Your Honor, I apologize, but you cut out

25  there about the point where I heard you say "I would suggest

K8QVMICO

1    you produce," and I didn't hear what you said after that.

2                   THE COURT:  Cut out during the most important part.

3                   (Indiscernible crosstalk)

4                   MR. SCHULTZ:  -- was typing, and I think it overrode

5    my audio.

6                   THE COURT:  What I was suggesting really is a question

7    for you, is, look, if you don't want to turn over the actual

8    CIDs -- and let's be clear.  Your reverse-engineering argument,

9    which I don't think is a particularly strong argument when it

10   comes to document requests, it's a stronger argument in the

11   case of an investigatory transcript, where you actually see the

12   Q&A, and an argument could potentially be made -- as the agency

13   made it in the FOIA case -- that the sequence of questioning,

14   the phrasing of questioning, that sort of thing, is akin to

15   work product and is something worth protecting, because it

16   reveals a strategy and techniques.

17                  It's much harder to make that argument if all you're

18   being asked to turn over is a big pile of documents.  It's

19   really hard to reverse engineer from a big pile of documents to

20   specific investigatory strategies and techniques.  The CIDs,

21   the document requests, occupy, I suppose, sort of an interim

22   position.  But still, in my view, from an agency perspective,

23   are likely far less sensitive than the investigatory

24   transcript.  So I'm not sure -- I'm not sure the argument has

25   much traction, even if it were coming out of the agency's

K8QVMICO

1    mouth, which at the moment it's not.

2         But if you wanted to avoid the question altogether,

3    you could not turn over the CIDs, and instead simply turn over

4    the documents, which I am guessing would not require much

5    burden on your part because you probably have them stored

6    electronically in some way.

7         MR. SCHULTZ:  Your Honor, I don't think that's a

8    workable solution, both because, again, TSI is a regulated

9    entity by the CFPB.  We don't want to run afoul of whatever

10   guidance or instruction they might have for us.  But also, this

11   isn't simply a matter of where these documents are in a file,

12   where we could just upload them or print them and serve them.

13        As your Honor kind of hinted at, there were multiple

14   CIDs is my understanding here.  This was a three-year long

15   investigation.  It wasn't one simple document production.

16   There was multiple.  And those documents that we have been

17   attempting to assemble, that's been an ongoing process now.  We

18   don't have them all in one repository yet.  We're going back

19   now three years, when the investigation was completed.

20        But part of the problem and part of our discussion

21   with the CFPB had to do with who is in a better position to

22   actually gather these documents.  Because the CFPB has asked us

23   to reproduce them to the CFPB.  We were thinking that the CFPB

24   could take a look at what they have and make a decision as to

25   whether or not they have an interest in this dispute.

K8QVMICO

1          THE COURT:  When you say that the CFPB has asked you

2     to reproduce them, you mean just last week they asked you that,

3     right?

4          MR. SCHULTZ:  Yes.  True.  Yes, your Honor.

5          THE COURT:  In connection with your belated notice to

6     the agency that this dispute was going on in this civil action.

7          MR. SCHULTZ:  Correct.

8          THE COURT:  So neither one of you at the moment --

9     neither TSI nor your regulatory agency -- can easily put their

10    hands on exactly what documents would be responsive to request

11    No. 19, is that what you are telling me?

12         MR. SCHULTZ:  That is what I'm telling you, your

13    Honor, yes.

14         THE COURT:  I'm surprised.

15         One other thing, let me just double-check with you

16    before I give probably Mr. Hawkins a chance to speak, is -- and

17    I neglected to mention this when I was discussing the FOIA

18    case.  The FOIA exemptions relied on by Judge Mehta, at least a

19    couple of the FOIA exemptions relied on by Judge Mehta, only

20    applied in the case of an open agency investigation.  The

21    investigation of TSI is no longer open; correct?  It resulted

22    in a consent decree.

23         MR. SCHULTZ:  The TSI investigation itself, your

24    Honor, is completed.  However, there is a related investigation

25    regarding the National Collegiate Student Loan Trust that TSI

K8QVMICO

 1 | is involved in that certainly overlaps here.  And I believe,

 2 | again, Ms. Morris's affidavit talks about this.  There's

 3 | certainly overlap between those investigations.  So TSI itself,

 4 | yes, is complete; but there is still an ongoing related and

 5 | closely aligned investigation with the CFPB that's being

 6 | heavily litigated right now.

 7 | THE COURT:  But document request No. 19 doesn't

 8 | reference the open investigation, does it?

 9 | MR. SCHULTZ:  It does, your Honor.  Absolutely it

10 | does.

11 | THE COURT:  Both?

12 | MR. SCHULTZ:  It asks for both, yes, your Honor.

13 | THE COURT:  All right.

14 | I have to go back and check that.  That's not what I

15 | recall, but I'm sure you're correct.

16 | All right.  Let me hear from plaintiffs.

17 | What should I do and why?

18 | MR. HAWKINS:  Your Honor, this is Asher Hawkins.

19 | Your Honor, I think the first salient point you made

20 | was that the agency is not shy when it wants to assert a

21 | privilege.  The CFPB has had ample opportunity to assert

22 | privilege as to these documents, and it had not done so.  And

23 | even if it did, none of the theoretically available privileges

24 | would apply here, as we outlined in our letter from the 24th.

25 | There is just no basis for TSI to continue

K8QVMICO

```
1    withholding.  And the argument that they don't have track of
2    the responsive documents we feel is just a little bit too late
3    at this point.  They've had enough time to corral these
4    documents, to have a dialogue with the CFPB about what problems
5    might entail from producing them in this litigation.  They
6    haven't done any of that.  So there's simply no existing reason
7    for them to keep on withholding.  And as you mentioned, the
8    recent FOIA decision by Judge Mehta does not give them one.
9              THE COURT:  What about the overbreadth argument, the
10   argument that the regulatory investigation covered a wider time
11   period and was broader in other respects than the claims in
12   this civil action?
13             MR. HAWKINS:  Well, I think that that's the reason
14   that your Honor suggested providing the CID.  And if there is
15   some concern that producing the CID would be turning over
16   documents created by an agency, then CFPB -- sorry, TSI could
17   simply give us a list of what documents are at issue.
18             THE COURT:  Mr. Schultz, if you wish to argue
19   overbreadth, which you tell me that you do, what are the
20   grounds on which you could argue overbreadth without turning
21   over the agency-created CIDs, the actual investigatory demands
22   from the agency?
23             MR. SCHULTZ:  Well, your Honor, I guess we have a
24   disagreement with your Honor as to whether or not the documents
25   themselves would be revelatory to the CFPB's processes.
```

K8QVMICO

1          But the documents I think that you've alluded to are

2    overbroad because of both the time, as well as the scope, of

3    what the plaintiffs are alleging in this case.  The CFPB's

4    investigation of TSI didn't deal -- there is some overlap, but

5    dealt with other issues that are not present in our case here.

6          And so the documents that would be produced -- and

7    there are documents in the form of specific account records,

8    and thousands and hundreds of thousands of consumer

9    information.  There are emails, there are policies and

10   procedures, there are multiple categories of documents that

11   would deal with issues that are not present in our case here

12   today.

13         THE COURT:  And you know that even though you don't

14   know exactly what you produced to the agency?

15         MR. SCHULTZ:  Your Honor, during the course of this,

16   we have had discussions about the general nature of what was

17   produced.  Again, I was not involved in that, I don't know

18   specifically; but I know these categories to have been things

19   that were produced, yes.

20         THE COURT:  All right.

21         The *Muñoz* case appears to be the only case -- the only

22   reported case in which this particular issue came before a

23   federal court.  And by "this particular issue," I mean whether

24   the recipient of a CFPB CID can be required in civil litigation

25   to turn over to the plaintiff the same documents it previously

K8QVMICO

1    turned over to the agency.  That was the question, I believe,

2    in *Muñoz*, and that is the question here.

3            And what I don't see any discussion of in *Muñoz* --

4    because the issue apparently did not come up; the agency did

5    not make the objection, the defendant in the civil litigation

6    did not make the objection on the agency's behalf -- is any

7    concern about this reverse engineering.

8            So why do you think the agency would be concerned in

9    this case?

10           MR. SCHULTZ:  Because they told me so, your Honor,

11   potentially.  And I believe Ms. Morris in her declaration

12   expresses the concerns of these materials being disclosed, as

13   well as, I think -- and I understand your Honor interprets them

14   differently, but I still believe that the Code of Federal

15   Regulations at 1070 designates these materials as confidential;

16   that these are materials that belong to the CFPB; and they can

17   only be disclosed when the CFPB gives approval to do so.

18           THE COURT:  We very much disagree on your

19   interpretation of those regulations, which I have read

20   carefully, and which I read as assuring -- designed in part to

21   assure regulated entities such as TSI, that when TSI turns over

22   documents to the agency, the agency will not then be further

23   disseminating them to every Tom, Dick, and Harry that asks for

24   them.  They say nothing about whether the recipient of the CID,

25   in this case TSI, can, or should, or must, or must not turn

K8QVMICO

1    over the same documents in private civil litigation to someone

2    who has made the basic Rule 26(b) showing of propriety for

3    asking for those documents.  So we're just going to have to

4    disagree about that.

5            Mr. Hawkins, you're making faces like you want to say

6    something more.

7            MR. HAWKINS:  I did just raise my hand very briefly,

8    your Honor, to follow up on your point about *Muñoz* being the

9    only decision in which a defendant was ordered to produce CFPB

10   documents.  There's also a case from just a few days ago, from

11   the Northern District of New York, it's called *Chery v.*

12   *Conduent Education Services*, 2020 U.S. District Lexus, 148764.

13   And it was the same result as in *Muñoz*; so that just provides

14   additional support for your Honor's conclusion here.

15           THE COURT:  Give me the Lexus citation again please,

16   the Lexus citation.

17           MR. HAWKINS:  2020 U.S. District Lexus 148764.  And

18   that appears in our letter from the other day at page 3,

19   footnote 8.

20           THE COURT:  And the name of the case is cherry, like a

21   cherry pie?

22           MR. HAWKINS:  It's C-H-E-R-Y.

23           And the defendant there also tried to analogize FOIA

24   decisions with decisions denying discovery in civil litigation.

25   And the court overruled those arguments.

K8QVMICO

```
 1          THE COURT:  All right.

 2          Does anybody else want to -- before I go back to

 3   Mr. Schultz -- I'll give you an opportunity, Mr. Schultz -- but

 4   do any of the other parties wish to weigh in on this?

 5          All right.  Mr. Schultz, you will have the last word.

 6   Try to make it brief.

 7          MR. SCHULTZ:  Your Honor, my last point would be very

 8   brief.  And again, all we're asking for is your Honor to

 9   indulge us a little bit and give the CFPB some time to review

10   the documents and make a decision before we go any further.  If

11   Muñoz is the process, then we're fine with that; we just want

12   to make sure that the CFPB is okay with it too.

13          THE COURT:  How much time, and then what?

14          MR. SCHULTZ:  I don't know.  The CFPB wasn't -- didn't

15   give us an indication as to how long it might take them.

16          THE COURT:  So what exactly are you asking me to do?

17   Put everything on ice until the agency decides whether it wants

18   to communicate with the Court?

19          MR. SCHULTZ:  I think we could put this one limited

20   issue on ice, so to speak, for, you know, 30 days; and we could

21   report back to you in 30 days or less, but some period of time

22   for the CFPB to make a decision.

23          THE COURT:  All right.  Thank you very much.

24          Counsel, I want to look at the Northern District case

25   before I issue a ruling here.  But it will come as no surprise
```

K8QVMICO

1    to those of you on the conference that I am not inclined to

2    materially depart from the order that I last issued, which is

3    to say my August 6th order, which is at docket number 204 in

4    case number 1781.

5         I do recognize that the reverse engineering argument

6    with respect to the CIDs themselves is somewhat stronger than

7    the reverse engineering argument with respect to the pile of

8    documents.  And consequently, I am inclined to permit TSI to

9    make the overbreadth argument, if it still wishes to make an

10   overbreadth argument, in whatever manner it deems the most

11   appropriate without turning over the actual agency CIDs, if TSI

12   believes that it has some obligation to the agency to protect

13   the confidentiality of those investigatory materials.

14        But I really don't see much of an argument there with

15   respect to -- really any arguments at all with respect to the

16   pile of documents in a civil litigation context.  And I am not

17   inclined to wait around to see if the CFPB itself thinks there

18   is an issue there, particularly since it didn't in *Muñoz*, and I

19   am told that it didn't in the Northern District case, although

20   I haven't read it yet, which I have to do, and since even TSI

21   apparently didn't have enough faith in its reverse engineering

22   argument to test it by letting the CFPB in on the dispute all

23   summer.  So I will read the case, and I will try to get you a

24   written order out today or tomorrow.

25        Thank you very much, ladies and gentlemen. (Adjourned)