UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MUTINTA MICHELO, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | )  18 Civ. 1781 (PGG) |
| NATIONAL COLLEGIATE STUDENT | )  consolidated with |
| LOAN TRUST 2007-2, *et al.*, | )  18 Civ. 7692 (PGG) |
| | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF TRANSWORLD SYSTEMS INC.'S OBJECTION
TO JUDGE BARBARA MOSES'S OCTOBER 23, 2020 ORDER**

NOW COMES Transworld Systems Inc. ("TSI"), through undersigned counsel, and for its reply in support of its objections to Magistrate Judge Barbara Moses's Order entered on October 23, 2020 (the "Objections") (Dkt. 241 in Case No. 18-CV-1781; Dkt. 172 in Case No. 18-CV-7692), states as follows:[1]

Plaintiffs' response brief attempts to paint TSI as obstructionist. However, the pleadings in the case, the history of the dispute over Request No. 19 as reflected in TSI's Objections, and the basis for TSI's Objections, demonstrate that TSI's objections to Request No. 19 are sound and should be sustained.

In their response brief, Plaintiffs insist that they are entitled to everything TSI provided to the CFPB, allegedly because Plaintiffs' allegations are the same as the allegations underlying TSI's September 2017 Consent Order with the CFPB.

---

[1] Plaintiffs, again, incorrectly cite to Federal Rule of Civil Procedure 72(b)(2) as a basis to attempt to preemptively strike TSI's reply brief in support of its objections to Judge Moses's Order. TSI's current objections, like its objections to Judge Moses' July 17, 2020 Order, were made under Fed. R. 72(a); Fed. R. 72(b)(2) is irrelevant as it applies to objections to <u>dispositive</u> <u>orders</u>. The objection here relates to a discovery order, which is not dispositive.

As TSI explained in its Objections, and as reflected in the many briefs on TSI's requests to limit the scope of Request No. 19, Plaintiffs' characterization is a step too far, as the allegations are not identical because: (a) nearly all of the events alleged in Plaintiffs' complaint predate the relevant time period covered in the Consent Order, (b) Plaintiffs' allegations are narrower, relating only to actions taken in New York state courts, and (c) Plaintiffs' complaint alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), New York General Business Law ("GBL"), and New York Judiciary Law, while the CFPB was investigating alleged violations of the Consumer Financial Protection Act ("CFPA").[2] As such, Plaintiffs' Request No. 19, as drafted, is irrelevant and overbroad on its face, especially when considering Plaintiffs' complaint in relation to the Consent Order. Moreover, though the CFPB is not currently asserting any privilege,[3] Plaintiffs should not be permitted to reverse engineer an entire regulatory investigation without first providing any relevance basis for the request.

Plaintiffs respond to TSI's overbreadth analysis by arguing TSI never specified why the request was irrelevant or overbroad, that TSI supposedly did not meet and confer in good faith, and that Plaintiffs supposedly represent a nationwide class. As noted above, TSI has extensively documented why Request No. 19 was irrelevant and overbroad. Additionally, Plaintiffs' contention that TSI refused to meet and confer in

---

[2] Plaintiffs claim that the "exact same violations [are] at issue in this action." *See* Response Brief, p. 2. That is clearly not accurate.

[3] The CFPB did not, as Plaintiffs suggest, give permission to produce the documents. Rather, the CFPB's letter stated that "[t]he Bureau has determined, consistent with 12 C.F.R. § 1070.47, that it will not seek to assert any of its privileges that may apply to prevent disclosure of those materials in the above captioned cases. The Bureau takes no position concerning any privilege belonging to TSI that may apply." Despite Plaintiffs' position to the contrary, TSI did alert Judge Moses that the CFPB was not presently asserting any privilege. Dkt. 227, p. 6.

good faith to narrow the request, while not accurate, disregards the fact that it is Plaintiffs' burden to establish relevance, which they have never done.[4]

The fact that Plaintiffs continue to push an argument that documents have been lost when this assertion has been refuted highlights the weakness of Plaintiffs' position and inability to clear the initial hurdle of showing that Request No. 19 is relevant.[5] This distraction is compounded by Plaintiffs' position that TSI's "refusal" to provide the CID (which it never was required to do), somehow prevented Plaintiffs from limiting their requests, yet they contradictorily argue that their complaint is essentially a mirror of the CFPB's investigation. If the complaint tracks the CFPB investigation, then it defies logic that any good faith limitation of Request No. 19 was dependent upon production of the

---

[4] As documented in TSI's Objections, TSI met and conferred with Plaintiffs several times seeking to narrow Request No. 19, including on September 4, 2020 prior to filing its motion for protective order, and requested that Plaintiffs narrow the requests to Plaintiffs' actual claims in this case. Plaintiffs appear to equate TSI not providing the CID itself as a basis for why TSI supposedly did not participate in this conference in good faith, but TSI was not required to produce the CID itself, nor is it immediately apparent why that document was needed by Plaintiffs to engage productively. The Consent Order very clearly lays out the CFPB's investigation regarding the scope of the claims, the time period at issue, and the alleged violations of the CFPA. Regardless, in a further effort to resolve this dispute without further Court intervention, on December 7, 2020, TSI produced the CIDs it received from the CFPB to Plaintiffs' counsel. As of the filing of this brief, Plaintiffs' counsel has not agreed to meet and confer and has not agreed to any limitations on Request No. 19. TSI continues to believe that the reasonable and appropriate way to resolve the dispute over Request No. 19 is for Plaintiffs to issue more focused and specific requests rather than a blanket "give me everything" request. *See Chery v. Conduent Educ. Servs., LLC*, No. 1:18-CV-75 (DNH/CFH), 2020 WL 4783167, at *1 (N.D.N.Y. Aug. 18, 2020). Plaintiffs now are in possession of the CIDs from the CFPB, so there is no basis to argue that they cannot reformulate their requests focused on issues present here, but not in the CFPB action.

[5] Plaintiffs continue to contend that TSI has "lost" documents – initially, as a basis to oppose TSI's motion for protective order, and now in opposition to TSI's Objections. This representation is false. The undersigned counsel submitted an affidavit in TSI's reply in support of motion for protective order advising that no documents have been lost. *See* Dkt. 231-1. Counsel for TSI has never stated at any time that TSI or any of TSI's lawyers had lost any list of any documents, or any documents that were submitted to the CFPB. *Id.* at ¶ 5. Moreover, TSI did not make any statements at any time to Plaintiffs' counsel that any computer file that might have been created at the time of the production of the documents to the CFPB had been lost. *Id.* at ¶ 6. At best, there was a miscommunication between counsel during this meet and confer. However, Plaintiffs' counsel's continued insistence that documents have been lost despite the fact that none have been call into question whether there was a genuine miscommunication.

CID. Rather, it simply required Plaintiffs to have equal access to the Consent Order, which they have had since before the filing of the lawsuit.

Further, Plaintiffs argue that TSI never established why Request No. 19 was irrelevant (apparently disregarding the portion of TSI's objections directly addressing this and that it is their burden to show relevance), and entirely ignore the fact that it was their prima facie burden to establish that the discovery sought is likely to produce substantiation of the class allegations. *See Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 233 (2d Cir. 2006).[6] Likely understanding that this first important step was never met, Plaintiffs instead argue unpersuasively that Judge Moses gave the parties the opportunities to meet and confer, and Plaintiffs supposedly pled a nationwide class.

TSI relied on *Chery* before Judge Moses in support of a balancing test, because here – like in *Chery* – the discovery sought has not been tailored to the claims in the case. Plaintiffs contend that they could not engage in a meet and confer, as suggested by *Chery*, because they did not have a copy of the CID. But, there is no indication that the defendant in *Chery* provided the CID. Rather, the plaintiff there made broad demands for all documents, like Plaintiffs here, and Judge Hummel noted the requests were overly broad and limited the requests. *See id.* at *10 ("The undersigned finds that Request Nos. 15-17, as stated in plaintiff's demand for production, are overbroad; however, the

---

[6] Plaintiffs misconstrue TSI's reference to *Heerwagen*. TSI cited *Heerwagen* for the standard required to determine whether information sought is discoverable. TSI did not suggest, and it made clear in prior briefs, that FDCPA claims may, in theory, be appropriate in certain circumstances for a nationwide class; typically these cases arise when a creditor has utilized a form letter that can be evaluated uniformly. Here, on the other hand, Plaintiffs' allegations are dependent upon theories of equitable tolling – standards of which are specific in the Second Circuit, and their allegations relate specifically to New York consumers, a New York law firm, and actions taken specifically in New York. *Heerwagen* supports TSI's argument that Plaintiffs have not demonstrated the relevance of their request – and certainly not to the reproduction of TSI's entire CFPB submission.

undersigned concludes that plaintiff is entitled to documents relating to the Consent Orders to the extent limited by his motion as 'documents concerning Consent Orders [Conduent] entered into with the CFPB and the [NYS]DFS resolving investigations into CES's student loan servicing, including allegations of delays in providing LVCs.'"). The defendant in *Chery* was not required to produce the CID, and argued that the request was overly broad (and that the documents were required to be kept confidential). While the court disagreed that the documents were required to be kept confidential pursuant to the CFPB regulations, it still engaged in an overbreadth analysis. That simply was not done here.[7]

Plaintiffs' reliance upon *Jackson v. Bank of Am., N.A.,* No. 16-CV-787G, 2018 WL 3386336 (W.D.N.Y. July 12, 2018) for the position that, because TSI and the Trusts operate nationally, the Plaintiffs are automatically entitled to nationwide discovery, is misplaced. In *Jackson*, the plaintiff's allegations were focused on Bank of America's loss mitigation procedures for mortgage assistance utilized nationwide. *Id.* at *2-*4 ("Plaintiffs are entitled to obtain discovery that they need to support certification of the class that they seek to represent, as alleged in Plaintiffs' complaint. That class includes borrowers who were impacted by BOFA's violations of other subparts of 12 C.F.R. § 1024.41, *which is a unitary regulation governing BOFA's processing of loss mitigation applications*.") (emphasis added). The *Jackson* court, if anything, like in *Chery*, engaged in an analysis to determine the appropriate scope of discovery necessary pre-certification based upon the actual claims in the case. *Id.* at *6 ("The 2015 amendments to the Federal Rules of Civil Procedure emphasized the need to focus on proportionality. Considerations

---

[7] Plaintiffs' complaint that the CIDs have not been produced to allow for a possible narrowing is now mooted, as the CIDs have now been produced.

5

of proportionality can include reviewing whether discovery production will reach a point of diminishing returns.").

Here, Plaintiffs attempt to amend their complaint through their briefs, but their complaint, as pled, does not assert a nationwide class. TSI has previously addressed Plaintiffs position in depth in its response to Plaintiffs' Objections to Judge Moses' July 17, 2020 Order. *See* Dkt. 222, p. 12-16. Nor is the claim, unlike in *Jackson*, appropriate for nationwide consideration because there is no uniform procedure at issue. As previously noted, here each state (and potentially each venue within a state) has its own separate rules for filing lawsuits (and the operative documents needed to support complaints, default applications, and summary judgment applications). Additionally, in other jurisdictions, representations in state court pleadings may not even be material or actionable.[8] Further, Plaintiffs' claims are asserted by New York consumers (or individuals sued in New York), predicated upon alleged violations of New York law, based upon actions that allegedly all occurred in New York.

Plaintiffs cite to their complaint to argue that the parties to this case, and this Court, should have known all along that they intended to represent a nationwide class, and astonishingly make the statement that "[a]ll Defendants, and this Court, have long recognized the Class here as a national one." In their response brief, Plaintiffs contend

---

[8] *See Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 819 (8th Cir. 2012) ("The rule Ms. Hemmingsen urges—that a debt collector's fact allegations are false and misleading for purposes of § 1692e when rejected as not adequately supported in the collection suit—would be contrary to the FDCPA's apparent objective of preserving creditors' judicial remedies, an objective consistent with the principle that the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.") (internal citations omitted); *Summer v. Sec. Credit Servs., LLC*, 335 Ga. App. 197, 201, 779 S.E.2d 124, 128 (2015) ("In assessing FDCPA liability, courts are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a customer's ability to intelligently choose his or her response....Therefore, the Summers FDCPA claim based on the filing of the subject affidavits fails.") (internal citations omitted).

that they defined the class as "all consumers sued in *any* state in collection lawsuits prosecuted for the benefit of any Trust Defendant." (emphasis in original). In Plaintiffs' Objections to this Court's July 17, 2020 Order, they have yet another interpretation of their defined class. *See* Dkt. 202, p. 7 ("*Plaintiffs here constitute a nationwide Class of '(a) all persons sued in state-court lawsuits related to the collection of consumer debt, (b) in which any Trust Defendant was identified as plaintiff in the complaint . . . .*'"). But neither is quite true.

The class definition in Plaintiffs' actual complaint is as follows: "(a) all persons sued in state-court lawsuits related to the collection of consumer debt, (b) in which any Trust Defendant was identified as plaintiff in the complaint, (c) within six years of the date of the filing of this action." Dkt. 124 in Case No. 18-CV-1781, Dkt. 72 in Case No. 18-CV-7692, p. 9. If Plaintiffs' pleading controls discovery, as they suggest it should, their complaint does not, and never has, suggested a nationwide class, which makes sense given the allegations are specific to lawsuits and affidavits filed in New York, regarding New York consumers, filed by New York licensed attorneys and predicated in large part on alleged violations of New York state law.[9] Nor have the defendants ever recognized the class as a national one, and Judge Moses' reliance on one word ("classes") from the July 27, 2020 joint discovery status report was taken out of context.[10]

---

[9] If Plaintiffs truly intended to represent a class broader than New York consumers they should have filed a motion to amend the complaint, which would have been opposed on the merits and untimeliness grounds. Their attempts to amend their complaint through the briefs is improper, and should be rejected on that basis alone. *See Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 318 (S.D.N.Y. 2003).

[10] TSI has not misrepresented anything about the FOIA dispute as Plaintiffs suggest. While the CFPB regulations may require the CFPB to provide the FOIA request to TSI, to the undersigned's knowledge that was never done. Nor did Plaintiffs ever discuss it with the parties to this case – informally or formally. At best, and at earliest, the Court and parties were made

7

Additionally, Plaintiffs misunderstand TSI's position regarding its "reverse engineering" and "confidentiality" objections.[11] TSI does not rely upon the "bank examination privilege" and never has. Rather, TSI has relied upon cases dealing with the privilege for its "reverse engineering" argument, and for the concept that courts have erred on the side of protecting the free flow of information between a company and a regulatory agency. While TSI is not a bank, the principles behind the protections are similar. If this Court allows Plaintiffs to compel production of an entire response to a regulatory agency it will have a chilling effect on voluntary compliance with a CID, as private plaintiffs will wait on the CFPB, or similar agencies, to complete their investigations, and then just request the entire response without limitation as Plaintiffs have done here.[12] If anything, TSI's "reverse engineering" objection truly is one of overbreadth and relevance where the request is not tied to Plaintiffs' actual claims.

---

aware during the August 4, 2020 discovery conference, which Plaintiffs continue to misrepresent as awareness by TSI of the litigation. *See* Dkt. 211, pp. 2-3 (noting that the court reporter inadvertently listed the speaker as the undersigned rather than Mr. Hawkins). Plaintiffs suggested reading of the transcript makes no sense, as it infers TSI had been involved in the FOIA litigation, which, as apparent from the FOIA litigation, was Frank, LLP. The fact that Plaintiffs continue to misstate this belies logic.

[11] Plaintiffs contend that the parties' dispute has been going on for two years, which is not accurate. TSI's Objections lay out the procedural history for the dispute. TSI requested narrowing of Request No. 19 earlier than May 2020, and prior to requiring the Court's assistance, but the parties reached an impasse due to Plaintiffs' refusal to any limitations.

[12] Even if this Court disagrees with TSI's objections based upon confidentiality and "reverse engineering", the courts in *Munoz* and *Chery* still considered the actual relevance of the plaintiff's claims. *See Munoz v. PHH Corp.*, No. 1:08-CV-0759-AWI-BAM, 2013 WL 684388, at *4 (E.D. Cal. Feb. 22, 2013) ("cloned" discovery request there was in the context of plaintiff's claims under the Real Estate Settlement Procedures Act, and the CFPB's investigation was similarly related to the same practices at issue in the RESPA claim); *Chery,* 2020 WL 4783167, at *12 (tailoring "cloned" request to the actual claims in the case).

WHEREFORE, Transworld Systems Inc., respectfully requests that this Court sustain its Objections, enter an order denying Plaintiffs' request for documents and information produced by TSI to the CFPB as drafted,[13] order Plaintiffs to modify Request No. 19 to make specific requests for specific documents, and for all other and further relief that this Court deems just and appropriate.

Respectfully submitted,

*/s/ James K. Schultz*
James K. Schultz
Sessions, Israel & Shartle, LLC
1545 Hotel Circle South, Suite 150
San Diego, California 92108
Telephone:     (619) 296-2018
Email: jschultz@sessions.legal

Bryan Shartle
Sessions, Israel & Shartle, LLC
3850 N. Causeway Blvd., Ste. 200
Metairie, LA 70002
Telephone:     (504) 846-7917
E-mail:        bshartle@sessions.legal

Morgan I. Marcus
Sessions, Israel & Shartle, LLC
141 W. Jackson Blvd., Ste. 3550
Chicago, Illinois 60604
Telephone:     (312) 578-0990
E-mail:mmarcus@sessions.legal

Aaron R. Easley
Sessions, Israel & Shartle, LLC
3 Cross Creek Drive
Flemington, New Jersey 08822-4938
Telephone:     (908) 237-1660
E-mail:        aeasley@sessions.legal

*Attorneys for Transworld Systems Inc.*

---

[13] Or limit it as contemplated in the *Chery* decision.

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2020 a true and correct copy of the foregoing was served upon counsel of record via ECF.

<u>/s/ James K. Schultz</u>