UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MUTINTA MICHELO, KATHERINE SEAMAN, MARY RE SEAMAN, and SANDRA TABAR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 18-cv-1781 |
| CHRISTINA BIFULCO, FRANCIS BUTRY, and CORI FRAUENHOFER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 18-cv-7692<br><br><br><br><br><br><br><br>**FILED VIA ECF** |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION
AND IN RESPONSE TO DEFENDANTS' SURREPLY**

Plaintiffs[1] submit this supplemental brief in further support of their Rule 23 motion and in response to Defendants' Sur-Reply. The Sur-Reply is Defendants' latest attempt to sidetrack this motion practice onto an issue irrelevant to certification: whether they can provide evidence of debts today. (Surr., at 2–6). This is immaterial: Defendants' policies uniformly prohibited their agents and attorneys from acquiring and checking proof of indebtedness, causing them to falsely swear to both in state-court filings. Such fraud justifies certification, irrespective of whether debts alleged were "real." (Pls.' Br., at 4–6, 23 n.14 (citing law of case); Pls.' Reply, at 4–5 & n.4).

In any event, Defendants cannot prove any debts alleged were "real" due to systemic flaws in their electronic record-keeping that Plaintiffs detailed in their Reply. Instead, Defendants now assert that Plaintiffs' cited evidence only displays limited instances where Defendants' agents and attorneys spoliated electronic records and manipulated metadata to cover their tracks—but does not display systemic failure. (Surr., at 5–6). However, additional evidence shows that the defects in Defendants' record-keeping are, indeed, system-wide. (¶¶ 3–7, 17–26).[2] Defendants' bizarre, eleventh-hour evidentiary submissions only demonstrate that they cannot secure the spreadsheets of data on which their entire business model relies, and consistently confuse loan amounts and purported borrowers without realizing their error. These admissions only support class certification of Plaintiffs' claims. This Court should certify this Class now.

---

[1] Capitalized terms used herein have the meanings from prior filings. Plaintiffs' certification motion papers appear on the lead docket (18-cv-1781) at ECF Nos. 312 (motion), 314 & 317 (memorandum ("Pls.' Br.")), and 315 (declaration) ("1st Hawkins Decl."); Defendants' Opposition ("Opp."), at ECF No. 323, and declarations, at ECF Nos. 325–331; Plaintiffs' reply ("Pls.' Reply") at ECF No. 335, and declaration ("2d Hawkins Decl."), at ECF No. 336; and Defendants' sur-reply ("Sur."), at ECF No. 338-1–338-6.

[2] References herein to "¶¶ __" are to the attached Declaration of Asher Hawkins that is submitted in support of this brief.

I.  BACKGROUND

Plaintiffs' Reply illustrated the flaws in the "Schedules" that serve as Defendants' <u>only</u> evidence of chain of title for each alleged loan.  The documentation Defendants use to show "pools" of loans being assigned to the Trusts' assignor, all reference a "Schedule," a set of data created at the time of assignment that identifies individual loans being transferred as part of a bulk purchase.  When Defendants finally agreed to produce the Excel spreadsheets they claimed were the Schedules, these were supposed to show the lines of data for each Named Plaintiff, but "re-formatted" to redact the other information about other loans in the Schedule.  Defendants insisted that all such "re-formatting" involved (1) exclusive reliance on Microsoft's copy-and-paste feature, <u>never</u> cutting-and-pasting or key-typing data by hand, and (2) preserving metadata such that any instance of cutting or typing data by hand can be readily identified.  (¶¶ 13–16).[3]

The data in Defendants' Schedules production do not match the allegations of debt made against Named Plaintiffs in state court.  Plaintiffs' Reply highlighted the evidence concerning Trust 2007-2 and Plaintiff Tabar.  Defendants sued Plaintiff Tabar in state court and got a default judgment, only years later to dismiss their suit once Ms. Tabar learned of it, appeared, and demanded proof of chain of title.  The evidence shows that Defendants' spreadsheet for Trust 2007-2 reflected that the alleged debt <u>actually</u> was owed by a debtor possessing ███████ ██████████████ which—as Defendants admit—does not belong to Ms. Tabar (or the family member who Defendants have alleged was primary borrower).  ((¶¶ 17–22).

The evidence confirms that Defendants' faulty procedures caused them to incorrectly sue Ms. Tabar, when she could not have owed the alleged debt.  Defendants provided a declaration by

---

[3] Further, Plaintiffs were told that Defendants' Rule 30(b)(6) designee, Bradley Luke, was alone preparing the production of the Schedules.  (¶¶ 8–12).

a data administrator—Jens Meyer—who in 2004 apparently designed the Trusts' system for preserving Schedule spreadsheets. Mr. Meyer's declaration acknowledged that the 2007-2 Schedule was created on November 30, 2006, months <u>before</u> the date on which Defendants allege that Ms. Tabar took out a loan purportedly owned by Trust 2007-2 (Jan. 20, 2007). (¶ 24). In their Sur-Reply, Defendants suddenly attempt to submit evidence five months after close of discovery, asserting (1) "certain employees of Locke Lord" overwrote data in that spreadsheet through "[a]n error in the process of redacting" such that digits were "transposed," and (2) Mr. Meyer's sworn statement dating the 2007-2 Schedule's data entry was a "typo." (Casamento Decl. (ECF No. 266–3), at ¶¶ 5–6; Meyer Decl. (ECF No. 266-5), at ¶ 5).

## II.  ARGUMENT

### A. Defendants' Admission That They Spoliated Evidence Supports Class Certification

#### 1. *<u>Defendants' New Story About "Typos" And Overwriting Data Doesn't Make Sense</u>*

When Defendants sued Plaintiff Tabar in 2014, their spreadsheet for Trust 2007-2 identified someone with a different Social Security number as the alleged debtor. (¶¶ 17–22). Defendants' new explanation that <u>two</u> spoliations—one by Locke Lord, the other by Mr. Meyer—caused their documents to misidentify alleged loan debtors, is contradicted by the evidence as well as plain sense. First, an attorney at Locke Lorde could not have changed the spreadsheet, as the metadata reflect no changes made to it between February 2020 and February 2021, which is what Locke Lord now say happened. (¶¶ 27–28).[4] Second, Defendants' evidence supporting their new tale is far from compelling. Defendants' declarant, Gregory Casamento, is not the attorney who allegedly overwrote the spreadsheet. He does not explain when, or how, he came to learn of the

---

[4] In addition, the metadata belie Mr. Meyer's claim that all loan data concerning Trust 2007-2 were inputted to spreadsheet on the date in May 2007 that he now identifies. (¶¶ 23–26).

3

facts he attests to. His second-hand account fails to identify when the spoliation allegedly happened, or which attorney allegedly spoliated the document.[5] He leaves out these facts, because Defendants' whole theory is guesswork.

### 2. *Defendants' New Narrative, Even If True, Only Justifies Class Certification*

Even if Defendants are correct that their agents and attorneys serially spoliated evidence during this case, this admission only supports certification. As Mr. Luke and others testified, the Trusts' agents do not review any possible chain-of-title document—not even a glance at the spreadsheets they claim are so reliable—before procuring default judgments using false affidavits. (Pls.' Br., at 4–6, 23 n.14; Pls.' Reply, at 4–5 & n.4). Defendants' excuse for not relying on chain-of-title documentation is an oft-repeated assertion that, if necessary, they can re-format their spreadsheets for inspection with zero margin of error. (¶¶ 13–16). This clearly is not true.[6]

### B. The Trusts Cannot Now Deny Their Admissions of the Schedules' Inaccuracy

The Trusts have already admitted in Delaware Chancery Court that their chain-of-title documentation is inaccurate. (Pls.' Br., at 3; Pls.' Reply, at 4–5). Attempting to revive an argument lost in the Delaware court, Defendants argue that the Delaware plaintiffs—the investors who own the Trusts (the "Owners"), who sued there in the Trusts' name—did not have standing

---

[5] *See* Casamento Decl., ¶¶ 5–6. Instead, Defendants belatedly produced a "replacement" version of the 2007-2 Schedule that contains the Correct Number, (Casamento Decl., ¶ 9)—but this document's metadata do not show the data-overwriting which Defendants now say occurred, (¶¶ 27–28). Either Defendants are wrong, or they manipulated the metadata to conceal the spoliation when it occurred. Finally, Defendants are incorrect that Plaintiffs were "well aware," prior to close of discovery, of the narrative they now put forward. (Surr., at 5). Plaintiffs were led to believe any overwriting (if it really occurred) was committed by ▉▉▉▉. (¶¶ 8–12). There was never any suggestion a Locke Lord attorney was the culprit. If a Locke Lord attorney truly did overwrite data on the spreadsheet, there would be metadata showing this. *See Robinson v. City of Ark. City*, 896 F. Supp. 2d 1020, 1032 (D. Kan. 2012) ("[T]he metadata [] would have resolved [the evidentiary dispute]."); *RPost Holdings, Inc. v. Trustifi Corp.*, No. CV 11-2118, 2011 U.S. Dist. LEXIS 117260, at *1 (C.D. Cal. Oct. 11, 2011).

[6] *See Jenkins v. Cnty. of Nassau*, No. 19-cv-557, 2021 U.S. Dist. LEXIS 95082, at *23–24 (E.D.N.Y. May 18, 2021) (Brown, J.) (applying *falsus in uno, falsus in omnibus* where record showed defendant's personnel failed to consistently follow the policy that defendant publicly claimed its employees uniformly followed).

4

to bring their action.  Therefore, Defendants argue, estoppel cannot apply.  (Surr., at 3–4).  To the contrary, the Delaware Chancery Court has already held that the plaintiffs there had standing to speak on behalf of the Trusts.[7]  Estoppel is wholly warranted, and Defendants' suggestion this Court ignore the Trusts' admissions in Chancery would "would defy common sense."[8]  The Trusts' Owners—sophisticated investors with the incentive, authority, and resources to investigate the Trusts' true state of record-keeping—are not likely to litigate a factually meritless suit.

### C. GBL Liability Applies Nationwide Because Of The Fraud's Nexus In New York

Defendants are wrong that the Trusts' use of New York law and financial infrastructure is insufficient to trigger GBL liability to Class members outside of New York.  (Surr., at 1–2).  Broad GBL liability does apply here, because there is "a sufficient nexus between" the fraud Plaintiffs allege and New York State.[9]  Plaintiffs' personal information was wrongly included in faulty data spreadsheets created by the Trusts' New York City-based administrators, in connection with assignments of purported loan debt for securitization on Wall Street.  All such transactions were effectuated under New York law, and the revenue streams likewise flow through New York.  (¶¶ 29–32).  As a result of this New York-based conduct, members of the Class were wrongly sued in state courts nationwide.  In this Circuit, such evidence of a New York nexus justifies GBL liability, regardless of Class members' physical location.  *Polk v. DelGatto, Inc.*, No. 21 Civ. 129 (PAE), 2021 U.S. Dist. LEXIS 137764, at *21–25 (S.D.N.Y. July 23, 2021) (Engelmayer, J.).

---

[7] In that decision, the Chancellor uses "Plaintiffs" and "the Trusts," interchangeably. *In re Nat'l Collegiate Student Loan Trusts Litig.*, C.A. No. 12111, 2020 Del. Ch. LEXIS 234, at *1–3 (Del. Ch. July 13, 2020). The Chancellor ultimately held that the facts did not fit the Trusts' theory of liability—tort of injurious falsehood—but presumed the Trusts' owners' standing to sue on the Trusts' behalf, as well as the validity of their fact assertions. *Id.*

[8] *Jermosen v. Ross*, No. 92-cv-0123, 1994 U.S. Dist. LEXIS 1673, at *8 (W.D.N.Y. Feb. 17, 1994).

[9] *Cruz v. FXDirectDealer*, LLC, 720 F.3d 115, 123 (2d Cir. 2013) (applying GBL broadly).

### III. CONCLUSION

For the reasons set forth above, Rule 23 certification should be granted.

Dated:    New York, New York
          Oct. 22, 2021

                                                    Respectfully submitted,

                                                    **FRANK LLP**

                                                    By:   */s/ Gregory A. Frank*
                                                    Gregory A. Frank (GF0531)
                                                    Marvin L. Frank (MF1436)
                                                    Asher Hawkins (AH2333)
                                                    305 Broadway, Suite 700
                                                    New York, New York 10007
                                                    Tel: (212) 682-1853
                                                    Fax: (212) 682-1892
                                                    gfrank@frankllp.com
                                                    mfrank@frankllp.com
                                                    ahawkins@frankllp.com

                                                    *Attorneys for Plaintiffs and the Class*