UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| KATHERINE SEAMAN, MARY RE SEAMAN, and SANDRA TABAR, individually and on behalf of all others similarly situated, )<br><br>Plaintiffs, )<br>v. )<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, )<br><br>Defendants. ) | No. 18-cv-1781 |
| CHRISTINA BIFULCO, FRANCIS BUTRY, and CORI FRAUENHOFER, individually and on behalf of all others similarly situated, )<br><br>Plaintiffs, )<br>v. )<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, )<br><br>Defendants. ) | No. 18-cv-7692<br><br><br><br><br><br><br><br>**FILED VIA ECF** |

**PLAINTIFFS' RENEWED MOTION FOR SANCTIONS AGAINST
THE TRANSWORLD DEFENDANTS FOR THEIR
DISCOVERY VIOLATIONS CONCERNING
THE EMPLOYEE-WITNESS KNOWN AS "EMPLOYEE A"**

**TABLE OF CONTENTS**

I. BACKGROUND ................................................................................................................ 2

    A.   TSI Impeded Plaintiffs From Deposing Employee A ....................................................... 2

    B.   Documents Obtained In Discovery Showed Violations Involving Employee A ............. 6

    C.   Employee A's Limited Testimony Here Confirms His Involvement In Violations ......... 9

II. ARGUMENT .................................................................................................................... 11

    A.   TSI Must Be Sanctioned By Adverse-Inference And Preclusive Orders .................... 11

    B.   Plaintiffs Are Entitled TO Attorney's Fees Incurred During This Dispute ................ 15

III. CONCLUSION ................................................................................................................ 16

# **TABLE OF AUTHORITIES**

**Cases**

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
   138 F. Supp. 3d 352 (S.D.N.Y. 2015) ............................................................................... 12, 13

*Creative Res. Grp. of N.J., Inc. v. Creative Res. Grp., Inc.*,
   212 F.R.D. 94 (E.D.N.Y. 2002) ........................................................................................ 12, 13

*Ransmeier v. Mariani*,
   718 F.3d 64 (2d Cir. 2013) ...................................................................................................... 15

*Raymond v. City of N.Y.*,
   No. 15-cv-688, 2020 U.S. Dist. LEXIS 38821 (S.D.N.Y. Mar. 5, 2020) ................................. 12

*Tourmaline Partners, LLC v. Monaco*,
   No. 3:13-cv-00108, 2016 U.S. Dist. LEXIS 18193 (D. Conn. Feb. 16, 2016) .................. 12, 13

*Wager v. G4S Secure Integration, LLC*,
   No. 19-cv-3547, 2021 U.S. Dist. LEXIS 220116 (S.D.N.Y. Nov. 15, 2021) ........................... 15

**Statutes**

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. .......................................... 13, 14, 15
N.Y. Gen. Bus. Law § 349 ................................................................................................ 13, 14, 15

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................. passim
Fed. R. Civ. P. 72 ............................................................................................................. 4, 5, 15

Plaintiffs respectfully submit this renewed motion for sanctions against TSI[1] for discovery misconduct. TSI impeded a key witness's deposition with the purpose and effect of preventing Plaintiffs from gathering crucial testimony. The facts and circumstances surrounding TSI's conduct compel a finding that TSI set out to block a key witness's unadulterated testimony because it confirms Defendants' liability. This Court should enter adverse-inference and preclusive orders reflecting TSI's misconduct, and award Plaintiffs attorney's fees wasted on this issue.

Discovery has demonstrated that the witness in question, a TSI employee known as "Employee A,"[2] possesses unique knowledge concerning Defendants' policy of taking judgments against consumers in state-court collection suits while knowing the debt could not be proved. TSI has employed shifting rationales for its failure to produce Employee A for deposition.

After a year's worth of baseless motions by TSI to prevent the deposition had failed, the Court ordered TSI to finally make Employee A available for questioning. TSI argued for the first time that midway through the year it had spent delaying, Employee A had suffered a stroke due to the purported stress of testifying here, limiting his ability to recall and speak. Upon inquiry from the Court, TSI admitted that it intentionally withheld this argument from Plaintiffs and the Court.

While facing sanctions, TSI hired separate counsel to represent Employee A individually, in their quest to avoid giving a deposition in this case. This resulted in an additional round of wasteful motion practice. Ultimately, this Court held that Employee A should be deposed via written questions. During the deposition, Employee A generally stated he no longer recalled

---

[1] "TSI" or "Transworld Defendants" as used herein collectively refers to Transworld Systems, Inc. ("Transworld"), in its own right and as successor to NCO Financial Systems, Inc. ("NCO"), and EGS Financial Care Inc. ("EGS"), formerly known as NCO.

[2] This witness previously has been referred to by the pseudonym "Affiant X." Judge Gardephe's decision concerning the instant sanctions refers to the witness as "Employee A," which we adopt here. *See* Ord. of Jan. 18, 2022 U.S. Dist. LEXIS 13560, at *5 (Dkt. No. 348 in Case No. 18-cv-1781; Dkt. No. 276 in Case No. 18-cv-7692).

1

relevant details about his job function. But, he did recall a few—and these were extremely detrimental to TSI. Employee A did recall that TSI failed to adequately train its employees and he felt he didn't understand the debts he helped collect. Immediately after Employee A gave this testimony under oath, the lawyer TSI had hired for Employee A took him out of the room for a private conference. Upon returning to the room, Employee A recanted the very testimony he just gave moments earlier.

However, the few facts that Employee A could recall, along with related documentary production, confirm that he was involved in systemic consumer fraud pursuant to Defendants' illegal policies. Had Plaintiffs been able timely to question Employee A, he would have provided important details supporting Plaintiffs' case. To date, TSI has spent a fortune on attorney time in its quest to keep Employee A from testifying, which only emphasizes the importance of Employee A's testimony.

This Court should enter adverse-inference and preclusive orders against TSI, in addition to awarding Plaintiffs the attorney's fees spent on the Employee A dispute.

I.    BACKGROUND

    A.  **TSI Impeded Plaintiffs From Deposing Employee A**

        **1. Employee A Has Unique Knowledge Concerning Plaintiffs' Allegations**

Employee A is a witness with unique personal knowledge in this litigation, because he personally signed the default-judgment affidavit against Plaintiff Tabar (the "Employee A Affidavit") that Defendants submitted in Bronx County Civil Court in February 2014. In April 2018, Ms. Tabar learned about the default judgment against her and successfully applied to have it vacated. Once that state-court action was restored to the calendar, she demanded evidence substantiating the claims made against her, i.e., that she owed money to Trust 2007-2. In August

2018, Defendants declined to provide to the state court the documentary proof of indebtedness that Employee A would have reviewed before signing the Employee A Affidavit, if it were valid. Further, Defendants declined to call Employee A to the stand in state court as a witness. Instead, Defendants dismissed the action against Plaintiff Tabar with prejudice. (Consol. Compl. ¶¶ 139–159 (Dkt. No. 72 in Case No. 18-cv-1781; Dkt. No. 124 in Case No. 18-cv-7692)).

Plaintiff Tabar is the only one of the seven named Plaintiffs who defended herself in state court.[3] This Court has held that there is "no question" concerning the relevance of Employee A's testimony. *See* Ord. of July 17, 2020 U.S. Dist. LEXIS 131372, at *10–11 (Moses, Mag. J.), *adopted*, Ord. of Feb. 15, 2021 U.S. Dist. LEXIS 28597 (Gardephe, J.).

### 2. TSI Sought To Block Employee A's Deposition On The Basis Of Epilepsy

On June 27, 2019, Plaintiffs served upon TSI deposition notices including Employee A's. TSI made no mention of any health issues concerning Employee A's ability to testify at deposition. On Dec. 6, 2019, Feb. 11, 2020, and Feb. 17, 2020, Plaintiffs and TSI corresponded about Employee A's deposition. Each time, TSI made no mention of any health issues concerning any ability to testify at deposition.

On Feb. 18, 2020, seven months after being served with Employee A's deposition notice, TSI asserted for the first time Employee A had an unspecified medical condition making him unable to testify in court. This after Employee A spent years working for TSI as a professional

---

[3] In addition to the default-judgment affidavit filed against Plaintiff Tabar on behalf of Trust 2007-2, Employee A also signed two effectively identical affidavits against her on behalf of Trusts 2007-1 and 2007-3. These additional state-court actions were dismissed in October 2019 after Defendants could not after <u>five</u> opportunities prove she owed anything as alleged. These violations pertaining to Trusts 2007-1 and 2007-3 are the subject of a new case that this Court has accepted as related to the consolidated actions at bar. *See* Compl. ¶¶ 135–207, *Butry et al. v. Nat'l Collegiate Student Loan Trust 2005-3 et al.*, No. 20-cv-5843 (S.D.N.Y. July 28, 20) (ECF No. 1), *accepted as related*, Aug. 11, 2020.

3

witness in state-court collection suits. Plaintiffs demanded TSI produce documentation of any purported inability to testify in this litigation. On Feb. 28, TSI asserted Employee A was at some point in 2018 diagnosed with stress-induced epilepsy and asserted that testifying in court causes him stress. Plaintiffs again demanded medical documentation of TSI's assertions, including affidavits from a neurologist confirming that Employee A's epilepsy makes him unable to testify in this action.

On May 1, 2020, Plaintiffs moved to compel Employee A's deposition. Through the Spring of 2020, the Parties litigated TSI's epilepsy defense—including TSI's motion for quash or protective order under Rule 26, and evidentiary proffer in support.[4] Your Honor rejected TSI's motion on July 17, 2020, finding the "medical records" TSI submitted were inauthentic and, even if admissible, did not support the claim of inability to testify. *See* Ord. of July 17, 2020 U.S. Dist. LEXIS 131372, at *9–16. TSI filed Rule 72 objections to this on July 31, Plaintiffs opposed on Sept. 2, and TSI replied on Sept. 9.[5] Judge Gardephe confirmed the Court's the denial of TSI's motion on Feb. 15, 2021. *See* 2021 U.S. Dist. LEXIS 28597.

### 3. TSI's Surprise Medical Argument Prompts Sanctions

After Judge Gardephe confirmed this Court's rejection of TSI's epilepsy motion, TSI asserted for the first that it had been concealing from the Court that Employee A suffered an incapacitating stroke in August of 2020, apparently within weeks of Your Honor's July 17 order compelling Employee A to testify. TSI newly argued that the effects of the stroke caused by the Court's order are far worse than the epilepsy. By TSI's own admission, it spent nearly eight

---

[4] *See* Dkt. Nos. 146, 148, 153, 167, 172, 196 in Case No. 18-cv-1781; Dkt. Nos. 89, 91, 96, 110, 133 in Case No. 18-cv-7692.
[5] *See* Dkt. Nos. 201, 221, 224 in Case No. 18-cv-1781; Dkt. Nos. 138, 152, 155 in Case No. 18-cv-7692.

4

months sitting on evidence that (if true) obviated its epilepsy motion. Having lost the last round of motion practice, TSI retained separate counsel for Employee A (Paul Sanders of Barclay Damon LLP), ostensibly to represent Employee A as an individual rather than TSI employee. On March 26, 2021, Employee A filed his own motion for a protective order. Although Mr. Sanders asserted in that motion that Employee A had no memory of the Tabar state-court action, no such assertion was made in Employee A's attached declaration.[6]

On April 23, 2021, the Court granted in part Plaintiffs' motion for sanctions against TSI for discovery violations concerning Employee A. The Court held that Plaintiffs were entitled to attorney's fees caused by TSI's delay in asserting the stroke, but reserved judgment on Plaintiffs' request for nonmonetary sanctions in the form of adverse-inference and preclusive orders. The Court found that the best solution for securing Employee A's evidence, under the circumstances, was for him to be deposed on written questions under Rule 31, in time for the class certification motion practice due to begin June 2021. Once Employee A's written-questions deposition had been completed, and any Rule 72 objections to imposition of sanctions had been resolved, Plaintiffs could renew their motion. TSI did lodge Rule 72 objections as expected; these were litigated while remaining discovery was completed and the Rule 23 motion was briefed.[7]

---

[6] *See* Dkt. No. 266 in Case No. 18-cv-1781; Dkt. No. 196 in Case No. 18-cv-7692. Mr. Sanders later admitted to the Court that the assertion should never have been made

[7] The facts of the mid-2021 sanctions motion practice are set forth in detail in Judge Gardephe's decision overruling TSI's objections against the Court's inherent authority to impose sanctions in these circumstances. *See* Ord. of Jan. 18, 2022 U.S. Dist. LEXIS 13560, at *5–11 (Dkt. No. 348 in Case No. 18-cv-1781; Dkt. No. 276 in Case No. 18-cv-7692).

## B. Documents Obtained In Discovery Show Violations Involving Employee A

### 1. TSI's Policies Prohibited Its Affiant Team From Reviewing Proof Of Debt

Employee A served as one of TSI's "Affiant Team", employees who (1) signed the affidavits used to procure state-court judgments in favor of the Trusts and against accused debtors including Named Plaintiffs, and (2) testify as the Trust's witness in state court on the rare occasion an action against a consumer proceeded to trial. While Plaintiffs sought testimony from Employee A and other members of the Affiant Team, discovery including documentary production and Rule 30(b)(6) testimony revealed unlawful practices by the Affiant Team:

At any given time, the Affiant Team consisted of no more than six members, each required to sign roughly 45 to 60 affidavits daily. The affidavits were based on templates with boilerplate language into which data points like dollar amounts were auto populated. The Affiant Team were precluded by official TSI policy from confirming chain of assignment, or the terms governing underlying loan agreements, before signing sworn statements to benefit the Trusts. The Affiant Team were required to trust on faith the dollar amounts and the like in TSI's computer system, but could not tell for themselves how these were arrived at, because (among other reasons) TSI never received a glossary of the account codes that were inputted from the pre-suit servicer.[8]

### 2. Employee A Could Not Have Reviewed Proof Of Debt

Employee A couldn't have reviewed proof of Plaintiff Tabar's alleged debt, because Defendants had none, as other discovery showed. Most glaringly, Plaintiffs have learned that the Defendants do not have the "Schedules" that they need in order to establish chain of title for each alleged loan. Upon bulk purchase, each pool of accounts purportedly assigned to a Defendant

---

[8] Plaintiffs outlined this evidence for the Court during the Rule 23 motion practice. *See* Pls.' Mem. in Supp. Mot. Class Cert., at 5 (June 4, 2021) (Dkt. No. 314 in Case No. 18-cv-1781; Dkt. No. 242 in Case. No. 18-cv-7692).

Trust was supposed to be accompanied by a Schedule, a spreadsheet of data created at the time of assignment listing each individual's loans by borrower's Social Security, amount, and the like. The data in Defendants' production are not sufficient to prove chain of title over Plaintiffs' alleged debts, proving false TSI's sworn testimony in state courts claiming that TSI did possess such evidence.

The evidence Plaintiffs were able to obtain demonstrates that Employee A possessed critical knowledge concerning Defendants' systematic failure to ensure proper documentation. As to Plaintiff Tabar's alleged debt to Trust 2007-2, Employee A issued a sworn affidavit asserting a different amount than was asserted in TSI's own Schedule.[9] Worse, the Social Security number was wrong—the spreadsheet produced against Ms. Tabar showed one ending in "2446" (the "Incorrect Number") instead of "2466" (the "Correct Number."). Finally, the evidence suggests that, when Defendants sued Plaintiff Tabar years ago, their defective spreadsheet system caused Ms. Tabar to be confused with the individual whose Social Security number really <u>does</u> end in 2446—and whom the spreadsheet actually owes the money that TSI sued Ms. Tabar for.[10] The mistake harming Ms. Tabar would have been avoided if Defendants had even the most basic of document-review procedures in place.

---

[9] This discrepancy in the amounts cannot be explained by inclusion of interest over time, nor by payments being made on the alleged loan—the Employee A Affidavit swears that "no payments have been made" on the alleged loan. *See* Pls.' Counsel's Decl. re Sur-reply in Supp. Mot. Class Cert., at ¶ 22 (Oct. 22 2021) (Dkt. No. 342 in Case No. 18-cv-1781; Dkt. No. 270 in Case. No. 18-cv-7692).

[10] *See* Pls.' Sur-reply in Supp. Mot. Class Cert., at 2–3 (Oct. 22 2021) (Dkt. No. 341 in Case No. 18-cv-1781; Dkt. No. 269 in Case. No. 18-cv-7692). Plaintiffs' Rule 23 motion papers also highlight metadata inconsistencies in Defendants' production concerning Schedules, which further confirm their lack of chain of title. *See generally id.*, & Pls.' Counsel's Decl. re Sur-reply in Supp. Mot. Class Cert.

### 3. Plaintiffs' Additional Investigations Confirm Violations By The Affiant Team

a) *Former Affiant's Whistleblower Statement*

While TSI blocked Employee A's deposition, Plaintiffs utilized other discovery devices to gather evidence about the TSI Affiant Team of which he was a member. Through Rule 45 subpoenas Plaintiffs issued to Affiants no longer employed by TSI whom Plaintiffs had located, Plaintiffs learned in 2020 that one ex-Affiant, James Cummins, recently filed a whistleblower statement with the Consumer Financial Protection Bureau detailing TSI's policy of requiring Affiant Team members to sign affidavits falsely attesting to personal knowledge and review of proof of debt. Mr. Cummins's statement particularly focused on lack of knowledge and inability to understand how the Trusts came to own the alleged loan debts over which Defendants sued consumers like Plaintiffs.[11]

b) *Deposition Testimony By Other Employees Of Defendants*

Other Affiant Team members involved in actions against Plaintiffs gave testimony here confirming they didn't understand the sworn statements they'd made against Plaintiffs. For example, Chandra Alphabet, who signed state-court affidavits against Plaintiff Frauenhofer, testified at deposition here that she had been led to believe (incorrectly) that TSI was the owner of the alleged loans in question. (Hawkins Decl., Ex. A, at 39:18–41:11, 82:20–83:19).

Plaintiffs also secured testimony from Valerie Watts, the debt-collection attorney employed by Defendant Forster & Garbus ("F&G") who had appeared in state court to represent Trust 2007-2 against Plaintiff Tabar in mid-2018, after Plaintiff Tabar had appeared, obtained vacatur, and demanded trial and proof of the debt alleged against her. Ms. Watts testified that she

---

[11] A copy his statement is available at: https://www.frankllp.com/files/cfpb_affidavit_-_jhc.pdf.

had requested TSI send its "witness"—i.e., Employee A—to testify at trial in support of Trust 2007-2's debt allegations, but TSI could not do so. (Hawkins Decl., Ex. B, at 1125–114:18).

### C. Employee A's Limited Testimony Here Confirms His Involvement In Violations

During his written-questions deposition, Employee A repeatedly complained of memory difficulties, stating that he could not answer Plaintiffs' questions with the detail sought. He stated that he had not suffered from any memory problems prior to the date he reportedly had a stroke. In other words, had Plaintiffs been able to timely depose Employee A, he would have been able to provide meaningfully detailed testimony. (Hawkins Decl., Ex. C, at 26:22–25). Despite this, Employee A gave testimony supporting Plaintiffs' arguments and theories of liability.

#### 1. Employee A Left The Affiant Team Because Plaintiff Tabar Fought Back

First, Employee A testified that he stopped signing state-court affidavits, like the one against Plaintiff Tabar, in June 2018—the same time that Plaintiff Tabar appeared in state court, prompting F&G's Ms. Watts to request that TSI have Employee A appear in state court for a trial testing Trust 2007's debt allegations against Plaintiff Tabar. Employee A attributed his June 2018 departure from the Affiant Team to "workplace stress." (Hawkins Decl., Ex. C, at 23:5–18).

#### 2. Employee A Confirmed He Signed Sworn Statements He Didn't Understand

Second, Employee A testified about being required to sign state-court affidavits despite not understanding their substance. These answers came in the portion of the deposition in which he responded to Defendants' written questions:

```
33:14  Q.  Prior to starting your job of reviewing
   15      and signing affidavits, did you receive training on
   16      the importance of reviewing the loan records?
   17  A.  Not that I recall.
   18  Q.  When you were reviewing and signing
   19      affidavits, did you feel that you had sufficient
   20      knowledge and understanding of the loan records?
   21  A.  No.
```

9

(Hawkins Decl., Ex. C, at 33:14–21)

Shortly after he gave these answers, Employee A's TSI-hired attorney Mr. Sanders requested a break to speak with Employee A. Upon returning to the room, Mr. Sanders said that he and Employee A had discussed Employee A's answer to the second question quoted above, and Employee A now had a different answer. When re-asked this question at Mr. Sanders's direction, Employee A changed his answer to "Yes," contradicting his unadulterated testimony moments before that he'd lacked sufficient knowledge and understanding of the loan records. (Hawkins Decl., Ex. C, at 26:22–25).[12]

### 3. Employee A Said He Did Nothing More Than Follow "The Checklist"

Lastly, Employee A testified that the only procedure he observed in signing the state-court affidavit against Plaintiff Tabar, was to follow "the checklist." (Hawkins Decl., Ex. C, at 41:10–42:15). TSI's checklists had featured prominently in discovery issues raised by Plaintiffs earlier in this litigation. The checklists were documents that TSI provided to Affiant Team members to use before signing state-court affidavits. Plaintiffs complained that TSI had produced only two of the checklists pertaining to affidavits signed against Plaintiffs—with one of the missing ones being that which Employee A would've used during the collection against Plaintiff Tabar. TSI later admitted that it had not preserved certain checklists and that it had produced all of those in its possession.[13]

---

[12] Additional testimony by Employee A suggests that Mr. Sanders put words in Employee A's mouth on other occasions here. Employee A testified that he didn't recall, and hadn't reviewed before filing, the document that Mr. Sanders filed with this Court asserting that Employee A didn't remember any details pertaining to the collection activities against Plaintiff Tabar. (Hawkins Decl., Ex. C, at 28:15–28:9).

[13] TSI's L.R. 37.2 Ltr. to Ct. of May 6, 2020 (Dkt. No. 148 in Case No. 18-cv-1781; Dkt. No. 91 in Case No. 18-cv-7692).

However, F&G's production here did include a document that appears to be the checklist completed by Employee A prior to signing the state-court affidavit against Plaintiff Tabar. The few check-marks appearing on this document show that, before signing the affidavit against Plaintiff Tabar on behalf of Trust 2007-2, Employee A did nothing more than a non-substantive cursory review, checking the spellings of the names of Ms. Tabar and her state-court co-defendant, plus the address that TSI had on file for them. Consistent with TSI's policy not to review loan documents or chain of assignment, there are no check-marks on this document showing that Employee A did anything to confirm the dollar amount of the debt alleged, or the identity of the alleged loan's owner. In fact, the document identifies the "CLIENT" only as "NATIONAL COLLEGIATE TRUST" [sic] rather than any specific Trust. Thus, by design, TSI's checklists prohibited Employee A and his fellow Affiants from confirming chain of title, a prerequisite to judgment in state court. (Hawkins Decl., Ex. D).

## II.     ARGUMENT

### A. TSI Must Be Sanctioned By Adverse-Inference And Preclusive Orders

Monetary sanctions for discovery violations like TSI's are automatic, but nonmonetary sanctions are additionally necessary when the violator uses a delay strategy to irreparably prejudice its opponent. That is exactly what TSI has done to Plaintiffs here with respect to Employee A. TSI is subject to nonmonetary sanctions under the Court's inherent authority to police discovery violations, including orders (1) instructing the jury to infer adversely against TSI concerning the testimony that Employee A would've given if deposed timely and without adulteration; and (2) precluding TSI from making self-serving, no-longer-supported arguments about Employee A and TSI's purported compliance with the law in prosecuting Plaintiff Tabar. Even if TSI's conduct here were merely "negligent[]"—rather than intentionally bad-faith, as the record demonstrates—

11

TSI still would be subject to the nonmonetary sanctions Plaintiffs seek. *Raymond v. City of N.Y.*, No. 15-cv-688, 2020 U.S. Dist. LEXIS 38821, at *46–48 (S.D.N.Y. Mar. 5, 2020) (Cave, Mag. J.) (imposing adverse-inference sanctions).

Adverse-inference and preclusive orders are appropriate where ("1) the party having control over the evidence had an obligation to timely produce it; (2) the party that failed to timely produce the evidence had a culpable state of mind; and (3) the missing evidence is relevant to a claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Tourmaline Partners, LLC v. Monaco*, No. 3:13-cv-00108, 2016 U.S. Dist. LEXIS 18193, at *12–15 (D. Conn. Feb. 16, 2016) (Bolden, J.) (listing Second Circuit precedent). Importantly, "the culpable state of mind need not rise to the level of intent or recklessness; negligence is sufficient." *Id.*; *see Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 391–93 (S.D.N.Y. 2015) (Karas, J.) (imposing nonmonetary sanctions in the form of adverse-inference and preclusive orders); *Creative Res. Grp. of N.J., Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 106–07 (E.D.N.Y. 2002) (Wall, Mag. J.) (same). Further, the Court in assessing nonmonetary sanctions should consider the "circumstances" surrounding the evidentiary loss at issue. *Creative Res. Grp. of N.J., Inc.*, 212 F.R.D. at 106–07.

Here, if Plaintiffs had been given timely access to Employee A, he could have been deposed before a stroke purportedly impeded his ability to recall details of the work he performed for TSI. Despite Employee A's purportedly damaged recall, his limited testimony, along with other discovery propounded as TSI impeded his deposition, compellingly demonstrate that he was involved in violating rights both of Plaintiff Tabar's, and of all other Class members against whom he signed state-court affidavits. Not only do TSI's internal policy documents and other employees' testimony here confirm these violations. So does the Employee A/Tabar "checklist"—the only

12

document that Employee A could specifically recall using during the underlying events. (*See* Hawkins Decl., Ex. D). Considering the totality of these facts, "a reasonable jury could find" that Employee A was involved in violations, as Plaintiffs allege but were prohibited from directly confirming. *Tourmaline Partners, LLC*, 2016 U.S. Dist. LEXIS 18193, at *14–15.

Plaintiffs are not required to prove to this Court that TSI's actions went beyond negligence—that is enough for this Court to sanction TSI non-monetarily. However, in this case "there is sufficient evidence of bad faith to justify" sweeping nonmonetary sanctions against TSI. *Congregation Rabbinical Coll. of Tartikov, Inc.*, 138 F. Supp. 3d at 391-93; *see Creative Res. Grp. of N.J., Inc.*, 212 F.R.D. at 106–07. Among other things, TSI suspiciously "lost" the checklist showing Employee A's non-review of proof of Plaintiff Tabar's alleged indebtedness; and, when it came time for Employee A to finally submit to limited deposition, TSI hired him Mr. Sanders as new counsel, ostensibly to represent his individual interests. In the end, Mr. Sanders repeatedly put words in Employee A's mouth that were as favorable to TSI as possible. *See* Parts I.A.3 & 1.C.2, *supra*.

Plaintiffs accordingly request TSI be sanctioned with orders recognizing the following facts concerning TSI and Employee A that would have been adduced directly through his timely, unadulterated testimony:

- Employee A did not review proof of the debt alleged in the Employee A Affidavit before signing it.

- The Employee A Affidavit was materially false, deceptive, or misleading in violation of the FDCPA and GBL § 349.[14]

---

[14] References herein to "FDCPA" are to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. Those to "GBL" are to the N.Y. General Business Law.

13

- Employee A never reviewed proof of the debts alleged in any other affidavit he signed for filing in state court where one of the National Collegiate Student Loan Trusts was the plaintiff.

- All other affidavits that Employee A signed for filing in state court where one of the National Collegiate Student Loan Trusts was the plaintiff, were materially false, deceptive, or misleading in violation of the FDCPA and GBL § 349.

- No member of TSI's Affiant Team reviewed proof of the debts alleged in any of the affidavits they signed for filing in state court where one of the National Collegiate Student Loan Trusts was the plaintiff.

- All affidavits that member of TSI's Affiant Team signed for filing in state court where one of the National Collegiate Student Loan Trusts was the plaintiff, were materially false, deceptive, or misleading in violation of the FDCPA and GBL § 349.

- TSI failed to adequately train the members of its Affiant Team, such that they didn't understand the alleged debts that they helped collect on behalf of any of the National Collegiate Student Loan Trusts.

- TSI materially violated the FDCPA and GBL § 349 by failing to adequately train the members of its Affiant Team, such that they didn't understand the alleged debts that they helped collect on behalf of any of the National Collegiate Student Loan Trusts.

- TSI moved Employee A from TSI's Affiant Team to another part of the company in mid-2018 in response to Plaintiff Tabar's appearance in state court questioning the veracity of the Employee A Affidavit.

- The reason Employee A was moved from the Affiant Team was to preclude Employee A's testimony, which would reveal FDCPA and/or GBL § 349 violations committed in the signing and submission of the Employee A Affidavit.

Plaintiffs further request an order precluding TSI from calling Employee A as a witness here or using any evidence produced concerning him in support of its arguments or defenses here. The preclusion order should specifically forbid TSI from raising the below arguments or defenses, which TSI has raised without factual support, even as it blocked the timely, unadulterated deposition of Employee A which would show them false:

- TSI required Employee A to review proof of the debts alleged before he signed affidavits for filing in state court where one of the National Collegiate Student Loan Trusts was plaintiff.

14

- Employee A reviewed proof of the existence, amount, and chain of title of the debt alleged in the Employee A Affidavit prior to signing it, so no violation of the FDCPA or GBL § 349 was committed when it was submitted in support of default judgment against Plaintiff Tabar.[15]

### B. Plaintiffs Are Entitled To Attorney's Fees Incurred During This Dispute

Courts in this Circuit enjoy authority to award "reasonable attorney's fees and costs" to the party prejudiced by an opponent's discovery misconduct. *Wager v. G4S Secure Integration, LLC*, No. 19-cv-3547, 2021 U.S. Dist. LEXIS 220116, at *25 (S.D.N.Y. Nov. 15, 2021) (Fox, Mag. J.); *see Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013).

Here, Plaintiffs' fees request concerns only time incurred by the discovery dispute concerning Employee A dispute after TSI should have revealed his stroke, but failed to do so. While all such time could have been avoided, TSI repeatedly compounded the amount of time spent through procedural improprieties, causing yet more unnecessary filings and work that could have been avoided. For example, in violation of the Federal Rules, TSI has submitted a "reply" brief in support of its Rule 72 objections—forcing Plaintiffs to respond to a filing that had no procedural basis.

As to the rates governing Plaintiffs' instant fees request, these have already been approved by a sibling court in this District in an analogous context. These same rates were authorized in mid-2020 in settlement of a similar (but somewhat less complex) class action case concerning debt-collection violations. (Marvin Frank Decl., ¶¶ 2–6).[16] Finally, the only expense for which

---

[15] To the extent TSI has raised such arguments or defenses in prior briefing, such as during the Rule 23 motion practice, the Court should ignore them.

[16] In the interest of expediently resolving the instant sanctions motion, Plaintiffs are relying on these previously court-approved rates without adjusting them for inflation and other factors. Subsequent fees requests by Plaintiffs here may include rates adjusted accordingly.

Plaintiffs seek reimbursement is the cost of the transcript of the hearing that TSI forced the Court to hold concerning its Employee A-related misconduct.

### III. CONCLUSION

For the reasons set forth above, this Court should sanction TSI (1) non-monetarily, by entering the adverse-inference and preclusive orders set forth above, as well as (2) by awarding Plaintiffs the fees and expense TSI forced them to spend on work pertaining to this dispute, as detailed in the Marvin Frank Declaration attached hereto.

Dated:   New York, New York
         March 29, 2022

Respectfully submitted,

**FRANK LLP**

By:   */s/ Gregory A. Frank*
Gregory A. Frank (GF0531)
Marvin L. Frank (MF1436)
Asher Hawkins (AH2333)
305 Broadway, Suite 700
New York, New York 10007
Tel: (212) 682-1853
Fax: (212) 682-1892
gfrank@frankllp.com
mfrank@frankllp.com
ahawkins@frankllp.com

*Counsel for Plaintiffs and the Classes*