## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KATHERINE SEAMAN, MARY RE SEAMAN, AND
SANDRA TABAR, individually and on  behalf of all others
similarly situated,

      Plaintiffs,

v.

NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2;
NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3;
TRANSWORLD SYSTEMS, INC., in its own right  and as
successor to NCO FINANCIAL SYSTEMS, INC.; EGS
FINANCIAL CARE INC., formerly known as NCO FINANCIAL
SYSTEMS, INC.; and FORSTER & GARBUS LLP,

      Defendants.

No. 18-cv-01781-PGG

-----------------------------------------------------------------------

CHRISTINA BIFULCO, FRANCIS BUTRY, and CORI
FRAUENHOFER, individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2;
NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4;
TRANSWORLD SYSTEMS, INC., in its own right and as
successor to NCO FINANCIAL SYSTEMS, INC.; EGS
FINANCIAL CARE INC., formerly known as NCO FINANCIAL
SYSTEMS, INC.; and FORSTER & GARBUS LLP,

      Defendants.

No. 18-cv-07692-PGG

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS

"Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (internal citation omitted). "Where a party lacks standing to bring a claim, the court lacks subject matter jurisdiction over such claim." *Zlotnick v. Equifax Info. Servs., LLC*, No. 21-CV-07089, 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022).  A challenge to Article III standing may be raised at any stage in the litigation.  *See In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015) (lack of "subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.") (internal quotations and citation omitted).[1]

Plaintiffs in this case lack Article III standing to pursue claims based on allegedly false statements made in court filings in other actions and allegedly inaccurate credit reporting. Specifically, following the Supreme Court's decision in *TransUnion LLC v. Ramirez*, Plaintiffs have not and cannot demonstrate that they suffered a concrete injury from these types of alleged conduct as required to establish Article III standing.  *See* 141 S.Ct. 2190 (2021).  As the Court lacks subject matter jurisdiction to adjudicate claims for which Article III standing is lacking, the Court should dismiss Plaintiffs' claims based on these two theories of harm.

---

[1] *See also All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) ("a district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits.") (internal citation omitted).

## FACTUAL BACKGROUND[2]

Plaintiffs, and their cosigners, applied for and received student loans.  *See* Declaration of Bradley Luke in support of Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Luke Decl.), Dkt. No. 327, ¶¶ 9, 28, 38, 48, 60, 76.  After Plaintiffs' loans were assigned to the Trust Defendants,[3] Plaintiffs defaulted on those loans.  *See id*. ¶¶ 13, 29, 39, 49, 61, 77.  Defendant NCO Financial Systems, Inc. ("NCO") (and later Defendant Transworld Systems, Inc. ("TSI")) retained Defendant Forster & Garbus LLP ("F&G") on behalf of the Trust Defendants to enforce Plaintiffs' repayment obligations.  *See id*. ¶¶ 21, 31, 42, 51, 65, 79.  F&G commenced collection lawsuits on behalf of the appropriate Trust Defendants against Plaintiffs in New York state courts.  *See id*. ¶¶ 21, 32, 43, 52, 66, 81.  Each of the lawsuits accurately alleged that Plaintiffs were in default on a credit agreement, asserted causes of action for breach of contract and account stated, and sought monetary relief.  *See id.*  All required loan documentation was in NCO's, and then TSI's, possession prior to filing suit against the Plaintiffs.  *See id*. ¶¶ 13–21.

Plaintiffs were served with the collection actions against them, but failed to appear in state court or file any response to the complaints.  *See id*. ¶¶ 33, 44, 53, 67, 82–84.  F&G requested that NCO or TSI provide affidavits in support of applications for default judgment.  *See id.* ¶ 22.  At the time the affiants signed the affidavits, they manually completed checklists on NCO or TSI forms, documenting each step they followed to familiarize themselves with information and documents pertaining to Plaintiffs' loans and to ensure their affidavits were truthful and accurate.  *See id*. ¶¶ 23–25. Those steps included accessing the appropriate systems to confirm the accuracy

---

[2] All references to the docket are to the docket in *Seaman et al. v. Nat'l Collegiate Student Loan Tr. 2007-2 et al.*, No. 18-cv-01781-PGG.  Additional, more detailed, factual background information can be found in Defendants' Opposition to Plaintiffs' Motion for Class Certification at Dkt. No. 323.

[3] The Trust Defendants are National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-2, and National Collegiate Student Loan Trust 2007-3.

of the information for the applicable affidavit.  *See id.*  The affiants followed NCO's or TSI's processes required to review such affidavits.  *See* Declaration of James K. Schultz in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification, Dkt. No. 329 ¶¶ 13–16.  They further confirmed that there was nothing that they believed to be false or inaccurate in the affidavits.  *See id*.  F&G filed the affidavits as part of applications for default judgment against each Plaintiff.  *See* Luke Decl. ¶¶ 33, 44, 55, 69, 83.  Default judgment was entered by the appropriate state courts against each of the Plaintiffs.  *See id.* ¶¶ 34, 45, 56, 70, 85.

Years later, Plaintiffs filed this lawsuit.  Among other things, Plaintiffs contend that Defendants made false statements in filings in the state court collection proceedings.  *See*, *e.g.*, Consolidated Class Action Complaint ("Compl."), Dkt. No. 124 ¶¶ 274(c)–(e), 280(c)–(e), 284(b).  Plaintiffs Christina Bifulco and Francis Butry also allege, in conclusory fashion and on "information and belief," that they were harmed by negative credit reporting associated with their failure to repay their loans.  Compl. ¶¶ 192, 221.

Plaintiffs assert the following claims: (1) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), against TSI and F&G; (2) violation of New York General Business Law § 349 ("GBL"), against all Defendants, and (3) violation of New York Judiciary Law § 487, against F&G.  *See* Compl. ¶¶ 266–91.  Plaintiffs list a number of different purported factual bases for each of their legal claims.  *See id*. ¶¶ 274, 280, 284.  Plaintiffs' allegations of false statements in state court collection proceeding filings are identified as one of the bases for each of their three legal claims, and Plaintiffs allegations of inaccurate credit reporting are identified as one of the bases for their FDCPA and GBL claims.  *See id*.  Defendants provide

a chart as <u>Appendix A</u> to this motion showing the specific portions of each of Plaintiffs' claims that should be dismissed following *Ramirez*.

## LEGAL STANDARD

To establish Article III standing, plaintiffs must show: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) an injury that will be redressed by a favorable judicial decision. *See Harty v. W. Point Realty, Inc.*, No. 20-2672-cv, 2022 WL 815685, at *3 (2d Cir. Mar. 18, 2022); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury in fact must be "particularized," and it must be "concrete." *Harty*, 2022 WL 815685, at *3 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). "Particularized" injuries "affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks omitted). Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *Harty*, 2022 WL 815685, at *3 (quoting *Ramirez*, 141 S.Ct. at 2206); *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63–64 (2d Cir. 2021).

The Supreme Court recently clarified that a plaintiff has Article III standing to bring a claim for monetary damages following an alleged statutory violation only when he can show a current or past harm beyond the statutory violation itself. *See Ramirez*, 141 S.Ct. at 2204–07; *see also Maddox*, 19 F.4th at 63–64. "Mere risk of future harm, standing alone, cannot qualify as a concrete harm." *Ramirez*, 141 S.Ct. at 2210–11; *see also Harty*, 2022 WL 815685, at *3. In other words, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Harty*, 2022 WL 815685, at *4 (quoting *Ramirez*, 141 S.Ct. at 2205).

"The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Tescher v. Experian Info. Sols., Inc.*, No. 21-CV-02266 (PMH), 2022 WL 564048, at *2 (S.D.N.Y. Feb. 23, 2022) (quoting *Hettler v. Entergy Enters., Inc.*, 15 F.Supp.3d 447, 450 (S.D.N.Y. 2014)).

## ARGUMENT

The Supreme Court's decision in *Ramirez* provided key guidance as to the applicability of Article III's concrete injury requirement to intangible harms. *See generally,* 141 S.Ct. at 2190. Since *Ramirez* was decided, courts within the Second Circuit have routinely re-examined the presence or absence of Article III jurisdiction for intangible harms, either by issuing show cause orders or in response to pre-motion letters from defendants. *See*, *e.g.*, *Ciccone v. Cavalry Portfolio Servs.*, LLC, No. 21-CV-2428(JS)(JMW), 2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021) (noting that the *Ramirez* decision "substantially and materially changed a district court's analysis of Article III standing in statutory consumer law cases.") (internal quotations and citation omitted). In cases where, as here, plaintiffs contend they do not owe debts or were provided inaccurate information regarding debts on which defendants are collecting or have collected, many courts within the Second Circuit have found that plaintiffs failed to allege or demonstrate a concrete injury in fact as required by Article III to establish subject matter jurisdiction and, accordingly, dismissed the claims. *See, e.g.*, *In re FDCPA Mailing Vendor Cases*, 551 F.Supp.3d 57, 66 (E.D.N.Y. 2021) (dismissing FDCPA claims); *Kola v. Forster & Garbus LLP*, No. 19-CV-10496 (CS), 2021 WL 4135153, at *8 (S.D.N.Y. Sept. 10, 2021) (granting summary judgment for defendant); *Ciccone*, 2021 WL 5591725, at *5 (dismissing FDCPA claims); *Zlotnick v. Equifax Info. Servs., LLC*, No. 21-CV-7089 (GRB)(JMW), 2022 WL 351996, at *2 (E.D.N.Y. Feb. 3, 2022) (dismissing FCRA claims).

For the reasons set forth below, Plaintiffs claims based on allegations of false statements in court filings and allegedly inaccurate credit reporting should be dismissed for failure to establish any concrete injury sufficient to show Article III standing.[4]

## I.      Plaintiffs Lack Article III Standing To Pursue Their Claims Based on Allegedly False Information In State Court Filings.

Plaintiffs allege that Defendants included false information in certain filings in state court actions involving debts owed by Plaintiffs.  *See* Dkt. No. 124 ¶¶ 72–76, 81–82, 92–96, 101–02, 104–13, 123–27, 132–33, 136–37, 139–48, 166, 171–72, 175–83, 186–87, 198, 203–04, 207–17, 227, 232–33, 236–47, 274(c)–(g), 280(c)–(g), 284.  But, Plaintiffs do not explain how they were confused or misled by those statements, nor do Plaintiffs identify any way in which they would have acted differently in the absence of the alleged misrepresentations.  In fact, when deposed, many Plaintiffs disclaimed any knowledge of the documents containing the purportedly false statements, admitting that they did not recall reading the documents, had not taken any action as a result of reading the documents, and could not identify what statements they thought were false in the documents.  For example:

- When Plaintiff Katherine Seaman was asked "what, if anything, confused [her], by anything that [F&G] communicated to [her]," she replied: "I don't really remember."[5]

---

[4] In their opposition to Defendants' pre-motion letter seeking leave to file this motion, Plaintiffs stated that "Defendants already admitted each Named Plaintiff's Article III standing under [*Ramirez*]" in their Opposition to Plaintiffs' Motion for Class Certification.  Dkt. No. 363, at 1.  This is not true.  The only reference to *Ramirez* in Defendants' Opposition to Plaintiffs' Motion for Class Certification appears in footnote 15, which states, in its entirety, as follows:

> For example, Plaintiffs' proposed class includes individuals against whom a debt collection lawsuit was commenced, but the lawsuit was discontinued prior to service of a complaint and/or any appearance in the action.  Under the Supreme Court's recent ruling in *Transunion LLC v. Ramirez*, those individuals would not have standing to pursue claims.

Dkt. No. 323, at 10 (citations omitted).

[5] K. Seaman Dep. Tr., Dkt. No. 362-1, at pp. 170, 282–83.

- When Plaintiff Mary Re-Seaman was asked whether she had "any information or evidence that anything in Exhibit Number 7 is a false affidavit," she said: "No."[6]

- When Plaintiff Christina Bifulco was asked what she did when she became aware of the state court action, and what action she took, she responded: "Nothing.  What could I?  What could I?"[7]

- When Plaintiff Cori Frauenhofer was asked whether she had ever seen the complaint filed against her in the state court collection proceeding, she said: "I think so."  When asked when she saw it, and whether it was before this lawsuit was filed, she said: "I don't know."[8]

- When Plaintiff Sandra Tabar was asked whether she had seen a copy of the complaint filed against her in the state court collection proceeding, she said: "I have not seen that before."[9]

A claim cannot satisfy Article III where, as here, it is based on alleged falsehoods in documents that Plaintiffs did not even read.  *See Ramirez*, 141 S.Ct. at 2213 (finding no concrete injury where plaintiffs "presented no evidence that" they "so much as *opened*" the mailings at issue, "nor that they were confused, distressed, or relied on the information in any way," noting that these kinds of alleged misstatements are "bare procedural violations, divorced from any concrete harm.") (emphasis in original).  Plaintiffs' failure to identify any "downstream consequences from" the alleged misrepresentations, such as that the misrepresentations somehow "hindered their ability to correct erroneous information" before it was acted upon, confirms the lack of Article III injury in this case.  *Id*. at 2214 ("An asserted informational injury that causes no adverse effects cannot satisfy Article III.").

---

[6] M. Re-Seaman Dep. Tr., Dkt. No. 362-2, at pp. 20, 121.

[7] C. Bifulco Dep. Tr., Dkt. No. 362-3., at pp. 105–06.

[8] C. Frauenhofer Dep. Tr., Dkt. No. 362-4, at pp. 184–85, 187.

[9] S. Tabar Dep. Tr., Dkt. No. 362-5, at pp. 262–63, 302.

7

## II.   Plaintiffs Lack Article III Standing To Pursue Their Claims Based on Alleged False Credit Reporting.

Plaintiffs Christina Bifulco and Francis Butry allege, on "information and belief" and in conclusory fashion, that "Defendants have falsely reported to credit bureaus that the[ir] underlying alleged debt[s] [were] valid and owed."  Compl. ¶¶ 192, 221.  Plaintiffs identify this allegedly inaccurate credit reporting as one of the eight bases for their FDCPA and GBL § 349 claims.  *See* Compl. ¶¶ 274(h), 280(h).

The Complaint is ambiguous as to whether Plaintiffs Katherine Seaman, Mary Re-Seaman, Sandra Tabar, and Cori Frauenhofer are asserting FDCPA and GBL § 349 claims based on allegedly inaccurate credit reporting.  To the extent they intended to assert such claims, these Plaintiffs plainly lack Article III standing to pursue claims based on allegedly inaccurate credit reporting because they do not allege that *any* inaccurate credit reporting occurred with respect to their accounts.

Plaintiffs Christina Bifulco and Francis Butry also fail to plead facts sufficient to establish Article III standing to pursue claims based on allegedly inaccurate credit reporting.  Their relevant allegations are entirely conclusory and they do not allege that the purportedly inaccurate information or reports were ever disseminated to third parties from the credit bureaus—a necessary step to establish any potential concrete injury.[10]  *Ramirez* made clear that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm."  141 S.Ct. at 2210.  And, any argument by Plaintiffs "based on an asserted *risk of future*

---

[10] Plaintiffs appear to argue, in their opposition to Defendants' pre-motion letter seeking leave to file this motion, that *Defendants* have not shown that the allegedly inaccurate credit reporting was *not* disseminated to third parties.  *See* Dkt. No. 363, at 4.  But it is *Plaintiffs'* burden – not Defendants' – to establish that the allegedly inaccurate credit reports were in fact disseminated to third parties in order to show Article III standing.  *See Ramirez*, 141 S.Ct. at 2210; *see also id.* at 2208 (explaining that it is Plaintiffs' burden to demonstrate standing, "with the manner and degree of evidence required at the successive stages of the litigation" and "for each claim that they press and for each form of relief that they seek.").

*harm*" should be rejected because "in a suit for damages, the mere risk of future harm standing alone, cannot qualify as a concrete harm." *Id*. at 2210–11 (emphasis in original).

To the extent Plaintiffs contend their FDCPA and GBL claims based on allegedly inaccurate reports to credit agencies do not seek monetary relief and instead seek only some measure of mandatory injunctive relief not specified in the Complaint (*see* Dkt. No. 363, at 5), such an argument directly conflicts with Plaintiffs' Motion for Class Certification (*see* Dkt. No. 317).  In their class certification papers, Plaintiffs told the Court they intended to show "uniform damages" from "report[ing of] the underlying alleged debts to all three major credit bureaus" and explained in no uncertain terms that they sought "both money damages and injunctive relief" as remedies for "Defendants' [allegedly] unlawful credit reporting."  Dkt. No. 317, at 12–13; Dkt. No. 337, at 18–19.  In light of their reliance on allegations of allegedly inaccurate credit reports to support their contention that damages could be calculated on a class-wide basis, the Court should reject any attempts by Plaintiffs to claim that they are not seeking money damages for these claims. Moreover, Plaintiffs fail to identify any non-theoretical, ongoing harm to Plaintiffs Christina Bifulco or Francis Butry that could form the foundation for a concrete injury based on a risk of future harm.

For these reasons, Plaintiffs' claims based on allegedly inaccurate reports to credit agencies should be dismissed for failure to establish concrete injury.

**CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court dismiss Plaintiffs' FDCPA claims on the bases identified in Paragraph 274 of the Complaint at sections (c) through (h), Plaintiffs' GBL claims on the bases identified in Paragraph 280 of the Complaint at sections (c) through (h), and Plaintiffs' Section 487 claims in their entirety for failure to adequately establish Article III standing.

Dated: New York, New York          By:  */s/ Gregory T. Casamento*
      April 7, 2022                    Gregory T. Casamento
                                           R. James DeRose, III
                                           LOCKE LORD LLP
                                         Brookfield Place, 20th Floor
                                         200 Vesey Street
                                         New York, New York 10281
                                         (212) 415-8600
                                         gcasamento@lockelord.com
                                         rderose@lockelord.com

                                         J. Matthew Goodin
                                         LOCKE LORD LLP
                                         111 South Wacker Drive, Suite 4100
                                         Chicago, Illinois 60606
                                         (312) 443-0700
                                         jmgoodin@lockelord.com

                                         *Attorneys for Defendants National Collegiate*
                                         *Student Loan Trust 2004-2, National Collegiate*
                                         *Student Loan Trust 2006-4, National Collegiate*
                                         *Student Loan Trust 2007-2, and National Collegiate*
                                         *Student Loan Trust 2007-3*

                               By:  */s/ James K. Schultz*
                                         James K. Schultz
                                         SESSIONS, ISRAEL & SHARTLE LLC
                                         1545 Hotel Circle South, Suite 150
                                         San Diego, California 92108
                                         (619) 296-2018
                                         jschultz@sessions.legal

Bryan Shartle
SESSIONS, ISRAEL & SHARTLE LLC
3850 N. Causeway Blvd., Ste. 200
Metairie, Louisiana 70002
(504) 846-7917
bshartle@sessions.legal

Morgan Ian Marcus
SESSIONS, ISRAEL & SHARTLE LLC
120 South LaSalle Street, Suite 1960
Chicago, Illinois 60603
(312) 578-0990
mmarcus@sessions.legal

*Attorneys for Defendants Transworld Systems, Inc.
and EGS Financial Care, Inc.*

By: */s/ Carol A. Lastorino*
       Carol A. Lastorino
       Amanda Rae Griner
       RIVKIN RADLER LLP
       926 Rexcorp Plaza
       Uniondale, New Yord 11556
       (516) 357-3101
       carol.lastorino@rivkin.com
       Amanda.gruman@rivkin.com

*Attorneys for Defendant Forster & Garbus LLP*

## APPENDIX A

Claims That Should Be Dismissed For Lack of Article III Standing[1]

| Allegation or Theory of Liability for Which Plaintiffs Have Not Sufficiently Established A Concrete Injury | Legal Claim(s) | Plaintiffs[2] Whose Claims Should Be Dismissed |
|---|---|---|
| "falsely representing that a Trust Defendant was 'authorized to proceed' with the state-court actions filed against Plaintiffs and the other members of the class" | FDCPA (Compl. ¶ 274(c)) GBL (Compl. ¶ 280(c)) | All Plaintiffs |
| "falsely representing that a Trust Defendant was the 'original creditor' in the state-court actions filed against Plaintiffs and the other members of the class" | FDCPA (Compl. ¶ 274(d)) GBL (Compl. ¶ 280(d)) | All Plaintiffs |
| "failing to identify, as required by law, the true originating entity for the loan being sued upon in the state-court actions filed against Plaintiffs and the other members of the class" | FDCPA (Compl. ¶ 274(e)) GBL (Compl. ¶ 280(e)) | All Plaintiffs |
| "filing complaints against Plaintiffs and the other members of the class . . . that were deceptive and misleading in that they were signed by an attorney but were not, in fact, meaningfully reviewed by an attorney" | FDCPA (Compl. ¶ 274(f)) GBL (Compl. ¶ 280(f)) | All Plaintiffs |
| "filing default judgment affidavits against Plaintiffs or other members of the class . . . that were false or deceptive in that the affiant claimed personal knowledge of proof of indebtedness, when he or she in fact lacked such knowledge" | FDCPA (Compl. ¶ 274(g)) GBL (Compl. ¶ 280(g)) | All Plaintiffs |

---

[1] If Defendants' motion to dismiss for lack of Article III standing were granted in full, the following claims would remain: (1) FDCPA claims asserted by Plaintiffs Sandra Tabar, Christina Bifulco, Francis Butry, and Cori Frauenhofer on the bases asserted in Compl. ¶ 274(a) and (b), and (2) GBL claims asserted by Plaintiffs Mary Re-Seaman, Sandra Tabar, Christina Bifulco, and Cori Frauenhofer on the bases asserted in Compl. ¶ 280(a) and (b).

[2] Plaintiff Mutinta Michelo's claims were previously dismissed with prejudice pursuant to Rule 41(a)(1)(A)(ii) on May 10, 2021, and she is no longer a part of these cases. *See* Dkt. No. 298. The FDCPA claims of Plaintiffs Katherine Seaman and Mary Re-Seaman, and the GBL claims of Plaintiffs Katherine Seaman and Francis Butry, were dismissed in September 2019. *See* Dkt. No. 107.

| Allegation or Theory of Liability for Which Plaintiffs Have Not Sufficiently Established A Concrete Injury | Legal Claim(s) | Plaintiffs[2] Whose Claims Should Be Dismissed |
|---|---|---|
| "communicating credit information adverse to any Plaintiff or other member of the class . . . --including in connection with state-court collection actions against consumers—where that information is false or should be known to be false" | FDCPA (Compl. ¶ 274(h)) GBL (Compl. ¶ 280(h)) | All Plaintiffs |
| "commencing actions against consumers on behalf of a Trust Defendant without sufficient factual basis, yet backed by an attorney's Rule 130 certifications falsely stating that, to the best of his or her knowledge, and after an inquiry 'reasonable under the circumstances,' the complaint and the contentions therein were not frivolous" | Section 487 (Compl. ¶ 284(a)) | All Plaintiffs |
| "filing complaints against consumers that falsely stated that a Trust Defendant was the 'original creditor' with respect to the student loan at issue in the action" | Section 487 (Compl. ¶ 284(b)) | All Plaintiffs |
| "filing complaints against consumers that falsely stated that a Trust Defendant was 'authorized to proceed with the action'" | Section 487 (Compl. ¶ 284(c)) | All Plaintiffs |
| "filing default judgment applications on behalf of a Trust Defendant without reasonable inquiry into the validity of the claims made against the consumer-defendant" | Section 487 (Compl. ¶ 284(d)) | All Plaintiffs |
| "submitting default judgment affidavits on behalf of a Trust Defendant where the affiant falsely attested to personal knowledge of proof of indebtedness" | Section 487 (Compl. ¶ 284(e)) | All Plaintiffs |

## <u>CERTIFICATE OF SERVICE</u>

I, Gregory T. Casamento, an attorney, hereby certify that on the 7th day of April, 2022, I served a true and correct copy of the foregoing *Notice of Defendants' Rule 12(b)(1) Motion to Dismiss* and *Memorandum of Law in Support of Defendants' Rule 12(b)(1) Motion to Dismiss* via ECF on all parties entitled to notice.


*/s/ Gregory T. Casamento*
Gregory T. Casamento