UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KATHERINE SEAMAN, MARY RE SEAMAN, and SANDRA TABAR, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, | ) ) ) ) ) ) ) ) ) | No. 18-cv-1781 |
| Defendants. | ) ) | |
| CHRISTINA BIFULCO, FRANCIS BUTRY, and CORI FRAUENHOFER, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, | ) ) ) ) ) ) ) ) ) | No. 18-cv-7692 **FILED VIA ECF** |
| Defendants. | ) ) | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION
AND PURSUANT TO THE COURT'S ORDER OF MAY 6, 2022**

Plaintiffs submit this supplemental brief in further support of their Rule 23 motion, pursuant to the Court's Order of May 6, 2022, and in response to issues discussed with the Court during oral argument on May 5, 2022.[1] This brief provides more detail concerning the classes over which Plaintiffs seek certification. (Ord. at 1–2).

As this Court noted at oral argument, the fact pattern in *Sykes v. Mel Harris & Associates*[2] is "very close to all fours on point" with the facts here. (Tr. 77:13–15). Accordingly, Plaintiffs have refined their proposed class definitions to track those of *Sykes*, including limiting the definitions to include only individuals whom Defendants prosecuted in New York state court. (Tr. 114:19–23). The *Sykes* court certified two classes: (1) a Rule 23(b)(3) class consisting of "all persons who have been sued by the [the defendants in New York state court] . . . and where a default judgment has been obtained"; and (2) a Rule 23(b)(2) class consisting of "all persons who have been or will be sued [by the defendants in New York state court]." 780 F.3d at 74.

Plaintiffs here mirror *Sykes* and seek certification of the same two classes defined in *Sykes*, for each Trust Defendant. The sole distinction between this case and *Sykes* is that *Sykes* involved a single debt buying company receiving moneys collected on the underlying accounts. This case involves four separate Delaware statutory trusts, each corporately distinct, and holding its own set alleged debt accounts: National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-2, and National Collegiate

---

[1] Plaintiffs' certification motion papers appear on the lead docket (18-cv-1781) at ECF Nos. 312 (motion), 314 & 317 (memorandum ("Pls.' Cert. Br.")), and 315 (declaration) ("1st Hawkins Decl."); Defendants' Opposition, at ECF No. 323, and declarations, at ECF Nos. 325–331; Plaintiffs' reply ("Pls.' Cert. Reply") at ECF No. 335, and declaration ("2d Hawkins Decl."), at ECF No. 336; Defendants' sur-reply, at ECF No. 338-1–338-6; and Plaintiffs' response to Defendants' sur-repl, at ECF No. 341, and declaration ("3d Hawkins Decl."). The May 6 Order is at ECF No. 399. References herein to "Tr. __" are to the transcript of the May 5 oral argument. Capitalized terms have the meanings given them in the prior papers.

[2] *See* 780 F.3d 70 (2d Cir. 2015) (*"Sykes III"*), *aff'g* 285 F.R.D. 279 (S.D.N.Y. 2012) (*"Sykes II"*).

Student Loan Trust 2007-3. The allegations against the four Trust Defendants involve different facts—for example, the documents that Defendants here have submitted as chain-of-title papers are different for each Trust Defendant. Failure to possess chain of title is a major allegation in this case. (Ord. of Oct. 11, 2019, 419 F. Supp. 3d 668, 681 (Gardephe, J.); *see* Am. Compl. ¶¶ 253–265)).[3] At the same time, the remaining Defendants—TSI-NCO and Forster—both served as agents for each of the four Trust Defendants. Finally, Plaintiffs harmed by one Trust Defendant do not have legal standing against Trusts that did not sue them.

Accordingly, Plaintiffs request the Court certify a total of eight Classes: four Rule 23(b)(3) Classes, one for each Trust Defendant, and four Rule 23(b)(2) classes, one for each. This is the fewest classes possible given the four different Defendants. For the Court's convenience, Plaintiffs include tables encapsulating the refined definitions. *See* Pages 5–6, *infra*.

I. **BACKGROUND**

A. **Facts**

For each of the Trust Defendants, TSI-NCO's uniform written policies prohibited the Trust's Attorneys (including Forster) and Affiants (employed by TSI-NCO) from requesting and/or reviewing proof of the debt alleged in each suit. Attorneys and Affiants instead were told they wouldn't be provided documents establishing an alleged loan's (1) chain of assignment and (2) terms and conditions. (1st Hawkins Decl. ¶¶ 11, 23–24; 2d Hawkins Decl. ¶¶ 35–37).

The record shows each Trust lacks chain of title, as well as terms and conditions, for any of the purported loans that Defendants claim the Trusts own. The problem is so pervasive that the Trusts' beneficial owners sued TSI-NCO and other agents about it in Delaware Chancery Court after uncovering it in an audit. (2d Hawkins Decl. ¶¶ 3–5). For any Trust to possess chain of title,

---

[3] Plaintiffs' controlling pleading appears on the lead docket (18-cv-1781) at ECF No. 124.

2

the purchase agreement under which each Trust obtained a "pool" of loans had to have attached a "Schedule" specifying which loans were being purchased and transferred. Without Schedules, no Trust can prove it owns anything. (2d Hawkins Decl. ¶¶ 3–5). The Chancery Court suit began because the Trusts' lack of Schedules meant state-court collection actions benefiting the Trusts were dismissed for lack of standing by state judges, including in New York. (*Id.*).[4]

Here, Defendants produced spreadsheets that they describe as the Schedules for each pool agreement pertaining to each Plaintiff's alleged debt. However, the spreadsheets are not what Defendants claim. The metadata reflecting their date of creation show that they cannot be the contemporaneous records described in the text of the pool agreements. (2d Hawkins Decl. ¶¶ 6–34; *see also* Pls.' Decl. in Supp. Reply re Employee A Sanctions Mot., at ¶ 8[5]).

The dates on the documents that Defendants submit here as pool purchase agreements are between October 28, 2004, and September 20, 2007. According to TSI-NCO's affiant Bradly Luke, TSI-NCO obtained the "Schedules" that they offer this court sometime between May 14, 2012 and November 14, 2012. (Luke Decl. ¶ 14 (Dkt. No. 325 in Case No. 18-cv-1781). The declaration from TSI-NCO's senior vice president identifies "November 2012" as the date TSI-NCO began its role as a Trust "[s]ubservicer," tasked with managing state-court suits benefitting the Trusts, roughly four-and-a-half to seven-and-a-half years after the dates on the purchase agreements. (Lyons Decl. ¶ 9 (ECF No. 328 on lead docket (18-cv-1781)).

---

[4] In support of Defendants' Rule 23 opposition, the TSI-NCO manager who served as Rule 30(b)(6) designee for both the Trusts and TSI-NCO (Bradley Luke) submitted a declaration, attaching a series of documents he described as the pool agreements assigning each Plaintiff's alleged underling loan. The first page of each of these documents references a Schedule being attached at the document's end, but <u>not one contains the final page</u> identifying the schedule or its location. (2d Hawkins Decl. ¶¶ 6–24).

[5] Plaintiffs' reply declaration from the Employee A sanctions motion practice appears on the lead docket (18-cv-1781) at ECF No. 386.

3

B. **Procedural History**

After Plaintiffs filed suit here, Defendants moved for Rule 12(b) dismissal. The Court denied the motion's essential arguments. Among other holdings, the Court ruled that the *Rooker-Feldman* doctrine does not bar these Plaintiffs' claims, just as it did not bar those of the plaintiffs in *Sykes III*. (Ord. of Oct. 11, 2019, 419 F. Supp. 3d 668, 686–87). The Court held that, as in *Sykes III*, Plaintiffs' class claims here are based on harm caused not by the state court but by Defendants' fraudulent conduct. (*Id.* (citing 780 F.3d at 94–95)).

The Court also rejected Defendants' argument that Plaintiffs' FDCPA claims all were time-barred under that law's one-year limitations period. (Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 696–99). The Court deemed Plaintiffs' claims equitably tolled insofar as Defendants' state-court papers concealed the lack of proof by falsely representing it existed and had been reviewed. (*Id.*). The Court held that Plaintiffs' GBL claims were timely: Defendants' time-bar defenses against GBL claims were inconsistently raised; and in any event the GBL has a three-year limitations period that captures Defendants' actions against Plaintiffs, and GBL claims are eligible for tolling for the same reasons as the FDCPA claims are. (*Id.* at 699–700).[6]

## II. REFINED CLASS DEFINITIONS

As discussed above, Plaintiffs propose that the Court certify four Rule 23(b)(3) Classes, and four Rule 23(b)(2) Classes. Per this Court's Order, the tables that begin on the following page specify the criteria for inclusion as a Class member; the claims to be pursued by each Class, and for which time period; and which Defendants face which claims. There is one table for the Rule 23(b)(3) Classes, and one table for the 23(b)(2) Classes. For reasons further below, all Classes cover the time period from November 1, 2012, through the date this litigation commenced.

---

[6] Defendants made no time-bar challenge to claims under § 487, which has a six-year period.

| *Class Definitions for <u>Rule 23(b)(3)</u> Classes* | **Class Period** | **Defendants** | **Claims** |
|---|---|---|---|
| All persons who have been sued in New York state-court debt collection lawsuits where the plaintiff was Trust Defendant 2004-2, with TSI-NCO acting as subservicer and Forster as plaintiff's counsel, and where a default judgment has been obtained.[7] | Nov. 1, 2012, through Feb. 27, 2018 | TSI-NCO | FDCPA; GBL § 349 |
| | | Forster | FDCPA; GBL § 349; NYJL § 487 |
| | | Trust 2004-2 | GBL § 349 |
| All persons who have been sued in New York state-court debt collection lawsuits where the plaintiff was Trust Defendant 2006-4, with TSI-NCO acting as subservicer and Forster as plaintiff's counsel, and where a default judgment has been obtained. | Nov. 1, 2012, through Feb. 27, 2018 | TSI-NCO | FDCPA; GBL § 349 |
| | | Forster | FDCPA; GBL § 349; NYJL § 487 |
| | | Trust 2006-4 | GBL § 349 |
| All persons who have been sued in New York state-court debt collection lawsuits where the plaintiff was Trust Defendant 2007-2, with TSI-NCO acting as subservicer and Forster as plaintiff's counsel, and where a default judgment has been obtained. | Nov. 1, 2012, through Feb. 27, 2018 | TSI-NCO | FDCPA; GBL § 349 |
| | | Forster | FDCPA; GBL § 349; NYJL § 487 |
| | | Trust 2007-2 | GBL § 349 |
| All persons who have been sued in New York state-court debt collection lawsuits where the plaintiff was Trust Defendant 2007-3, with TSI-NCO acting as subservicer and Forster as plaintiff's counsel, and where a default judgment has been obtained. | Nov. 1, 2012, through Feb. 27, 2018 | TSI-NCO | FDCPA; GBL § 349 |
| | | Forster | FDCPA; GBL § 349; NYJL § 487 |
| | | Trust 2007-3 | GBL § 349 |

---

[7] Each Class Definition—for all four Rule 23(b)(3) Classes, and all four Rule 23(b)(2) Classes—also carries an exclusion clause: "Excluded from the Class is any individual who appeared in state court to defend themselves and against whom the Trust Defendant named as plaintiff was awarded judgment by a New York state-court judge after trial."

| Class Definitions for Rule 23(b)(2) Classes | Class Period | Defendants | Claims |
|---|---|---|---|
| All persons who have been or will be sued in New York state-court debt collection lawsuits with the plaintiff being Trust Defendant 2004-2, and with TSI-NCO acting as subservicer and Forster as plaintiff's counsel. | Nov. 1, 2012, through Feb. 27, 2018 | TSI-NCO | GBL § 349 |
| | | Forster | GBL § 349 |
| | | Trust 2004-2 | GBL § 349 |
| All persons who have been or will be sued in New York state-court debt collection lawsuits with the plaintiff being Trust Defendant 2006-4, and with TSI-NCO acting as subservicer and Forster as plaintiff's counsel. | Nov. 1, 2012, through Feb. 27, 2018 | TSI-NCO | GBL § 349 |
| | | Forster | GBL § 349 |
| | | Trust 2006-4 | GBL § 349 |
| All persons who have been or will be sued in New York state-court debt collection lawsuits with the plaintiff being Trust Defendant 2007-2, and with TSI-NCO acting as subservicer and Forster as plaintiff's counsel. | Nov. 1, 2012, through Feb. 27, 2018 | TSI-NCO | GBL § 349 |
| | | Forster | GBL § 349 |
| | | Trust 2007-2 | GBL § 349 |
| All persons who have been or will be sued in New York state-court debt collection lawsuits with the plaintiff being Trust Defendant 2007-3, and with TSI-NCO acting as subservicer and Forster as plaintiff's counsel. | Nov. 1, 2012, through Feb. 27, 2018 | TSI-NCO | GBL § 349 |
| | | Forster | GBL § 349 |
| | | Trust 2007-3 | GBL § 349 |

## III. ARGUMENT

### A. The Refined Class Definitions Alleviate The Court's Concerns

Refining the Class definitions to limit the Classes to those harmed in New York state courts, like in *Sykes*, resolves this Court's concerns that nationwide classes may not be manageable, or may not be applicable to all Defendants. (Tr. 77:4–24, 91:4–92:4, 95:21–97:24).

Plaintiffs have further added exclusions to their Class definitions concerning the few individuals who were sued in a Trust state-court action, and fought back and lost, another concern expressed by the Court. (Tr. 108:8–16). This exclusion also makes clear that this action involves no *Rooker-Feldman* complications, just as *Sykes* did not. *Sykes III*, 780 F.3d at 94–95 (rejecting *Rooker-Feldman* defense) ("[C]laims sounding under the FDCPA[] and state law speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments.").

### B. *Sykes* Supports A Class Against Whom Suits Were Filed

This Court has inquired whether any Class definition here should be limited to individuals against whom Defendants obtained default judgment, as opposed to all individuals against whom Defendants initiated suit. (Ord. at 1 n.1). Plaintiffs use the latter definition for the Rule 23(b)(2) Classes, which *Sykes III* expressly supports. The Second Circuit there approved Judge Chin's certification of a Rule 23(b)(2) "class of individuals that [he] defined as 'all persons who have been sued[',]" <u>without</u> limiting the class to those against whom the defendants took default judgment. *Sykes III*, 780 F.3d at 95. Plaintiffs' demand for equitable relief "seeks a permanent injunction to prevent future violations of the GBL by Defendants," (Am. Compl., at Part (iii) of Prayer), which is analogous to that in *Sykes*, *see Sykes*, 3d Am. Compl., at Part 3.A of Prayer (S.D.N.Y. May 16, 2011) (ECF No. 82 in Case No. 09-cv-8486).

7

Here, as in *Sykes*, all Class members were harmed *per se* by the very filing of sham collection lawsuits, without proof of the debt alleged. *See id.*[8] Unlike in *Sykes*, Plaintiffs here can prove that Defendants' internal protocols expressly <u>required</u> suits be filed and prosecuted without proof, by attorneys and agents told not to even ask for proof. Lacking proof included chain of title, i.e., whether the Trusts owned the debts alleged. *See* Part I.A, *supra*. The attorneys/affiants in *Sykes* at least did a "quality check" of the accuracy of the debt allegations before signing state-court papers. *Sykes III*, 780 F.3d at 77.[9] Here, Defendants' personnel knew they lacked the documents, and yet prosecuted litigation anyway due to the strong probability they would receive a default.[10] Meanwhile, the fact of a collection suit against each Plaintiff was communicated to the credit bureaus as if the debt alleged were provable. (1st Hawkins Decl. ¶ 30).[11]

Lastly, Plaintiffs' 23(b)(3) Class definitions match those in *Sykes*, as they limit inclusion to individuals sued in Trust actions that resulted in default judgment. *Sykes III*, 780 F.3d at 75.[12]

---

[8] This Court also inquired if the definition here should state "all persons sued *and served with process* . . . ." (Ord. at 1 n.1 (emphasis original)). This is unworkable per *Sykes* as it would exclude any Class member subjected to sewer service, as were some (but not all) *Sykes* class members. *See* 780 F.3d at 76–77. Here, Plaintiff Tabar won in state court after obtaining vacatur of the default judgment on the basis she wasn't served with process. (419 F. Supp. 3d at 683).

[9] Because each of Defendants' collection actions was a sham from the moment it was filed, defining Classes to include all individuals sued is appropriate, even though some of those actions involved the use of falsities that others did not—e.g., that Trusts are "original creditor[s]."

[10] According to class sampling discovery here, approximately 50% of Trust actions resulted in default judgment—the most common result by far. (1st Hawkins Decl. ¶ 40). In *Sykes II*, Judge Chin emphasized the line of cases that proscribe the filing and prosecution of collection suits without intent to prove the claims in court if forced to. *See* 285 F.R.D. at 290 n.9 (citing, inter alia, *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293, 1302–03 (N.D. Ga. 2010)); *see also, e.g.*, *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1022–24 (S.D. Ohio 2007) (confirming liability where collectors prepared and filed collection suits they "knew or should have known" were premised on incomplete proof).

[11] Plaintiffs previously discussed the reasons why injunctive relief here should include measures to address Defendants' harm to Plaintiffs' creditworthiness reputation, such as credit scores. (Pls.' Cert. Br., at 23–24; Pls.' Cert. Reply, at 13–14).

[12] The Second Circuit found uncontroversial the existence of different types of damages among class members: some were garnished, some paid settlements, some paid to fight back in court.

## C. Classes Must Be Certified Here On A Per-Trust Basis

Plaintiffs recognize the Court's caution against multiplying classes ad infinitum. (Tr. 91:4–92:4). The re-definition limiting inclusion based on New York state court essentially resolves this concern. (*Id.*). While Plaintiffs still propose certification of multiple Classes, this is only because each Trust is its own legal entity, with its own distinct facts. A Plaintiff sued by one Trust does not have standing against the other Trusts. Certifying Classes per-Trust comports with the FDCPA, which unlike other statutes doesn't exclude multiple classes.[13]

## D. A Class Period Dating To 2012 Is Warranted For Each Defendant And Each Claim

Plaintiffs' refined definitions incorporate a Class period that traces back roughly six years from filing to November 2012, when TSI-NCO first began managing Trust collection suits. *See* Part I.A, *supra*. This is appropriate because (1) the evidence here has shown that was when Defendants began their unlawful debt collection scheme, and (2) Judge Gardephe's Rule 12 decision tolled claims premised on Defendants' concealment of their lack of proof of debts alleged until the federal government exposed this. *See* Part I.B, *supra*.

---

"All that is required at class certification is that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." 780 F.3d at 88 (quotation omitted). Nor does such certification entail *Rooker-Feldman* complications. Since defendants inevitably invoke *Rooker-Feldman* against most or all class members, even if that defense has merit (it doesn't) this only further justifies certification. *Id.* at 95 ("There is no textual basis to endorse [defendant's] view that certain categories of damages must be carved out of a class certification order under Rule 23(c)(1)(B).").

[13] *Compare* Truth In Lending Act, 15 U.S.C. § 1640(a)(2)(B) (limiting TILA liability to "any class action or series of class actions" (emphasis added)), *with* FDCPA, 15 U.S.C. § 1692k(a)(2)(B) (no such limitation). Plaintiffs' certification motion is not an instance where multiple classes are part of a strategy to inequitably "restart the $500,000 statutory damages cap under the federal statute." (Tr. 91:23–25). Here, the proposed Classes strike the right balance.

## IV. CONCLUSION

For the reasons above, Rule 23 certification should be granted.

Dated: New York, New York
May 26, 2022

Respectfully submitted,

**FRANK LLP**

By:   */s/ Gregory A. Frank*
Gregory A. Frank (GF0531)
Marvin L. Frank (MF1436)
Asher Hawkins (AH2333)
305 Broadway, Suite 700
New York, New York 10007
Tel: (212) 682-1853
Fax: (212) 682-1892
gfrank@frankllp.com
mfrank@frankllp.com
ahawkins@frankllp.com

*Attorneys for Plaintiffs and the Class*