UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHERINE SEAMAN, et al., *individually and on behalf of all others similarly situated*,<br><br>    Plaintiffs,<br><br>-against-<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2, et al.,<br><br>    Defendants. | 18-CV-1781 (PGG) (BCM) |
| CHRISTINA BIFULCO, et al., *individually and on behalf of all others similarly situated*,<br><br>    Plaintiffs,<br><br>-against-<br><br>NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, et al.,<br><br>    Defendants. | 18-CV-7692 (PGG) (BCM)<br><br>**MEMORANDUM AND ORDER** |

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court is plaintiffs' renewed motion for sanctions against defendant Transworld Systems, Inc. (TSI). (Pl. Mot.) (Dkt. 366 in Case No. 18-CV-1781; Dkt. 295 in Case No. 18-CV-7692)[1] Plaintiffs seek $73,280 in attorneys' fees, $168 in costs, an adverse inference order, a preclusion order, and an order directing that certain facts be taken as established for purposes of this action, all as sanctions for TSI's six-month delay in disclosing that a TSI-affiliated witness suffered a stroke. During that period, plaintiffs incurred unnecessary costs and the witness's deposition was delayed. However, plaintiffs ultimately conducted the deposition (based on written questions, pursuant to Fed. R. Civ. P. 31) in time to use the resulting testimony

---

[1] All docket citations that follow are to the docket of the first-filed action, No. 18-CV-1781.

in support of their class certification motion.[2] For the reasons that follow, the motion will be granted to the extent that TSI and its counsel must pay $44,895 in attorneys' fees and $168 in costs to plaintiffs, but no non-monetary sanctions will be imposed.

I.  BACKGROUND

Beginning in 2019, plaintiffs attempted to notice the deposition of an employee (the Employee)[3] of defendant TSI. The Employee was a member of TSI's "Affiant Team" who signed affidavits and provided testimony in debt collection cases brought in state courts around the nation, including in a state court action against one of the plaintiffs named herein, Sandra Tabar. On May 18, 2020, TSI's counsel accepted service of a deposition subpoena for the Employee (the Subpoena) (Dkt. 196-1), but on May 22, 2020, both TSI and the Employee – jointly represented by TSI's counsel – moved to quash the Subpoena or, in the alternative, for a protective order requiring that the deposition be conducted on written questions. (Dkt. 196.) The motion was made on the ground that the Employee had developed stress-induced epilepsy, as a result of which he had "transferred to a position that did not require any oral examination, including depositions or court appearances" because sitting for an oral deposition could "trigger an epileptic seizure or otherwise result in adverse health consequences." (Dkt. 196-2 ¶¶ 7, 9.)

On July 17, 2020, I denied the motion, thereby authorizing plaintiffs to proceed with the Employee's deposition, with certain accommodations. *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 2020 WL 4041058, at *4 (S.D.N.Y. July 17, 2020) (the 7/17/20 Order). On July 31, 2020, TSI and the Employee filed timely objections to the 7/17/20 Order, pursuant to Fed. R.

---

[2] In a Report and Recommendation dated March 13, 2023 (Dkt. 423), now pending before the Honorable Paul G. Gardephe, United States District Judge, I recommended that a class be certified pursuant to Fed. R. Civ. P. 23(b)(3).

[3] Plaintiffs' renewed sanctions motion refers to the Employee as "Employee A." In other portions of the record, he is referred to as "Affiant X."

Civ. P. 72(a) (Dkt. 201), but did not seek a stay pending the resolution of their objections. Thus, from July 17, 2020 onward, the Employee was obligated to comply with the Subpoena. *See Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 2021 WL 1080673, at *2 (S.D.N.Y. Mar. 5, 2021) ("[T]he law in the Second Circuit is clear: the filing of Rule 72(a) objections to a magistrate judge's discovery order does not excuse a party from complying with that order.").

On August 3, 2020 – three days after the objections were filed – the Employee suffered a "severe medical event," later diagnosed as a stroke, which caused him to resign his employment with TSI. (*See* Dkt. 257 at 2; Dkt. 266 at 2-3.) However, neither TSI nor the Employee disclosed these facts to plaintiffs, or to the Court, for more than six months. Instead, the parties continued litigating the pending objections.

Plaintiffs filed their opposition to the pending objections on September 2, 2020. (Dkt. 221.) TSI and the Employee filed a reply brief on September 9, 2020 (Dkt. 224), once again arguing that the Employee should not be required to sit for an oral deposition because of his stress-induced epilepsy. No mention was made of his more recent "severe medical event." Thereafter, the parties conducted at least some discussions concerning the scheduling of the remaining depositions, but no date was fixed for the deposition of the Employee and no updated disclosure was made concerning his medical condition or employment status.

On February 16, 2021, the District Judge overruled the objections to the 7/17/20 Order. *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 2021 WL 568124 (S.D.N.Y. Feb. 16, 2021). Only then did TSI and the Employee, through their joint counsel, disclose that the Employee had suffered a stroke and was no longer employed by TSI.[4] On March 26, 2021, the

---

[4] The facts came out gradually. On February 18, 2021, TSI stated that "[r]ecent developments have impeded TSI's ability to present [the Employee] for deposition." (Dkt. 255 at 2.) The

3

Employee – now acting through separate counsel who appeared on his behalf that day – filed a second protective order motion, based on the stroke, again seeking an order requiring that the deposition be conducted on written questions. (Dkt. 266.)

In light of the Employee's new medical challenges, plaintiffs agreed, reluctantly, to conduct his deposition on written questions pursuant to Fed. R. Civ. P 31. (*See* Dkt. 270 at 7; Dkt. 302 at 25.) At the same time, they moved for both monetary and non-monetary sanctions, accusing TSI of "delay[ing] a key witness's deposition for over a year with the purpose and effect of Plaintiffs' not ever being able to take the witness's testimony." (Dkt. 269 at 1.) TSI denied that charge, but acknowledged that its delayed disclosure of the Employee's stroke and its consequences was intentional, because – in counsel's view – those facts were relevant only to the second protective order motion, which "only became necessary after TSI's objections were overruled by the District [Judge] on February 16, 2021." (Dkt. 274 at 5; *see also id.* at 9 n.6.)

After a discovery conference on April 19, 2021, at which I heard argument on both motions, I granted the second protective order motion to the extent of requiring that the Employee's deposition be conducted on written questions, pursuant to Rule 31, no later than May 19, 2021. (Dkt. 302 at 12; Dkt. 279.) I also granted plaintiffs' sanctions motion, explaining, from the bench, that when TSI's counsel learned of the Employee's stroke and resignation, they were "obligated to convey that information promptly under the circumstances to . . . opposing counsel, [but] failed to do so. As a result, . . . opposing counsel had to do work that . . . opposing counsel would not otherwise have had to do." (Dkt. 302 at 31.) In a written order issued on April 23,

---

following week, TSI stated that those developments included a "severe medical event" and the Employee's resignation from TSI. (Dkt. 257 at 2.) Counsel for TSI first obtained the Employee's relevant medical records and made them available to plaintiffs on March 15, 2021. (*See* Dkt. 274 at 4.) Four days later, on March 19, 2021, TSI informed the Court that the Employee "suffered a stroke in August[] 2020." (Dkt. 262 at 2.)

4

2021, I specified that sanctions were appropriate pursuant to Fed. R. Civ. P. 16(f), Fed. R. Civ. P. 37(b)(2)(A), and 28 U.S.C. § 1927, because:

> [T]he Employee was obligated to comply with his subpoena from July 17, 2020 forward. If and to the extent changed circumstances during that period gave him or TSI additional grounds for an order quashing or modifying that subpoena, they should have disclosed the new circumstances promptly so that they could make their new motion (if necessary) in a "timely" manner, as required by Fed. R. Civ. P. 45(d)(3)(A). Instead, TSI and the Employee kept the issue of the Employee's new health challenge in reserve, for use if and when their pending objections (based on his prior health challenges) were overruled. As a result: (a) plaintiffs were obliged to continue litigating objections based on an outdated set of facts; (b) the district judge was put to the trouble of ruling on those objections despite their obsolescence; (c) proceedings were multiplied unnecessarily; and (d) the Employee's deposition (by any means) was further delayed and is now unlikely to be completed before the many-times-extended fact discovery deadline expires.
>
> On this record, plaintiffs are entitled to recover their reasonable expenses, including attorneys' fees, incurred as a result of the failure of TSI, the Employee, and their counsel to promptly disclose the facts concerning the Employee's changed medical condition and its consequences, including their attorneys' fees and other expenses reasonably incurred in opposing the objections filed by TSI and the Employee to the July 17 Order.

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 2021 WL 1740679, at *2 (S.D.N.Y. Apr. 23, 2021) (the 4/23/21 Order). However, I denied plaintiffs' request for "preclusion orders or other non-monetary sanctions," without prejudice to renewal after plaintiffs' counsel received the Employee's deposition transcript. *Id.* at *3. The 4/23/21 Order continued, "[t]he renewed motion may be combined with [plaintiffs'] application for the attorneys' fees and other expenses incurred as a result of the disclosure failure, which is due at the same time." *Id.*

On May 7, 2021, TSI objected to the 4/23/21 Order pursuant to Rule 72(a). (Dkt. 292.)

On May 19, 2021, plaintiffs took the Employee's deposition. *See* Shartle Decl. (Dkt. 380-1) Ex. A (Tr. of Employee Dep.) (Dkt. 380-2 at ECF pp. 19-31).

On June 3, 2021, plaintiffs filed their class certification motion. (Dkt. 312.)

5

By order dated January 18, 2022, the District Judge agreed that TSI's conduct was sanctionable pursuant to 28 U.S.C. § 1927, and on that basis overruled, in relevant part, TSI's objections to the 4/23/21 Order, explaining that:

> having placed Employee A's medical condition at issue, counsel was not at liberty to decide to withhold relevant information concerning Employee A's medical condition from Plaintiffs and from the Court. At a minimum, counsel was aware that in August 2020, Employee A had suffered a medical event so serious that it had required him to resign his employment. Counsel was required to disclose that information to Plaintiffs and to the Court, because it was highly relevant to TSI's pending objections to Judge Moses's July 17, 2020 Order.
>
> As Judge Moses finds, counsel's decision to withhold this relevant information meant that Plaintiffs were litigating a matter on the basis of an obsolete record, and this Court was required to decide TSI's objections on the basis of that obsolete record. Once TSI's objections were overruled, TSI quickly moved to seek a second protective order, choosing to then disclose information that should have been disclosed to Plaintiffs and the Court more than six months earlier.
>
> This Court finds no clear error in Judge Moses's determination that TSI's counsel acted intentionally and in bad faith, and that counsel's conduct "multiplied the proceedings unnecessarily," because Plaintiffs were "obliged to continue litigating" and this Court was "put to the trouble of ruling" on objections that were already obsolete. (April 23, 2021 Order (Dkt. No. 280) at 5[.]) Judge Moses's decision to impose sanctions on TSI's counsel under Section 1927 was thus proper.

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 2022 WL 162583, at *5 (S.D.N.Y. Jan. 18, 2022) (the 1/18/22 Order).[5]

## II.   THE RENEWED SANCTIONS MOTION

On March 29, 2022, plaintiffs filed their renewed motion, seeking a total of $73,290 in attorneys' fees, representing 123.6 hours of attorney time by three different lawyers at the firm of Frank LLP, at rates of $1,400 per hour for senior partner Marvin Frank, $1,100 per hour for

---

[5] The District Justice agreed with TSI that the sanctions were not properly based on Rule 16(f) or 37(b), because TSI's conduct did not violate a prior court order. 1/18/22 Order at *5. However, this did not affect the outcome of TSI's objections.

6

partner Gregory Frank, and $500 per hour for associate Asher Hawkins, plus $168 in expenses. *See* Annex to Frank Decl. (Billing Records) (Dkt. 368-1) at ECF p. 15.

Additionally, plaintiffs seek a variety of non-monetary sanctions, all premised on the notion that the Employee's testimony – which they characterize as "extremely detrimental to TSI," Pl. Mot. at 2 – would have been even more helpful to plaintiffs had they been able to question him "timely," that is, before his stroke affected his memory for detail. *See id.* at 2 ("Had Plaintiffs been able timely to question Employee A, he would have provided important details supporting Plaintiffs' case."), 12 ("[I]f Plaintiffs had been given timely access to Employee A, he could have been deposed before a stroke purportedly impeded his ability to recall details of the work he performed for TSI."). In order to cure this claimed prejudice, plaintiffs seek an adverse inference order, which would instruct the jury "to infer adversely against TSI concerning the testimony that Employee A would've given if deposed timely and without adulteration." Pl. Mot. at 11. They also request an order directing that various facts be taken as established for purposes of this action, ranging from the very specific (for example, that the Employee "did not review proof of the debt alleged" before signing the affidavit filed in the Tabar case, and consequently that it was "materially false, deceptive, or misleading," *id.* at 13) to the extremely broad (for example, that "[n]o member of TSI's Affiant Team reviewed proof of the debts alleged in any of the affidavits they signed for filing in state court," and consequently that all such affidavits "were materially false, deceptive, or misleading," *id.* at 14); and a preclusion order, which would bar TSI from calling the Employee as a witness or making any arguments to the effect that the Employee did review proof of the debts alleged before signing his affidavit in the Tabar case. *Id.* at 14-15.

7

TSI filed an opposition brief on April 12, 2022, arguing that no non-monetary sanctions should be imposed because its only sanctionable misconduct occurred *after* the Employee suffered a stroke, such that "plaintiffs would have been in the same position of having to depose a witness that endured a catastrophic medical event independent from any delay in disclosing that stroke by TSI," TSI Opp. Mem. (Dkt. 380) at 2, and, in any event, plaintiffs' claim to have "secured robust, admissible and incontrovertible evidence of TSI's wrongdoing" from the Employee undercuts their claim of prejudice. *Id.* TSI adds that 28 U.S.C. § 1927 "does not allow for non-monetary sanctions," *id.* at 3, and that the monetary sanctions requested are excessive. *Id.* at 16-19. The Trust Defendants also filed an opposition brief, pointing out that the broad non-monetary sanctions sought "would have the effect of ending the case not only against TSI, but against the Trusts, as well." Trust Def. Opp. Mem. (Dkt. 381) at 1.

Plaintiffs filed their reply brief on April 19, 2022, defending their requested hourly rates as "well within the market's current boundaries," Pl. Reply Mem. (Dkt. 386) at 4, and arguing that the non-monetary sanctions they seek may be imposed pursuant to this Court's inherent authority and "reflect the record" established by "the few details Employee A provided" and by other discovery, which shows that "all members of TSI's Affiant Team engaged in company-wide illegal practices of which Employee A's violations are emblematic." *Id.* at 4-5, 9. Plaintiffs concede that TSI did not cause the Employee's stroke, but argue that TSI is nonetheless responsible for plaintiffs' inability to take his deposition before he had that stroke, because it delayed his deposition "for more than a year by serially pressing unsuccessful and baseless motions for an order blocking the deposition." *Id.* at 13.

### III.   ANALYSIS

#### A.   Monetary Sanctions

As explained in the 4/23/21 Order, TSI's sanctionable conduct consisted of "[keeping] the issue of the Employee's new health challenge in reserve, for use if and when their pending objections (based on his prior health challenges) were overruled," which obliged plaintiffs to "continue litigating objections based on an outdated set of facts," multiplied proceedings unnecessarily, and further delayed the Employee's deposition. 4/23/21 Order at *2. Consequently, "plaintiffs are entitled to recover their reasonable expenses, including attorneys' fees, incurred *as a result of the failure of TSI, the Employee, and their counsel to promptly disclose the facts concerning the Employee's changed medical condition and its consequences*." *Id.* (emphasis added).

Under this formulation, plaintiffs may recover their "attorneys' fees and other expenses reasonably incurred in opposing the objections filed by TSI and the Employee to the July 17 Order." 4/23/21 Order at *2. They may also recover their reasonable fees and expenses incurred between the issuance of Judge Gardephe's 1/18/22 Order and TSI's full disclosure of the Employee's condition, which did not occur until March 15, 2021, when TSI made the Employee's relevant medical records available to plaintiffs. *See* 4/23/21 Order at *2 & n.5. Additionally, plaintiffs are entitled to their reasonable fees and expenses incurred in making their successful sanctions motion, including the meritorious portions of the instant fee application. *See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 2021 WL 1549916, at *8 (S.D.N.Y. Apr. 20, 2021) ("Since Charlestown [which successfully moved for discovery sanctions] was directed to submit a fee application in order to document [its] expenses, it would defeat the purpose of the award to require it to do so at its own expense."); *LBBW Luxemburg S.A. v. Wells*

*Fargo Sec. LLC*, 2016 WL 5812105, at *7 (S.D.N.Y. Sept. 22, 2016) (explaining that fee application expenses are recoverable because "attorney's fees incurred in preparing the fee application to determine the appropriate amount of the sanctions award are necessarily 'caused by the failure' to obey the Court's order, where the sanctions motion has been granted"). Plaintiffs are not, however, entitled to recover their fees and expenses incurred in connection with tasks that they would have performed in the absence of TSI's sanctionable conduct. *See, e.g.*, *Karsch v. Blink Health Ltd.*, 2019 WL 6998563, at *5 (S.D.N.Y. Dec. 20, 2019) ("while defendants' efforts to pursue overdue discovery are reimbursable, their time reviewing that discovery, once produced, was not 'caused by' plaintiff's violations, since defendants would have reviewed the same materials – likely with the same degree of care – even if they had been timely produced").

The Court must now quantify the fees and expenses "reasonably incurred" in compensable work. To do so, in the Second Circuit, "a district court multiplies the relevant attorneys' reasonable hours spent on compensable tasks by a reasonable hourly rate for the services performed, so as to determine a 'presumptively reasonable fee.'" *Charlestown Cap. Advisors*, 2021 WL 1549916, at *2 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)); *accord Romeo & Juliette Laser Hair Removal, Inc. v. Assara I, LLC*, 2013 WL 3322249, at *4 (S.D.N.Y. July 2, 2013), *aff'd*, 679 F. App'x 33 (2d Cir. 2017). The fee applicant must "document[] the appropriate hours expended and hourly rates." *Dancy v. McGinley*, 141 F. Supp. 3d 231, 235 (S.D.N.Y. 2015) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

1.      **Hourly Rate**

At the first stage of the analysis, the fee applicant "bears the burden of 'produc[ing] satisfactory evidence' that its requested rates are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4 (S.D.N.Y. Oct. 28, 2015) (quoting *Pearson Educ., Inc. v. Vergara*, 2010 WL 3744033, at *6 (S.D.N.Y. Sept. 27, 2010)), *report and recommendation adopted sub nom. In re: Terrorist Attacks*, 2015 WL 9255560 (S.D.N.Y. Dec. 18, 2015). "A district court has discretion to determine a reasonable hourly rate based on considerations such as the complexity of the case, the prevailing rates in similar cases in the district, and the quality of representation." *Pasini v. Godiva Chocolatier, Inc.*, 764 F. App'x 94, 95 (2d Cir. 2019) (summary order) (citing *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012)).

The inquiry is "case-specific," *Townsend*, 679 F.3d at 59, meaning that a reasonable rate for a routine task in a simple case may be quite different from a reasonable rate for a complex task in a challenging case, even when performed by the same firm or the same attorney. *See, e.g.*, *Lilly v. City of New York*, 934 F.3d 222, 231-32 (2d Cir. 2019) ("It was entirely appropriate for the district court to consider the complexity of a matter because a reasonable paying client would consider the complexity of his or her case when deciding whether an attorney's proposed hourly rate is fair, reasonable, and commensurate with the proposed action."); *Reiter v. MTA*, 2007 WL 2775144, at *5 (S.D.N.Y. Sept. 25, 2007) (where attorney had "extensive" criminal experience but "little" civil experience, proffered rates "may be appropriate with respect to payment to Smith on criminal matters but not with respect to civil cases"). The Court also "has some responsibility to 'disciplin[e] the market'" if necessary, *Danaher Corp. v. Travelers Indem. Co.*,

11

2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014) (quoting *Arbor Hill*, 522 F.3d at 184), by "stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 184.

Plaintiffs provide no evidence that the hourly rates they seek are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4. Moreover, as TSI points out, courts in this district have recently found, in cases brought under the Fair Debt Collection Practices Act (FDCPA), like this one, that reasonable hourly rates are "approximately $300-$450 for partners, $200-$325 for senior associates, and $100-$200 for junior associates." *Hancock v. I.C. Sys., Inc.*, 592 F. Supp. 3d 250, 256 (S.D.N.Y. 2022) (quoting *Lichter v. Bureau of Accounts Control, Inc.*, 2021 WL 5115259, at *5 (S.D.N.Y. Nov. 2, 2021)). In *Hancock*, the court awarded fees to the prevailing plaintiff's attorneys, who were "well-versed in FDCPA practice" and were "appointed class counsel in numerous cases," at rates ranging from $400 to $450 per hour. 592 F. Supp. 3d at 255. Similarly, in *Bowman v. Receivables Performance Mgmt. LLC*, 2022 WL 1321372 (S.D.N.Y. May 3, 2022), after plaintiff's counsel brought an FDCPA action to judgment and "substantially prevailed on [the] principal claim," the court found that an hourly rate of $425 was reasonable for two partners with "a combined 52 years of litigation experience." *Id.* at *1-2. For a senior associate with fourteen years of experience, a rate of $300 was reasonable. *Id.* For junior associates with three to four years of experience, a rate of $225 was reasonable. *Id.* Thus, TSI is correct that the hourly rates sought now by plaintiffs' counsel for purposes of monetary sanctions "are each well outside the scope of

commensurate fees awarded in FDCPA cases." TSI Opp. Mem. at 18.[6] Moreover, while this case was pleaded as a nationwide class action, and while aspects of the case raise complex and sophisticated legal questions, the underlying dispute for which sanctions are being awarded was a discovery dispute over the deposition of a single witness, for which premium rates would be inappropriate. *See*, *e.g.*, *S.E.C. v. Yorkville Advisors, LLC*, 2015 WL 855796, at *18 (S.D.N.Y. Feb. 27, 2015) (reducing hourly rates because "the motion to compel brought by defendants was not significantly complex").

Plaintiffs claim that the rates they seek on the instant motion "have already been approved by a sibling court in this District in an analogous context," namely, in *Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-CV-8098 (S.D.N.Y.) (*Toohey*). Pl. Mot. at 15; *see also* Frank Decl. (Dkt. 368) ¶ 6 ("these rates have been approved previously by another court in this District in a similar case") (citing *Toohey*).[7] Like this case, *Toohey* was an FDCPA class action in which Frank LLP represented the plaintiffs. Unlike this case, however, *Toohey* settled, and Frank LLP was awarded fees as part of the negotiated settlement, where (as is typical of that stage of litigation) there was no opposition to the application. *See Hancock*, 592 F. Supp. 3d at 256. Moreover, the *Toohey* court did not "approve" the sky-high hourly rates sought here. In

---

[6] TSI also argues that plaintiffs should be held to a fee award of $15,000 because the parties at one time discussed settling the sanctions dispute at that number. TSI Opp. Mem. at 16. That argument is meritless. The fact that one or even both parties may at one point have been interested in compromising the fee dispute cannot be used to "either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a).

[7] According to the Frank LLP firm resume (Firm Resume) (submitted at Dkt. 133-2 in *Toohey*) M. Frank is the managing partner of Frank LLP, Frank Decl. ¶ 1, and was admitted to practice in this District in 1992. Firm Resume at ECF p. 8. G. Frank is a partner with Frank LLP. *Id.* at ECF p. 10. The Firm Resume does not provide the year of his admission or the number of years he has practiced. However, the New York Unified Court attorney registration system reflects that G. Frank was admitted in 2008. (It also reveals that his biennial attorney registration payment is delinquent.) Hawkins is an associate with Frank LLP, and was admitted to practice in 2015. Firm Resume at ECF p. 11.

*Toohey*, Frank LLP applied those rates to the 4,818 hours it claimed to have spent on the case to calculate its lodestar of $3.46 million. G. Frank Decl. (Dkt. 133 in *Toohey*) ¶ 65. But Frank LLP neither sought nor obtained that lodestar. Rather, when the case settled (for a total payment of $500,000 to the class), Frank LLP sought and obtained a fee award of $995,000, *id.* ¶ 64, which is equivalent to $206.50 for each of those 4,818 hours.

Based on the qualifications of counsel, the nature of the legal work at issue, the range of rates awarded for comparable work in this District, and the actual award to Frank LLP in *Toohey*, I find that $450 per hour is a reasonable rate for M. Frank; $375 per hour is a reasonable rate for G. Frank; and $300 per hour is a reasonable rate for Hawkins.

### 2. Number of Hours Expended

At the second stage of the analysis, the district court multiplies each timekeeper's reasonable hourly rate by the reasonable number of hours expended. *Karsch*, 2019 WL 6998563, at *4 (citing *Romeo & Juliette*, 2013 WL 3322249, at *4). "Time that was not spent on compensable tasks must of course be excluded from the calculation." *Charlestown Cap. Advisors*, 2021 WL 1549916, at *5; *see also Karsch*, 2019 WL 6998563, at *5 (discounting hours billed for tasks that would have been performed regardless of the sanctioned conduct). Hours that are "excessive, redundant, or otherwise unnecessary" may also be excluded from an attorneys' fee award. *Infinity Headwear & Apparel v. Jay Franco & Sons*, 2016 WL 6962541, at *5 (S.D.N.Y. Nov. 28, 2016) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)). In such a case, the district court "may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." *McDonald ex rel Pendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (cleaned up); *accord Romeo & Juliette*, 2013 WL 3322249, at *8.

Plaintiffs' Billing Records show time expended from August 24, 2020 (when counsel began work on plaintiffs' response to TSI's objections, unaware that the Employee had suffered a stroke) through March 29, 2022 (when counsel submitted plaintiffs' renewed motion for sanctions. According to Frank LLP's detailed time records, M. Frank billed 10.7 hours during this period; G. Frank billed 19.6 hours, and Hawkins billed 148.2 hours, for a total of 178.5 hours. Billing Records at ECF pp. 1-14. In their summary, however, plaintiffs seek reimbursement for only 123.6 hours: 5.7 hours billed by M. Frank, 10.6 by G. Frank and 107.3 by Hawkins. *Id.* at ECF p. 15. Plaintiffs do not explain or even mention this approximately 30% discount in their brief.

TSI argues that the hours billed are "excessive and duplicative, include work outside the scope of this Court's Order, includes administrative tasks and include multiple interoffice communications." TSI Opp. Mem. at 18. However, TSI does not provide any examples of entries that might fall into one of these four categories, except that "Attorney Hawkins billed for 19 hours of work" on May 16, 2021. TSI Opp. at 18 n.13.[8] After a careful review of counsel's time records, I do not find an excessive amount of "fat" to trim, *McDonald ex rel Pendergast*, 450 F.3d at 96, except for some unnecessary duplication of supervisory work by G. Frank and M. Frank – both of whom seem to have reviewed each of Hawkins's draft briefs and letters. *Compare* Billing Records at ECF p. 10 (G. Frank, reviewing Hawkins's drafts on September 2 and 9, 2020) *with id.* at ECF p. 13 (M. Frank, reviewing the same drafts on the same days). Consequently, the hours billed by G. Frank and M. Frank will be discounted by 25% apiece.

---

[8] The undersigned Magistrate Judge was once a litigation associate. An occasional 19-hour workday, although far from ideal, is not in and of itself grounds for doubting the accuracy of counsel's time records.

Additionally, certain hours must be excluded because they reflect work outside the scope of the 4/13/21 Order. On the dates listed below, for example, Frank LLP billed for verifying the Employee's medical condition and preparing to take the Employee's deposition:

| Attorney | Date | Hours |
|---|---|---|
| Asher Hawkins | 02/18/21 | 0.5 |
| Gregory Frank | 02/18/21 | 0.5 |
| Asher Hawkins | 03/29/21 | 1.4 |
| Asher Hawkins | 03/31/21 | 2.5 |
| Asher Hawkins | 04/01/21 | 3.6 |
| Asher Hawkins | 04/21/21 | 0.3 |
| Asher Hawkins | 04/30/21 | 0.2 |
| Asher Hawkins | 04/30/21 | 2.8 |
| Asher Hawkins | 05/18/21 | 0.6 |
| Gregory Frank | 04/21/21 | 0.2 |

These are tasks that the firm would have performed (at an earlier time, to be sure) even if TSI had revealed the Employee's health issues in a timely fashion. Thus, plaintiffs are not entitled to fees for this time.

The hours billed for preparing the renewed sanctions motion itself will also be reduced, because – as discussed below – plaintiffs' request for non-monetary relief constitutes an improper effort to relitigate the original sanctions motion and otherwise lacks merit. *See Yorkville Advisors*, 2015 WL 855796, at *12 ("Courts may reduce fee applications for time spent on unsuccessful arguments") (collecting cases). Since there is no precise way to determine how much of Frank LLP's motion preparation time was spent on its request for non-monetary as opposed to monetary sanctions, a 50% reduction will be applied to each of these entries:

| Attorney | Date | Original Hours | Reduced Hours |
|---|---|---|---|
| Asher Hawkins | 03/25/22 | 5.5 | 2.25 |
| Asher Hawkins | 03/27/22 | 2.3 | 1.15 |
| Asher Hawkins | 03/28/22 | 3.7 | 1.85 |
| Asher Hawkins | 03/28/22 | 3.1 | 1.55 |
| Asher Hawkins | 03/29/22 | 3.4 | 1.70 |

The Court therefore awards attorneys' fees as follows (all hours are rounded to the nearest tenth):

| Attorney | Rate | Hours | After 25% Discount | Total |
|---|---|---|---|---|
| Asher Hawkins | $300 | 120.2 | *same* | $36,060 |
| Gregory Frank | $375 | 18.9 | 14.2 | $5,325 |
| Marvin Frank | $450 | 10.5 | 7.8 | $3,510 |
| **Grand Total** | | | **142.2** | **$44,895** |

In addition, the Court awards the requested $168 in expenses, incurred in ordering the transcript of the April 19, 2021 hearing.

### B. Non-Monetary Sanctions

TSI is correct that recovery under 28 U.S.C. § 1927 is limited to fees and expenses. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). Since the District Judge found that sanctions are warranted pursuant to § 1927 alone, *see* 1/18/22 Order at *5, this would be reason enough to deny plaintiffs' request for non-monetary sanctions. But it is not the only reason.

The purpose of permitting plaintiffs to renew their request for non-monetary sanctions after taking the Employee's deposition was to provide them an opportunity to show – if they could – that TSI's six-month delay in *disclosing* the change in his medical condition impacted plaintiffs' ability to obtain relevant facts or present them in a timely manner. Plaintiffs have not

17

made either showing. As TSI correctly points out, its sanctionable misconduct occurred *after* the Employee suffered a stroke on August 3, 2020. *See* 4/23/21 Order at *2; 1/18/22 Order at *3, *5. The Court did not award sanctions in connection with the first motion to quash the Subpoena or otherwise find that TSI engaged in sanctionable conduct prior to August 3, 2020. Thus, plaintiffs are not entitled to relief on the ground that the Employee's testimony would have been more helpful to them had it been taken before that date, or on oral questions.[9] Moreover, although the parties were required observe tight deadlines in order to conduct the Employee's deposition by May 19, 2021, as ordered, they succeeded in doing so, meaning that plaintiffs had the Employee's testimony in time to use it in connection with their class certification motion, filed on June 3, 2021.

The Court notes as well that, according to plaintiffs, the facts they ask the Court to deem established are all supported by the evidence that they successfully developed during the discovery period, obtained from the Employee's deposition, the testimony of other witnesses, and documents. *See*, *e.g.*, Pl. Mot. at 12 (the Employee's "limited testimony," along with "other discovery," "compellingly demonstrate that [the Employee] was involved in violating rights both of Plaintiff Tabar's, and of all other Class members against whom he signed state-court affidavits"); Pl. Reply Mem. at 4-5 ("Each sanction Plaintiffs propose here is supported by (1) the few details Employee A provided, and (2) documentary production concerning the collection action in question[.]"). If so, plaintiffs can establish those facts without the assistance of a discovery sanction deeming them uncontestable.

---

[9] Consequently, the Court need not determine the extent to which the Employee's memory was in fact impacted by his stroke.

In sum, there is no legal, equitable, or logical basis on which to grant plaintiffs' request for adverse inference sanctions, preclusion orders, or orders deeming various facts established.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs are awarded $44,895 in attorneys' fees and $168 in costs, for a total award of $45,063, as against TSI and its counsel, jointly and severally.[10] The sanction is to be paid within 30 days of the date of this Memorandum and Order.

Dated: New York, New York
      March 24, 2023         SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[10] During the April 19, 2021 discovery conference, TSI's counsel clarified that he was not in contact with the Employee during the months after his stroke, and thus that the Employee was not involved in the decision to withhold information about his medical condition from plaintiffs. (Dkt. 302 at 18.) Under these circumstances, it would be inappropriate to impose monetary sanctions upon the Employee.