UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KATHERINE SEAMAN, MARY RE SEAMAN, and SANDRA TABAR, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, | ) ) ) ) ) ) ) ) | No. 18-cv-1781 |
| | ) | |
| Defendants. | ) | |
| CHRISTINA BIFULCO, FRANCIS BUTRY, and CORI FRAUENHOFER, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP, | ) ) ) ) ) ) ) ) | No. 18-cv-7692 |
| | ) | |
| | ) | **FILED VIA ECF** |
| Defendants. | ) ) | |

**PLAINTIFFS' OBJECTIONS
TO CERTAIN PARTS OF THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION OF MARCH 13, 2023 CONCERNING
ARTICLE III STANDING AND RULE 23 CERTIFICATION**

## **TABLE OF CONTENTS**

I. LEGAL STANDARDS.................................................................................................. 3

II. ARGUMENT............................................................................................................... 3

    A.    This Class Deserves Rule 23(b)(2) Injunctive Relief For The Credit Harms .............. 3

    B.    The R&R Cannot Cite Any Case Supporting Denial Of Plaintiffs' Standing
        To Pursue Claims Concerning Defendants' False Statements In State Court ............. 5

    C.    False Statements To Credit Bureaus Cause Article III Injury ..................................... 9

    D.    There Should Be One Rule 23(b)(3) Class Or Subclass For Each Trust.................... 11

    E.    No Claim Should Be Dismissed Absent Leave To Amend The Pleading.................. 11

III. CONCLUSION.......................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bock v. Pressler & Pressler, LLP*,
    254 F. Supp. 3d 724 (D.N.J. 2017) ............................................................................ 7

*Charles v. TransUnion, LLC*,
    No. 19-cv-3579, 2022 U.S. Dist. LEXIS 176245 (E.D.N.Y. Sept. 28, 2022) ........................ 9

*Eisemann v. Greene*,
    204 F.3d 393 (2d Cir. 2000) ..................................................................................... 3

*Ergas v. Eastpoint Recovery Grp.*,
    No. 20-cv-333S, 2022 U.S. Dist. LEXIS 84493 (W.D.N.Y. May 10, 2022) ......................... 6

*Ewing v. Med-1 Solutions, LLC*,
    24 F.4th 1146 (7th Cir. 2022) .................................................................................. 10

*Faehner v. Webcollex, LLC*,
    No. 21-1734-cv, 2022 U.S. App. LEXIS 4439 (2d Cir. Feb. 18, 2022) ............................. 11

*Grauman v. Equifax Info. Servs.*,
    549 F. Supp. 3d 285 (E.D.N.Y. 2021) .......................................................................... 9

*In re Anderson*,
    641 B.R. 1 (Bankr. S.D.N.Y. 2022) ........................................................................... 10

*Krausz v. Equifax Info. Servs.*,
    No. 21-cv-7427, 2023 U.S. Dist. LEXIS 25109 (S.D.N.Y. Feb. 14, 2023) .......................... 9

*Marquez v. Weinstein, Pinson & Riley, P.S.*,
    836 F.3d 808 (7th Cir. 2016) ..................................................................................... 8

*McRobie v. Palisades Acquisition XVI, LLC*,
    No. 15-cv-18, 2022 U.S. Dist. LEXIS 38778 (W.D.N.Y. Mar. 3, 2022) .......................... 7, 8

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012) ..................................................................................... 11

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ....................................................................................... 5

*Rosenberg v. McCarthy, Burgess & Wolff, Inc.*,
    No. 21-cv-2199, 2022 U.S. Dist. LEXIS 136289 (E.D.N.Y. Aug. 1, 2022) ..................... 6, 7

*Spira v. Trans Union, LLC*,
    No. 21-cv-2367, 2022 U.S. Dist. LEXIS 128085 (S.D.N.Y. July 19, 2022) ...................... 9

*Swainson v. Lendingclub Corp.*,
    No. 21-cv-5379, 2022 U.S. Dist. LEXIS 123971 (S.D.N.Y. June 24, 2022) ........................... 9

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) .................................................................................... 7, 9

*Torres v. Toback, Bernstein, Reiss LLP*,
    No. 11-cv-1368, 2014 U.S. Dist. LEXIS 36925 (E.D.N.Y. Mar. 29, 2014) ........................... 11

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .................................................................................. passim

*Williams v. Reckitt Benckiser LLC*,
    No. 22-11232, 2023 U.S. App. LEXIS 8786 (11th Cir. Apr. 12, 2023) .................................... 5

*Winslow v. Forster & Garbus, LLP*,
    No. 15-cv-2996, 2017 U.S. Dist. LEXIS 205113 (E.D.N.Y. Dec. 13, 2017) ........................... 8

**Statutes**

15 U.S.C. § 1640 ..................................................................................................... 11
15 U.S.C. § 1681 et seq. .................................................................................. 2, 9, 10
15 U.S.C. § 1692 et seq. ................................................................................... passim
N.Y. Gen. Bus. Law § 349 .................................................................................. 8, 9
N.Y. Jud. Law § 487 .............................................................................................. 9

**Other Authorities**

Consumer Fin. Prot. Bureau,
    *Consumer Credit Reports: A Study of Medical and Non-medical Collections* (Dec. 2014) ...... 4

**Rules**

22 NYCRR § 130-1.1a ............................................................................................ 7
Fed. R. Civ. P. 23 .......................................................................................... passim
Fed. R. Civ. P. 60 ................................................................................................... 3
Fed. R. Civ. P. 72 ................................................................................................... 3
Rule 12(b)(1) ....................................................................................................... 1, 5

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ................................................................................................ passim

Plaintiffs[1] respectfully object to certain parts of Magistrate Judge Moses's Report and Recommendation of March 24, 2023 (the "R&R"),[2] which recommends this Court grant in part and deny in part (1) Plaintiffs' Rule 23 motion for class certification, and (2) Defendants' Rule 12(b)(1) motion challenging Plaintiffs' Article III standing.

Plaintiffs agree with the R&R's conclusions that Rule 23 class certification is appropriate and that Plaintiffs enjoy standing.  However, Plaintiffs object to certain portions of the R&R.

First, Plaintiffs object to that portion of the R&R that recommends denying Rule 23(b)(2) injunctive relief addressing Class members' creditworthiness harms.  (R&R at 64–67).  The R&R incorrectly presumes that older instances of negative reporting cannot entail future risk of harm. (*See id.*).  But this overlooks the reality that any negative item on a credit report permanently lowers the credit score, which impedes access to credit unless resolved.  All Plaintiffs and Class members will, at some point soon, need to pay a utility bill, apply for a car loan, take out a mortgage, and so on.  They are entitled to credit-score relief, and the only basis for denying this is a misunderstanding of the role that credit scores play in daily life.

Next, the R&R wrongly recommends Rule 12(b)(1) dismissal of Plaintiffs' claims concerning the false statements by Defendants' debt collection attorneys and affiants in the underlying state-court actions.  (R&R at 34 (citing CCAC ¶¶ 274(c)–(g), 280(c)–(g))).  Just as the

---

[1]  Plaintiffs are Katherine Seaman, Mary Re Seaman, Sandra Tabar, Christina Bifulco, Francis Butry, and Cori Frauenhofer, in their own rights and on behalf of the classes of similarly situated individuals (the "Class") (together, "Plaintiffs").  "TSI" as used herein collectively refers to Defendants Transworld Systems, Inc. ("Transworld"), in its own right and as successor to NCO Financial Systems, Inc. ("NCO"), and EGS Financial Care Inc. ("EGS"), formerly known as NCO. "Trusts" collectively refers to Defendants National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, National Collegiate Student Loan Trust 2004-2, and National Collegiate Student Loan Trust 2006-4.  "Forster" as used herein refers to Defendant Forster & Garbus LLP.  Together, TSI, the Trusts, and Forster collectively are referred to herein as "Defendants".  References herein to "CCAC ¶__" are to paragraphs of the operative pleading.
[2]  Dkt. No. 423 in Case No. 18-CV-1781, and Dkt. No. 346 in Case No. 18-CV-7692.

R&R (correctly) confirmed Plaintiffs' standing as to claims concerning Defendants' sham lawsuit scheme, (*id.* at 38), the R&R should have reached the same conclusion as to the falsely worded court papers by which Defendants perpetrated the scheme. Both the papers and the scheme itself meant negative legal consequences for Plaintiffs, which meet Article III's standing requirement of concrete harm. The R&R errs by following FDCPA[3] cases in which there were no legal consequences, because the alleged violations were misstatements in collection <u>letters</u> that had no practical significance. (R&R at 34 (listing cases)).

Similarly, the R&R's standing analysis is flawed in finding that any Plaintiff lacks standing to assert claims against Defendants' negative credit-reporting where there is no affirmative evidence that credit bureaus transmitted this information to potential lenders. (R&R at 34–38 (finding only one Plaintiff meets this standard)). This ignores that everyone's credit score is readily available and affects myriad daily activities like how much a person pays in utility fees, car insurance, credit charges, and the like. Again, the R&R relies on cases that are distinguishable because the violations there were not in connection with collection lawsuits. (*See id.* (listing cases)). In addition, these cases did not involve the FDCPA, but the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., which has separate purpose and scope. (*See id.*).

Finally, the R&R should not have recommended certifying a single Rule 23(b)(3) class, rather than four classes reflecting each of the four Trust Defendants herein. (R&R at 62). This approach has several flaws, including ignoring the Trusts' chosen corporate form in a manner that is outside this Court's authority.

This Court should adopt the R&R, but with modifications addressing the flaws discussed herein.

---

[3] The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq

I.   **LEGAL STANDARD**

Modification of a report and recommendation is appropriate when the Court has overlooked a material matter of fact or law in rendering its decision.   Fed. R. Civ. P. 60; *see Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000); *see also* Fed. R. Civ. P. 72(a) & -(b)(3).

II.   **ARGUMENT**

A.   **This Class Deserves Rule 23(b)(2) Injunctive Relief For The Credit Harms**

The R&R erred in recommending denying Plaintiffs injunctive relief under Rule 23(b)(2) for the harm caused by Defendants' improper credit-reporting lowering Plaintiffs' credit scores. (R&R at 64–67).   Credit scores are used constantly throughout daily life.   Plaintiffs will <u>always</u> need necessities like cars, housing, credit cards, and other goods and services that require a credit-score check.   Lower credit scores cause actual or imminent harms that are not hypothetical or conjectural and automatically translate into permanently higher interest rates and other burdens.

The R&R mistakenly assumes that past negative credit-reporting eventually ceases to cause harm to an individual's reputation for creditworthiness.   (*Id.*).   The R&R emphasizes that TSI has contacted the bureaus to request tradeline removals for each named Plaintiff.   (*Id.*).   The R&R thus concludes that, although at least one Plaintiff (Bifulco) can show past loss of credit opportunities, this can only be the basis for a claim for money damages, not prospective relief.   (*Id.*).

This ignores that an individual's credit score is permanently lowered each time a negative event is added to their credit report.   A credit report is maintained by one of the bureaus— TransUnion, Equifax, and Experian—while the credit score exists separately, typically calculated by yet another company, the Fair Isaac Corp. ("FICO").   Plaintiffs' equitable demand here is that Defendants be enjoined to contact the bureaus and FICO to ensure Plaintiffs' <u>credit scores</u> are recalculated such that the impact of Defendants' wrongful reporting is negated.   *See* Pls.' Mem. in

Supp. Mot. Class Cert. (Dkt. No. 314 in Case No. 18-cv-1781), at 23–24; *see also TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2210 (2021) ("*TransUnion*") (emphasizing that "a person exposed to a risk of future harm [has standing to] pursue forward-looking, injunctive relief").  As one government study found, each negative tradeline "is incorporated as a derogatory factor in most credit scoring models, which use credit report information to predict a consumer's likelihood of repaying debts."  Consumer Fin. Prot. Bureau, *Consumer Credit Reports: A Study of Medical and Non-medical Collections*, at 9 (Dec. 2014).  The key scoring model utilized by FICO treats the addition of a collections tradeline of at least $100 such that it reduces a score of 680 by over 40 points, and a score of 780 by over 100 points.  *Id.*  "[The] significant drop in a credit score [caused by a negative tradeline of at least $100] will generally increase a consumer's cost of borrowing credit," if not worse.  *Id.*[4]

The R&R fails to address the permanent harm to Plaintiffs' credit scores.  (R&R at 65–67).  The R&R compounds this mistake by focusing on the now years-old vintage of Plaintiff Bifulco's evidence concerning inability to obtain a loan for an automobile on favorable terms due to Defendants' negative reporting.  (*Id.*).  The fact this happened years ago is irrelevant—what members is that <u>every</u> Class member <u>eventually</u> will have their credit score assessed when they purchase a car or home, rent an apartment, sign up for a utility, apply for a credit card, and so on.  When that happens, each will be relying on a credit score that would have been higher but for Defendants' violations.  *See* Consumer Fin. Prot. Bureau, *Consumer Credit Reports: A Study of Medical and Non-medical Collections*, at 9.

---

[4]  To the extent the Court requires further detail about how reduction in credit score might translate into quantifiable pecuniary loss, the appropriate procedure is to direct class-damages discovery following certification.  (Pls.' Mem. in Supp. Mot. Class Cert. (Dkt. No. 314 in Case No. 18-cv-1781), at 24 n. 15).

In denying injunctive relief, the R&R relies on inapposite precedent concerning shoppers' claims of future injury based on promises never to shop with a particular merchant in the future. (R&R at 64–65 (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (denying Rule 23(b)(2) relief))).  Unlike here, the plaintiffs in *Nicosia* and similar cases had a <u>choice</u>—i.e., they didn't <u>have</u> to shop on Amazon.  *See* 834 F.3d at 239, *see also Williams v. Reckitt Benckiser LLC*, No. 22-11232, 2023 U.S. App. LEXIS 8786, at *19 (11th Cir. Apr. 12, 2023) (denying class of shoppers injunctive relief <u>only</u> because "[t]he Named Plaintiffs have failed to allege any continuing or 'imminent' harm in connection with their past purchases of the [defendant's p]roducts").  Here, however, the Named Plaintiffs have alleged a continuing harm in the form of forever lowered credit scores that are used extensively, unavoidably, in everyone's daily life.

## B.   <u>The R&R Cannot Cite Any Case Supporting Denial Of Plaintiffs' Standing To Pursue Claims Concerning Defendants' False Statements In State Court</u>

The R&R was wrong to recommend Rule 12(b)(1) dismissal of Plaintiffs' claims concerning the false statements by Defendants' debt collection attorneys and affiants in the underlying state-court actions.  (R&R at 34 (citing CCAC ¶¶ 274(c)–(g), 280(c)–(g))).  In fact, these claims confer standing even under the most stringent readings of *TransUnion*, the Supreme Court's controlling Article III case.

Plaintiffs' false-statement claims encompass three different types of violations: (1) lack of meaningful attorney review of the claims and legal filings in the state-court collection actions, (CCAC ¶¶ 274(f)); (2) false statements in state-court default-judgment affidavits by TSI affiants who lied about knowledge and review of proof of debt, (CCAC ¶¶ 274(g)); and (3) false statements in the state-court complaints in these actions, including that the Trust named as plaintiff was the "original creditor," (CCAC ¶¶ 274(c–e)).

The R&R inaptly likens these claims to those in "letter cases," in which FDCPA plaintiffs press claims based on a collection letter.  (R&R at 34 (citing *Rosenberg v. McCarthy, Burgess & Wolff, Inc.*, No. 21-cv-2199, 2022 U.S. Dist. LEXIS 136289, at *5–14 (E.D.N.Y. Aug. 1, 2022) (Brodie, J.); *Ergas v. Eastpoint Recovery Grp.*, No. 20-cv-333S, 2022 U.S. Dist. LEXIS 84493, at *18–24 (W.D.N.Y. May 10, 2022) (Skretny, J.))).  The R&R overlooks the distinguishing fact that courts have dismissed letter cases for lack of standing because the plaintiffs there never suffered legal consequences—such as a state-court collection action, as with Plaintiffs here.  (*See id.*).  In *Rosenberg*, for example, the court emphasized that an FDCPA plaintiff would have standing in either of two instances: (1) the plaintiff saw the false statements and in response took or refrained to take certain actions; or, (2) the plaintiff suffered "legal[] or other harm" following the false statement."  *Rosenberg*, 2022 U.S. Dist. LEXIS 136289, at *13–14.

Here, the R&R focuses solely on the absence of the first type of harm discussed by *Rosenberg* (actual reliance by the plaintiff) but ignores the existence of the second type (legal consequences).  (R&R at 34).  Because Defendants' various false statements in state court meant negative legal consequences for Plaintiffs, the R&R should not have recommended dismissing Plaintiffs' claims for lack of meaningful attorney review, false affidavits, or false complaints.  As discussed below, post-*TransUnion* cases support Plaintiffs' standing for each of these three claims.

### 1. Lack Of Meaningful Attorney Review Causes Article III Injury

Courts in analogous cases have held that individuals like Plaintiffs suffer Article III injury where the defendant has filed a debt-collection lawsuit in state court, but its attorneys prosecuted the action without taking the time to review the claims and the papers submitted in state court.  *McRobie v. Palisades Acquisition XVI, LLC*, No. 15-cv-18, 2022 U.S. Dist. LEXIS 38778, at *26

n.10, *40 (W.D.N.Y. Mar. 3, 2022) (Roemer, Mag. J.) (confirming Article III injury where defendants filed state-court action against plaintiff without reviewing chain of title).

The Article III injury resulting from no-review collections suits was actionable before *TransUnion* and remains so today.[5]  The concreteness of the violations is especially profound in New York, where state law requires that attorneys like Defendant Forster certify meaningful review in prosecuting suits like those against Plaintiffs.  *See* 22 NYCRR § 130-1.1a; *see also Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 75–76 (2d Cir. 2015) ("*Sykes III*") (discussing New York law applicable to state-court actions including collection suits).

## 2.  False Default-Judgment Affidavits Cause Article III Injury

For largely the same reasons, Plaintiffs also have standing to pursue their claims concerning the false default-judgment affidavits signed by TSI-employed affiants.  Under state law, such affidavits are a prerequisite for default judgment—and require the affiant to attest to personal knowledge and review of the facts of the debt alleged.  *See* CPLR 3215; *see also Sykes III*, 780 F.3d at 96 (discussing New York's CPLR).  Because these affidavits trigger the negative "legal" consequence of default judgment for individuals like Plaintiffs, *see Rosenberg*, 2022 U.S. Dist. LEXIS 136289, at *13–14, the R&R should have found that Defendants' false default-judgment affidavits are subject to claims for which Plaintiffs have standing, *see McRobie*, 2022 U.S. Dist. LEXIS 38778, at *39–40 (discussing significance of default judgments and confirming standing for claims about fraudulently obtained default judgments).

---

[5]  *See id.*; *see also Bock v. Pressler & Pressler, LLP*, 254 F. Supp. 3d 724, 727, 736 (D.N.J. 2017) (Article III injury where collection attorney approved state-court complaint based on a few seconds' review of case file) ("Here, the deceptive implication that an attorney was meaningfully involved in the preparation of the collection complaint against [plaintiff] violated [his] substantive right [under the FDCPA] and created a particularized and concrete injury.").

### 3.   Falsities In State-Court Complaints Cause Article III Injury

Defendants' state-court complaints relied on three falsities: (1) Each Trust is an "original creditor," when really it was an assignee; (2) Each Trust must be paid the debt alleged, despite not first identifying which lender may have originated the underlying loan; (3) Each Trust is "authorized to proceed" in state court, when really none is, for failure to register with the state. Defendants' "use[ of] abusive and misleading debt collection practices that [a]re prohibited under the FDCPA and New York law" inherently cause Article III injury, as such violations allow Defendants to manufacture entitlement to judgment despite having "no legal right" to collect anything from Plaintiffs.  *McRobie*, 2022 U.S. Dist. LEXIS 38778, at *39 (Article III standing where defendant falsely represented chain of title in state-court action).

No court before or after *TransUnion* has condoned practices like Defendants'.  *Id.* (relying on *TransUnion*); *see Winslow v. Forster & Garbus, LLP*, No. 15-cv-2996, 2017 U.S. Dist. LEXIS 205113, at *26–35 (E.D.N.Y. Dec. 13, 2017) (Shields, Mag. J.) (certifying FDCPA and GBL class against same Defendants' use of "original creditor" and "[Trust] is authorized" falsities in state-court papers); *see also Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 813–14 (7th Cir. 2016) (confirming FDCPA claims against collector for misquoting text of FDCPA in state-court complaint).

The R&R's comparison of these falsities, to the falsities in the letter cases, ignores the aggregate impact of Defendants' state-court filings.  (R&R at 34).  Even if any of the falsities here were acceptable on its own—which none is—this wouldn't excuse the illegality of using them in combination.  Debt-collection schemes like Defendants' enjoy a kind of positive feedback loop: more falsities about entitlement to judgment, in more suits, mean more judgments, and more money, continuing and growing the cycle.  Such schemes can be nearly as harmful to local court

systems as to consumers alone.  *See Sykes III*, 780 F.3d at 84–87 (confirming class claims under

FDCPA, GBL, and § 487 where defendants made multiple misrepresentations in each of thousands

of state-court actions).

### C.   <u>False Statements To Credit Bureaus Cause Article III Injury</u>

The R&R is incorrect that *TransUnion* and subsequent cases foreclose Plaintiffs' asserting

credit-related harms, where there is no confirmative evidence that Defendants' negative reporting

to credit bureaus was in turn passed to Plaintiffs' potential creditors.  (R&R at 32–33, 34–38).  The

R&R found that only one Plaintiff, Ms. Bifulco, meets this standard.  (*Id.*).

To reach this finding, the R&R mistakenly relies on cases that did not involve debt

collections, FDCPA or GBL claims, or violations connected to state-court actions.  (*Id.* (listing

cases)).  Each case cited by the R&R is distinguishable, as each involved claims against credit

bureaus and/or original creditors for violations of the FCRA.[6]

The R&R's reliance on FCRA cases is inapt because the FDCPA uniquely extends special

protections to victims of fraudulent debt collections, which Congress specifically identified as a

problem necessitating heightened standards for the collections industry.  *See* Ord. of Oct. 11, 2019,

419 F. Supp. 3d 668, 707 n. 23 (distinguishing FDCPA from RICO because of FDCPA's unique

purpose and requirements for the regulated industry); *see also id.* (same, as to GBL's purpose).

---

[6]  *See Charles v. TransUnion, LLC*, No. 19-cv-3579, 2022 U.S. Dist. LEXIS 176245, at *2–3 (E.D.N.Y. Sept. 28, 2022) (Kuntz, J.) (cited by R&R at 32); *Spira v. Trans Union, LLC*, No. 21-cv-2367, 2022 U.S. Dist. LEXIS 128085, at *1–3 (S.D.N.Y. July 19, 2022) (Karas, J.) (cited by R&R at 32); *Swainson v. Lendingclub Corp.*, No. 21-cv-5379, 2022 U.S. Dist. LEXIS 123971, at *1–3  (S.D.N.Y. June 24, 2022) (Cave, Mag. J.) (cited by R&R at 32); *Grauman v. Equifax Info. Servs.*, 549 F. Supp. 3d 285, 288–89 (E.D.N.Y. 2021) (Vitaliano, J.) (cited by R&R at 32, 35); *Krausz v. Equifax Info. Servs.*, No. 21-cv-7427, 2023 U.S. Dist. LEXIS 25109, at *2–4 (S.D.N.Y. Feb. 14, 2023) (Karas, J.) (cited by R&R at 33 & n.19, 37).  (In one of these cases, *Swainson*, a pro se plaintiff incorrectly asserted an FDCPA claim against an original creditor—but no debt collection had occurred and his FDPCA claim was summarily dismissed without analysis of any standing for it.  *See* 2022 U.S. Dist. LEXIS 123971, at *22–24.)

Accordingly, the R&R erred in refusing to credit the leading case on standing for FDCPA claims over negative credit-reporting in the debt-collection context. Specifically, the R&R found that *Ewing v. Med-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022)—which confirmed standing for FDCPA claims like Plaintiffs'—is inapplicable here because it is out-of-Circuit. (R&R, at 35–37 (discussing *Ewing*)). However, *Ewing* is the closest case on-point and the R&R failed to credit this due to its improper focus on FCRA cases. (*See* R&R at 32–33, 34–38).

The R&R similarly erred in rejecting the significance of the in-Circuit case *In re Anderson*, 641 B.R. 1 (Bankr. S.D.N.Y. 2022) (Drain, Bankr. J.) (discussed by R&R at 32–33 n.18, 37). In *Anderson*, the court found that *TransUnion* confirmed standing for negative credit-reporting over debts discharged in bankruptcy. *See* 641 B.R. at 14–16. The *Anderson* court found such reporting to be defamatory per se and <u>did not</u> require proof that any potential creditor of the plaintiffs had seen the negative reports and relied on them to the plaintiffs' detriment. *See id.* at 50–55. The R&R distinguished *Anderson* simply on the basis of its arising in "the bankruptcy context." (R&R at 37). But the bankruptcy context is akin to the debt collection context here: in both contexts, Congress has crafted a special statutory scheme to prevent violations that inherently cause constitutional harms. *See Anderson*, 641 B.R. at 14–16, 50–55; *cf.* Ord. of Oct. 11, 2019, 419 F. Supp. 3d at 707 n. 23 (emphasizing FDCPA's unique purpose and requirements).[7] The R&R should have recognized that *Anderson* is analogous to this case, while the FCRA decisions are not.

---

[7] In contrast, the FCRA is by definition focused less on consumer rights and more on the "vital role" of the industry of "[c]onsumer reporting agencies," a role that "is essential to the continued functioning of the banking system." 15 U.S.C. § 1681; *but see* FDCPA, 15 U.S.C. § 1692(e) (the primary purpose of FDPCA is "to eliminate abusive debt collection practices by debt collectors").

### D.  There Should Be One Rule 23(b)(3) Class Or Subclass For Each Trust

The R&R was wrong to find against certifying four Rule 23(b)(3) class or subclasses, one for each of the four Trust defendants.  (R&R at 62–63).  The R&R states concern that this approach exposes Defendants to potentially hundreds of classes nationally. (R&R at 20 n.15 & 62 n.35). This is no longer true since the R&R properly limits the Class to individuals sued in New York. (*Id.* at 63).

Further, the R&R overlooks the text of the FDCPA, which, unlike other statutes, does not prohibit multiple classes.[8]  The R&R mistakenly relies on precedent from securities litigation, where there is no basis multiple classes.  *See id.* (citing *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 (2d Cir. 2012)); *but see Torres v. Toback, Bernstein, Reiss LLP*, No. 11-cv-1368, 2014 U.S. Dist. LEXIS 36925, at *25–26 (E.D.N.Y. Mar. 29, 2014) (Pohorelsky, Mag. J.) (certifying FDCPA class with subclasses such that "<u>each</u> subclass" "will [be] provide[d]" the maximum available under § 162k(b)(2)(B) (emphasis added)).

### E.  No Claim Should Be Dismissed Absent Leave To Amend The Pleading

The R&R did not address Plaintiffs' alternative request for an amended pleading in the event any claim is dismissed for lack of standing.  If this Court dismisses any of Plaintiffs' claims Plaintiffs request leave to amend the complaint, as well as supplementation of the previously ordered Class-sampling discovery, to incorporate Defendants' interactions with the credit bureaus about Class members' tradelines.  *See Faehner v. Webcollex, LLC*, No. 21-1734-cv, 2022 U.S. App. LEXIS 4439, at *1–2 (2d Cir. Feb. 18, 2022) (allowing plaintiff to amend complaint where *TransUnion*'s impact on standing was unclear)

---

[8]  *Compare, e.g.*, Truth In Lending Act, 15 U.S.C. § 1640(a)(2)(B) (limiting TILA liability to "any class action or series of class actions"), *with* FDCPA, 15 U.S.C. § 1692k(a)(2)(B) (imposing no such limitation).

III.   **CONCLUSION**

For the reasons set forth above, this Court should adopt the R&R but with modifications to address the flaws discussed above.  If the Court is inclined to dismiss any claim for lack of standing, Plaintiffs request an opportunity to replead and supplement the record.

Dated:      New York, New York
            April 14, 2023

                                        Respectfully submitted,

                                        **FRANK LLP**

                                        By:    */s/ Gregory A. Frank*
                                        Gregory A. Frank (GF0531)
                                        Marvin L. Frank (MF1436)
                                        Asher Hawkins (AH2333)
                                        305 Broadway, Suite 700
                                        New York, New York 10007
                                        Tel: (212) 682-1853
                                        Fax: (212) 682-1892
                                        gfrank@frankllp.com
                                        mfrank@frankllp.com
                                        ahawkins@frankllp.com

                                        *Counsel for Plaintiffs and the Class*