**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

KATHERINE SEAMAN, MARY RE SEAMAN, AND SANDRA TABAR, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-3; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP,

Defendants.

No. 18-cv-01781-PGG

----------------------------------------------------------------------

CHRISTINA BIFULCO, FRANCIS BUTRY, and CORI FRAUENHOFER, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2; NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4; TRANSWORLD SYSTEMS, INC., in its own right and as successor to NCO FINANCIAL SYSTEMS, INC.; EGS FINANCIAL CARE INC., formerly known as NCO FINANCIAL SYSTEMS, INC.; and FORSTER & GARBUS LLP,

Defendants.

No. 18-cv-07692-PGG

**DEFENDANTS' RESPONSE IN OPPOSITION**
**TO PLAINTIFFS' OBJECTIONS TO CERTAIN PARTS OF THE**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION OF MARCH 13, 2023**
**CONCERNING ARTICLE III STANDING AND RULE 23 CERTIFICATION**

## TABLE OF CONTENTS

LEGAL STANDARD....................................................................................................1

ARGUMENT.............................................................................................................2

I. Plaintiffs' Untimely Objections Are Waived.......................................................2

II. The R&R Correctly Dismissed Plaintiffs' Claims Based On Alleged False Statements In Court Filings For Lack Of Standing. ...............................................3

III. The R&R Correctly Dismissed Plaintiffs' Claims Based On Alleged False Credit Reporting For Lack Of Standing.................................................................7

IV. The R&R Correctly Concluded That A Rule 23(b)(2) Class Should Not Be Certified. ...............................................................................................9

V. The R&R Correctly Declined To Certify Four Classes Instead Of One So That Plaintiffs Could Avoid Statutory Limits On Their Potential Recovery.........11

CONCLUSION........................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anderson*,
641 B.R. 1 (Bankr. S.D.N.Y. 2022) ........ 8

*In re Anderson*,
884 F.3d 382 (2d Cir. 2018) ........ 8

*Cooper v. Atl. Credit & Fin., Inc.*,
822 F. App'x 951 (11th Cir. 2020) ........ 5, 6

*Fleming v. ProVest Cal. LLC*,
No. 21-CV-04462, 2021 WL 6063565 (N.D. Cal. Dec. 22, 2021) ........ 4

*Frank v. Johnson*,
968 F.2d 298 (2d Cir. 1992) ........ 1, 3

*George v. Pro. Disposables Int'l, Inc.*,
221 F. Supp. 3d 428 (S.D.N.Y. 2016) ........ 2, 3

*Grauman v. Equifax Info. Servs., LLC*,
549 F. Supp. 3d 285 (E.D.N.Y. 2021) ........ 9

*Holman v. Comm'r of Soc. Sec.*,
No. 19-cv-4393 (PGG) (KHP), 2022 WL 2763816 (S.D.N.Y. July 15, 2022) ........ 1

*Krausz v. Equifax Info. Servs.*,
No. 21-CV-7427, 2023 WL 1993886 (S.D.N.Y. Feb. 14, 2023) ........ 9

*MacInerney v. Allen*,
No. 21-CV-0818, 2022 WL 1025841 (N.D.N.Y. Apr. 6, 2022) ........ 2, 3

*Maddox v. Bank of N. Y. Mellon Tr. Co., N.A.*,
19 F.4th 58 (2d Cir. 2021) ........ 4, 6, 7

*Mario v. P & C Food Mkts., Inc.*,
313 F.3d 758 (2d Cir. 2002) ........ 2, 3

*McCrobie v. Palisades Acquisition XVI, LLC*,
No. 15-cv-18, 2022 WL 1657226 (W.D.N.Y. Mar. 4, 2022) ........ 6

*Rosenberg v. McCarthy, Burgess & Wolff, Inc.*,
2022 WL 3030390 (E.D.N.Y. Aug. 1, 2022) ........ 5

*Shine v. Comm'r of Soc. Sec.*,
No. 18-cv-960, 2020 WL 459681 (S.D.N.Y. Aug. 11, 2020)....................................................3

*Skoogfors v. Lycos, Inc.*,
No. 16-cv-2742 (PGG) (JCF), 2018 WL 4761521 (S.D.N.Y. Oct. 2, 2018)............................1

*Spence v. Superintendent, Great Meadow Corr. Facility*,
219 F.3d 162 (2d Cir. 2000)........................................................................................2

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015)..........................................................................................6

*TransUnion v. Ramirez*,
141 S. Ct. 2190 (2021)........................................................................................4, 6, 8

*Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*,
596 F.3d 84 (2d Cir. 2010)......................................................................................1, 3

**Other Authorities**

CFPB, "Consumer credit reports: A study of medical and non-medical collections" available at https://files.consumerfinance.gov/f/201412_cfpb_reports_consumer-credit-medical-and-non-medical-collections.pdf (last visited Apr. 26, 2023).........................10

Fed. R. Civ. P. 72........................................................................................................1, 2

Plaintiffs filed an objection to certain portions of the Report and Recommendation issued by the Honorable Magistrate Judge Barbara Moses on March 13, 2023 (ECF 423, the "R&R"), on April 14, 2023. (ECF 434, the "Objection"). Plaintiffs' Objection is untimely and, therefore, waived. Plaintiffs' Objection should be overruled in its entirety on that basis alone.

For the reasons set forth below, Plaintiffs' Objection should also be overruled because the R&R correctly recommended dismissal of Plaintiffs' claims based on allegedly false statements and credit reporting, correctly recommended rejection of Plaintiffs' request for certification of a Rule 23(b)(2) injunctive class, and correctly recommended rejection of Plaintiffs' request for certification of four classes.

## LEGAL STANDARD

"A district court reviewing a magistrate judge's report and recommendation 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'" *Skoogfors v. Lycos, Inc.*, No. 16-cv-2742 (PGG) (JCF), 2018 WL 4761521, at *1 (S.D.N.Y. Oct. 2, 2018) (quoting 28 U.S.C. § 636(b)(1)(C)); *see also* Fed. R. Civ. P. 72(b). "Where a timely objection has been made to a magistrate judge's recommendation, the district court judge 'shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Holman v. Comm'r of Soc. Sec.*, No. 19-cv-4393 (PGG) (KHP), 2022 WL 2763816, at *2 (S.D.N.Y. July 15, 2022) (quoting 28 U.S.C. § 636(b)(1)(C)).

Failure to timely object to a magistrate judge's report and recommendation "waives any further judicial review of the report." *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *see also* *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596

F.3d 84, 92 (2d Cir. 2010); *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002).[1] A court reviews portions of a report and recommendation to which no timely objection was made for clear error only. *See, e.g.*, *MacInerney v. Allen*, Case No. 21-CV-0818, 2022 WL 1025841, at *1 (N.D.N.Y. Apr. 6, 2022); *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016).

## ARGUMENT

### I. Plaintiffs' Untimely Objections Are Waived.

The R&R was issued on March 13, 2023. (ECF 423). Pursuant to Federal Rule of Civil Procedure 72(b)(2), objections were due by March 27, 2023. Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."). The R&R notified the parties of this deadline and stated, in bold: "**Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.**" (ECF 423 at 68) (citations omitted).

On March 20, 2023, Defendants filed a letter motion, which Plaintiffs' counsel had reviewed and approved prior to filing, requesting an extension of Defendants' deadline to object. (ECF 425). The letter motion requested an extension "for *defendants* to file Objections to the Report and Recommendation." (*Id.*) (emphasis added). The letter did not request an extension of

---

[1] Courts can exercise discretion to consider an untimely objection where "the defaulted argument has substantial merit" or "where a grave injustice may be avoided" by considering the objection. *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir. 2000) (considering an untimely objection in a case involving "a fundamental miscarriage of justice" with respect to the sentencing of a prisoner). Neither of those circumstances are present here.

the deadline for *Plaintiffs* to object. (*Id.*).[2]

The Court granted Defendants' request for an extension of time to object on March 20, 2023, endorsing Defendants' letter requesting the extension with the words: "The Application is granted." (ECF 426). There is no language in the Court's endorsement of Defendants' letter request that could be reasonably interpreted as extending Plaintiffs' deadline to object. (*See id.*).

As Plaintiffs never requested or received an extension of the deadline to file any objections to the R&R, Plaintiffs' Objection was due by March 27, 2023. Their Objection filed on April 14, 2023, is untimely and, therefore, waived. *See, e.g.*, *Frank*, 968 F.2d at 300; *Wagner & Wagner*, 596 F.3d at 92; *Mario*, 313 F.3d at 766; *Shine v. Comm'r of Soc. Sec.*, No. 18-cv-960, 2020 WL 4596814, at *1 (S.D.N.Y. Aug. 11, 2020).[3] Accordingly, the Court should apply a clear error standard to its review of the portions of the R&R challenged in Plaintiffs' untimely Objection. *See, e.g.*, *MacInerney*, 2022 WL 1025841, at *1; *George*, 221 F. Supp. 3d at 432.

## II. The R&R Correctly Dismissed Plaintiffs' Claims Based On Alleged False Statements In Court Filings For Lack Of Standing.

The R&R found that Plaintiffs lack standing to pursue their claims based on allegedly false statements made in state court collection action filings,[4] because they failed to show any "actual harm directly caused by one of the allegedly false statements." (ECF 423 at 34). Plaintiffs were served with the state court collection actions, but did not respond. "[N]one of the named plaintiffs

---

[2] If the plain language of the request were not sufficient, the absence of any request to extend the deadline for Plaintiffs to object is further demonstrated by the fact that the letter provides an explanation of why defendants need more time, but nothing at all with respect to Plaintiffs. (*Id.*).

[3] Plaintiffs here do not attempt to explain their failure to timely file their Objection or to seek an extension of the deadline. Plaintiffs are not *pro se*, and this case does not involve criminal charges or imprisonment. Under these circumstances, there is no reason for the Court to exercise its discretion to consider Plaintiffs' untimely Objection.

[4] Defendants reiterate that they did not make any false statements.

claimed to have read or relied on the allegedly false pleadings and affidavits filed in the state court collection actions against them, and several plaintiffs expressly conceded that they did not read (or could not remember reading) those documents." (*Id.* at 18). In addition, "[n]o plaintiff testified that he or she took any action, or forbore from taking any action, in reliance on any particular pleading or affidavit." (*Id.*).

Perhaps recognizing that there is no basis to argue the reliance requirement has been met under these circumstances, Plaintiffs' Objection employs a strained reading of recent district court case law to argue that detrimental reliance is somehow not necessary to establish standing to sue for alleged fraudulent misrepresentations. (ECF 434 at 5–9). Plaintiffs are wrong.

The R&R provides a detailed analysis of *TransUnion* and the legal landscape that followed, so a detailed examination here is not necessary, but a short summary may be helpful. *TransUnion* instructed the courts that a statutory violation is not enough to confer standing—a plaintiff must have suffered an actual, concrete injury commensurate with the statute's common law analogue. *See TransUnion v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("intangible harms can . . . be concrete," including "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts."); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 n.2 (2d Cir. 2021) ("*Maddox II*") (noting that the type of harm a statute protects against "is of little (or no) import; what matters is 'whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.'"). Courts require an analysis of the "common-law analogue" to determine whether an actual injury was suffered to confer standing. *See Fleming v. ProVest Cal. LLC*, No. 21-CV-04462, 2021 WL 6063565, at *4 (N.D. Cal. Dec. 22, 2021) ("Congressional statutes must have historical or common-law analogues because an injury cannot be concrete solely on 'Congress's say-so.'").

Here, Plaintiffs allege Defendants made fraudulent representations to them via filings in the collection lawsuits (in which they chose not to participate). Under New York law, a claim for fraudulent misrepresentation "requires a showing that '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the **plaintiff reasonably relied** upon the representation, **and** (4) the plaintiff suffered **damage as a result of such reliance**.'" *See Rosenberg v. McCarthy, Burgess & Wolff, Inc.*, No. 21-CV-2199, 2022 WL 3030390, at *4 (E.D.N.Y. Aug. 1, 2022) (emphasis added) (quoting *Spinelli v. NFL*, 903 F.3d 185, 209 (2d Cir. 2018)). Short of finding those elements, the common law analogue is not met – as the R&R correctly held in this case.

In their Objection, Plaintiffs argue that *Rosenberg* permits standing if a plaintiff shows either reliance *or* an injury. (ECF 434 at 6). Plaintiffs' summary of *Rosenberg* is misleading and inaccurate. Plaintiffs assert *Rosenberg* found standing could be established in "either of two instances." (ECF 434 at 6). That is simply not true. *Rosenberg* plainly holds that a plaintiff must have relied upon a false representation *and* suffered damage from "such reliance." *Rosenberg*, 2022 WL 3030390, at *4. *Rosenberg* does not stand for the proposition that standing can be found for a fraudulent representation claim without establishing the plaintiff detrimentally relied on the false statement. In advancing their flawed reading of the decision, it appears Plaintiffs are relying on a small portion of a quotation from an Eleventh Circuit case included as the last string cite for the proposition that an informational injury alone does not confer standing. *See id.* at *5 (citing *Cooper v. Atl. Credit & Fin., Inc.*, 822 F. App'x 951, 954–55 (11th Cir. 2020)). Worse, the cited case (*Cooper*), was decided before the Supreme Court's decision in *TransUnion* and addressed whether the plaintiff's confusion from actually reading a letter, *i.e.*, her *reliance* on its contents,

could cause *future* financial or legal consequences.[5] *Cooper*, 822, F. App'x at 954. *TransUnion* made clear, however, that *risk* of future harm is *not* sufficient to confer standing. 141 S. Ct. at 2205; *see also Maddox II*, 19 F.4th at 64 ("*TransUnion* established that in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm: 'No concrete harm; no standing.'"). In *TransUnion*, the Supreme Court even went so far as to explain that there was no concrete injury that could support Article III standing where plaintiffs "presented no evidence that" they "so much as opened" the documents containing the allegedly false statements, "nor that they were confused, distressed, or relied on the information in any way." 141 S.Ct. at 2213 (noting that these kinds of alleged misrepresentations are "bare procedural violations, divorced from any concrete harm"). Plaintiffs do not and cannot explain why the same result should not hold here; Plaintiffs did not rely on the allegedly false statements, and, as such, the allegedly false statements could not have led to a concrete injury sufficient to establish standing post-*TransUnion*.[6]

Plaintiffs' reliance on *McCrobie* and *Sykes* to save their claims is also misplaced. Both of those cases involved situations where the consumer was unaware of the existence of a lawsuit or a post-judgment assignment. *See McCrobie v. Palisades Acquisition XVI, LLC*, No. 15-cv-18, 2022 WL 1657226 (W.D.N.Y. Mar. 4, 2022) (analyzing claims related to garnishment where the defendant did not provide notice of a post-judgment assignment to the plaintiff); *Sykes v. Mel S.*

---

[5] To be clear, *Cooper* did not sever "reliance" and "harm from such reliance" as Plaintiffs suggest, but instead discussed whether the *risk* of future harm *from* reliance on a false statement conferred standing. Plaintiffs here did not rely on any of the alleged false statements, so there can be no risk of future harm to them stemming from any reliance.

[6] Plaintiffs' claims for false representations also fail for the additional reasons discussed in Defendants' objection (ECF 433), namely that the only purported injury is the default judgment, which can only be an "injury" or "harm" if deemed invalid. To deem the default judgment invalid, however, would violate the *Rooker-Feldman* doctrine.

*Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) (analyzing claims related to sewer service where consumer was completely unaware of the claim against her). Neither decision involved false representations made to consumers, as is alleged by Plaintiffs in this case. (*See* ECF 433 at 12–13, 17) (distinguishing, in greater detail, both decisions). Thus, neither decision is instructive on whether a consumer alleging false representations must show detrimental reliance to establish standing.

The law is clear that Plaintiffs cannot establish standing without showing reliance that led to a concrete injury. And the facts are clear that Plaintiffs did not rely on (or, even, read) the statements they allege were false. Accordingly, Plaintiffs' Objection should be overruled and the Court should accept the R&R's finding that Plaintiffs lack standing to pursue their claims based on alleged fraudulent or misleading statements in collection action filings because Plaintiffs did not rely on the alleged statements to their detriment.

## III. The R&R Correctly Dismissed Plaintiffs' Claims Based On Alleged False Credit Reporting For Lack Of Standing.

The R&R discussed, over the course of several pages, binding Second Circuit precedent establishing that plaintiffs seeking to bring claims based on alleged false credit reporting must show "that the adverse information was *further disseminated*, for example, to a potential creditor" in order to satisfy Article III's standing requirement. (ECF 423 at 34–38) (emphasis in original); *Maddox II*, 19 F.4th at 60–65 (finding that plaintiffs alleging claims based on false credit reporting did not have standing because they did not show that the allegedly inaccurate credit report was read by anyone or that they applied for any type of financing relying on a credit report). The R&R found that only one Plaintiff, Bifulco, made such a showing.[7] Using the Supreme Court's own

[7] Defendants objected to this finding. (ECF 433 at 19–20).

language from *TransUnion*, the R&R dismissed all other Plaintiffs' claims based on alleged false credit reporting because they had demonstrated, at best, "only an inaccuracy in an internal credit file, which, if it is not disclosed to a third party, causes no concrete harm." (ECF 423 at 38) (quoting *TransUnion*, 141 S. Ct. at 2210).

Plaintiffs object to the dismissal of their claims based on alleged false credit reporting for lack of standing. (ECF 434 at 9–10). Plaintiffs' Objection completely ignores binding Second Circuit precedent in *Maddox II*—the Objection does not even mention the decision, despite *Maddox II*'s central role in the R&R's analysis. (*Id.*). Instead, Plaintiffs urge the Court to follow non-binding decisions from the Seventh Circuit and a bankruptcy court. (*Id.*).[8]

Plaintiffs' only argument for why the Court should opt to follow non-binding decisions over binding authority is that the cases involved claims under the Fair Credit Reporting Act, and not the FDCPA. (*Id.*). Even if that distinction were meaningful (which it is not), Plaintiffs do not explain why the Court should (or even can) decline to follow binding Second-Circuit authority regarding the interpretation of *TransUnion*'s requirements for standing in the context of claims based on false credit reporting. The R&R recognized this, explaining that Plaintiffs read *Ewing* correctly but that the Court is bound by *Maddox II*. (ECF 423 at 36).

[8] The bankruptcy court case cited by Plaintiffs—*In re Anderson*, 641 B.R. 1, 13 (Bankr. S.D.N.Y. 2022)—is, in addition to non-binding, factually distinguishable. There, the plaintiff alleged he contacted the defendant after receiving a bankruptcy discharge and demanded it correct the tradeline to reflect the discharge. *In re Anderson*, 884 F.3d 382, 386 (2d Cir. 2018). The defendant allegedly refused. *Id.* When the court later addressed standing, it found "the injury" was the defendant's alleged "policy of refusing to correct its tradelines to pressure Anderson and the putative class members to pay their discharged debts." *Anderson*, 641 B.R. at 55. Here, Plaintiffs allege they have suffered reputational or financial harm from the alleged false credit reporting. None of them alleged, like *Anderson*, that they asked for the tradeline to be deleted and the request was denied as part of a pressure campaign to make them pay.

The R&R correctly held that *Maddox II* is binding in this District, and that it requires Plaintiffs show dissemination of the credit report in order to confer standing. *See, e.g.*, *Krausz v. Equifax Info. Servs.*, No. 21-CV-7427, 2023 WL 1993886, at *8 (S.D.N.Y. Feb. 14, 2023) (explaining that, post-*TransUnion*, to establish standing for claims based on allegedly false credit reporting "a plaintiff's credit report must have been actually disseminated to a third-party entity, and without actual dissemination, there is no concrete harm and thus no standing"); *Grauman v. Equifax Info. Servs., LLC*, 549 F. Supp. 3d 285, 292 (E.D.N.Y. 2021) (plaintiff's failure to show dissemination of his credit report to third parties meant that he could not establish a concrete injury from allegedly false credit reporting, as required for standing). Plaintiffs did not make the required showing of dissemination to third parties, and therefore do not have standing to pursue their claims based on alleged false credit reporting.[9] Plaintiffs' Objection on this issue should be overruled.

## IV. The R&R Correctly Concluded That A Rule 23(b)(2) Class Should Not Be Certified.

In pursuit of a Rule 23(b)(2) injunctive class, Plaintiffs sought both a "prohibitory injunction" on future credit reporting, and a "mandatory injunction" requiring "defendants to 'instruct' the credit bureaus and FICO to remove the tradelines relating to the student loan debts." (ECF 423 at 65). The R&R denied certification because: (i) as to the proposed "prohibitory" injunction, Plaintiffs did not show they were at risk of additional credit reporting, and (ii) as to the proposed "mandatory" injunction, Defendants confirmed tradeline removal requests for all Plaintiffs had been completed by February 8, 2015, at the latest. (*Id.* at 66). Put simply, the R&R denied certification of an injunctive class because Plaintiffs could not show that they had standing

[9] Notably, the credit reports at issue have been deleted and have no impact on Plaintiffs' current credit scores.

to pursue an injunction. Plaintiffs object to the R&R's denial of a Rule 23(b)(2) injunctive class only as it relates to the proposed "mandatory" injunction. (*See* ECF 434 at 3–5).

Plaintiffs' Objection is confounding because Defendants—specifically TSI-NCO—did exactly what Plaintiffs seek by way of injunctive relief: they instructed the credit reporting agencies "to remove the alleged debts as data points" that factor into a credit score calculation. (ECF 423 at 65) (citing Plaintiffs' Memorandum of Law in Support of Their Motion for Class Certification, ECF 314 at 24). For this reason alone, the R&R was correct that a Rule 23(b)(2) class should not be certified.

Despite this, Plaintiffs argue (for the first time) in their Objection that they continue to suffer "permanent harm" to their credit scores that the tradeline deletion requests (made over 8 years ago) did not address or cure. (ECF 434 at 3–5). Plaintiffs' only support for this novel theory is a 2014 report from the Consumer Financial Protection Bureau ("CFPB"). (*Id.*). The report, however, does not support Plaintiffs' new "permanent harm" theory, and, in fact, refutes it. On the only page cited by Plaintiffs, the report states that:

> ***When present***, a collections tradeline is incorporated as a derogatory factor in most credit scoring models, which use credit report information to predict a consumer's likelihood of repaying debts.

CFPB, "Consumer credit reports: A study of medical and non-medical collections" at 9, available at https://files.consumerfinance.gov/f/201412_cfpb_reports_consumer-credit-medical-and-non-medical-collections.pdf (last visited Apr. 26, 2023) (emphasis added).

As made clear by the report, a collections tradeline might impact a credit score *when present*. Plaintiffs do not explain (nor provide any factual or legal support for) how a no-longer-

present tradeline can have any impact on a credit score.[10] Indeed, it is illogical that a non-existing, *i.e.*, non-present, tradeline would impact a current or future credit score. The R&R correctly denied certification of a Rule 23(b)(2) injunctive class because none of the named Plaintiffs have, or could, establish a continuing harm from tradelines deleted over 8 years ago.

**V. The R&R Correctly Declined To Certify Four Classes Instead Of One So That Plaintiffs Could Avoid Statutory Limits On Their Potential Recovery.**

In their motion for class certification, Plaintiffs asked the Court to certify "a single, nationwide class under Fed. R. Civ. P. 23(b)(3) . . . and then to 'subdivide' that class 'for purposes of notice and application of any statutory damages cap,' such that 'there is a Rule 23(b)(3) class for each Trust and each state.'" (ECF 423 at 20). After oral argument, Plaintiffs revised their request and sought certification of four statewide Rule 23(b)(3) classes—identical in all respects except that each class would include claims against one of the four Trust Defendants. (ECF 409 at 5–6).[11]

The R&R recommended certification of a single, statewide Rule 23(b)(3) class.[12] In no uncertain terms, the R&R explained that Plaintiffs' request four classes instead of one "appears to be motivated simply by plaintiffs' desire to circumvent the $500,000-per-class statutory damages cap under [the Fair Debt Collection Practices Act]." (ECF 423 at 62 (noting that "splitting their Rule 23(b)(3) class into four classes would let [Plaintiffs] seek up to $500,000 per class under

[10] For example, none of the Plaintiffs produced their post February 2015 credit scores with an explanation that the deleted tradelines were a factor.

[11] The Trust Defendants are Defendants National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-2, and National Collegiate Student Loan Trust 2007-3.

[12] Defendants timely objected to the R&R's recommendation that certification of any class was appropriate. (ECF 433). In responding to Plaintiffs' Objection, Defendants do not admit or suggest that certification of any class is appropriate here; it is not, for the reasons set forth in Defendants' Objection.

FDCPA" instead of $500,000 total); *see also id.* at 20–21 n.15 ("The obvious purpose of plaintiffs' request for a separate Rule 23(b)(3) class for each Trust and each state was to overcome the $500,000 cap that would otherwise apply to a single nationwide class, and to make it possible for each class . . . to seek its own $500,000 statutory award.")).

Plaintiffs' argument for why there should be four classes—one for each Trust Defendant—was that each of the Trust Defendants is "corporately distinct" and holds different loans, "as to which the 'chain of title' documents may vary." (ECF 423 at 49 (citing Plaintiffs' Rule 23 Supplemental Brief (ECF 409) at 1–2)). The R&R found that this argument conflicted, in an irreconcilable fashion, with Plaintiffs' contention that class certification was appropriate at all:

> As a matter of logic, it cannot be the case that common questions of fact and law predominate here to the degree required to justify class certification—except that 'each Trust is its own legal entity, with its own distinct facts,' Pl. R. 23 Supp. Br. at 9, necessitating the multiplication of classes . . ..

(ECF 423 at 63). If Defendants' conduct varied substantively depending on which Trust Defendant owned a Plaintiff or class member's loan, the commonality and predominance requirements would not be satisfied and class certification would not be available. (*Id.*). Relying on the earlier ruling that Plaintiffs had sufficiently established commonality, and noting that Plaintiffs "do not point to any actual variation in the alleged scheme, or the evidence needed to prove it, between one Trust Defendant and another," the R&R found there was no reason to certify four separate classes. (*Id.*).

Plaintiffs' brief objection on this issue is confusing at best. Plaintiffs do not actually discuss or quibble with the R&R's stated reason for denying their request for four classes. Instead, Plaintiffs argue that the R&R's recommendation is flawed because: (1) certification of four classes will not "expose[] Defendants to potentially hundreds of classes nationally," and (2) the FDCPA "does not prohibit multiple classes." (ECF 434 at 11). Neither of these arguments demonstrates any error in the R&R. *First*, it is clear from the R&R that the Magistrate Judge properly understood

Plaintiffs' revised request for class certification to be limited to four statewide classes—instead of the potentially hundreds of subclasses initially requested in Plaintiffs' motion for class certification. (*See* ECF 423 at 20–21, 63–64). *Second*, the fact that the FDCPA may not prohibit multiple classes does not mean that certification of multiple classes is appropriate *in this case*.

The R&R's rejection of Plaintiffs' request to certify four classes is well-reasoned and should not be overturned.[13] Plaintiffs have not identified any differences in the scheme they allege based on which Trust Defendant owns a particular borrower's loan that could potentially necessitate a separate class for each Trust Defendant. To the contrary, Plaintiffs allege "uniform[]" conduct, regardless of the Trust Defendant involved. (ECF 423 at 63). And, if there were indeed substantive differences in Plaintiffs' claims or the evidence needed to prove them, it would destroy or at least throw into serious question whether common questions predominate, requiring reconsideration or denial of the certification of any Rule 23(b)(3) class. (*Id.*). Plaintiffs' request for certification of four classes instead of one class is nothing more than a blatant attempt to avoid the statutory damages cap under the FDCPA, and should not be seriously entertained.

**CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court strike Plaintiffs' Objection as untimely or, in the alternative, overrule Plaintiffs' Objections to the R&R.

Dated: New York, New York
April 28, 2023

By: */s/ Gregory T. Casamento*
Gregory T. Casamento
R. James DeRose, III
LOCKE LORD LLP
Brookfield Place, 20th Floor
200 Vesey Street
New York, New York 10281
(212) 415-8600
gcasamento@lockelord.com
rderose@lockelord.com

[13] That is, if any class is to be certified here, it should be only one class and not four.

J. Matthew Goodin
LOCKE LORD LLP
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
(312) 443-0700
jmgoodin@lockelord.com

*Attorneys for Defendants National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-2, and National Collegiate Student Loan Trust 2007-3*

By: */s/ Bryan Shartle*
Bryan Shartle
Michael Alltmont
SESSIONS, ISRAEL & SHARTLE LLC
3850 N. Causeway Blvd., Ste. 200
Metairie, Louisiana 70002
(504) 846-7917
bshartle@sessions.legal
mallmont@sessions.legal

James K. Schultz
SESSIONS, ISRAEL & SHARTLE LLC
1545 Hotel Circle South, Suite 150
San Diego, California 92108
(619) 296-2018
jschultz@sessions.legal

Aaron R. Easley
Sessions, Israel & Shartle, LLC
3 Cross Creek Drive
Flemington, New Jersey 08822-4938
(908) 237-1660
aeaslet@seccions.legal

*Attorneys for Defendants Transworld Systems, Inc. and EGS Financial Care, Inc.*

By: */s/ Carol A. Lastorino*
Carol A. Lastorino
Amanda Rae Griner

RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3101
carol.lastorino@rivkin.com
Amanda.griner@rivkin.com

*Attorneys for Defendant Forster & Garbus LLP*

**CERTIFICATE OF SERVICE**

I, Gregory T. Casamento, an attorney, hereby certify that on the 28th day of April, 2023, I served a true and correct copy of the foregoing *Defendants' Response in Opposition to Plaintiffs' Objections to Certain Aspects of Magistrate Judge Moses' March 13, 2023 Report and Recommendation* via ECF on all parties entitled to notice.

*/s/ Gregory T. Casamento*
Gregory T. Casamento