USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/8/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHERINE SEAMAN, individually and on behalf of all others similarly situated, et al.,

           Plaintiffs,

-against-

NATIONAL COLLEGIATE STUDENT LOAN TRUST 2007-2, et al.,

           Defendants.

18-CV-1781 (PGG) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court in this certified class action is plaintiffs' motion (Dkt. 455) to compel defendants to produce detailed individualized information concerning the absent class members, for the purpose of including information concerning each member's "potential damages" in the notice of pendency to be sent pursuant to Fed. R. Civ. P. 23(c)(2)(A). *See* Pl. Mem. (Dkt. 456) at 4. Defendants oppose the motion, arguing that there is no requirement that such information be included in the notice and that it would be particularly unwise to permit it in this case, where plaintiffs' damages theory is – as yet – untested. *See* Def. Mem. (Dkt. 457) at 4-5. Defendants are largely correct. Consequently, plaintiffs' motion will be denied, and the Court will set a deadline for plaintiffs to submit a proposed form of class notice.

## Background

The defendants in this case are the holders of plaintiffs' student loan debt (the Trust Defendants), their servicer (TSI-NCO), and the law firm they engaged to collect plaintiffs' student loan debt (Garbus). Plaintiffs claim that these defendants engaged in a fraudulent "default mill" scheme, carried out in state courts, "to obtain payment on student loan debts that they [could not] prove they [were] owed," in violation of the Fair Debt Collection Practices Act (FDCPA) and state law. *Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2*, 2023 WL 2975152, at *1 (S.D.N.Y. Mar.

13, 2023) (*Seaman I*) (cleaned up), *adopted in part, rejected in part*, 2023 WL 6290622 (S.D.N.Y. Sept. 27, 2023) (*Seaman II*). Allegedly as a result of this scheme, defendants obtained default judgments against more than one thousand borrowers across New York State, after which they commenced judgment collection efforts, including wage garnishments, and reported the judgments to the national credit bureaus. *See Seaman I*, 2023 WL 2975152, at *2.

During the discovery period, before plaintiffs moved for class certification, they obtained "a sampling of Defendants' documents concerning [the] state-court actions, initially limited to 5% of the putative class members in New York." *Seaman I*, 2023 WL 2975152, at *9 (internal quotation marks and citation omitted). Discovery closed on May 21, 2021. (Dkt. 297.) No request was made, before discovery closed, to expand the sample beyond the initial 5%.

On March 13, 2023, I recommended that a single class be certified, pursuant to Rule 23(b)(3), consisting of:

> [A]ll persons who have been sued in New York State court debt collection lawsuits from November 1, 2012 through February 27, 2018, where the plaintiff was one of the Trust Defendants, with TSI-NCO acting as servicing agent and Forster as plaintiff's counsel, and where a default judgment was obtained, but *excluding* any individual who appeared in state court to defend themselves and against whom the Trust Defendant named as plaintiff was awarded a judgment on the merits.

*Seaman I*, 2023 WL 2975152, at *34. On September 27, 2023, the Hon. Paul G. Gardephe, United States District Judge, certified the class so defined (the Class). *Seaman II*, 2023 WL 6290622, at *20-32. On February 21, 2024, the Court of Appeals denied defendants' petition for interlocutory review of that certification order pursuant to Fed. R. Civ. P. 23(f). (Dkt. 447.)

### The Untested Damages Theory

Plaintiffs seek both statutory and actual damages. *See Seaman I*, 2023 WL 2975152, at *8. Under FDCPA, statutory damages are limited to $1,000 in an individual action and a total of $500,000 "or one per centum of the net worth of the debt collector" (whichever is less) in a class

2

action. 15 U.S.C. § 1692(a)(2)(A)-(B). In this case, the issue of actual damages is complicated by the *Rooker-Feldman* doctrine, under which "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments[.]" *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). Plaintiffs recognize that the *Rooker-Feldman* doctrine would bar this Court from vacating the state court judgments entered against them. Nor do they seek to recover the full amount of those judgments as damages here. They do, however, seek recovery of the funds that defendants have *collected* on the default judgments through garnishment. (*See* Dkt. 410 at 1.) Plaintiffs argue that this does not "present a *Rooker-Feldman* problem" because, *inter alia*, "the garnishment process is separate from the judgment, and requires a series of independent, unilateral actions by the party seeking garnishment (and their counsel)." (*Id.* at 2, 5.)

Defendants disagree, arguing that any damages award measured by collections against the default judgments would be barred by the *Rooker-Feldman* doctrine because plaintiffs "do not allege any improper post-judgment collection activity," and thus, in order to award relief, "this Court would have to find the state-court judgments are invalid, which *Rooker-Feldman* clearly prohibits." (Dkt. 415 at 1, 4.)

The Court has not yet resolved this issue. *See Seaman I*, 2023 WL 2975152, at *22 n.28. The parties agree that it is likely to be presented on summary judgment.

### The Motion

Although it has now been more than a year since the Class was certified, and seven months since the Court of Appeals denied interlocutory review, plaintiffs have yet to submit a proposed form of class notice pursuant to Rule 23(c)(2)(A). During a conference before this Court on August 7, 2024, they explained that they were attempting to obtain class-wide discovery, including production of "all class member files not already produced," 8/7/24 Tr. (Dkt. 453) at 18:7-10; *see*

3

*id.* at 18:19-20 ("in other words, . . . the other 95 percent"), because these files would reveal, among other things, the amount of each class member's default judgment, the amount collected on that judgment, and the amount, if any, still outstanding. Plaintiffs want that data now because they wish to provide individualized information to each Class member, in the class notice, concerning "the amount that's owed," *id.* at 8:8, 8:25-9:2, that is, the amount of the default judgment entered against that plaintiff that defendants managed to collect. *Id.* at 12:3-6, 14:17-15:7. Additionally, plaintiffs explained, they received inconsistent information from defendants concerning the number of plaintiffs in the Class, and "would be more comfortable if we could see the documents so that we could identify the class members ourselves." *Id.* at 22:20-22.

Defendants, for their part, confirmed their long-held view that the *Rooker-Feldman* doctrine bars any award of actual damages measured by the amount collected on the default judgments. *See* 8/2/24 Tr. at 30:1-31:5. Moreover, according to plaintiffs, any such award (if made) would have to be "set off" against the amount (if any) still owed by that plaintiff on the judgment. *Id.* at 25:17-20. With regard to the class list, defendants reported that they had just provided an Excel file with the names and addresses of all 1,102 Class members – which, in defendants' view, is all that plaintiffs need to prepare the class notice. *Id.* at 34:7-9, 35:24-36:4, 39:19. Plaintiffs, however, complained that the latest Excel file did not include three of the six named plaintiffs, and was therefore, obviously, incomplete. *Id.* at 39:23-40:23.

Unable to resolve the issues at the conference, I directed plaintiffs to present their request in the form of a motion to compel discovery. (Dkt. 453.)

**The Parties' Positions**

Relying principally on *Strauch v. Computer Scis. Corp.*, 2020 WL 4289955 (D. Conn. July 27, 2020) and *Aguayo v. U.S. Bank*, 2015 WL 13345609, at *1-2 (S.D. Cal. Aug. 6, 2015),

4

plaintiffs contend that individualized information concerning each plaintiff's student debt (including the name of the originating bank, the name of the Trust Defendant that brought the collection action, the amount of the default judgment obtained, the amount of the judgment debt collected, and the amount still outstanding) should be included in the class notice for two reasons: (1) to "convince Class members that [the notice] is not a scam or misinformation or a waste of time," Pl. Mem. at 5, and (2) because "Due Process requires that members of the Class be provided such data in their Notice, to enable them to make a fully informed decision on opting out." *Id.* at 6. Consistent with their theory of actual damages, plaintiffs propose to advise each class member that she may be able to recover whatever amount defendants collected on the default judgment obtained against her. *See id.* at 7; 8/7/24 Tr. at 14:17-15:10 (absent class members would "find that information very useful in making their decision as to what amount they think they're owed").[1] Alternatively, defendants argue that they are entitled to see defendants' complete loan and collection files as to all 1,100-plus Class members to perform a "quality check" on the class list provided by defendants. *Id.* at 9-10.

Defendants respond that neither Rule 23 nor applicable caselaw requires individualized class notices, *see* Def. Mem. at 2-4, much less notices that "include estimated amounts of potential damages recoverable by each individual class member." *Id.* at 4. Such information, they argue, is not required even in the settlement context, and would be particularly ill-advised in this case, where "even the categories of potential damages remain unclear." *Id.* at 5. Nor, according to defendants, does anything about this case require a special class notice to convince recipients that it is "not a

---

[1] Defendants have already provided aggregate figures, in the form of interrogatory responses, disclosing the "total amount collected [from the Class] versus amount of judgments." Pl. Mem. at 7 n.4. But they have refused to "produce the more particularized member-specific documents" underlying the aggregate numbers, *id.*, which would permit plaintiffs to provide an individualized damages estimate to each Class member.

scam." *Id.* at 6. As for the accuracy of their class list, defendants report that they have undertaken a "reasonable process to identify all individuals who satisfy the class criteria," and will "send a revised list of all class members shortly." *Id.* at 8, 9.

In their reply brief, filed on September 25, 2024, plaintiffs repeat that the class notice should include individualized information regarding each recipient's potential damages, now relying on *Thompson v. Metro. Life Ins.*, 216 F.R.D. 55, 67-68 (S.D.N.Y. 2003), and *Mangone v. First USA Bank*, 206 F.R.D. 222, 234 (S.D. Ill. 2001) – both originally cited by defendants. *See* Pl. Reply Mem. (Dkt. 458) at 1-2. Plaintiffs add that they have not yet seen defendants' revised class list, and argue, on this basis, that they will surely need defendants' files to quality-check that list if and when it is produced. *Id.* at 4-5.

## Discussion

When a class is certified under Rule 23(b)(3), it must be given "the best notice that is practicable under the circumstances" of the pendency of the class action, "including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must "clearly and concisely" state, in plain language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

When the parties propose to settle a class action, or seek to certify a class for settlement purposes, the court may require that the class be given additional information, including a description of the proposed settlement amount and other terms, and "a new opportunity to request

6

exclusion." Fed. R. Civ. P. 23(e)(1), (e)(4). In the Second Circuit, notice of a proposed class settlement must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the settlement] proceedings." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (*quoting Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

"Without the notice requirement it would be constitutionally impermissible to give the judgment binding effect against the absent class members." 7A Wright, Miller & Kane, Federal Practice and Procedure § 1786 (3d ed.). However, "[t]he Court is given broad power over which procedures to use for providing notice so long as those procedures are consistent with the standards of reasonableness imposed by the due process clause." *Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72, 80 (S.D.N.Y. 2003).

Nothing in Rule 23 requires that a notice of pendency issued pursuant to Rule 23(c)(2)(B) inform the members of a newly-certified class about the potential damages recoverable, much less that each member be provided a personalized damages preview. Nor does the case law support – even remotely – plaintiffs' broad assertion that "the defendants in a class action must provide member-by-member damages data for inclusion in the notice where such figures are readily calculable from the defendants' own records." Pl. Mem. at 6. The case upon which plaintiffs principally rely concerned a notice sent *after trial* (by which time damages had been determined) to a small number of class members who (due to data errors) did not receive any notice when the class was certified. *Strauch*, 2020 WL 4371816, at *4-5. Under these highly unusual circumstances, the court agreed with plaintiffs that "information regarding the amount of damages due to each recipient is material to making an 'informed' decision as to whether to remain a member of the class or pursue an individual action." *Id.* at *6.

7

The other cases cited by plaintiffs for the proposition that a notice of pendency should contained individualized damages information are similarly inapposite. In *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1103-05 (5th Cir. 1977), the court held that class members should be told that a partial settlement with certain defendants had already been preliminarily approved by the court. *Id.* at 1105 (reasoning that without this information, "an absentee class member lacks an essential fact or in the decisionmaking equation"). In *Thompson*, the question was whether a Rule 23(e)(1) notice sent to a class being certified for settlement purposes was inadequate because it did "not disclose the approximate amount of damages attributable to defendant's wrongdoing." 216 F.R.D. at 67. The court held that the notice was adequate, explaining that, even in the settlement context, "[n]either Rule 23 nor due process . . . requires that the notice report the estimated value of damages." *Id.*[2] *See also Mangone*, 206 F.R.D. at 233 (rejecting plaintiffs' claims that a post-settlement notice failed to provide enough information concerning damages, because "none of the items complained of are required by the notice requirements set out in F.R.C.P. 23 or due process"). And in *Aguayo*, 2015 WL 13345609, at *1-2, which arose under a California statute governing automobile financing, the question was whether the class notice should disclose the potential adverse tax consequences of a class win.[3] The court held that the class members "should be alerted to the potential tax consequences," *id.* at *2, but rewrote the

---

[2] Plaintiffs incorrectly claim that the *Thompson* court "ruled" that the notice "must 'include[] an individualized statement of relief,'" Pl. Reply Mem. at 1 (quoting *Thompson*, 216 F.R.D. 55, 67-68). The *Thompson* notice did include such a statement, entitled "Your Benefits Under the Settlement." *Id.* However, the court did not "rule" that a class notice "must" include such a statement, even where the purpose of the notice was to inform the class about a proposed settlement. Moreover, as noted above, the court expressly held that the notice need *not* include an estimate of the damages recoverable at trial. *Thompson*, 216 F.R.D. at 67.

[3] The *Aguayo* plaintiffs sought "nullification" of certain deficiency claims made against them by the defendant bank. The bank stated that if directed to nullify those claims it would be required to report the deficiencies as "forgiven debt," which could be taxable as income to the consumers. *Aguayo*, 2015 WL 13345609, at *1.

8

paragraph prepared by plaintiffs, because it was "confusing." *Id.* at *2-3. There was no suggestion, in *Aguayo*, that the class notice should include individualized damages information (nor that plaintiffs were entitled to discovery for that purpose).[4]

Some of the cases featured in plaintiffs' briefs do not involve the content of class notices at all. For example, in *Abadeer v. Tyson Foods, Inc.*, 2014 WL 129318 (M.D. Tenn. Jan. 13, 2014), which involved wage claims by hourly workers at a meat processing plant, the court decided the parties' cross-motions for summary judgment, set a trial date for the remaining claims in dispute, and then required the defendant employer to furnish the names of employees hired since the class was originally certified – so that they could be notified and given an opportunity to opt out – as well as their "pay and punch data." *Id.* at *1, *5. Insofar as the opinion reveals, however, the purpose of the "pay and punch data" was to "calculate damages before trial," *id.* at *1, not to provide individualized calculations in the class notice.

Here too, there may a come a time when plaintiffs are entitled to member-by-member data to calculate damages for purposes of trial (or settlement administration). But this is not that time. The final form of the Class will not be determined until notice has been given and the opt-out period has run. *See Morgan v. Rohr, Inc.*, 2023 WL 4721084, at *3 (S.D. Cal. July 24, 2023)

---

[4] *Aguayo* is not the only federal case requiring the named plaintiffs to disclose potentially *unfavorable* information in a Rule 23(c)(2)(B) notice of pendency. Where, as here, the class is suing under a federal statute with a class-wide statutory damages cap, several district courts have ruled that the notice of pendency must explain the effect of that cap on each plaintiff's potential statutory award. *See*, *e.g.*, *Jordan v. Commonwealth Fin. Sys., Inc.*, 237 F.R.D. 132, 140 (E.D. Pa. 2006) (certifying class under FDCPA but requiring that the class notice "clearly explain the difference in the size of their recovery should they choose to pursue recovery as part of this class") (quoting *Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 415 (N.D. Ill. 2006)); *Sarafin v. Sears, Roebuck & Co.*, 73 F.R.D. 585, 588 (N.D. Ill. 1977) (certifying 300,000-member class under the Truth in Lending Act, which permitted individual awards up to $1000 while limiting the aggregate award in a class action to $100,000, but requiring plaintiffs to "clearly inform the potential class member," in the notice of pendency, "that if he joins the class his prospects for recovery will be drastically reduced," potentially to "approximately thirty cents" per member).

(noting that "[p]rior to class certification and the conclusion of the opt-out period," member-by-member data "was irrelevant at best and potentially misleading at worst"). There is simply no basis in the law for plaintiffs' contention that it is necessary or appropriate to put the cart before the horse; that is, to compute (and supply) individualized information concerning potential damages in connection with a Rule 23(c)(2)(B) notice of pendency. To the contrary: given the uncertainty surrounding plaintiffs' actual damages theory, it would be misleading to suggest, in the notice of pendency, that if the lawsuit is successful each class member could recover whatever sums defendants previously collected from that member.[5] Nor is there any reason to believe that in this case – unlike the thousands of other cases certified as class actions every year by federal courts – individualized details are required to "convince" recipients that "this case is real" and the notice is not "a scam or misinformation or a waste of time." Pl. Mem. at 5.[6] Consequently, plaintiffs are not

---

[5] This risk could, perhaps, be mitigated by also informing the class members that plaintiffs' damages theory has not been approved by the Court and that – if it fails – the maximum recoverable damages for most plaintiffs may be their share of the $500,000 in statutory damages potentially recoverable under FDCPA. *See Jordan*, 237 F.R.D. at 140; *Hernandez*, 236 F.R.D. at 415. Such a discussion, however, would be difficult to present "clearly and concisely," as required by Rule Civ. P. 23(c)(2)(B), and could well serve only to confuse the class members and complicate their decision-making process.

[6] Plaintiffs posit that the unnamed members of the Class will likely have fuzzy memories for their student loans, the collection actions and judgments against them, and any resulting collections. *See* Pl. Mem. at 5-6. That may be. However, it is extremely common, in class action litigation, for both class membership and damages to turn upon events that are even less memorable, such as when (and at what price) each class member purchased or sold a specific stock or bond, what model of a particular consumer product each class member purchased during the relevant time period, or exactly how many overtime hours each class member worked at a job that he may no longer hold. Tellingly, plaintiffs do not point to any case in which a court has required that this type of information be provided to the class members on an individualized basis in the notice of pendency, either to convince them that the case is "real" or to assist them in determining whether to opt out of the class.

entitled to the discovery they seek for purposes of providing individualized information in the notice of pendency.

That leaves the question whether plaintiffs are entitled to discovery for purposes of verifying the accuracy of defendants' class list. As noted above, defendants advised the Court, in their opposition brief, that they had developed a "reasonable process to identify all individuals who satisfy the class criteria," Def. Mem. at 8, and stated that they would send their revised class list to plaintiffs' counsel "shortly." *Id.* at 9. Unfortunately, the record before this Court does not reveal when the revised list was actually produced or whether plaintiffs are satisfied with it. Consequently, the Court will reserve judgment – briefly – on this issue.

## Conclusion

For the reasons set forth above, plaintiffs' motion (Dkt. 455) to compel defendants to produce individualized information concerning every absent class member is DENIED insofar as the purpose of the discovery is to obtain individualized information for inclusion in the notice of pendency. Plaintiffs are directed to promptly prepare a form of notice in accordance with Rule 23(c)(2)(A), after which they must meet and confer in good faith with defendants as to its contents and then, no later than **October 22, 2024**, present the proposed notice to the Court**.** If the parties are in disagreement about the contents of the notice, they must set out their respective views in a single joint letter, no longer than three pages in total. Defendants are hereby directed to promptly produce the revised class list (if they have not already done so), and to meet and confer in good faith with plaintiffs concerning its adequacy. If the parties are in disagreement as to the quality of the list, they must submit it to the Court no later than **October 22, 2024**, together with a single joint letter, no longer than three pages in total, setting forth their respective views.

The Clerk of Court is respectfully directed to close the motion at Dkt. 455.

Dated: New York, New York
October 8, 2024                             **SO ORDERED**.

                                                                    _____
                                                                    **BARBARA MOSES**
                                                                    **United States Magistrate Judge**