**FRANK** LLP
ATTORNEYS AT LAW

305 BROADWAY
SUITE 700
NEW YORK, NY 10007
212 682 1853
mfrank@frankllp.com

**VIA ECF** September 15, 2025

Hon. Barbara Moses, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl St., Room 740
New York, NY 10007

Re: *Seaman et al. v. Nat'l Collegiate Student Loan Trust 2007-2 et al.*, 18-CV-1781

Dear Judge Moses:

We represent Plaintiffs and serve as Class counsel in the above-captioned case. We submit this letter pursuant to Parts 2.b & -.e of the Court's Individual Practices, concerning the Trust Defendants' (the "Trusts") letter-motion of September 10, 2025, requesting the Court compel Plaintiffs to pay fees purportedly owed to their proposed expert, Roger Saylor (ECF No. 509) (the "Letter").

The Trusts' Letter mischaracterizes the controlling law, as set forth in the Court's Order of January 6, 2025, concerning potential fees for Saylor (ECF No. 477) (the "Order"). The Trusts' Letter is premature, as the Court has not yet ruled on whether to accept Saylor as an expert, nor on what kind of fees he can receive if so accepted.

More troubling, the Trusts' Letter violates the Court's Individual Practices, because the Trusts filed their letter after refusing Plaintiffs' reasonable request for a meet-and-confer. The Court should deny all relief requested in the Letter (which asserts the right to attorney fees as well as fees for Saylor). To ensure compliance with the Court's Individual Practices' meet-and-confer rule, the Trusts should reimburse Plaintiffs for their attorney fees spent on this response. This all should have been resolved by a phone call, as Plaintiffs proposed but the Trusts refused.

## The Trusts' Demand For Payment Is Premature

The Order did not award Saylor any fees, instead making clear that fees under Rule 26 cannot be awarded where the opponent has "move[d] to preclude [the proposed expert] under *Daubert*." *Trombetta v. Novocin*, No. 18-cv-993, 2023 U.S. Dist. LEXIS 46834, at *5 (S.D.N.Y. Mar. 20, 2023) (Cave, Mag. J.) (cited by Ord., 2–3). Yet, the Trusts' Letter insists that Plaintiffs must pay expert fees pursuant to Rule 26 immediately, before the Court accepts him as an expert, and with Plaintiffs' *Daubert* motion[1] disputing his expertise not yet decided. (Ltr., 1–2; *see also* ECF Nos. 479–483 (*Daubert* motion papers) (filed Mar. 3–21, 2025)).

[1] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

Parties are not required to pay for opponents' failed attempts to offer experts. *Trombetta*, 2023 U.S. Dist. LEXIS 46834, at *5 (cited by Ord., 2–3) (also cited by Ltr., 1). The Trusts' reliance on *Trombetta* to the contrary is misplaced: the *Trombetta* court denied the fee request as premature, observing that "the amount of fees to which [a proposed expert] is entitled depends on whether he is [accepted by the court as] an expert witness entitled to reasonable fees under Rule 26(b)(4)(E)(i) . . . ." *Trombetta*, 2023 U.S. Dist. LEXIS 46834, at *5 (denying fees request as premature); *see, e.g.*, *Flynn v. CNN, Inc.*, No. 21-cv-2587, 2023 U.S. Dist. LEXIS 120946, at *3 (S.D.N.Y. July 13, 2023) (Cave, Mag. J.); *DeRienzo v. Metro. Transit Auth.*, No. 01-cv-8138, 2004 U.S. Dist. LEXIS 439, at *5-6 (S.D.N.Y. Jan. 14, 2004) (Motley, J.). . The Trusts' only other cited case is inapposite. *See Mendez-Caton v. Caribbean Family Health Ctr.*, 340 F.R.D. 60, 66 (E.D.N.Y. 2022) (Merkl, Mag. J.) (cited by Ltr., 1). In *Mendez-Caton*, a medical-malpractice case, the expert was automatically accepted by the Court because neither party challenged the need for an expert or the expert's qualifications. *Id.* at 64–65.[2]

Here, in contrast, Plaintiffs have disputed any Defendant's entitlement to any "expert" testimony on liability (which the Trusts proposed years after discovery closed). The law does not automatically require shifting of fees, and Plaintiffs consistently have disputed that Saylor should <u>ever</u> be allowed fees, even if the Court accepted him as an expert. (*See* Pls.' *Daubert* Br., (ECF No. 480); *see also* ECF Nos. 466, 469 & 476 (Plaintiffs' letters-in-opposition re Trusts' proposed expert) (filed Dec. 4, 13 & 31, 2024)). The Order simply said he <u>might</u> be eligible for some fees <u>if</u> he's admitted as an expert to any extent. (Ord., 2–3 (citing *Trombetta*)).[3]

**<u>Saylor's Bill Is Inflated</u>**

The Order's cited law also makes clear that—even if Saylor is accepted as an expert (which he shouldn't be)—the fees sought are excessive. The Trusts offer no support for Saylor's asserted $500 hourly rate for badly remembering events from decades ago. (Ltr., 2 n.1). In the lone case cited by the Trusts in support of this figure, the expert was still active in his field, working as a highly-paid chief spinal surgeon at one of New York City's largest hospitals. *Addison v. Gordon*, 338 F.R.D. 577, 578 (S.D.N.Y. 2021) (Aaron, Mag. J.) (cited by Ltr., 2 n.1). Saylor has not worked in securitization in nearly twenty years, and remembers so little about that era of his life that he couldn't recall names from back then. (Pls.' *Daubert* Br., 5–6 (ECF No. 480)). Plaintiffs should pay Saylor what everyone else in the securitization industry has been paying him lately for structuring securitizations—nothing.

---

[2] The Order cited *Mendez-Caton* only for the noncontroversial proposition that an <u>accepted</u> expert should be compensated. (Ord., 2).

[3] None of the other decisions cited by the Order supports the Trusts' argument. Where these cases granted expert fees, they were analogous to *Mendez-Caton* in that the courts there granted some fees to experts not challenged under *Daubert* and where the only dispute was the amount. *E.g.*, *Mannarino v. United States*, 218 F.R.D. 372, 373–76 (E.D.N.Y. 2003) (Levy, Mag. J.) (granting fees for medical expert where no *Daubert* motion was pending) (cited by Ord., 2–3).

Moreover, unlike with spinal surgery or other scientific fields, there is no recognized "expertise" in student loan asset-backed securitizations ("SLABS"), the field at issue here. (Pls.' *Daubert* Br., 18–21 (demonstrating absence of "experts" concerning SLABS)). Further, while *Addison*'s expert was still practicing medicine at the time of deposition, Saylor hasn't worked on Wall Street in nearly two decades. *See* Saylor's CV, at 1 (ECF No. 481-1); *see also Hobson v. Kemper Indep. Ins. Co.*, No. 20-cv-00812, 2022 U.S. Dist. LEXIS 155781, at *10 (D. Conn. Aug. 30, 2022) (limiting construction expert's hourly rate to $220 where he'd been out of industry for two decades). Similarly, Saylor no longer pays New York's high living costs; his current residency in lower-cost-of-living western North Carolina militates against a high hourly rate. *Hobson*, 2022 U.S. Dist. LEXIS 155781, at *10. Instead, the Trusts invented the idea of a "SLAB expert" to whitewash their lack of a witness with first-hand knowledge to explain away their documents' glaring inadequacies.

Next, the Trusts' exorbitant $500 hourly rate is simply without basis. (Ltr., 1–2 & Ex. A (Trusts' itemization re Saylor) (ECF No. 509-1)). Even if Saylor were accepted as an expert, the Order emphasizes that any expert's hourly rate for preparation time must be capped at 70% of the rate for testimonial time. (Ord., 3) (summarizing Second Circuit law). At best, the Trusts' demanded $4,000 for preparation time, (*see* Ltr., 1–2 & Ex. A), is worth $2,800 under the law, (Ord., 3).

Last, the Trusts impermissibly demand Saylor be compensated for time spent communicating with the Trusts' counsel, which comprised roughly 71% of his preparation time. (Ltr., 1–2 & Ex. A). The law prohibits such inflation. *Hobson*, 2022 U.S. Dist. LEXIS 155781, at *10 (disallowing fees for time spent communicating with retaining counsel).

**<u>Saylor's Bill Confirms He Is Not An Expert</u>**

Saylor's bill shows he didn't read the documents he claimed to have read, further supporting Plaintiffs' motion to preclude. His report falsely swears that he reviewed dozens of documents, of numerous different types, including prospectuses for investors, note-purchase agreements, and purported collection-account records concerning Plaintiffs. (Report at ¶ 8.a–s (listing various documents) (ECF No. 481-1) (dated Jan. 24, 2025)). However, his bill admits he reviewed just <u>one type</u> of document: the so-called "True Sale Opinions." (*See* Saylor's Bill (ECF No. 509-1 at ECF Page 4 of 4)).[4] Setting aside Saylor's fraud on the Court by asserting he read documents he apparently did not, review of only these "Opinions" <u>cannot</u> provide a sufficient basis for anyone to authenticate the assignments said to underly these SLABS.

Knowing now that Saylor did not read case documents as he claimed, his deposition performance suddenly makes sense. At deposition, he consistently betrayed a stunning ignorance on key issues—for example, opining that the Trusts cannot be parties to a legal proceeding. (Pls.' *Daubert* Br., 20–21).

[4] Plaintiffs previously detailed why these "Opinions" cannot mean what Saylor and the Trusts say they do—neither when read on their own, nor in context against the larger universe of documents in the record here. (Pls.' *Daubert* Br., 11–12).

Finally, Saylor's bill demands $1,109.15 for his Marriott stay at time of deposition, (*see* ECF No. 509-1 at ECF Page 4 of 4)—but that's nearly triple what a room actually costs, according to Plaintiffs' research. The Court should not condone such bill-padding. *Marky's Martial Arts, Inc. v. FC Online Mktg.*, No. 19-cv-03363, 2022 U.S. Dist. LEXIS 166340, at *42–43 (S.D.N.Y. Sep. 14, 2022) (Figueredo, Mag. J.) (denying fees request) (listing cases).

**The Trusts' Letter Violates This Court's Rules, Causing Unnecessary Attorney Fees**

This Court's Individual Practices (the "I.P.") emphasize that a party cannot bring a discovery dispute before the Court unless it has requested, and completed, a meet-and-confer with its opponent "in person or by telephone." (I.P. Pt. 2.b.). The I.P. permits no exception along the lines of, "Well we were sure we were right," (*see id.*)—but that's the line the Trusts sing here, (Ltr., 1–2). Specifically, the Trusts sent Plaintiffs a couple emails over the summer demanding payment of Saylor's inappropriate bill, prematurely, without explaining their departure from the Order's cited law, and without requesting a meet-and-confer per the I.P. (*See* Ltr., Ex. B (ECF No. 509-2)).

When the Trusts finally requested a meet-and-confer, Plaintiffs proposed a call on a specific date at our soonest availability. (*See id.*). Rather than simply schedule a call for that date, the Trusts bizarrely ignored Plaintiffs' call proposal, then filed their Letter in such a manner as to intentionally interrupt Plaintiffs' counsel during their brief period of nonavailability. (*See id.* & Ltr., 2). This is not the standard of collegiality required by the Court's rules. (I.P. Pt. 2.b).

The Trusts disingenuously claim that they had to file the Letter when they did, because (they say) they were sure Plaintiffs were engaging in undue delay. (Ltr., 2 & n.2). This is false. In reality, the Trusts were well aware that Plaintiffs truly were unavailable: the same attorneys for Plaintiffs and the Trusts here had already discussed the undersigned's nonavailability in early-September, when everyone agreed to adjourn motion-practice deadlines in a related case. *See Vice v. NCSLT 2004-1 et al.*, No. 23-cv-06287-PGG-BCM, at ECF Nos. 92–93 (filed Sept. 9–8, 2025). How many times, and in how many ways, do the Trusts' counsel need to be told the same thing by the same opposing counsel? Once should be enough. (*See* I.P. Pt. 2.b).

The purpose of the Court's Individual Practices' requirement to meet-and-confer is to protect parties, and the Court, from the costs of unnecessary Court process. *See Harrison Baking Co. v. B&CW #3*, 777 F. Supp. 306, 307–08 (S.D.N.Y. 1991) (Haight, J.) (cited by Ltr., 2). In *Harrison*, attorney fees were granted where a workers' union refused to comply with the court's unambiguous order, just as the Trusts' refused to comply with this Court's unambiguous order to have a meet-and-confer in the Court's Individual Practices. In contrast, Plaintiffs have violated no orders or practices—they simply await the Court's rulings on the briefings. Therefore, the Trusts should pay Plaintiffs' attorney fees for the Trusts' clear violations of the Court's rules, and causing them to draft this letter.

Respectfully,

*Marvin L. Frank*
Marvin L. Frank